Robert D. Phillips, Jr. (SBN 82639)
rphillips@reedsmith.com
Amir Shlesinger (SBN 204132)
ashlesinger@reedsmith.com
Tamara M. Rudolph (SBN 228940)
trudolph@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: 213.457.8000
Facsimile: 213.457.8080

Terence N. Hawley (SBN 179106)
thawley@reedsmith.com
Thomas A. Evans (SBN 202841)
tevans@reedsmith.com
William H Higgins (SBN 208514)
whiggins@reedsmith.com
REED SMITH LLP
1999 Harrison Street, Suite 2400
Oakland, CA 94612-3572
Telephone: 510.763.2000
Facsimile: 510.273.8832

Attorneys for Defendant Midland National Life Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MIDLAND NATIONAL LIFE INSURANCE CO. ANNUITY SALES PRACTICES LITIGATION<br><br>THIS DOCUMENT RELATED TO:<br><br>ALL ACTIONS | MDL No. 07-1825 CAS (MANx)<br>Honorable Christina A. Snyder<br><br>**DEFENDANT MIDLAND NATIONAL LIFE INSURANCE COMPANY'S REPLY TO PLAINTIFFS' RESPONSE TO QUESTIONS ASKED BY RULE 706 EXPERT ZVI BODIE, PH.D.** |

Defendant Midland National Life Insurance Company ("Midland") submits this Reply to Plaintiffs' Response to the questions in Dr. Bodie's e-mails.

McCann's "out-of-pocket" method purports to calculate damages caused by alleged misrepresentations and omissions by Midland by using a Monte Carlo simulation to determine the point-of-sale "values" of the plaintiffs' annuities.[1] Dr. Bodie's questions focus on McCann's decision to ignore various features of the plaintiffs' annuities in connection with these calculations and on McCann's effort to justify his approach by equating consumer value with Midland's supposed costs.

In response, plaintiffs simply reargue that McCann properly ignored these features (which plaintiffs have utilized) because Midland's costs to provide them were low or because their benefits would be offset by alleged liquidity restrictions that McCann did not analyze. Plaintiffs also attempt to sidestep McCann's analytical flaws by citing to modeling that McCann has not performed.[2] But plaintiffs' response simply highlights the defects in McCann's methods, which ignore—

- The real world characteristics of plaintiffs' annuities,
- The impact of health status, risk preferences, bequest motives, liquidity needs and other personal characteristics on the annuities' values,
- The nature of U.S. financial markets generally and competitive forces in the market for equity index annuities in particular, and
- That neither historical returns on equity indexes nor the probability distribution of future returns implied by market prices of options are reflected by McCann's assumed lognormal distribution, which materially affects his calculations.

To appreciate the fundamental problems with McCann's decision to disregard the death benefit and the plaintiffs' individual circumstances, one need only consider

---

[1] McCann's "out-of-pocket" approach is summarized at pages 3-6 of the Midland Summary Re Joint Record, and his programs can be found in the files named ava.txt, bendav.txt, bendpp.txt, ppa.txt, threeav.txt, and threepp.txt. JR\Work Papers\5.10 McCann July 11 2007 Document Production\program.

[2] Although the Court limited Dr. Bodie's review to the Joint Record, plaintiffs suggest that McCann will later remedy certain defects in his methods by producing a "final damages model" involving additional "actuarial analysis" and "the probabilistic use of features." This recognition of the gaps in McCann's work is proof of its unreliability.

the case of Carmen Migliaccio, who utilized the death benefit to withdraw all of her funds without penalty, realizing gains exceeding 17% in just over two years.[3] To conclude that the death benefit has the same value (or no value) for all individuals is nonsensical.[4] The same holds true for other contractual features used by plaintiffs, such as the right to annuitize based on a guaranteed mortality table and a guaranteed rate of interest, and the right to withdraw up to 10% of the annuity's accumulation value annually without penalty after the first policy anniversary (*see* Kaiser, Migliaccio and Bendzak). The importance of assessing individual circumstances and utility functions becomes even more evident when one considers the convenience provided through the bundling of these features in the annuity contract and the fact that consumers cannot replicate these benefits on their own.[5] McCann's decision to disregard plaintiffs' circumstances and ascribe zero value to the death benefit and other contractual features cannot be deemed reliable or reasonable.

