ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN J. STOIA, JR. (141757)
jstoia@rgrdlaw.com
THEODORE J. PINTAR (131372)
tedp@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
PHONG L. TRAN (204961)
ptran@rgrdlaw.com
STEVEN M. JODLOWSKI (239074)
sjodlowski@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

BONNETT, FAIRBOURN, FRIEDMAN          HAGENS BERMAN SOBOL
  & BALINT, P.C.                                             SHAPIRO LLP
ANDREW S. FRIEDMAN                           STEVE W. BERMAN
(*Pro Hac Vice*)                                       (*Pro Hac Vice*)
afriedman@bffb.com                               steve@hbsslaw.com
KIMBERLY C. PAGE                              1918 8th Avenue, Suite 3300
kpage@bffb.com                                      Seattle, WA  98101
2901 N. Central Avenue, Suite 1000        Telephone: 206/623-7292
Phoenix, AZ  85012                               206/623-0594 (fax)
Telephone:  602/274-1100
602/274-1199 (fax)

Interim Co-Lead Class Counsel

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In re MIDLAND NATIONAL LIFE INSURANCE CO. ANNUITY SALES PRACTICES LITIGATION | ) ) ) ) |
| | ) |
| This Document Relates To: | ) ) |
| ALL ACTIONS. | ) ) ) ) |

MDL No. CV-07-1825-CAS(MANx)

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL APPROVAL OF SETTLEMENT CLASS, ISSUANCE OF NOTICE TO THE CLASS, AND SETTING OF FAIRNESS HEARING

JUDGE:      Hon. Christina A. Snyder
DATE:       TBD
TIME:        TBD
CTRM:      5 – 2nd Floor

578386_1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................... 1

II.   SUMMARY OF THE LITIGATION ................................................ 3

    A.    Plaintiffs' Position ...................................................... 3

    B.    Midland's Position ....................................................... 3

    C.    Procedural Posture of the Case as of the Settlement ........................ 4

    D.    Mediation and Negotiation of the Settlement ............................... 5

III.  SUMMARY OF THE SETTLEMENT ............................................... 6

    A.    The Proposed Settlement Class ........................................... 6

    B.    Economic Value of the Settlement to Class Members ...................... 7

        1.    Annuitization Bonus ............................................... 7

        2.    Enhanced Annuity Payments ........................................ 8

        3.    Surrender Benefit Relief Through the Claim Review Process ............................................................ 9

    C.    Class Notice ............................................................ 10

    D.    Release and Waiver ..................................................... 11

    E.    Appointment of the Class Representatives and Class Counsel and Payment of Attorneys' Fees, Costs and Service Award Payment to Class Representatives and Attorneys' Fees and Costs ................................................................. 12

IV.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................................................................ 13

    A.    The Settlement Is Fair, Reasonable and Adequate, and It Is Within the Range of Possible Approval ............................... 13

        1.    The Settlement Is the Product of Serious, Informed and Non-Collusive Negotiations ........................................ 14

        2.    The Proposed Settlement Has "No Obvious Deficiencies" ..... 15

        3.    The Proposed Relief Does Not "Grant Preferential Treatment to Class Representatives" ............................... 15

        4.    The Proposed Relief Is Within the "Range of Possible Approval" ........................................................ 16

1
2                                                                                    **Page**

3        B.    The Court Should Conditionally Certify the Settlement Class........... 18

4              1.    The Requirements of Rule 23(a) Are Met................................ 18

5                    a.    Rule 23(a)(1) Is Satisfied ............................................... 18

6                    b.    Rule 23(a)(2) Is Satisfied ............................................... 18

7                    c.    Rule 23(a)(3) Is Satisfied ............................................... 19

8                    d.    Rule 23(a)(4) Is Satisfied ............................................... 19

9              2.    The Requirements of Rule 23(b)(3) Are Met.......................... 20

10                   a.    Common Questions of Law and Fact Predominate ....... 20

11                   b.    A Class Action Is Superior to Individual Actions.......... 21

12                   c.    The Court Should Appoint Lead Counsel as
                           Counsel for the Settlement Class .................................. 22
13
                     d.    The Proposed Class Notice Satisfies Rules 23 and
14                         All Due Process Requirements....................................... 22

15   V.    CONCLUSION .............................................................................. 23

16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Adams v. Inter-Con Sec. Sys., Inc.,*
5
No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)......................................14

6

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 687 (1997).......................................21

7

*Blackie v. Barrack,*
8
524 F.2d 891 (9th Cir. 1975) .............................................................................19

9

*Buoniconti v. Bankers Sec. Life Ins. Soc'y.,*
No. 81 C 6630, 1985 WL 1377 (N.D. Ill. May 16, 1985) ....................................21

10

11

*Chisolm v. TranSouth Fin. Corp.,*
194 F.R.D. 538 (E.D. Va. 2000) .......................................................................20

12

*Class Plaintiffs v. City of Seattle,*
13
955 F.2d 1268 (9th Cir. 1992) ..........................................................................13

14

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ....................................................................13, 14

15

16

*In re Activision Sec. Litig.,*
723 F. Supp. 1373 (N.D. Cal. 1989) .................................................................16

17

*In re Adobe Sys., Inc. Sec. Litig.,*
18
139 F.R.D. 150 (N.D. Cal. 1991).......................................................................18

19

*In re Am. Investors Life Ins. Co. Annuity Mktg. and Sales Practices Litig.,*
263 F.R.D. 226 (E.D. Pa. 2009)........................................................................17

20

21

*In re CV Therapeutics,*
No. C-03-3709 (SI), 2007 WL 1033478 (N.D. Cal. Apr. 4, 2007)...................15, 16

22

*In re Emulex Corp. Sec. Litig.,*
23
210 F.R.D. 717 (C.D. Cal. 2002) ..................................................................18, 20

24

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995)...........................................................................13, 21

25

26

*In re Heritage Bond Litig.,*
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................16

27

*In re Indep. Energy Holdings PLC,*
28
No. 00 Civ. 6689(SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ..............14

578386_1

**Page**

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000).............................................................................. 15

*In re NVIDIA Deriv. Corp. Litig.,*
    No. C-06-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ........................13

*In re OCA, Inc. Sec. and Deriv. Litig.,*
    No. 05-2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008) ...................................23

*In re Pacific Enters. Sec. Litig.,*
    47 F.3d 373 (9th Cir. 1995)............................................................................... 16

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
    148 F.3d 283 (3d Cir. 1998)..............................................................................20

*In re Rubber Chemicals Antitrust Litig.,*
    232 F.R.D. 346 (N.D. Cal. 2005)......................................................................22

*McPhail v. First Command Fin. Planning, Inc.,*
    No. 05CV179 IEG, 2007 WL 2207761 (S.D. Cal. Jul. 30, 2007) ............................19

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950)................................................22

*Negrete v. Allianz Life Ins. Co. of N. Am.,*
    238 F.R.D. 482 (C.D. Cal. 2006).......................................................................20

*Officers for Justice v. Civil Serv. Comm.,*
    688 F.2d 615 (9th Cir. 1982) ........................................................................1, 13

*Satchell v. Federal Express Corp.,*
    Nos. C03-2659 SI, C 03-2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)................14

*Schlagal v. Learning Tree Int'l,*
    No. CV98-6384 ABC (EX), 1999 WL 672306 (C.D. Cal. Feb. 23, 1999)...........................19

*Staton v. Boeing,*
    327 F.3d 938 (9th Cir. 2003) ...........................................................................19