A. **McCann's "Out-of-Pocket" Model.**

The Court's May 9, 2008 Order tasks Dr. Bodie with analyzing the reliability of ***"McCann's opinions"*** as set forth in the Joint Record.[6] Order, 2:5-15, 3:2-8. The focus is ***not*** Midland's "argument on summary judgment" or whether plaintiffs can "prevail" by persuading a jury that they sustained "some" economic injury from "alleged" undisclosed costs.[7] Plaintiffs state that the "purpose" of McCann's models is to substantiate their damages and causation claims. McCann opines that his "out-

---

[3] Hawley Decl. (4.9.2007) Exs. 2, 8-10/000761-62, 797-804; Gioffredi Decl. (4.9.2007) Exs. 6-9/000575-83.

[4] *See* Zvi Bodie, Robert C. Merton & David L. Cleeton, Financial Economics, 201-202 (2d ed., Pearson Prentice Hall 2008) (2000) (noting the different values of a dollar bill under different circumstances).

[5] Keeley Decl. (9.10.07) ¶¶ 9, 12(a), 27, 29, 31 and n.19 / 000132-33, 147-50.

[6] "Dr. Bodie shall review and consider only the matters contained in the Joint Record of Information." Order, 2:9-10.

[7] "Dr. Bodie shall not address or evaluate the ultimate success or failure of plaintiffs' claims." Order, 3:15-16.

MIDLAND NATIONAL LIFE INSURANCE COMPANY'S REPLY TO PLAINTIFFS' RESPONSE TO QUESTIONS ASKED BY 706 EXPERT

of-pocket" and "benefit of the bargain" models establish specific, calculable injuries that were directly caused by particular misrepresentations and omissions by Midland.[8] But McCann has failed to devise reliable methodologies for determining whether plaintiffs were damaged or in what amounts, whether McCann's calculated damages are causally linked to misrepresentations and omissions by Midland, or whether plaintiffs' purchases would be irrational absent the alleged misstatements.

**B.    McCann's Disregard of the Death Benefit Provisions.**

Dr. Bodie questioned McCann's failure to account for mortality risk and the death benefit in his "out-of-pocket" valuation model. McCann freely admits that his model excludes this feature and that he does not know the value of the death benefit for the plaintiffs in light of their health status, bequest motives, and risk aversion. This is a fundamental flaw. The death benefit plainly has value for consumers, though the value will be different for a young, healthy purchaser seeking tax deferred growth and an elderly policyholder concerned with passing funds to a spouse. As in the case of Migliaccio, an early death can lead to a substantial profit to the beneficiary, particularly given the premium bonus. See Hull Supp. Decl. (1.24.08) ¶¶ 8, 20-25, Ex. 1/000389-90, 395-97, 419-20 (demonstrating sensitivity of contract values to individual mortality risk). In his attempt to formulate a model applicable to an entire class of purchasers, McCann has improperly ignored these particular benefits and policyholders' individual circumstances. But McCann's "maturity payoff," even if properly calculated, at most constitutes a floor value of one aspect of the annuities in wholesale markets, and assumes no withdrawals. Hull Supp. Decl. (11.28.07) ¶ 3(b), 5, 38/000338-39, 354. The value for consumers of the combination of features packaged by Midland depends on individual factors McCann has not analyzed.[9]

---

[8] "The damages caused by Midland's actions have been analyzed and quantified by Plaintiffs' expert economist, Dr. Craig McCann." Pltfs' Superseding Opp. (7.9.07), 10:13-15/004796; see also McCann Decl. (7.9.07) ¶¶ 3-4/000003-4 and McCann Decl. (7.16.07) ¶¶ 3-4/000086-88, opining that the four plaintiffs suffered $13,801, $5,386, $44,334 and $106,644.84 in "out-of-pocket" damages.