*Strube v. Am. Equity Inv. Life Ins. Co.,*
    226 F.R.D. 688 (M.D. Fla. 2005).......................................................................17

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996) ...........................................................................21

578386_1

1

2                                                                                    **Page**

3   *West v. Circle K Stores, Inc.*,
        No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ...................13
4

5   *Westways World Travel, Inc. v. AMR Corp.*,
        218 F.R.D. 223 (C.D. Cal. 2003) ...........................................................................................19

6   *Young v. Polo Retail, LLC*,
7       No. C-02-4546 (VRW), 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ...........................14, 15

8   *Zhu v. Fujitsu Group 401(K) Plan*,
        No. C-03-1148RMW, 2004 WL 3252573 (N.D. Cal. Mar. 3, 2004) ...................................18
9

10  *Zinser v. Accufix Research Inst., Inc.*,
        253 F.3d 1180 (9th Cir. 2001) ..............................................................................................21

11  **STATUTES, RULES AND REGULATIONS**

12  Federal Rules of Civil Procedure
13      Rule 23 ...............................................................................................................................2
        Rule 23(a) .........................................................................................................................18
14      Rule 23(a)(1) .....................................................................................................................18
        Rule 23(a)(2) .....................................................................................................................18
15      Rule 23(a)(3) .....................................................................................................................19
        Rule 23(a)(4) ...............................................................................................................19, 22
16      Rule 23(b)(3).........................................................................................................18, 20, 21
        Rule 23(c) ...........................................................................................................................23
17      Rule 23(c)(2)(B)..............................................................................................................2, 23
        Rule 23(c)(3).......................................................................................................................23
18      Rule 23(g) ..........................................................................................................................12
        Rule 23(g)(1)......................................................................................................................22
19

20  Federal Rules of Evidence
21      Rule 706 ...................................................................................................... *passim*

22  California Business and Professions Code
23      §17200...............................................................................................................................3, 4
        §17500...............................................................................................................................3, 4

24  California Civil Code
25      §1542...............................................................................................................................12, 13
        §1750.....................................................................................................................................3

26  California Welfare & Institutions Code
27      §15600....................................................................................................................................3

28

1

2                                                                                              **Page**

3   **SECONDARY AUTHORITIES**

4   4 *Newberg on Class Actions* (4th ed. 2002)
5          §11:25 ..................................................................................................................1

6   *Manual for Complex Litigation* (4th ed. 2005)
          §21.632....................................................................................................................1

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

With the assistance of the Hon. Dickran Tevrizian (Ret.), the Parties have reached an agreement to settle the above-captioned class action litigation (the "Settlement") on the terms set forth in the Settlement Agreement, dated September 28, 2010 (the "Agreement").[1]  For the reasons stated herein, Plaintiffs Mary P. Munoz, Robert D. Kaiser, and Nancy Bendzak, as attorney-in-fact for Mary Bendzak, ("Plaintiffs") respectfully request that the Court grant preliminary approval of the proposed Settlement, which will provide substantial economic relief to more than 70,000 senior citizens (or their beneficiaries) across the country who purchased fixed deferred annuity products issued by Defendant Midland National Life Insurance Company ("Midland" or "Defendant").

At the preliminary approval stage, the Court makes only a preliminary determination on the fairness, reasonableness, and adequacy of the settlement, so that notice of the settlement may be given to the Class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the settlement.  *See* 4 *Newberg on Class Actions*, §11:25 (4th ed. 2002); *Manual for Complex Litigation* §21.632 (4th ed. 2005).  In so doing, the Court simply reviews the settlement to determine that it is not collusive and, "taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice v. Civil Serv. Comm.*, 688 F.2d 615, 625 (9th Cir. 1982).

The proposed Settlement plainly meets this standard.  It is the product of lengthy and often contentious negotiations between the Parties, was overseen by an experienced and well-respected mediator and will fairly resolve this litigation.  The Settlement Class, which we ask the Court to conditionally certify, is comprised of

---

[1]     The Agreement and related exhibits are filed as Exhibit 1 hereto.  Unless noted otherwise, capitalized terms in this Motion have the meanings assigned in the Agreement.

578386_1

1   individuals and trusts that have or had an ownership interest in certain fixed deferred
2   annuities issued by Midland between January 25, 2001 and June 30, 2007. The
3   product names for those annuities are listed in Exhibit A of the Agreement.   The
4   members of the Class were age 65 or older on the Annuity's date of issue (or if a trust,
5   then at least one Annuitant was age 65 or older on the Annuity's date of issue).   The
6   Class does not include persons who make a valid request for exclusion from the Class,
7   nor those subject to other exclusions set forth in Section II.A.18 of the Agreement
8   (and below in §III.A of this Memorandum).   As detailed below, the proposed
9   Settlement compares very favorably with class settlements approved in similar cases
10  involving the sale of deferred annuities.   The proposed Settlement appropriately
11  reflects the strengths and weaknesses associated with Plaintiffs' claims and provides
12  finality and certainty to Midland and the Class Members.   The proposed Settlement
13  Class also satisfies all of the requirements for certification under Fed. R. Civ. P. 23,
14  and the proposed Class Notice satisfies all of the requirements of Rule 23(c)(2)(B) for
15  providing the best notice practicable under the circumstances.

16      Plaintiffs therefore respectfully request that the Court enter the [Proposed]
17  Finding and Order (the "Order"), which: (1) preliminarily approves the Settlement;
18  (2) conditionally certifies a class for settlement purposes (the "Settlement Class");
19  (3) schedules a fairness hearing date to consider whether to grant final approval of the
20  Settlement, and the application by Class Counsel for an award of attorneys' fees and
21  expenses; and (4) directs the dissemination of Class Notice of the Settlement and the
22  Fairness Hearing to the members of the Settlement Class.[2]

23
24
25
26
_____

27  [2]     The [Proposed] Order, originally attached as Exhibit D to the Agreement, has
28  been filed with the Motion and this Memorandum.

## II.    SUMMARY OF THE LITIGATION

### A.    Plaintiffs' Position

Plaintiffs filed a Consolidated Class Action Complaint[3] ("Complaint") against Midland on June 4, 2007, alleging violations of the federal civil RICO statute and certain California consumer protection laws, including California's Elder Abuse statute – California Welfare & Institutions Code §15600, *et seq.*, the Consumer Legal Remedies Act – California Civil Code §1750, *et seq.*, and California's Business and Professions Code §§17200 and 17500, *et seq.*  The Complaint also includes a claim for unjust enrichment.

The Complaint alleges that Midland conspired with a network of sales agents in a scheme to target senior consumers to sell them costly and poorly performing deferred annuity products with onerous surrender penalties.  The Complaint also alleges that Midland misrepresented and otherwise failed to disclose to consumers material facts concerning the costs associated with its Annuities, the interest credited to the Annuities, the bonus features of certain of its Annuities, the surrender penalties and withdrawal provisions, the fixed maturity dates, and other material facts. Agreement at §I.B.1.

### B.    Midland's Position

Midland denies any and all wrongdoing alleged in the pleadings and Plaintiffs' other filings, and does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been or could have been alleged against it in the Action.  *Id.* at §I.B.2.(a).  Midland contends that Plaintiffs' allegations do not state a cause of action and are not sustainable as a matter of law.  *Id.* In addition, Midland contends that Plaintiffs would be unable to prove the elements of

---

[3]    This Action originated as several class actions filed in Superior Court in Los Angeles, and federal courts in Iowa, California and Florida.