[9] Keeley Decl. (9.10.07) ¶¶ 12(b), 15/000133-34, 136-37; Hull Supp. Decl. (1.24.08)

-3-

Plaintiffs contend that McCann appropriately ignored the death benefit and mortality factors, citing to Midland's purportedly "minimal costs" and to modeling that McCann has not even performed and that is not part of the Joint Record to which this review is limited.[10] They further argue that these benefits would be offset by alleged "liquidity restrictions" arising from *disclosed* surrender charges that McCann has not incorporated in his modeling (and which allow for stable returns and higher crediting rates).[11] But in incomplete markets,[12] valuation of the features of Midland's products, which consumers cannot replicate on their own, is not possible without reference to utility functions and individual circumstances like mortality factors.[13]

## C. McCann's Disregard of the Annuitization Provisions.

Dr. Bodie also questioned McCann's decision to ignore annuitization rights without assessing, among other things, interest rate volatility. As a threshold matter, the minimum interest rates for annuity calculations in plaintiffs' contracts range from 1.5 to 3%,[14] and as plaintiffs concede, Midland permits annuitization during the surrender charge period. Keeley Decl. (9.10.07) ¶ 16(d)/000138-39. Moreover, the value of the option to obtain a stream of payments at pre-specified interest rates and

---

¶¶ 2(B), 7-9, 54-55, 64-65/000386-87, 389-90, 412-413, 416.

[10] While plaintiffs will attempt to downplay this admission, their acknowledgment of McCann's unfinished work on a critical point is, by itself, reason for rejecting McCann's approach.

[11] Keeley Decl. (9.10.07) ¶ 21/000141 (surrender charges contribute to Midland being able to invest in long-term assets and, in turn, credit higher rates); Lyons Decl. (9.10.07) ¶ 8/001592.

[12] McCann's approach is based on the same strict assumptions as the Black-Scholes option pricing model, including complete markets and lognormal distribution of indexed returns. *See* Serena Tiong, *Valuing Equity-Indexed Annuities*, 4 N. Am. Actuarial Journal 149, 150, *passim* (2000). These assumptions are not satisfied here. *See* Keeley Decl. (9.10.07) ¶¶ 12(a), 17, 23/000133, 139, 144; Hull Supp. Decl. (11.28.07) ¶ 44, 51/000358, 361-62; Hull Supp. Decl. (1.24.08) ¶ 26, 55, Appx A/000398, 412-13, 427-28.

[13] Keeley Decl. (9.10.07) ¶¶ 12(a)-(b), 15/000133-34, 136-37; Hull Supp. Decl. (1.24.08) ¶¶ 2(B), 7-9, 17, 19-25 54-56/000386-87, 389-390, 394-97, 412-13.

[14] Gioffredi Decl. (4.9.07) Exs. 3, 13, 21/000548-554, 618-624, 662-668; Gioffredi Decl. (6.18.07) Exs. B1-B8/001283-89, 1306-12, 1329-35, 1354-60, 1381-87, 1404-10, 1428-33, 1451-57.

mortality factors[15] depends on individual issues such as risk aversion and longevity expectations, as well as interest rate volatility and changes in mortality tables.

### D. McCann's Disregard of the Withdrawal Provisions.

Dr. Bodie has referred to the value of options to withdraw funds at surrender values. To be clear, the policyholder has a right to withdraw up to 10% of the accumulation value annually after the first year without surrender charges. Because this provides for the ability to obtain a return of capital without any risk of loss to the accumulation value (gains are locked in), this is a valuable option. Keeley Decl. (9.10.07) ¶ 35(a) and (f)/000152-53, 155. Stock and bond portfolios do not provide this protection from capital loss or loss of prior gains in the event of withdrawals. *Id.* The policyholder also has the right to take unlimited withdrawals subject to the surrender charge. This option has value because the downside is limited to the amount of the surrender charge. Further, the amount of the surrender charge is limited by the minimum guaranteed cash value, which creates yet another option-like value. Keeley Decl. (9.10.07) ¶ 21/000141. Hull and Keeley have emphasized the penalty free withdrawal option, which is particularly valuable in conjunction with the other features, such as locked in gains, and protection from risk of loss of principal due to poor market performance.[16] McCann's model excludes all of these features.