578386_1

1  the causes of action at trial, and that this would be fatal to both individual and class
2  claims. *Id.*

3      Midland contends that the descriptions of the Annuities in its marketing
4  materials are not misleading, and that it has completely fulfilled its various obligations
5  to owners of the Annuities as promised in the applicable Annuity contracts. *Id.* at
6  §I.B.2.(b). Midland asserts that owners and their beneficiaries have received fair and
7  considerable value as a result of the Annuities. *Id.* Midland disputes any contention
8  that: (1) persons or entities in the Class purchased Annuities without disclosure of all
9  material information; (2) that disclosure of commissions or other expenses incurred by
10 Midland in connection with the sales of the Annuities was required or material in light
11 of the information provided; or (3) any Annuities sold to the Class were per se or
12 otherwise unsuitable. *Id.* Midland also contends that persons and entities in the Class
13 have not suffered any damage or loss as a result of the conduct alleged in the Action
14 and that it has credited all interest due under the Annuities. *Id.* Midland further
15 contends that the offers and sales of all of its Annuities were and are legal in all
16 respects. *Id.* Moreover, Midland contends that the products at issue contain many
17 features that provide liquidity to Annuity holders. *Id.*

18      **C.      Procedural Posture of the Case as of the Settlement**

19      Since the filing of the Action over four years ago, this matter has been
20 aggressively litigated, as the Parties have engaged in substantial motion practice and
21 discovery. Midland filed multiple motions to dismiss, which were denied by the
22 Court after considerable briefing and argument by the Parties. Midland also moved
23 for summary judgment or, in the alternative, for partial summary judgment as to
24 plaintiffs Robert Kaiser, Mary Munoz, and Carmen Migliaccio on April 9, 2007, and
25 as to plaintiff Mary Bendzak on June 18, 2007. Midland subsequently filed motions
26 to exclude Plaintiffs' expert declarations submitted in opposition to those motions.
27 Plaintiffs Kaiser, Munoz and Migliaccio filed their opposition to Midland's motions
28

- 4 -

for summary judgment on July 9, 2007, and Plaintiff Bendzak filed her opposition on July 16, 2007.  Plaintiffs further filed oppositions to Midland's motions to exclude Plaintiffs' expert declarations.  After the motions were briefed, the Court held a hearing on February 25, 2008, but did not decide the motions.  Instead, the Court appointed an expert under Federal Rule of Evidence 706 to assess the reliability of the opinions offered by Plaintiffs' principal expert, Craig J. McCann.  The motions and a related *Daubert* hearing were pending at the time this Settlement was reached.

On July 2, 2007, Plaintiffs filed their motion for class certification.  The Court took the motion off calendar pending the resolution of Midland's summary judgment motions and motions to exclude.

Discovery in this case has been extensive.  In the course of the Action, Class Counsel have reviewed over 450,000 pages of documents, analyzed extensive data, taken the depositions of numerous Midland officers, employees, independent agents, and other third parties.  In addition, Plaintiffs have taken the depositions of Midland's expert witnesses and have retained and consulted with a variety of experts concerning the merits of Plaintiffs' claims and the defenses raised by Midland.

### D.    Mediation and Negotiation of the Settlement

The Parties' Agreement is the product of intense arm's-length negotiations that spanned more than two years.  In addition to direct settlement negotiations, the Parties agreed to mediate the matter before the Honorable Dickran Tevrizian (Ret.) of JAMS to assist them in resolving difficult issues concerning the potential settlement benefits to the Class.  Under Judge Tevrizian's guidance, the Parties worked several hundred hours to reach the terms embodied in the Agreement.  The Parties have conducted their own investigation and evaluation of the relevant law and facts necessary to assess the strengths and weaknesses of Plaintiffs' allegations and claim for damages, as well as Midland's defenses.  Based on these investigations, the Parties have independently concluded that entering in the proposed Settlement is in their best interests.

578386_1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.   SUMMARY OF THE SETTLEMENT

### A.   The Proposed Settlement Class

Plaintiffs request the conditional certification of a Settlement Class, which includes:

> [A]ny trust or natural person who has not made a valid request for exclusion from the Class and who is, as of the Eligibility Date, or who was at the time of the Annuity's termination prior to the Eligibility Date, an Owner, as defined in Section II.A.44 of the Agreement, of an Annuity, provided that Midland's records show that one of the Annuity's Owners as of the Eligibility Date is, or one of the Annuity's Owners at the time of termination was, (1) a natural person who was age 65 or older on the Annuity's date of issue or (2) a trust, and at least one Annuitant was age 65 or older on the Annuity's date of issue; ***except that***, unless and to the extent the person or trust is a Class Member by virtue of being or having been an Owner of another Annuity, "Class," "Class Member" and "Class Members" does not include a trust or person (a) who is or was an Owner of an Annuity (i) for which a death benefit became payable, unless the surviving spouse of the Owner elected to continue the Annuity and it remains an Active Deferred Annuity on the Eligibility Date, (ii) that was issued but not accepted or was returned to the Company as part of the exercise of the free-look provision in the Annuity or was otherwise rescinded, (iii) that was surrendered in full without incurring any Surrender Charge, (iv) that was Annuitized and the Annuity Payments have ceased, or (v) that was purchased by a natural person under age 65, and in which no person age 65 or older had an ownership interest at the time of purchase; (b) who signed a document that released Midland from any further claims concerning the Annuity; (c) whose rights and claims respecting the Annuity have been finally adjudicated in a court of law; (d) who is or was a member of the Board of Directors, an officer, shareholder or employee of Midland at any time during the Class Period, as well as the affiliates, legal representatives, attorneys, successors, or assigns of Midland; (e) who is a judge, justice, or judicial official presiding over the Action or is with the staff or immediate family of such judge, justice or official; (f) who is a person or entity hired to administer the terms of the Settlement; (g) which is a corporation or legal entity other than a trust or natural person; (h) who is a member of the class certified in *Peterman, et al., v. North American Company for Life and Health Insurance, et al.*, Case No. BC357194, Superior Court of the State of California, County of Los Angeles, Central Civil West; or (i) who is or was the owner of a fixed indexed annuity issued by Midland from May 3, 2001, to July 25, 2006, to a person whose application was signed in Hawaii and who was 65 years of age or older on the Issue Date of the Annuity.

Agreement at §II.A.18.

**B.     Economic Value of the Settlement to Class Members**

Pursuant to the terms of the Agreement, each member of the Settlement Class who chooses not to be excluded will receive valuable economic benefits in the form of either an Annuitization Bonus, Enhanced Annuity Payments, or Surrender Charge Reduction Benefits for those electing to participate in the Claim Review Process ("CRP").

**1.     Annuitization Bonus**

Class Members with an Active Deferred Annuity (*i.e.*, an Annuity that has not been Annuitized, surrendered, returned under a "free-look" provision, or otherwise been rescinded, or for which a death benefit has become payable) and who do not seek or otherwise qualify for Surrender Charge Reduction Benefits shall be entitled to receive an Annuitization Bonus as to that Annuity. *Id.* at §IV.A-B. The Annuitization Bonus, which directly enhances the economic value of Defendant's Annuities, effectively addresses Plaintiffs' concerns about the high, undisclosed costs embedded in those Annuities.