### E. McCann's Confusion of Contract Value With Midland's Costs.

The value of Midland's contractual features for individual consumers such as plaintiffs is not commensurate with Midland's internal costs. McCann has failed to provide any reliable basis for treating such costs as a proxy for contractual value.[17]

---

[15] Annuitization payments depend on the interaction between a guaranteed mortality table and the interest rate. Because mortality tables are revised periodically and mortality experience has improved, later-issued annuities could have lower payment schedules.

[16] Keeley Decl. (9.10.07) ¶ 35(a), (e), (f)/000152-55; Hull Supp. Decl. (11.28.07) ¶ 18, 21, 55, 61/000344, 346, 363, 365.

[17] Even if Midland's internal costs were an appropriate benchmark for value, and they are not, McCann has provided no justification for the figures he chose. Indeed, plaintiffs' response consists largely of unsupported arguments and conclusions

F. **Plaintiffs' Unsupported References to Midland's Alleged "Spread."**

Plaintiffs' arguments regarding the alleged "costs" of Midland's products—particularly the "spread"[18]—are based on a series of unsupported assumptions. McCann ignores the fact that, unlike mutual fund loads, Midland's "spread" ensures performance of contractual obligations and compensates for transferring risk away from consumers.[19] In addition, McCann admits he does not know *what* was disclosed to plaintiffs or whether Midland's disclosures were adequate. He concedes that his model does not causally connect any portion of his alleged purchase date shortfalls to his assumed nondisclosures. Midland's Summary, 4:8-5:6. And because McCann disregarded plaintiffs' circumstances, he cannot opine on what induced their purchases or whether plaintiffs would have "rationally" purchased their annuities notwithstanding any nondisclosure or shortfall. *Id.*, 14:5-21.[20] Thus, even if one assumes that McCann accurately identified an excessive spread (he has not), that Midland had a duty to disclose the spread (it did not), and that it was not disclosed or discovered by plaintiffs (which McCann admits he does not know), McCann concedes that his model does not *link* his alleged purchase date shortfalls to any purportedly undisclosed costs, nor does he know whether plaintiffs, or any other consumer, would have refrained from purchasing their annuities had the costs been divulged. McCann's model, which disregards features, assumes undisclosed costs, and "leapfrogs" the causation analysis is patently unreliable.

---

without citation to McCann's declarations, deposition testimony or work papers.

[18] Plaintiffs also refer to broker commissions and assume that such services provide no value to policyholders, which is incorrect.

[19] Lyons Decl. (9.10.07) ¶ 16/001596; Keeley Decl. (9.10.07) ¶ 22, 32/000143, 150-151 (McCann fails to explain standard for determining if a spread is too large).

[20] McCann admits he does not know what level of loss renders a purchase "irrational," and plaintiffs have characterized a shortfall of approximately 9% as "de minimis." Pltfs' Surreply (1.29.2008) 2:22-24/005035.

DATED: August 11, 2008.

        REED SMITH LLP

        By: //s// Robert D. Phillips, Jr.
        Robert D. Phillips, Jr.
        Attorneys for Defendant
        Midland National Life Insurance Company

9915522

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is REED SMITH LLP, 1999 Harrison Street, Suite 2400, Oakland, CA 94612-3572. On August 11, 2008, I served the following document(s) by the method indicated below:

**DEFENDANT MIDLAND NATIONAL LIFE INSURANCE COMPANY'S REPLY TO PLAINTIFFS' RESPONSE TO QUESTIONS ASKED BY RULE 706 EXPERT ZVI BODIE, PH.D.**

☒ by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted below.