For each Active Deferred Annuity receiving the Annuitization Bonus who Annuitizes over a Qualifying Period (meaning, generally, that payments will continue until the later of the annuitant's death or the expiration of ten years), Midland will increase the Accumulation Value of the Active Deferred Annuity (which shall include any increase in Accumulation Value provided by the terms of the Annuity in the event the Annuity is Annuitized at such time) by the amount of the applicable bonus, calculated at the time of Annuitization. *Id.* at §IV.B.2. The increased Accumulation Value amount and the rates provided under the corresponding settlement option in the Annuity will be used to determine the Annuity Payment amount. *Id.* The Annuitization Bonus will be an amount equal to a percentage of the Annuity's Accumulation Value on the date of Annuitization, and the applicable percentage will

- 7 -

be determined by the duration of the Annuity in question, as set forth in the following table:

| Policy Year | Bonus Percentage |
|:---:|:---:|
| 1-4 | 0 |
| 5-9 | 3.3 |
| 10 | 4.4 |
| 11 | 5.5 |
| 12 | 6.6 |
| 13 | 7.7 |
| 14 | 8.8 |
| 15 | 9.9 |
| 16+ | 11.0 |

When an Annuity that did not qualify for Surrender Charge Reduction Benefits is terminated by death after the date of entry of the Final Order and Judgment, and the beneficiary or surviving spouse elects to receive the death benefit in the form of periodic payments over a Qualifying Period, Midland will apply the applicable Annuitization Bonus to determine the amount of each periodic payment to the beneficiary or surviving spouse occurring after the Implementation Date. *Id.* at §IV.B.5. Annuities that are continued by the surviving spouse of the Owner of an Annuity after a death benefit becomes payable after the Eligibility Date are also eligible to receive the applicable Annuitization Bonus if the Annuity is Annuitized over a Qualifying Period to the same extent as the Owner would have been. *Id.*

### 2. Enhanced Annuity Payments

Class Members who have already Annuitized their Annuity on or prior to the date of entry of the Final Order and Judgment shall receive a 2% increase, relative to the amount scheduled to be paid in the absence of this Settlement, to each remaining Annuity Payment made to them after the Implementation Date. *Id.* at §IV.C. Class Members receiving Enhanced Annuity Payments are not eligible to receive Surrender Charge Reduction Benefits nor the Annuitization Bonus. *Id.* at §IV.A.

- 8 -

### 3.    Surrender Benefit Relief Through the Claim Review Process

Class Members who have not already Annuitized their Annuities as of the Eligibility Date may file Claims which, if approved, will provide reductions in past or future Surrender Charges for their Annuities.  *Id.* at §V.A.1.  These reductions in Surrender Charges are referred to as Surrender Charge Reduction Benefits.  *Id.*

In order to obtain Surrender Charge Reduction Benefits, a Class Member must timely complete and submit to the Administrator a Claim Form (included in the Class Notice Package) for the Annuity that is the subject of the Claim.  *Id.* at §V.B and D. Based on the information contained in or submitted with the Claim Form, the Administrator will determine the Surrender Charge Reduction Benefits, if any, for which each Claimant qualifies.  *Id.* at §V.C.  Surrender charge reductions may be at either two levels, referred to as Upper Tier Benefits and Lower Tier Benefits.  *Id.* at §V.A.1.

Each Claimant must provide, under penalty of perjury, the following information in the Claim Form to be evaluated by the Administrator:

(a)    whether a Misrepresentation concerning the applicable Surrender Charges, right to annuitize or other policy terms occurred at the time of the Annuity's sale, and, if so, whether the Claimant would not have purchased the Annuity but for the Misrepresentation;

(b)    whether full surrender of the Annuity or withdrawal of more of the Annuity's Accumulation Value than would be permitted without a Surrender Charge is, or at the time of a prior full or partial surrender was, necessary to pay for:

(i)    medical expenses;

(ii)    nursing or home care;

(iii)    retention of the Claimant's sole residence; or

(iv)    other essential living expenses (such as food, rent, necessary housing repairs and upkeep, utilities and/or transportation for the Claimant or a member of Claimant's household);

and if so, as to any of items (i) – (iii), a description of the claimed expense, and as to any expenses claimed under

578386_1

1
2
3

(iv), an explanation, in reasonable detail, of the need and the financial circumstances indicating the Claimant cannot or could not afford the expenses without reduction of the Surrender Charges otherwise applicable under the Claimant's Annuity;

4
5

(c)   whether the Class Member's Annual Income is less than or equal to $35,000; and/or

6
7

(d)   whether the Accumulation Value of the Annuity as of the Eligibility Date is more than 20% of the Class Member's Net Worth or three times the Class Member's Annual Income.

8   *Id.* at §V.D.3.

9   If the Administrator determines that the information set forth in a Claim Form

10   establishes that either of the circumstances described in subparts (a) or (b) exist, the

11   Claimant shall be entitled to receive Upper Tier Benefits.  *Id.* at §V.D.6.  If the

12   information set forth in the Claim Form establishes that either of the circumstances

13   described in subparts (c) or (d) exist, but none of the circumstances described in

14   subparts (a) or (b) exist, the Claimant shall be entitled to receive Lower Tier Benefits.

15   *Id.* Subject to certain limitations specified in the Agreement, Claimants who qualify for

16   Upper Tier Benefits will receive a refund of up to 75% of Surrender Charges incurred

17   prior to the Implementation Date, or a reduction of up to 75% in any Surrender Charge

18   incurred on or after the Implementation Date.  *Id.* at V.A.1.  Likewise, Claimants who

19   qualify for Lower Tier Benefits will receive a refund of up to 40% of Surrender Charges

20   incurred prior to the Implementation Date, or a reduction of up to 40% in any Surrender

21   Charge incurred on or after the Implementation Date.  *Id.*

22   **C.   Class Notice**

23   The Parties agree that the Administrator shall send a Class Notice Package to

24   each Class Member by first-class mail, no later than 28 days after entry of the Court's

25   Preliminary Approval Order.  *Id.* at §VI.A.  The Class Notice Package shall include:

26   (i) the Class Notice informing Class Members of the Settlement, their rights and

27   obligations under the Settlement, and their settlement benefit options; and (ii) the

28

- 10 -

1  Claim Form, by which certain Class Members may elect to participate in the Claim

2  Review Process and seek Surrender Charge Reduction Benefits.  *Id.* at §VI.B.

3        The Class Notice will provide the following information, *inter alia*: (i) a

4  concise statement of the background of the action, the conditional certification of the

5  Class for settlement purposes and the proposed settlement; (ii) an explanation of each

6  of the settlement benefit options, including the Annuitization Bonus, Enhanced

7  Annuity Benefits for Annuities already annuitized, and the Surrender Charge

8  Reduction Benefits under Claim Review Process, including both Upper Tier and

9  Lower Tier Relief; (iii) a statement that the provision of relief to Class Members is

10  contingent on the Court's approval of this Agreement and issuance of the Final Order

11  and Judgment; (iv) an explanation to Class Members that to participate in the Claim

12  Review Process, they must complete and return the Claim Form to the Administrator

13  no later than 64 days after the mailing of the Class Notice Package; (v) an explanation

14  to potential Class Members of their right to exclude themselves from the Class or to

15  object to the proposed Settlement; (vi) an advisement that any judgment entered in the

16  Action will be binding on all Class Members who have not excluded themselves from

17  the Class; (vii) an explanation to Class Members that they will be releasing the