☒ by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day following the date of consignment to the address(es) indicated below. A copy of the consignment slip is attached to this proof of service.

☒ by transmitting via email to the parties at the email addresses indicated below:

**Via CM/ECF**

steve@hbsslaw.com
johns@csgrr.com
rcreech@bffb.com
afriedman@bffb.com
ptran@csgrr.com
rjensen@csgrr.com
beth@hbsslaw.com
sjodlowski@csgrr.com
timm@hbsslaw.com
kevincost@hbsslaw.com
almap@hbsslaw.com
dank@hbsslaw.com
kpage@bffb.com
toreardon@csgrr.com
ievans@publiclawgroup.com

**Via E-Mail**

steve@hbsslaw.com
johns@csgrr.com
rcreech@bffb.com
afriedman@bffb.com
ptran@csgrr.com
rjensen@csgrr.com
beth@hbsslaw.com
sjodlowski@csgrr.com
timm@hbsslaw.com
kevincost@hbsslaw.com
almap@hbsslaw.com
dank@hbsslaw.com
kpage@bffb.com
toreardon@csgrr.com
ievans@publiclawgroup.com
rredmayne@publiclawgroup.com
mmuecke@bffb.com
mmckay@bffb.com
tedp@csgrr.com
jbgoplerud@hudsonlaw.net
mpmallaney@hudsonlaw.net
hdf@classactionlaw.com
sbasser@barrack.com

**Via Overnight Mail**

John J. Stoia, Jr.
Theodore J. Pintar
Phong Tran
Rachel L. Jensen
Steve Jodlowski
Thomas J. O'Reardon II
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA  92101

– 9 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

| | |
|---|---|
| 1 | |
| 2 | Andrew S. Friedman |
| | Kimberly C. Page |
| 3 | Manfred P. Muecke |
| 4 | Michael C. McKay |
| | Rose Creech |
| 5 | Bonnett Fairbourn Friedman & Balint |
| 6 | 2901 N. Central Avenue, Suite 1000 |
| | Phoenix, AZ 85012 |
| 7 | |
| 8 | Howard D. Finkelstein |
| | Finkelstein & Krinsk |
| 9 | 501 West Broadway, Suite 1250 |
| 10 | San Diego, CA 92101-3595 |
| 11 | |
| | J. Barton Goplerud |
| 12 | Michael P. Mallaney |
| | HUDSON, MALLANEY & SHINDLER, P.C. |
| 13 | 5015 Grand Ridge Drive, Suite 100 |
| 14 | West Des Moines, IA 50265 |
| 15 | |
| | Elizabeth A. Fegan |
| 16 | Timothy P. Mahoney |
| | Daniel J. Kurowski |
| 17 | HAGENS, BERMAN, SOBOL, SHAPIRO, LLP |
| 18 | 820 North Boulevard, Suite B |
| | Oak Park, IL 60301 |
| 19 | |
| 20 | Steve W. Berman |
| | HAGENS, BERMAN, SOBOL, SHAPIRO, LLP |
| 21 | 1301 Fifth Avenue, Suite 2900 |
| 22 | Seattle, WA 98101 |
| 23 | Stephen R. Basser |
| | John L. Haeussler |
| 24 | Barrack, Rodos & Bacine |
| 25 | One America Plaza |
| | 600 West Broadway, Suite 900 |
| 26 | San Diego, CA 92101 |
| 27 | Tele: 619-230-0800 |
| | Fax: 619-230-1874 |
| 28 | |

1 | Ingrid M. Evans
2 | Renne Sloan Holtzman Sakai LLP
3 | 350 Sansome Street, Suite 1350
San Francisco, CA 94104
4 | Tele: 415-678-3800 / Fax: 415-678-3838

     I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct. Executed on August 11, 2008, at Oakland, California.

                                             //s// Shannon Wurth
                                                Shannon Wurth

MIDLAND NATIONAL LIFE INSURANCE COMPANY'S REPLY TO PLAINTIFFS' RESPONSE TO QUESTIONS ASKED BY 706 EXPERT