18  Released Claims under the Release, which will be reprinted verbatim in the Class

19  Notice; and (viii) information about the attorneys' fees and expenses requested by

20  Class Counsel.  *Id.* at §VI.B.2.

21        **D.    Release and Waiver**

22        It is the intent of the Parties to forever settle and resolve this Action through the

23  Settlement.  Accordingly, Plaintiffs and all settling Class Members who choose not to

24  be excluded agree to a full and final release of all past, present or future claims,

25  complaints, causes of action, allegations of liability, damages, restitution, equitable,

26  legal or other interest, or demands or rights, whether known or unknown, that concern,

27  refer or relate to, or arise out of, in whole or in part any facts, events or transactions

28

- 11 -

578386_1

relating to the Annuities that have occurred or were in existence at any time prior to the entry of the Final Order and Judgment, including, without limitation: (i) the offering of advice in any manner related to the Annuities; (ii) the design, marketing, solicitation, sale, appropriateness or administration of the Annuities; (iii) any disclosures or advertising related to the Annuities, whether written or oral; (iv) the computation and crediting of interest to policy accounts; or (v) the calculation and availability of any accumulation or surrender values, or annuity payments, or the exercise of any rights under the Annuities.  Agreement at §IX.A.

Moreover, the Agreement provides that Plaintiffs and all settling Class Members will expressly waive and relinquish their rights conferred by §1542 of the California Civil Code, any other similar law of any state or federal jurisdiction that might otherwise be applicable.  *Id.* at §IX.C.

### E.   Appointment of the Class Representatives and Class Counsel and Payment of Attorneys' Fees, Costs and Service Award Payment to Class Representatives and Attorneys' Fees and Costs

The Agreement contemplates that the Court designate the named plaintiffs in the Complaint, Mary P. Munoz, Robert D. Kaiser, Nancy Bendzak (as attorney-in-fact for Mary Bendzak), as Class Representatives of the Settlement Class.  Agreement at §II.A.26.  Defendant agrees that Plaintiffs Munoz, Kaiser and Bendzak satisfy the requirements as Class Representatives for settlement purposes.  *Id.* at §XII.A.5. Midland also agrees that it will pay up to $10,000 each to Plaintiffs Mary P. Munoz, Robert D. Kaiser, and Mary Bendzak, as and for a service award, subject to approval by the Court.  *Id.* at §X.A.

Midland also agrees to the appointment of Bonnett, Fairbourn, Friedman & Balint, P.C. and Robbins Geller Rudman & Dowd, LLP, as Class Counsel and that such appointment satisfies Rule 23(g) for settlement purposes.  *Id.* at §XII.A.5. Finally, if the Settlement is approved by the Court, Class Counsel will apply for an

award for attorneys' fees and costs.  Midland agrees to pay Class Counsel no more than an aggregate amount of $13,970,000 as an award of attorneys' fees and costs incurred in the litigation, subject to Court approval.  *Id.* at §X.B.

## IV.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.   The Settlement Is Fair, Reasonable and Adequate, and It Is Within the Range of Possible Approval

Strong judicial policy favors settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re NVIDIA Deriv. Corp. Litig.*, No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *1 (E.D. Cal. June 13, 2006).  Settlements are particularly favored "in class actions and other complex cases whether substantial judicial resources can be conserved by avoiding formal litigation."  *NVIDIA*, 2008 WL 5382544, at *2 (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Approval of class action settlements normally proceeds in two stages: preliminary approval followed by notice to the class, and then final approval.  *Manual for Complex Litigation* (4th) §21.632, at 320-21 (2005).  The preliminary approval stage requires the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms . . . ."  *Id.* at §21.632.  At the preliminary stage, the Court need only conduct a *prima facie* review of the relief and notice provided by the Agreement to determine that notice should be sent to the settlement class members.  *See id.*  The Court's review is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  This is a minimal threshold:

- 13 -

> [I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no, obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing.

*Young v. Polo Retail, LLC*, No. C-02-4546 (VRW), 2006 WL 3050861, at *12-*13 (N.D. Cal. Oct. 25, 2006); *see, e.g.*, *Satchell v. Federal Express Corp.*, Nos. C03-2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (granting preliminary approval after finding proposed settlement was non-collusive, had no obvious defects and was within the range of possible settlement approval). In making this determination, the Court should evaluate the fairness of the settlement in its entirety. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness. . . . The settlement must stand or fall in its entirety.").

Here, the proposed Settlement plainly satisfies the standard for preliminary approval, as there is no question as to its fairness, reasonableness and adequacy, placing it is squarely within the range of possible approval.

### 1. The Settlement Is the Product of Serious, Informed and Non-Collusive Negotiations

This Court is familiar with the long, intensely adversarial history of this case. The Action was filed over four years ago, discovery has been vigorous, and each side has amassed substantial factual and expert testimony in support of their positions. There is no doubt that the Parties have had ample opportunity to evaluate the respective strengths and weaknesses in their case.

Beyond the duration and intensity of the litigation, however, the mediation process demonstrates that the Settlement was anything but collusive. *Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *In re Indep. Energy Holdings PLC*,

- 14 -

No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").  The Parties, under the guidance of Judge Tevrizian, negotiated intensely for more than six months to reach an agreement on the complicated and far-reaching issues set forth in the Agreement.  The Settlement is undoubtedly the product of good-faith, arm's-length negotiations.

### 2. The Proposed Settlement Has "No Obvious Deficiencies"

The proposed Settlement "has no obvious deficiencies."  *Young*, 2006 WL 3050861, at *5. To the contrary, as described in detail below, the Settlement favorably compares to other settlements of similar claims, yet is structured to address the specific shortcomings in Defendant's annuities that have been challenged by Plaintiffs – providing valuable economic benefits, tailored to the circumstances of Class Members, to remediate those shortcomings.

### 3. The Proposed Relief Does Not "Grant Preferential Treatment to Class Representatives"

Plaintiffs do not receive any unduly preferential treatment under the settlement; with the exception of service awards of up to $10,000 for Plaintiffs Mary P. Munoz, Robert D. Kaiser, and Mary Bendzak to compensate for the time and effort devoted to prosecuting the common claims, Plaintiffs are treated the same as every other member of the Settlement Class.  *See, e.g.*, *In re CV Therapeutics*, No. C-03-3709 (SI), 2007 WL 1033478, at *3 (N.D. Cal. Apr. 4, 2007) (awarding $26,000 to lead plaintiff).

Nor is there any concern that the proposed Settlement provides for excessive compensation to Plaintiffs' counsel.  The proposed Settlement contemplates a fee and expense award not to exceed $13,970,000. While the Ninth Circuit has held that a fee award of 25% of the settlement fund is an appropriate starting point (or "benchmark") for determining class action fees, that Court has affirmed, and district courts have granted, awards of attorneys' fees at or above a 30% fee.  *See*, *e.g.*, *In re Mego Fin.*

1   *Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (affirming fee award of 33 1/3 % of

2   fund); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (award of 33%

3   of settlement fund as fees affirmed).[4]  Plaintiffs will demonstrate in conjunction with

4   the final approval hearing that the requested $13,970,000 fee and expense award is

5   substantially less than the Ninth Circuit benchmark of 25% of the estimated value of the

6   settlement benefits.  Moreover, the requested fee award is reasonable in light of the

7   lodestar fees and expenses incurred by Plaintiffs' counsel to date.  Indeed, Plaintiffs'

8   counsel's fee under the Settlement is especially modest in that it encompasses all ***future***

9   post-approval work to be performed by counsel to effectuate the Settlement, such as

10  claim administration and any appeals.  As the record will demonstrate, Plaintiffs'

11  requested fee is appropriate and reasonable in light of the time, effort and resources

12  expended to resolve this Action and the substantial settlement benefits that Plaintiffs'

13  counsel will have achieved on behalf of Class Members.

14          **4.      The Proposed Relief Is Within the "Range of Possible
                       Approval"**

15

16          The proposed Settlement also falls well within the "range of possible approval,"

17  as it provides carefully-tailored economic benefits to all Class Members, without the

18  risk and delays of continued litigation, trial and appeal.  The proposed relief offered

19  under the Settlement specifically addresses Defendant's alleged deceptive practices,

20  including its alleged failure to disclose certain costs of its annuities and its use of a

21  product spread to recover those costs.  The proposed Settlement also addresses the

22  surrender penalties and illiquidity allegedly associated with the annuities.  Settlement

23

24  [4]      *See also, e.g., In re CV Therapeutics*, 2007 WL 1033478, at *1 (awarding fees
    of 30% of the settlement fund on the basis that 30% is "consistent with awards made
25  in similar cases"); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL
    1594403, at *18-*23 (C.D. Cal. June 10, 2005) (after noting that federal courts
26  consistently award fees of 30% or higher, Court awarded fees of 33 1/3% of
    settlement); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989)
27  ("this court concludes that in class action common fund cases the better practice is to
    set a percentage fee and that, absent extraordinary circumstances that suggest reasons
28  to lower or increase the percentage, the rate should be set at 30%").

1   Class Members will be able to receive settlement relief through the Annuitization

2   Bonus, Enhanced Annuity Payments, and Surrender Charge Reduction Benefits.

3       The proposed Settlement compares favorably with class settlements approved in

4   similar cases alleging misrepresentations in connection with the marketing and sale of

5   deferred annuity products. Indeed, the Annuitization Bonus, Enhanced Annuity

6   Payments and Surrender Charge Reduction Benefits offered under the proposed

7   Settlement are more beneficial to Class Members than the corresponding relief

8   afforded under other comparable settlements. *See, e.g. In re Am. Investors Life Ins.*

9   *Co. Annuity Mktg. and Sales Practices Litig.*, 263 F.R.D. 226 (E.D. Pa. 2009)

10  (automatic annuitization bonus of .4% for contracts in deferral with possible

11  additional bonus up to 2% as part of claims process, with no waiver of penalties for

12  surrendered contracts); *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688 (M.D.

13  Fla. 2005) (2% annuitization bonus for annuities with a minimum 10 year payout

14  required and unspecified relief as part of claims process).

15      Importantly, the proposed Settlement recognizes the inherent risks, costs and

16  delay associated with the continued prosecution of this complex class action lawsuit.

17  If this litigation were to proceed to trial, there is no guarantee against a defense

18  verdict.  Furthermore, even if a judgment were obtained against Midland at trial, the

19  recovery might be of no greater value to the Class and indeed might be substantially

20  less valuable than the proposed Settlement.  And even if Plaintiffs and the Class

21  ultimately prevailed, it could be years before Class Members would receive any

22  recovery, given the likelihood of appeals.  Moreover, in negotiating the proposed

23  Settlement, Plaintiffs were mindful of Midland's obligations to existing policyholders.

24  The proposed Settlement is the best vehicle to assure Class Members receive the relief

25  with respect to the alleged conduct in a prompt and efficient fashion.

26      Indeed, the price of delay is particularly high in this litigation because it was

27  brought on behalf of elderly consumers who may not be able to wait years for relief.

28  Thus, although the Parties have already engaged in protracted litigation, continuation

of the litigation would be extremely expensive and risky, and in the absence of the proposed Settlement, senior annuity purchasers would have to wait substantially longer before they obtain any relief, even assuming Plaintiffs successfully overcame every obstacle to relief.

Without question, the Parties worked long and hard to achieve a comprehensive settlement that provides valuable and far-reaching benefits for the Class. There is no reason to doubt the fairness, reasonableness and adequacy of the proposed Settlement, which is surely within the range of possible approval.

## B. The Court Should Conditionally Certify the Settlement Class

The Settlement Class should also be conditionally certified under Federal Rules of Civil Procedure, Rules 23(a) and (b)(3).

### 1. The Requirements of Rule 23(a) Are Met

#### a. Rule 23(a)(1) Is Satisfied

Rule 23(a)(1) requires that a class be sufficiently numerous such "that joinder of all members is impractical." The Settlement Class encompasses more than 70,000 annuity policies, easily satisfying the impracticability standard. *See*, *e.g.*, *Zhu v. Fujitsu Group 401(K) Plan*, No. C-03-1148RMW, 2004 WL 3252573, at \*5 (N.D. Cal. Mar. 3, 2004) (class of approximately 139 members sufficient to meet numerosity requirement); *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 719 (C.D. Cal. 2002); *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 153 n.4 (N.D. Cal. 1991) (numerosity requirement clearly satisfied by allegation that hundreds if not thousands of class members traded Adobe securities during class period).

#### b. Rule 23(a)(2) Is Satisfied

Commonality is readily satisfied because Plaintiffs' claims are based on an alleged common fraudulent scheme by Midland to market and sell its deferred annuities to senior citizens, using standardized written sales materials that misrepresented and concealed their high cost, poor performance and illiquidity. *See*,

- 18 -

1  *e.g.*, *McPhail v. First Command Fin. Planning, Inc*., No. 05CV179 IEG, 2007

2  WL 2207761, at *9 (S.D. Cal. Jul. 30, 2007) (Gonzalez, J.) ("The Ninth Circuit

3  applies a 'common course of conduct' test to determine whether to certify a class in a

4  fraud case.") (citing *Blackie v. Barrack*, 524 F.2d 891, 903-04 (9th Cir. 1975));

5  *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 238-39 (C.D. Cal. 2003)

6  (common questions include whether "the common omissions and misrepresentations

7  made by the [defendants] were material").

8  ### c.      Rule 23(a)(3) Is Satisfied

9         The typicality requirement is easily met because Plaintiffs and the members of

10  the proposed Class assert precisely the same claims, all arising from Midland's

11  alleged overarching fraudulent scheme to market and sell inferior annuities to seniors.

12  *McPhail*, 2007 WL 2207761, at *11 ("The same sales pitch, strategy, and scheme that

13  injured the named plaintiffs likewise injured the absent class members."); *Schlagal v.*

14  *Learning Tree Int'l*, No. CV98-6384 ABC (EX), 1999 WL 672306, at *3 (C.D. Cal.

15  Feb. 23, 1999) (typicality met where the plaintiff's claims "stem from the same event

16  or course of conduct as other class members' claims and are based on the same legal

17  theory as the absent members").

18  ### d.      Rule 23(a)(4) Is Satisfied

19         Rule 23(a)(4) requires that "the representative parties will fairly and adequately

20  protect the interests of the class."  In the Ninth Circuit, Rule 23(a)(4) is satisfied

21  where (i) counsel for the class is qualified and competent to vigorously prosecute the

22  action and (ii) the interests of the proposed class representatives are not antagonistic to

23  the interests of the Class.  *See*, *e.g.*, *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir.

24  2003).

25         The requirements of Rule 23(a)(4) are plainly met in this Action.  First,

26  Plaintiffs' counsel are qualified and experienced in class action litigation and have

27  performed extensive work to date in identifying and investigating potential claims in

28

578386_1

this Action, preparing a detailed class action complaint, successfully opposing Defendant's motions to dismiss, opposing the motion for summary judgment and the related expert issues, and successfully mediating and negotiating the proposed Settlement. *See Emulex*, 210 F.R.D. at 720 (court evaluating adequacy of counsel's representation may examine "the attorneys' professional qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated performance in the suit itself"). Second, there is no conflict between Plaintiffs' interests and the interests of the Settlement Class Members. Plaintiffs and the members of the Settlement Class assert the same legal claims, and their alleged losses arise out of the same course of conduct by Defendant during the Settlement Class Period.

### 2.    The Requirements of Rule 23(b)(3) Are Met

The Court may certify a class if it determines that: (1) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### a.    Common Questions of Law and Fact Predominate

This case falls within the category of cases traditionally found suitable for class certification because Plaintiffs would seek to demonstrate the existence of a centrally orchestrated fraudulent scheme to sell deferred annuities to seniors through the use of uniformly misleading sales documents. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 496 (C.D. Cal. 2006) (certifying annuity class action based on misrepresentations in company's standardized sales materials). Schemes predicated on centrally orchestrated frauds, "especially frauds predicated on documents," are traditionally found "suitable for class action treatment." *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 564 (E.D. Va. 2000); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 314 (3d Cir. 1998) (predominance readily met in case involving common scheme to defraud millions of life insurance

- 20 -

1    policyholders); *Buoniconti v. Bankers Sec. Life Ins. Soc'y.*, No. 81 C 6630, 1985 WL

2    1377 (N.D. Ill. May 16, 1985) (certifying claims based on alleged failure to disclose

3    adverse tax consequences of annuity contracts, where despite variations in sales

4    presentations, the same basic misrepresentations and omissions were made to all

5    annuity purchases).   As the Supreme Court has observed, the predominance test is

6    "readily met in certain cases alleging . . . consumer . . . fraud." *Amchem Prods., Inc.*

7    *v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 687 (1997).

8              **b.    A Class Action Is Superior to Individual Actions**

9              Superiority is demonstrated where "classwide litigation of common issues will

10   reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace,*

11   *Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).   Rule 23(b)(3) sets forth factors for

12   determining whether "a class action [is] superior to other available methods for fairly

13   and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).   As explained

14   by the Ninth Circuit in *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir.

15   2001), "'consideration of these factors requires the court to focus on the efficiency and

16   economy elements of the class action so that cases allowed under subdivision (b)(3)

17   are those that can be adjudicated most profitably on a representative basis.'"   *Id*. at

18   1190 (citation omitted).

19             Rule 23(b)(3)'s four "superiority" factors weigh heavily in favor of class

20   certification here.   Liability in this action will turn on whether Midland engaged in a

21   common course of fraudulent conduct and a conspiracy to increase market share

22   and/or profits by specifically targeting and exploiting seniors for the sale of poorly-

23   performing deferred annuities.   As demonstrated by the dearth of individual lawsuits,

24   it is neither economically feasible nor judicially efficient for 70,000 seniors to pursue

25   their claims against Midland on an individual basis. *See, e.g.*, *In re GMC Pick-Up*

26   *Truck*, 55 F.3d at 784.

27

28

578386_1

1   Accordingly, the proposed settlement of the Action on a class-wide basis is a
2   fair and efficient method to resolve the claims of all putative Class Members without
3   burdening the judiciary system with a multiplicity of duplicative lawsuits.

### c.   The Court Should Appoint Lead Counsel as Counsel for the Settlement Class

6   Rule 23(g)(1) requires the Court to appoint counsel to represent the interests of
7   the class.  *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 355 (N.D. Cal.
8   2005).  For the reasons stated above in connection with the adequacy requirements of
9   Rule 23(a)(4), and as has been demonstrated thus far in this litigation, the law firms
10  retained by Plaintiffs to prosecute this class action are "well equipped" to vigorously,
11  competently and efficiently represent the proposed Settlement Class.  The Court
12  should accordingly appoint Bonnett, Fairbourn, Friedman & Balint, P.C. and Robbins
13  Geller Rudman & Dowd, LLP as Class Counsel for the Settlement Class.

### d.   The Proposed Class Notice Satisfies Rules 23 and All Due Process Requirements

16  Class Counsel proposes that mailed and published notice be given in the form
17  of the Class Notice, attached as Exhibit B to the Settlement Agreement.  *See also*
18  Section III.C, *supra*.  Notice to the Class in the form and in the manner set forth in the
19  proposed notice will fulfill any requirements of due process that may apply, comply
20  with the Federal Rules of Civil Procedure, and alert and inform Class Members of the
21  Settlement and their opportunity to appear and be heard at the Fairness Hearing.

22  Notice must be "reasonably calculated, under all the circumstances, to apprise
23  interested parties of the pendency of the action and afford them an opportunity to
24  present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.
25  306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950).  Plaintiffs here propose to give
26  interested parties notice by first-class mail, addressed to all Class Members who can
27  reasonably be identified and located through Midland's records.  In addition, the
28  Parties will make information concerning the Settlement, including the Class Notice,

- 22 -

the Preliminary Approval Order, and other pertinent documents, available via a dedicated website. Courts have regularly approved similar notice arrangements. *See*, *e.g.*, *In re OCA, Inc. Sec. and Deriv. Litig.*, No. 05-2165, 2008 WL 4681369, at *16 (E.D. La. Oct. 17, 2008) ("direct mailing of notice, along with publication of Summary Notice in print and on the web, is reasonably calculated to apprise class members of the settlement").

The content of the Class Notice also meets all of the requirements of Rule 23(c). Specifically, the Class Notice "clearly and concisely state[s] in plain, easily understood language," in accordance with Rule 23(c)(2)(B): the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a Class Member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion, and the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The Class Notice clearly describes the terms of the Settlement, the considerations that caused Plaintiffs' counsel to conclude that the Settlement is fair and adequate, the maximum counsel fees and expenses that may be sought, the procedure for objecting to the Settlement and the date and place of the settlement Fairness Hearing. The Class Notice will, when mailed and published as suggested, fairly apprise Class Members of the Settlement and their options with respect thereto.

V.   **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement; (2) direct the dissemination of the Class Notice to the members of the Settlement Class; and (3) schedule a hearing to consider whether to grant final judicial approval of the Settlement. In addition, in connection with the approval of the Settlement and Class Notice, the Parties request approval of the following schedule:

578386_1

| Event | Event Date |
|---|---|
| Hearing on Preliminary Approval | To be set by Court |
| Eligibility Date | The day following entry of the Preliminary Approval Order |
| Mailing of Class Notice Package | 28 days after entry of the Preliminary Approval Order |
| Class Counsel files petition for approval of the Class Counsel Payment | 39 days after mailing of the Class Notice Package |
| Exclusions and Objections must be postmarked and sent to the Administrator and filed with the Court; Requests to appear and be heard at the Fairness Hearing must be served on Class Counsel and Midland Counsel and filed with the Court | 53 days after mailing of the Class Notice Package |
| Administrator files with the Court and serves counsel with notice specifying those Claimants who have objected or requested exclusion | 64 days after mailing of the Class Notice Package |
| All Claim Forms must be postmarked and sent to the Administrator | 64 days after mailing of the Class Notice Package |
| Administrator shall provide report regarding claim review | 24 days after the later of the postmark deadline for Claim Forms or the postmark deadline for responding to the last-mailed deficiency notice, if there are any, or as soon thereafter as the processing of Claims is completed |
| Fairness Hearing | To be set by Court but not less than 126 days after entry of the Preliminary Approval Order |
| Final Settlement Date | The date on which the Final Order and Judgment approving this Agreement becomes final for all purposes, including appeal |

- 24 -

| Event | Event Date |
|---|---|
| Implementation Date | The tenth day of the second calendar month following the calendar month that includes the later of (a) the Final Settlement Date or (b) the date of the Administrator's report to be provided under Section V.E.1.k of the Agreement. |
| Midland to provide data re amounts of refunds of Surrender Charge Reduction Benefits | 21 days after Implementation Date |
| Administrator disburses checks for Surrender Charge Reduction Benefits and provides proof of check tender to Midland and Class Counsel | 45 Days after Implementation Date |
| Administrator provides interim report to Midland and Class Counsel as set forth in Section V.E.1.n of the Agreement. | 90 Days after Implementation Date |
| Administrator provides a final report to Midland and Class Counsel as set forth in Section V.E.1.o of the Agreement. | 180 Days after Implementation Date |
| Administrator certifies that all checks for Surrender Charge Reduction Benefits have been distributed under the Settlement Agreement, and returns all materials generated by the Claim Review Process to Midland | 195 Days after Implementation Date |

DATED:  October 12, 2010

Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
JOHN J. STOIA, JR.
THEODORE J. PINTAR
RACHEL L. JENSEN
PHONG L. TRAN
STEVEN M. JODLOWSKI


          s/ Theodore J. Pintar
       THEODORE J. PINTAR

578386_1

1                              655 West Broadway, Suite 1900
2                              San Diego, CA  92101
                              Telephone:  619/231-1058
3                              619/231-7423 (fax)

4  DATED:  October 12, 2010         BONNETT, FAIRBOURN, FRIEDMAN
                                 & BALINT, P.C.
5                              ANDREW S. FRIEDMAN
                             KIMBERLY C. PAGE
6

7
                                  s/ Andrew S. Friedman
8                              ANDREW S. FRIEDMAN

9                              2901 N. Central Avenue, Suite 1000
                             Phoenix, AZ  85012
10                             Telephone:  602/274-1100
                             602/274-1199 (fax)
11                              BONNETT, FAIRBOURN, FRIEDMAN
12                              & BALINT, P.C.
                             MANFRED MUECKE
13                              501 W. Broadway, Suite 1450B
                             San Diego, CA  92101
14                              Telephone:  619/756-7748

15                              HAGENS BERMAN SOBOL
                               SHAPIRO LLP
16                              STEVE W. BERMAN
                             1918 8th Avenue, Suite 3300
17                              Seattle, WA  98101
                             Telephone:  206/623-7292
18                              206/623-0594 (fax)

19                              Interim Co-Lead Class Counsel for
                             Plaintiffs
20

21                              SHERNOFF BIDART & DARRAS
                             WILLIAM M. SHERNOFF
                             JOEL A. COHEN
22                              EVANGELINE F. GARRIS
                             600 South Indian Hill Blvd.
23                              Claremont, CA  91711
                             Telephone:  909/621-4935
24                              909/ 625-6915 (fax)

25                              FINKELSTEIN & KRINSK LLP
                             HOWARD D. FINKELSTEIN
26                              MARK L. KNUTSON
                             501 West Broadway, Suite 1250
27                              San Diego, CA  92101
                             Telephone:  619/238-1333
28                              619/238-5425 (fax)

1
2  BARRACK, RODOS & BACINE
   STEPHEN R. BASSER
3  402 West Broadway, Suite 850
   San Diego, CA  92101
4  Telephone:  619/230-0800
   619/230-1874 (fax)
5
   JAMES, HOYER, NEWCOMER
6    & SMILJANICH, P.A.
   JOHN A. YANCHUNIS
7  4830 West Kennedy Blvd.
   Urban Centre One, Suite 550
8  Tampa, FL  33609
   Telephone:  813/286-4100
9  813/286-4174 (fax)

10 WATERS KRAUS & PAUL LLP
   INGRID M. EVANS
11 711 Van Ness Avenue, Suite 220
   San Francisco, CA  94102
12 Telephone:  800/226-9880
   214/777-0470 (fax)
13
   Additional Counsel for Plaintiffs
14

15              **ECF CERTIFICATION**

16      The filing attorney attests that he has obtained concurrence regarding the filing

17 of this document from the signatories to this document.

18 DATED:  October 12, 2010            s/ Theodore J. Pintar
                                   ─────────────────────────
19                                    THEODORE J. PINTAR

20

21

22

23

24

25

26

27

28

578386_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 12, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 12, 2010.

                                    s/ Theodore J. Pintar
                                    THEODORE J. PINTAR

                                    ROBBINS GELLER RUDMAN
                                      & DOWD LLP
                                    655 West Broadway, Suite 1900
                                    San Diego, CA  92101-3301
                                    Telephone:  619/231-1058
                                    619/231-7423 (fax)

                                    E-mail:  tedp@rgrdlaw.com

578386_1

# Mailing Information for a Case 2:07-ml-01825-CAS-MAN

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Stephen R Basser**
  sbasser@barrack.com

- **Steve W Berman**
  steve@hbsslaw.com,heatherw@hbsslaw.com

- **Elaine T Byszewski**
  elaine@hbsslaw.com,JenniferB@hbsslaw.com,sharons@hbsslaw.com

- **Ingrid M Evans**
  ievans@waterskraus.com,jmcintosh@waterskraus.com,rredmayne@waterskraus.com

- **Thomas A Evans**
  tevans@reedsmith.com

- **Elizabeth A Fegan**
  beth@hbsslaw.com,Chi_Filings@hbsslaw.com

- **Andrew S Friedman**
  afriedman@bffb.com,rcreech@bffb.com,ngerminaro@bffb.com

- **Terence N Hawley**
  thawley@reedsmith.com

- **William Hayden Higgins**
  whiggins@reedsmith.com,dkelley@reedsmith.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Steven M Jodlowski**
  sjodlowski@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Daniel J Kurowski**
  dank@hbsslaw.com,chi_filings@hbsslaw.com

- **Timothy Mahoney**
  timm@hbsslaw.com,chi_filings@hbsslaw.com

- **Thomas Joseph O'Reardon , II**
  toreardon@bholaw.com,christinas@csgrr.com

- **Linda B Oliver**

- 29 -

loliver@reedsmith.com,swurth@reedsmith.com

- **Kimberly C Page**
  kpage@bffb.com

- **Robert D Phillips , Jr**
  rphillips@reedsmith.com

- **Henry Pietrkowski**
  hpietrkowski@reedsmith.com

- **Theodore J Pintar**
  tedp@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James A Rolfes**
  jrolfes@reedsmith.com

- **Tamara M Rowles**
  trowles@reedsmith.com,aswenson@reedsmith.com

- **Amir Shlesinger**
  ashlesinger@reedsmith.com

- **John J Stoia , Jr**
  johns@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Phong L Tran**
  ptran@rgrdlaw.com

- **Marshall C Wallace**
  mwallace@reedsmith.com

- **Samuel M Ward**
  sward@barrack.com,lxlamb@barrack.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Michael C McKay
Bonnett Fairbourn Friedman and Balint PC
2901 North Central Avenue
Suite 1000
Phoenix, AZ 85012
```