# EXHIBIT 1



REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

IN RE MIDLAND NATIONAL LIFE
INSURANCE CO. ANNUITY SALES
PRACTICES LITIGATION
_____

THIS DOCUMENT RELATES TO:

ALL ACTIONS.

MDL NO. 07-1825 CAS (MANx)

Honorable Christina A. Snyder

**SETTLEMENT AGREEMENT**

IT IS HEREBY STIPULATED AND AGREED, by, between and among Mary P. Munoz, Robert D. Kaiser, Nancy Bendzak, as attorney-in-fact for Mary Bendzak, and Mary Bendzak, individually, on behalf of the Class defined herein (collectively "Plaintiffs"), and Midland National Life Insurance Company (with its parent, subsidiary, affiliate, predecessor and successor entities, collectively "Midland" or "Defendant"), through their respective duly-authorized counsel, that the proceedings in the United States District Court for the Central District of California, Western Division, captioned *In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation*, MDL No. 07-1825 CAS (MANx) (the "Action"), and matters raised by and related to the Action, are settled fully and finally, compromised, and

1  dismissed on the merits, and with prejudice, on the terms and conditions set forth in
2  this Agreement and the exhibits hereto, subject to the occurrences set forth herein that
3  permit Plaintiffs or Midland to terminate this Settlement, as well as the approval of the
4  Court and entry of judgment.

5  **I.     INTRODUCTION**

6      A.     <u>The Action and Underlying Allegations</u>

7      1.     This Action originated as several class actions filed in Superior
8  Court in Los Angeles, and federal courts in Iowa, California and Florida:

9      (a)     *The Estate of John G. Migliaccio, Carmen Migliaccio v.*
10  *Midland National Life Insurance Company*, Case No. BC327732,
11  Superior Court of the State of California, County of Los Angeles
12  ("*Migliaccio*").  The *Migliaccio* plaintiffs' state court complaint,
13  filed on January 25, 2005, claimed Elder Abuse under California's
14  Welfare & Institutions Code Section 15600, *et seq.*, violations of
15  the Consumer Legal Remedies Act under California Civil Code
16  Section 1750, *et seq.*, violations of California's Business and
17  Professions Code Section 17200, *et seq.*, and breach of the duty of
18  good faith and fair dealing.  The *Migliaccio* plaintiffs filed an
19  amended state court complaint on June 7, 2005.  Plaintiffs
20  voluntarily dismissed the state court action without prejudice on
21  February 23, 2006.

22      (b)     The *Migliaccio* plaintiffs filed a case in the United States
23  District Court for the Southern District of California on January
24  27, 2006, Case No. 3:06-CV-00208-L-CAB, alleging claims for
25  civil RICO, elder abuse, unlawful, deceptive and unfair business
26  practices, unlawful, deceptive and misleading advertising, breach
27  of fiduciary duty and aiding and abetting breach of fiduciary duty,
28  unjust enrichment and imposition of constructive trust.  Plaintiffs

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MDL NO. 07-1825 CAS (MANx)        – 2 –
SETTLEMENT AGREEMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   voluntarily dismissed this case without prejudice on February 21,

2   2006.

3        (c)    Plaintiff Robert D. Kaiser filed a complaint against Midland

4   and others in the United States District Court for the Middle

5   District of Florida, on September 20, 2005, Case No. 3:05-CV-

6   00972-HLA-TEM, alleging civil RICO, fraud, fraudulent

7   misrepresentation, negligent misrepresentation, fraudulent

8   inducement, civil conspiracy, unjust enrichment, and imposition of

9   constructive trust.  This case was voluntarily dismissed without

10  prejudice on February 22, 2006.

11       (d)    The Migliaccio plaintiffs and Plaintiff Robert D. Kaiser

12  subsequently filed a case in the United States District Court for the

13  Central District of California on February 17, 2006, Case No. 2:06-

14  CV-01007 CAS (MANx), alleging claims for civil RICO, elder

15  abuse, unlawful, deceptive and unfair business practices, unlawful,

16  deceptive and misleading advertising, breach of fiduciary duty,

17  aiding and abetting breach of fiduciary duty, fraud, negligent

18  misrepresentation, fraudulent inducement, unjust enrichment and

19  imposition of constructive trust.  Plaintiffs Carmen Migliaccio and

20  Robert D. Kaiser filed an amended complaint on or about

21  November 27, 2006, which added Plaintiff Mary P. Munoz, and

22  removed the Estate of John G. Migliaccio as a plaintiff.

23       (e)    Plaintiff Mary Bendzak filed a case against Midland in the

24  United States District Court for the Southern District of Iowa on

25  December   8,   2005,   Case   No.   4:05-CV-00649-RP-TJS

26  ("*Bendzak*"), alleging claims for civil RICO, common law civil

27  conspiracy, and common law unjust enrichment.  Plaintiff Mary

28  Bendzak filed an amended complaint on August 7, 2006.   On

MDL NO. 07-1825 CAS (MANx)        – 3 –

SETTLEMENT AGREEMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    January 12, 2007, plaintiff Mary Bendzak filed a second amended
2    complaint adding Alan Bendzak as attorney-in-fact for Mary
3    Bendzak.  On May 7, 2007, Plaintiff Mary Bendzak filed a motion
4    to substitute Nancy Bendzak as her attorney in fact in place of
5    Alan Bendzak.  That motion was granted on May 30, 2007.

6    (f)    Plaintiff Mary P. Munoz filed a case against Midland and
7    others in the Superior Court of the State of California, County of
8    Los Angeles on September 29, 2006, Case No. BC359541
9    ("*Munoz*"), alleging financial elder abuse, breach of implied
10   covenant of good faith and fair dealing, unlawful, deceptive and
11   unfair business practices, unfair, deceptive and misleading
12   advertising, breach of fiduciary duty, aiding and abetting breach of
13   fiduciary duty, fraudulent concealment, negligence, negligent
14   misrepresentation, unjust enrichment, and imposition of
15   constructive trust.  On November 17, 2006, Plaintiff Mary P.
16   Munoz voluntarily dismissed without prejudice Defendants
17   Midland, Sammons Financial Group, Inc., and Sammons
18   Enterprises, Inc.  Plaintiff Mary P. Munoz subsequently filed an
19   amended complaint against the remaining parties on November 27,
20   2006.  The entire action was dismissed without prejudice at
21   plaintiff Mary P. Munoz's request on June 19, 2007.

22   2.    On March 14, 2006, the *Migliaccio* plaintiffs and Robert D.
23   Kaiser moved for the appointment of Bonnett, Fairbourn, Friedman &
24   Balint, P.C. and Lerach, Coughlin, Stoia, Geller, Rudman & Robbins,
25   LLP (now known as Robbins Geller Rudman & Dowd LLP) as interim
26   co-lead class counsel, which the Court granted on April 10, 2006.

27   3.    On or about December 6, 2006, plaintiff Mary Bendzak
28   submitted a motion to the Judicial Panel for Multidistrict Litigation

MDL NO. 07-1825 CAS (MANx)        – 4 –
SETTLEMENT AGREEMENT

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

requesting centralization and coordination of pretrial proceedings in the *Bendzak* and *Migliaccio* matters in the United States District Court for the Southern District of Iowa.  The Panel granted her motion but ordered the matters transferred to the United States District Court for the Central District of California as *In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation*, MDL-1825.

4.      On June 1, 2007, the Court entered an order appointing Bonnett, Fairbourn, Friedman & Balint, P.C. and Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP as interim co-lead class counsel of the MDL proceeding.

5.      On June 4, 2007, plaintiffs Carmen Migliaccio, Mary P. Munoz, Robert D. Kaiser, Nancy Bendzak, as attorney-in-fact for Mary Bendzak, and Mary Bendzak filed a Consolidated Class Action Complaint in the MDL proceeding, alleging civil RICO, elder abuse, unlawful, deceptive and unfair business practices, unfair, deceptive and misleading advertising, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, fraudulent misrepresentation, negligent misrepresentation, fraudulent inducement, civil conspiracy, unjust enrichment, and imposition of constructive trust.

6.      Midland filed Motions for Summary Judgment or, in the Alternative, for Partial Summary Judgment as to plaintiffs Carmen Migliaccio, Robert Kaiser, and Mary Munoz on April 9, 2007, and as to plaintiff Mary Bendzak on June 18, 2007.  Midland subsequently filed motions to exclude Plaintiffs' expert declarations submitted in opposition to the motions.   Plaintiffs Migliaccio, Kaiser and Munoz filed an opposition to Midland's motions for summary judgment on July 9, 2007, and Plaintiff Bendzak filed her opposition on July 16, 2007.  Plaintiffs further filed oppositions to Midland's motions to exclude Plaintiffs'

1    expert declarations.   After the motions were briefed, the Court held a
2    hearing on February 25, 2008, but did not decide the motions.   Instead,
3    the Court appointed an expert under Federal Rule of Evidence 706 to
4    assess the reliability of the opinions offered by Plaintiffs' principal
5    expert, Craig J. McCann.   The motions and a related *Daubert* hearing
6    were pending at the time this Settlement was reached.

7        7.    On July 2, 2007, Plaintiffs filed their motion for class
8    certification.   The Court took the motion off calendar pending the
9    resolution of Midland's summary judgment motions and motions to
10   exclude.

11       8.    To accomplish the Settlement, the Parties engaged in numerous,
12   arm's-length mediation sessions beginning in 2008, first with Justice
13   Edward Wallin (ret.) of JAMS and later with Judge Dickran Tevrizian
14   (ret.) of JAMS, concluding in April 2010.

15   B.    The Background of the Settlement

16       1.    Plaintiffs' Position

17           (a)    Plaintiffs assert in this Action that Midland's Annuities are
18   high cost, illiquid and opaque investment products.   Plaintiffs
19   assert that Midland does not disclose to consumers material facts
20   concerning the costs associated with its Annuities, the interest
21   credited to the Annuities, the bonus features of certain of its
22   Annuities, the surrender penalties and withdrawal provisions of the
23   Annuities, the fixed maturity dates of the Annuities and other
24   material facts.

25           (b)    In the course of the Action, Class Counsel have reviewed
26   over 450,000 pages of documents, analyzed extensive data, taken
27   the depositions of numerous Midland officers, employees,
28   independent agents, and other third parties.   In addition, Plaintiffs

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  have taken the depositions of Midland's expert witnesses, and have

2  retained and consulted with a variety of experts concerning the

3  merits of Plaintiffs' claims and the defenses raised by Midland.

4      (c)    Based upon the discovery, investigation and evaluation of

5  the facts and the law, Plaintiffs and Class Counsel have agreed to

6  settle the Action after considering such factors as (1) the benefits

7  to Plaintiffs and the Class provided by this Settlement Agreement;

8  (2) the risks and uncertainty of litigation, especially in complex

9  actions such as this, as well as the difficulties and delays inherent

10  in such litigation; and (3) the desirability of consummating this

11  Settlement Agreement in order to provide relief to Plaintiffs and

12  the Class.

13      2.    Defendant's Position

14      (a)    Midland expressly denies any and all wrongdoing alleged in

15  the pleadings and Plaintiffs' other filings, and does not admit or

16  concede any actual or potential fault, wrongdoing, or liability in

17  connection with any facts or claims that have been or could have

18  been alleged against it in the Action.  Midland contends that

19  Plaintiffs' allegations do not state a cause of action and are not

20  sustainable as a matter of law.  In addition, Midland contends that

21  Plaintiffs would be unable to prove the elements of the causes of

22  action at trial, and that this would be fatal to both individual and

23  class claims.  In this regard, Midland contends that it would be

24  inappropriate to certify a litigation class in this matter, in part due

25  to the manageability and superiority problems inherent in

26  presenting the case in a trial involving thousands of individualized

27  sales.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(b)     Midland contends that the descriptions of the Annuities in its marketing materials are not misleading, and that it has completely fulfilled its various obligations to owners of the Annuities as promised in the applicable Annuity contracts. Midland asserts that owners and their beneficiaries have received fair and considerable value as a result of the Annuities.  Midland disputes any contention 1) that persons or entities in the Class purchased Annuities without disclosure of all material information, 2) that disclosure of commissions or other expenses incurred by Midland in connection with the sales of the Annuities was required or material in light of the information provided, or 3) that any Annuities sold to the Class were per se or otherwise unsuitable. Midland also contends that persons and entities in the Class have not suffered any damage or loss as a result of the conduct alleged in the Action and that it has credited all interest due under the Annuities.  Midland further contends that the offers and sales of all Annuities offered and/or issued by Midland were and are legal in all respects.

(c)     Midland contends that the products at issue contain many features that provide liquidity to Annuity holders.  These products are a useful savings tool in that they protect the holder against substantial market uncertainties and downturns, such as the 2008 downturn, primarily through the products' many guaranteed features – including the minimum values mandated by state law. To provide assurance of product performance relative to these valuable product features, Midland is required to maintain certain policy reserves, and is subject to state supervision under applicable state laws and regulations.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(d)     Nonetheless, Midland considers it desirable for this Action to be settled and dismissed because this Settlement will finally put Plaintiffs' claims and the underlying matters to rest.  Midland is also entering into this Settlement Agreement to avoid the expense, burden, inconvenience, and inherent risk of litigation and the concomitant disruption of its business operations.

## II.     DEFINITIONS

A.     As used in this Agreement and the attached exhibits (which are incorporated by reference), the following terms have the following meanings, unless this Agreement specifically provides otherwise:

1.     "Accumulation Value" means the accumulation value as defined in the Annuity owned by the Class Member, or if the accumulation value is not defined in the Annuity contract, it shall mean the value under such Annuity determined based on the premium paid for the Annuity, plus any bonus and any index or fixed interest credited to the Annuity, less any withdrawals taken from the Annuity and charges incurred, as reflected in the business records of Midland as of the date such value is to be calculated.

2.     "Action" means the above-captioned consolidated class action lawsuits, specifically, IN RE MIDLAND NATIONAL LIFE INSURANCE CO. ANNUITY SALES PRACTICES LITIGATION, MDL NO. 07-1825 CAS (MANx), United States District Court for the Central District of California Western Division; ALAN BENDZAK, as attorney-in-fact for MARY H. BENDZAK, and MARY H. BENDZAK, individually and on behalf of all others similarly situated v. MIDLAND NATIONAL LIFE INSURANCE COMPANY, Case No. 4:05-CV-00649-RP-TJS, United States District Court for the Southern District of Iowa Central Division; CARMEN MIGLIACCIO, MARY P.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   MUNOZ and ROBERT D. KAISER, on Behalf of Themselves and all

2   Others Similarly Situated v. MIDLAND NATIONAL LIFE

3   INSURANCE COMPANY, an Iowa corporation, and SAMMONS

4   FINANCIAL GROUP, INC., a Delaware corporation, Case No. 2:06-cv-

5   01007-CAS (MANx), United States District Court for the Central District

6   of California, Western Division.

7   3.    "Active Deferred Annuity" means any Annuity except those that

8   have been surrendered, returned under a "free-look" provision or

9   otherwise been rescinded, Annuitized, or for which a death benefit has

10  become payable, unless the surviving spouse of the Owner elected to

11  continue the Annuity and the Annuity has not thereafter been

12  surrendered, rescinded, or Annuitized, nor has a death benefit again

13  become payable under such Annuity.

14  4.    "Administrator" means the Court-appointed third-party agent or

15  administrator to be retained jointly by the Parties to provide notice to the

16  Class Members, administer the Claim Review Process or otherwise assist

17  in implementing the terms of this Agreement.

18  5.    "Aggregate Accumulation Value" means the total Accumulation

19  Value of all Active Deferred Annuities owned by Class Members, to be

20  compiled from Midland's business records of transactions entered into its

21  policy administration system, known as PolicyLink, as of the Limits

22  Computation Date.

23  6.    "Agreement" or "this Agreement" or "Settlement Agreement"

24  means this Settlement Agreement and the exhibits attached hereto or

25  incorporated herein, including any subsequent amendments and any

26  exhibits to such amendments.

27  7.    "Annuity" means a fixed deferred annuity issued by Midland

28  during the Class Period that included a provision for a Surrender Charge.

A list of the marketing names of Midland's Annuities issued during that period, as reflected in Midland's policy administration system, is attached as Exhibit A.  "Annuities" is the plural form of "Annuity."

8.      "Annuity Payment" means one of the periodic payments to be made by Midland following and in connection with the Annuitization of an Annuity.

9.      "Annuitant" means a natural person upon whose life the amount and duration of Annuity Payments involving life contingencies depend with respect to an Annuity.

10.     "Annuitize" means to convert the Accumulation Value or the Surrender Value of an Annuity into the right to receive periodic payments.

11.     "Annuitized" means to have converted the Accumulation Value or the Surrender Value of an Annuity into the right to receive periodic payments.

12.     "Annuitization" means the conversion of the Accumulation Value or the Surrender Value of an Annuity into the right to receive periodic payments.

13.     "Annuitization Bonus" means the amount to be added to the Accumulation Value to determine the Annuity Payment amount in accordance with Section IV.A. and IV.B. of this Agreement.

14.      "Claim" means the claim of a Class Member for Surrender Charge Reduction Benefits as provided in this Agreement.

15.     "Claim Form" means the form that the Administrator will send to Class Members as a part of the Class Notice Package, substantially in the form set forth as Exhibit C.  Class Members who choose to apply for Surrender Charge Reduction Benefits are required to submit a complete

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Claim Form to the Administrator in accordance with the terms of this Agreement.

16. "Claimant" means a Class Member, or the authorized representative of a Class Member, who submits a Claim for Surrender Charge Reduction Benefits.

17. "Claim Review Process" means the process and procedures for the presentation, evaluation, and notification to Claimants of the approval or disapproval of Claims.

18. "Class," "Class Member" or "Class Members" means and includes any trust or natural person who has not made a valid request for exclusion from the Class and who is, as of the Eligibility Date, or who was at the time of the Annuity's termination prior to the Eligibility Date, an Owner, as defined in Section II.A.44. of this Agreement, of an Annuity, provided that Midland's records show that one of the Annuity's Owners as of the Eligibility Date is, or one of the Annuity's Owners at the time of termination was, (1) a natural person who was age 65 or older on the Annuity's date of issue or (2) a trust, and at least one Annuitant was age 65 or older on the Annuity's date of issue; except that, unless and to the extent the person or trust is a Class Member by virtue of being or having been an Owner of another Annuity, "Class," "Class Member" and "Class Members" does not include a trust or person (a) who is or was an Owner of an Annuity (i) for which a death benefit became payable, unless the surviving spouse of the Owner elected to continue the Annuity and it remains an Active Deferred Annuity on the Eligibility Date, (ii) that was issued but not accepted or was returned to the Company as part of the exercise of the free-look provision in the Annuity or was otherwise rescinded, (iii) that was surrendered in full without incurring any Surrender Charge, (iv) that was Annuitized and the Annuity Payments

have ceased, or (v) that was purchased by a natural person under age 65, and in which no person age 65 or older had an ownership interest at the time of purchase; (b) who signed a document that released Midland from any further claims concerning the Annuity; (c) whose rights and claims respecting the Annuity have been finally adjudicated in a court of law; (d) who is or was a member of the Board of Directors, an officer, shareholder or employee of Midland at any time during the Class Period, as well as the affiliates, legal representatives, attorneys, successors, or assigns of Midland; (e) who is a judge, justice, or judicial official presiding over the Action or is with the staff or immediate family of such judge, justice or official; (f) who is a person or entity hired to administer the terms of the Settlement; (g) which is a corporation or legal entity other than a trust or natural person; (h) who is a member of the class certified in PETERMAN, ET AL., V. NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, ET AL., Case No. BC357194, Superior Court of the State of California, County of Los Angeles, Central Civil West; or (i) who is or was the owner of a fixed indexed annuity issued by Midland from May 3, 2001, to July 25, 2006, to a person whose application was signed in Hawaii and who was 65 years of age or older on the Issue Date of the Annuity.

19.    "Class Counsel" means the law firms of: (a) Bonnett, Fairbourn, Friedman & Balint, P.C.; (b) Robbins Geller Rudman & Dowd LLP; (c) Barrack Rodos & Bacine; (d) Finkelstein & Krinsk; (e) Waters & Kraus LLP; (f) James Hoyer Newcomer & Smiljanich, P.A.; and (g) Hagens Berman Sobol Shapiro LLP.

20.    "Class Counsel Payment" means the payment Midland agrees to make to Class Counsel in an amount approved by the Court, which shall not exceed $13,970,000 for attorneys' fees and reimbursement of all

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

SETTLEMENT AGREEMENT

44

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

reasonable expenses and costs incurred by Class Counsel in connection with the Action.

21.     "Class Member's Annual Income" means gross income of the Class Member with respect to whom Annual Income is to be determined from all sources, including without limitation wages, dividends, interest, capital gains, pension and tax-qualified retirement plan payments, payments from annuities that are not excluded from taxable income, and social security payments, over the most recent twelve months.

22.     "Class Member's Net Worth" means the value in U.S. Dollars of all monetary assets that the Class Member has the legal right to apply to his or her own benefit and all non-monetary assets that the Class Member has the right to sell and utilize the proceeds thereof for his or her own benefit, minus the amount of any debts or liabilities of the Class Member, provided that neither the Class Member's principal residence nor any debt secured by such residence shall be considered in determining Net Worth.

23.     "Class Notice" means the notice provided to Class Members pursuant to this Agreement in the form attached hereto as Exhibit B.

24.     "Class Notice Package" means the package of materials described in Section VI. of this Agreement.

25.     "Class Period" means the period from January 25, 2001 through June 30, 2007, inclusive.

26.     "Class Representatives" mean Plaintiffs Robert D. Kaiser, Mary P. Munoz, Nancy Bendzak, as attorney in fact for Mary Bendzak, and Mary Bendzak.

27.     "Court" means the United States District Court, Central District of California.

28.     "Eligibility Date" shall be the date of the day after entry of the Preliminary Approval Order.

29.     "Enhanced Annuity Payment" means the 2% increase, relative to the amount scheduled to be paid in the absence of this Settlement, to be added to each Annuity Payment remaining after the Implementation Date for a Class Member who has Annuitized his or her Annuity on or prior to the date of entry of the Final Order and Judgment.

30.     "Fairness Hearing" means a hearing to be held on a date set by the Court, at which time the Court will make a final decision on whether to approve this Agreement as fair, reasonable, and adequate.

31.     "Final Order and Judgment" means the Court's order approving the Settlement and this Agreement that is substantially in the form attached hereto as Exhibit E, as described in Section XII. of this Agreement.

32.     "Final Settlement Date" means the date on which the Final Order and Judgment approving this Agreement becomes final for all purposes, including appeal.  For purposes of this Agreement:

(a)     if no appeal is taken from the Final Order and Judgment, "Final Settlement Date" shall be the date on which the time to appeal from the Final Order and Judgment has expired; or

(b)     if any appeal has been taken from the Final Order and Judgment, "Final Settlement Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for certiorari or any other form of review, have been finally resolved by order, mandate or otherwise, in a manner that affirms the Final Order and Judgment; or

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(c)     if the Parties agree in writing and the Court so orders, "Final Settlement Date" can occur on any other agreed date.

33.     "Implementation Date" shall be the tenth day of the second calendar month following the calendar month that includes the Final Settlement Date.

34.     "Limit on Approved Claims for Lower Tier Benefits" means the limit on Claims approved for Lower Tier Benefits, which limits the total Lower Tier Benefits available, pursuant to Section V.G.

35.     "Limit on Approved Claims for Upper Tier Benefits" means the limit on Claims approved for Upper Tier Benefits, which limits the total Upper Tier Benefits available, pursuant to Section V.G.

36.     "Limits Computation Date" means the later of (a) the close of business on December 31, 2010, and (b) a date selected by Midland that is not more than seven days after its receipt of the Administrator's report to be provided pursuant to V.E.1.k.

37.     "Limits on Approved Claims" means the Limit on Approved Claims for Upper Tier Benefits and the Limit on Approved Claims for Lower Tier Benefits.

38.     "Lower Tier Claimants" means those Claimants whose Claims have been approved for Lower Tier Benefits.

39.     "Lower Tier Benefits" means the right to receive a refund of 40 percent of any Surrender Charges incurred before the Implementation Date and a reduction of 40 percent of any otherwise applicable Surrender Charge resulting from full or partial surrenders after the Implementation Date as to the applicable Annuity if a Claim is approved based on satisfaction of the criteria set forth in Section V.D.6(b) for the determination of Surrender Charge Reduction Benefits, subject to the provisions of Section V.G.

40.    "Lower Tier Benefits Claimants" means Claimants who are approved for Lower Tier Benefits.

41.    "Misrepresentation" means either: (a) an untrue statement of material fact made to the applicant, Annuitant, or Owner or a duly authorized agent or representative of the applicant, Annuitant, or Owner; or (b) the omission of a material fact necessary in order to make the statements to such person(s) not materially misleading in light of the circumstances under which the statements were made or received.  For purposes of this definition, a fact is material if there is a substantial likelihood a reasonable person would have considered it significant, in view of all of the information provided in connection with the sale of the Annuity purchased by the Owner or the Owner's predecessor, in reaching the decision to purchase the Annuity.

42.    "Midland" means Midland National Life Insurance Company.

43.    "Midland Counsel" means Reed Smith LLP.

44.    "Owner" means any person or entity identified in Midland's policy administration system as having an ownership interest in an Active Deferred Annuity or an Annuity that has been Annuitized and as to which the periodic payments have not ended and the last owner identified in such system as to any other Annuity.

45.    "Parties" means Plaintiffs and Midland, collectively.

46.    "Plaintiffs" means Plaintiffs Robert D. Kaiser, Mary P. Munoz, Nancy Bendzak, as attorney in fact for Mary Bendzak, and Mary Bendzak.

47.    "Policy Year" means one (1) plus the number of complete years since the date the Annuity of a Class Member was issued as stated in the Annuity.

48.    "Preliminary Approval Order" means the order to be entered by the Court in substantially the form attached as Exhibit D preliminarily approving this Agreement, as described in Section XI. of this Agreement.

49.    "Qualifying Period" means, with respect to the Annuitization of an Annuity, a time during which periodic payments are to be made that extends until the later of (a) the death of the Annuitant, or the later death of joint Annuitants, and (b) the expiration of ten years, or at the option of the Owner, a period of years from ten to twenty after Annuitization.

50.    "Release" means the release and waiver set forth in Section IX. of this Agreement.

51.    "Settlement" means the transactions, rights, obligations, conditions, Release, and other matters contemplated by, described in or provided by the Settlement Agreement in the aggregate.

52.    "Surrender Charge" means the surrender charge applicable under the provisions of the Annuity owned by the Class Member.  "Surrender Charge" does not include any interest adjustment or market value adjustment applicable under the provisions of any Annuity.

53.    "Surrender Charge Reduction Benefits" means either Upper Tier Benefits or Lower Tier Benefits, each of which provides a reduction in the otherwise applicable Surrender Charge for full or partial surrenders occurring after the Implementation Date and a refund of a portion of any Surrender Charge that was paid when the Annuity (or Annuities) to which such benefits relate was (or were) fully or partially surrendered prior to the Implementation Date.  Such benefits will be provided or made available after the Implementation Date to Class Members who have properly completed and timely submitted a Claim Form and are granted Surrender Charge Reduction Benefits by the Administrator in accordance with Section V.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

54. "Surrender Value" means the amount payable to the owner of an Annuity upon a full or partial surrender with respect to that transaction.

55. "Upper Tier Benefits" means the right to receive a refund of 75 percent of any Surrender Charges incurred before the Implementation Date and a reduction of 75 percent of any otherwise applicable Surrender Charge resulting from full or partial surrenders after the Implementation Date as to the applicable Annuity if a Claim is approved based on satisfaction of the criteria set forth in Section V.D.6(a) for the determination of Surrender Charge Reduction Benefits, subject to the provisions of Section V.G.

56. "Upper Tier Benefits Claimant" or "Upper Tier Claimants" means Claimants who are approved for Upper Tier Benefits.

57. The terms "he" or "she" and "his" or "her" include "it" or "its," where applicable. Defined terms expressed in the singular also include the plural form of such term, and vice versa, where applicable.

58. All references herein to sections, paragraphs, and exhibits refer to sections, paragraphs and exhibits of and to this Agreement, unless otherwise expressly stated in the reference.

## III. SETTLEMENT PROCESS

The dates for certain events contemplated by this Settlement Agreement are as follows:

| Event Date | Event |
|---|---|
| To be set by Court | Hearing on Preliminary Approval |
| The day following entry of the Preliminary Approval | Eligibility Date |

| | |
|---|---|
| Order | |
| 28 days after entry of the Preliminary Approval Order | Mailing of Class Notice Package |
| 39 days after mailing of Class Notice Package | Class Counsel files petition for approval of the Class Counsel Payment |
| 53 days after mailing of the Class Notice Package | Exclusions and Objections must be postmarked and sent to the Administrator and filed with the Court; requests to appear and be heard at the Fairness Hearing must be served on Class Counsel and Midland Counsel and filed with the Court |
| 64 days after mailing of the Class Notice Package | Administrator files with the Court and serves counsel with notice specifying those Claimants who have objected or requested exclusion |
| 64 days after mailing of the Class Notice Package | All Claim Forms must be postmarked and sent to the Administrator |
| 24 days after the later of the postmark deadline for Claim Forms or the postmark deadline for responding to the last-mailed deficiency notice, if there are any, or as soon thereafter as the processing of Claims is completed | Administrator shall provide report regarding claim review |
| To be set by Court but not less than 126 days after entry of the Preliminary Approval Order | Fairness Hearing |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

| | |
|---|---|
| The date on which the Final Order and Judgment approving this Agreement becomes final for all purposes, including appeal, as set forth in Section II.A.32. of this Agreement | Final Settlement Date |
| The tenth day of the second calendar month following the calendar month that includes the later of (a) the Final Settlement Date or (b) the date of the Administrator's report to be provided under Section V.E.1.k. | Implementation Date |
| 21 days after Implementation Date | Midland to provide data re amounts of refunds of Surrender Charge Reduction Benefits |
| 45 Days after Implementation Date | Administrator disburses checks for Surrender Charge Reduction Benefits and provides proof of check tender to Midland and Class Counsel |
| 90 Days after Implementation Date | Administrator provides interim report to Midland and Class Counsel as set forth in Section V.E.1.n. |
| 180 Days after Implementation Date | Administrator provides a final report to Midland and Class Counsel as set forth in Section V.E.1.o. |
| 195 Days after Implementation Date | Administrator certifies that all checks for Surrender Charge Reduction Benefits have been distributed under the Settlement Agreement, and returns all materials generated by the Claim Review Process to Midland |

MDL NO. 07-1825 CAS (MANx)

– 21 –

SETTLEMENT AGREEMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## IV.   SETTLEMENT BENEFITS

A.   <u>Overview</u>.   Midland will provide or make the Settlement benefits described in this Agreement available to Class Members as of the Implementation Date.   Class Members who have not already Annuitized their Annuities may file Claims which, if approved, will provide reductions in past and future Surrender Charges for their Annuities.   These reductions in Surrender Charges are referred to in this Agreement as Surrender Charge Reduction Benefits.   The reductions that are approved after review of the Claims may be at either of two levels, referred to as Upper Tier Benefits and Lower Tier Benefits.   Class Members who have already Annuitized their Annuities on or before the date of entry of the Final Order and Judgment will receive an increase in the amount of all Annuity Payments to be made to them after the Implementation Date and are not eligible for Surrender Charge Reduction Benefits.   Any Class Member with an Active Deferred Annuity who does not file a Claim or whose Claim is not approved will receive an Annuitization Bonus if the Annuity is Annuitized after the date of entry of the Final Order and Judgment and the period over which payments are to be made is a Qualifying Period.   If a Class Member who has not Annuitized his or her Annuity submits a Claim, it may not be withdrawn, and if the Claim is approved, the Class Member will receive Surrender Charge Reduction Benefits and will not be entitled to receive an Annuitization Bonus, even if the Class Member does not actually receive a refund or reduction of a Surrender Charge incurred with respect to the Annuity and/or attempts to renounce the Surrender Charge Reduction Benefits.

B.   <u>Annuitization Bonus</u>.  If an Annuity owned by a Class Member who does not qualify for Surrender Charge Reduction Benefits as to that Annuity is Annuitized after the date of entry of the Final Order and Judgment and the period over which payments are to be made is a Qualifying Period, an Annuitization Bonus will be provided with respect to that Annuity.   Although the Annuitization Bonus will only apply when an Annuity is Annuitized after the date of entry of the Final Order and

Judgment and the period over which payments are to be made is a Qualifying Period, the Settlement does not require any Class Members to Annuitize their Annuities.

1.     The Annuitization Bonus will not apply to any Accumulation Value attributable to premium added to an Annuity after filing of the motion for Preliminary Approval of the Agreement, as described in Section XI.  The Annuitization Bonus shall have no effect unless a Class Member Annuitizes an Annuity after the date of entry of the Final Order and Judgment and the period over which payments are to be made is a Qualifying Period.

2.     Class Members who have not Annuitized prior to the date of entry of the Final Order and Judgment and have not qualified for Surrender Charge Reduction Benefits shall be entitled after the date of entry of the Final Order and Judgment to Annuitize the Accumulation Value of their Annuities, if the period over which payments are to be made is a Qualifying Period, at the rates set forth in their Annuities for a corresponding settlement option.   For each Active Deferred Annuity receiving the Annuitization Bonus that is Annuitized for a Qualifying Period, Midland will increase the Accumulation Value of each Active Deferred Annuity (which shall include any increase in Accumulation Value provided by the terms of the Annuity in the event the Annuity is Annuitized at such time) receiving the Annuitization Bonus by the amount of the applicable bonus, calculated at the time of Annuitization. The increased Accumulation Value amount and the rates provided under the corresponding settlement option in the Annuity will be used to determine the Annuity Payment amount.  The Annuitization Bonus will be an amount equal to a percentage of the Annuity's Accumulation Value on the date of Annuitization, and the applicable percentage will be

SETTLEMENT AGREEMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

determined by the duration of the Annuity in question, as set forth in the following table:

| Policy Year | Bonus Percentage |
|---|---|
| 1-4 | 0 |
| 5-9 | 3.3 |
| 10 | 4.4 |
| 11 | 5.5 |
| 12 | 6.6 |
| 13 | 7.7 |
| 14 | 8.8 |
| 15 | 9.9 |
| 16+ | 11.0 |

3.    Class Members who Annuitize after the date of the entry of the Final Order and Judgment but before the Implementation Date will receive Annuity Payments based on the terms of their Annuity or any Midland company practice in existence at the time of Annuitization until the Implementation Date.  No later than 90 days after the Implementation Date, Midland shall review the records of all Class Members who Annuitize after the date of entry of the Final Order and Judgment but before the Implementation Date to determine if Annuitization under the Annuitization Bonus provisions of this Agreement would result in higher Annuity Payments than the Annuity Payments being received by Class Members.  If the Annuity Payments available under this Agreement are greater than the amount of the existing Annuity Payments, any Annuity Payments that are payable after the Implementation Date shall be calculated based on the Annuitization Bonus provisions of this Agreement.

4.    Midland may from time to time in the future, at its discretion, provide Annuity Payments upon Annuitization of an Annuity that are in excess of the amounts guaranteed, either under the terms of the Annuity

SETTLEMENT AGREEMENT

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    as issued or pursuant to this Agreement.  In the event that Midland at any

2    particular point in time elects to provide such non-guaranteed payments

3    with respect to Annuities not owned by Class Members, if such non-

4    guaranteed payments are in excess of the amounts guaranteed pursuant to

5    this Agreement, Midland shall provide such non-guaranteed payments to

6    Class Members who Annuitize their Annuities on the same dates by

7    applying the same interest rates, mortality factors, and other terms and

8    conditions to transactions involving Class Members as to those involving

9    persons who are not Class Members.  If a Class Member receives such

10   non-guaranteed benefits in lieu of Annuity Payments guaranteed under

11   this Agreement or under the terms of the Annuity as issued, then the

12   Annuitization Bonus will not apply.  Midland may discontinue or change

13   any practice with respect to non-guaranteed benefits at any time.

14          5.      When an Annuity that did not qualify for Surrender Charge

15   Reduction Benefits is terminated by death after the date of entry of the

16   Final Order and Judgment, and the beneficiary or surviving spouse elects

17   to receive the death benefit in the form of periodic payments over a

18   Qualifying Period, Midland will apply the applicable Annuitization

19   Bonus to determine the amount of each periodic payment to the

20   beneficiary or surviving spouse occurring after the Implementation Date.

21   Annuities that are continued by the surviving spouse of the Owner of an

22   Annuity after a death benefit becomes payable after the Eligibility Date

23   are also eligible to receive the applicable Annuitization Bonus if the

24   Annuity is Annuitized over a Qualifying Period to the same extent as the

25   Owner would have been.

26          C.      Enhanced Annuity Payments.  If a Class Member has Annuitized his or

27   her Annuity on or prior to the date of entry of the Final Order and Judgment, then each

28

MDL NO. 07-1825 CAS (MANx)              – 25 –

SETTLEMENT AGREEMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

remaining Annuity Payment after the Implementation Date will be increased by 2% relative to the amount scheduled to be paid in the absence of this Settlement.

D. <u>Claims for Surrender Charge Reduction Benefits</u>. Class Members may file Claims for Surrender Charge Reduction Benefits with respect to any Annuity upon which membership in the Class is based if such Annuity has not been Annuitized, as described in Section V. below, which Claim shall be reviewed and approved if the Claimant satisfies the conditions for Surrender Charge Reduction Benefits. Claims may be initiated only by timely submission of a properly completed Claim Form. If a Class Member timely submits a Claim Form, that Claim Form will be used to determine qualification for Surrender Charge Reduction Benefits as to the applicable Annuity. There is no requirement that each Owner of an Annuity sign the Claim Form. However, the signature block on each Claim Form will include language indicating that, by signing the Claim Form, the signing Class Member is representing that, if the Annuity has more than one Owner, he or she is authorized to submit the Claim Form on behalf of all co-Owners. If conflicting Claim Forms are received from co-Owners, the Claim Form with the earliest postmark shall control.

E. <u>Impact of Other Releases or Final Adjudications</u>. Any Class Member who at any time signs or has signed a document that releases Midland from any further claims concerning the Annuity or whose rights and claims respecting the Annuity are or have been finally adjudicated in a court of law will not be entitled to any benefits under this Agreement. Any payments that have been made prior to the signing of such document or such adjudication shall not be affected except as provided by the document or adjudication.

## V.   SURRENDER CHARGE REDUCTION BENEFITS

A. <u>Overview</u>

1. Subject to Section V.G., if approved under the Claim Review Process, Surrender Charge Reduction Benefits provide: (i) a refund of 75% or 40% of Surrender Charges incurred prior to the Implementation

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Date and (ii) a reduction of 75% or 40% in any Surrender Charge incurred on or after the Implementation Date. The applicable percentage, either 75% or 40%, will depend on whether the Claim is approved for Upper Tier Benefits or Lower Tier Benefits. If a Claim qualifies for both Upper Tier Benefits and Lower Tier Benefits, only Upper Tier Benefits will apply.

2. As set forth more fully below, Class Members who have not Annuitized their Annuities as of the Eligibility Date will have the opportunity to apply to fully or partially surrender their Annuities with a reduction in the otherwise applicable Surrender Charge. Class Members who have already fully or partially surrendered their Annuities prior to the Implementation Date will have the opportunity to receive a payment returning the applicable percentage of any Surrender Charge previously incurred. Class Members who Annuitized their Annuities on or before the Eligibility Date, and who incurred a Surrender Charge in connection with a partial surrender effected prior to Annuitization, will not be eligible for any Surrender Charge Reduction Benefits.

3. Claims for Surrender Charge Reduction Benefits will be evaluated in accordance with Section V.D.

4. Class Members with Active Deferred Annuities who receive Surrender Charge Reduction Benefits will not be eligible to receive the Annuitization Bonus as to any Annuities for which a claim for Surrender Charge Reduction Benefits has been approved.

5. Owner of Annuities as to which a death benefit becomes payable after the Eligibility Date and before the Implementation Date are not eligible for any benefits under this Agreement, except as provided by Section IV.B.5. with respect to death benefits taken in periodic payments over a Qualifying Period or with respect to Annuitization of an Annuity

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   for a Qualifying Period by a surviving spouse of a deceased Class

2   Member who dies after entry of the Final Order and Judgment.

3   **B.**   Claim Submission

4   To submit a Claim, a Class Member must timely submit to the

5   Administrator a completed Claim Form relating to the Annuity that is the

6   subject of the Claim.  A separate Claim Form must be submitted for each

7   Annuity for which the Class Member chooses to submit a Claim for

8   Surrender Charge Reduction Benefits.  The Administrator may accept

9   and evaluate Claim Forms from Class Members who failed to timely

10   submit their Claim Forms for good cause shown.  A Claimant may

11   supplement any Claim Form at any time before final determination of the

12   Claim by the Administrator.  No later than 28 days after entry of the

13   Preliminary Approval Order, the Administrator shall mail the Class

14   Notice Package to the Class Members, which shall include the Claim

15   Form.  If the Class Member chooses to submit a Claim Form, the Class

16   Member shall properly complete and sign the Claim Form under penalty

17   of perjury and cause the Claim Form to be postmarked and sent to the

18   Administrator no later than 64 days after mailing of the Class Notice

19   Package.

20   **C.**   Claim Review Administrator

21   Based on the information contained in or submitted with the Claim Form,

22   the Administrator will determine the Surrender Charge Reduction

23   Benefits, if any, for which each Claimant qualifies.  In the event the

24   Administrator determines that a Class Member with an Active Deferred

25   Annuity who submits a Claim Form does not qualify for Surrender

26   Charge Reduction Benefits, the Administrator will notify the Class

27   Member that the Class Member will have the right to receive the

28   applicable Annuitization Bonus if the Class Member Annuitizes the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

applicable Annuity and the period over which payments are to be made is a Qualifying Period.

D.   Claim Review Process

1.     In order to obtain Surrender Charge Reduction Benefits, a Claimant must:

(a)   timely submit a Claim Form in accordance with Section V.B. above; and,

(b)   satisfy the requirements for Upper Tier Benefits or Lower Tier Benefits, as set forth in Section V.D.6. below.

2.     Although a Claimant may obtain Surrender Charge Reduction Benefits, he or she shall not be required to partially or fully surrender his or her Annuity.  For each Annuity as to which a Claimant obtains Surrender Charge Reduction Benefits, Midland will apply the applicable reduction (either 75% or 40%, subject to Section V.G.) to reduce the amount of any Surrender Charge that would otherwise apply to any full or partial surrender or withdrawal of funds from the Annuity after the Implementation Date.

3.     Each Claimant must timely submit a Claim Form as to each Annuity as to which Surrender Charge Reduction Benefits are requested and must provide, under penalty of perjury, the following information:

(a)   whether a Misrepresentation concerning the applicable Surrender Charges, right to annuitize or other policy terms occurred at the time of the Annuity's sale, and, if so, whether the Claimant would not have purchased the Annuity but for the Misrepresentation;

(b)   whether full surrender of the Annuity or withdrawal of more of the Annuity's Accumulation Value than would be permitted

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

without a Surrender Charge is, or at the time of a prior full or partial surrender was, necessary to pay for:

(i)      medical expenses;

(ii)     nursing or home care;

(iii)    retention of the Claimant's sole residence; or

(iv)     other essential living expenses (such as food, rent, necessary housing repairs and upkeep, utilities and/or transportation for the Claimant or a member of Claimant's household);

and if so, as to any of items (i)-(iii), a description of the claimed expense, and as to any expenses claimed under (iv) an explanation, in reasonable detail, of the need and the financial circumstances indicating the Claimant cannot or could not afford the expenses without reduction of the Surrender Charges otherwise applicable under the Claimant's Annuity;

(c)     whether the Class Member's Annual Income is less than or equal to $35,000; and/or

(d)     whether the Accumulation Value of the Annuity as of the Eligibility Date is more than 20% of the Class Member's Net Worth or three times the Class Member's Annual Income.

4.     If a Claimant does not have first-hand, personal knowledge of the Annuity sale giving rise to an asserted Misrepresentation (because, for example, the Claimant is not the original purchaser of the Annuity), then, if the Claimant intends to assert a Misrepresentation that Claimant must submit a Claim Form executed under penalty of perjury by a person having such first-hand, personal knowledge.

5.     If a Claimant is a revocable trust, then the Claim will be assessed based on the settlor's circumstances, including the settlor's medical

SETTLEMENT AGREEMENT

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   condition, assets and finances.  If the Claimant is an irrevocable trust, the

2   information specified by V.D.3.(b), V.D.3.(c), and V.D.3.(d) shall not be

3   required to be provided on the Claim Form and the response to each such

4   item shall be deemed to be negative.

5       6.      Qualification for Surrender Charge Reduction Benefits shall be

6   assessed based on the information in the Claim Form as follows:

7               (a)     If the information set forth in the Claim Form establishes

8       that any of the circumstances described in Section V.D.3.(a) or

9       V.D.3.(b) exist, the Claimant shall be entitled to receive Upper

10      Tier Benefits.

11              (b)     If the information set forth in the Claim Form establishes

12      that either of the circumstances described in Section V.D.3.(c) or

13      V.D.3.(d) exist, but none of the circumstances described in Section

14      V.D.3.(a) or V.D.3.(b) exist, the Claimant shall be entitled to

15      Lower Tier Benefits.

16              (c)     If the information set forth in the Claim Form does not

17      establish that any of the circumstances described in Section V.D.3.

18      exist, then the Claim shall not be approved and the Claimant shall

19      not be entitled to any Surrender Charge Reduction Benefits.

20      7.      No Surrender Charge Reduction Benefits will apply to any

21  Accumulation Value attributable to premium added to an Annuity after

22  the filing of the Motion for Preliminary Approval of the Agreement as

23  described at Section XI.

24      8.      Unless requested by the Administrator, Claimants will not be

25  required, but may choose, to submit documents substantiating the

26  information set forth in the Claim Form.  In the event a Claim Form does

27  not indicate that the Claimant is asserting that one or more of the

28  conditions under Sections V.D.3.(a) or (b) exists (such as where the

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

pertinent section of the Claim Form is left blank), the Administrator shall deem that the Claimant has responded in the negative as to such conditions, and shall not be required to obtain additional information as to such conditions before making its determination.  In the event the sections of the Claim Form pertaining to income or net worth are incomplete or otherwise insufficient to determine if at least one of the conditions under Sections V.D.3.(c) or (d) exists, the Administrator shall first review the Claim Form to determine whether the conditions under Sections V.D.3.(a) or (b) have been established.  If the Administrator concludes that neither the conditions of Section V.D.3.(a) nor Section V.D.3.(b) have been established, the Administrator shall send a notice of deficiency.  If a Claim Form indicates that the Claimant is asserting that one or more of the conditions for relief under Sections V.D.3.(a)-(d) exist, but the Administrator determines information provided as to any of the claimed conditions is insufficient to determine those conditions exist, the Administrator shall send, via first class mail, a notice of deficiency to the Claimant identifying the response as to which additional information is needed to complete the Administrator's determination.  The Administrator shall also send a notice of deficiency to any Claimant who fails to properly sign or verify the Claim Form, or who fails to respond whether he or she is an original Owner of the Annuity, or if not the original Owner, whether an original Owner was age 65 or over.  In any case in which a notice of deficiency is sent, the Claimant may supplement his or her Claim Form by responding to the notice of deficiency in writing, under penalty of perjury, by mail, postmarked no later than 30 days from the mailing of the notice of deficiency.   The notice of deficiency shall be substantially in the form of Exhibit H attached hereto.  The Administrator shall determine which conditions under Section

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

V.D.3. have been satisfied by reviewing the information provided by a Claimant in a Claim Form and in a timely and properly signed response to a notice of deficiency.

9.      The criteria set forth in Section V.D.6. are the product of extensive arm's-length settlement negotiations between the Parties.  As such, these provisions apply only to the settlement of the claims in this Action and should not be offered as, received as, used as, or deemed to be evidence in any other action or proceeding and do not reflect or require modification of Midland's business practices beyond the terms of this Agreement.

10.     Claimants who choose to surrender their Annuities may not use any portion of the proceeds of the surrendered Annuities or their Surrender Charge Reduction Benefits to purchase a new deferred annuity product.  If Midland is asked or directed to send the proceeds of any Annuity to another insurance company in connection with the acquisition of another annuity product, Midland will deduct any Surrender Charge specified in the Midland Annuity, without regard to any Surrender Charge Reduction Benefits.

11.     Surrender Charge Reduction Benefits will only be paid to the person or entity that is the Owner as reflected in Midland's records on the Implementation Date.

E.     Administrator

1.      The Administrator shall:

(a)     verify the mailing list for Class Notice prior to the mailing of the Class Notice;

(b)     prepare and mail the Class Notice;

(c)     process returned mail, investigate the availability of a correct address, and re-mail if an updated address is available;

(d)    receive requests for exclusion, objections, and Claim Forms, provide copies of such items to Parties' counsel, and send notice requesting any required curative information or clarifications as deemed necessary by the Administrator, or as directed by Class Counsel;

(e)    notify each Claimant whether his or her Claim is approved for Upper Tier Benefits or Lower Tier Benefits and provide copies of such results to Claimants, the Parties' counsel, and Midland's designee;

(f)    receive any other written correspondence or communication concerning the Settlement from persons or entities in the Class, provide copies of such correspondence to Parties' counsel, and send responses to such correspondence and communications as directed by counsel, until the Claim Review Process is completed;

(g)    arrange for, staff, and maintain a toll-free call center to respond to questions from persons or entities in the Class (in accordance with question-and-answer scripts approved by Parties' counsel), which shall be reasonably staffed during business hours to receive calls until the Claim Review Process is completed;

(h)    assist persons and entities in the Class that contact the Administrator for assistance in completing Claim Forms (in accordance with question-and-answer scripts approved by Parties' counsel);

(i)    make any additional mailings required by this Agreement;

(j)    no later than 64 days after the mailing of the Class Notice Package, provide the Parties with information regarding Class Members who have notified the Administrator that they plan to object to, or exclude themselves from, the Settlement; and

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

(k)     no later than 24 days after the later of the postmark deadline for Claims Forms or the postmark deadline for response to the last-mailed deficiency notice, if there are any deficiency notices, or as soon thereafter as the processing of Claims is completed, provide Midland and Class Counsel with an Excel spreadsheet listing the following information for each Claim Form that is timely submitted and received:  (i) the policy or certificate number of the Annuity with respect to which the Claim was submitted; (ii) the Claimant's name and state of residence; (iii) whether the Claim Form was fully completed; (iv) whether the Claim Form was properly signed by the Owner; (v) whether the Claim was approved for Upper Tier Benefits; (vi) whether the Claim was approved for Lower Tier Benefits; (vii) whether the Claim Form established that the circumstances described in each of Sections V.D.3.(a)., V.D.3.(b)., V.D.3.(c)., and/or V.D.3.(d). exist; and (viii) if a Claim was rejected, the basis for such rejection.

(l)     within 45 days following the Implementation Date, mail checks for Surrender Charge Reduction Benefits to the eligible Claimants relating to full or partial surrenders prior to the Implementation Date;

(m)     contemporaneously with the distribution of the Reduced Surrender Charge Benefits checks to the eligible Claimants, provide Midland evidence of such mailing;

(n)     within 90 days after the Implementation Date, provide Class Counsel and Midland with an interim report containing all data concerning the payments of Surrender Charge Reduction Benefits provided to Class Members;

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(o)    within 180 days after the Implementation Date, provide Class Counsel and Midland with a final analysis of the Surrender Charge Reduction Benefits provided to Class Members, and identify those checks that have not been presented and paid;

(p)    within 195 days after the Implementation Date, certify that the terms of this Settlement under its control have been fully implemented, and at the same time send all records received or generated through the Claim Review Process relating to the Plaintiffs and Class Members to Midland, where they will be maintained as a part of the Plaintiffs' or Class Members' customer file; and

(q)    execute other tasks delegated to the Administrator under this Agreement, or agreed to by the Parties' counsel.

2.    The Parties' counsel, and/or their respective designees, shall be entitled to observe and monitor the performance of the Administrator. The Parties shall provide the Administrator with guidelines and criteria to assess eligibility and to assist in detection of fraudulent Claims.

3.    The contract governing the engagement of the Administrator shall obligate each such Administrator to abide by the following performance standards:

(a)    the Administrator shall accurately and neutrally describe, and shall train and instruct its employees and agents to accurately and neutrally describe, the provisions of this Agreement in communications with persons and entities in the Class;

(b)    the Administrator, its employees and agents may not make any statements to a Claimant that might reasonably be viewed as causing or helping to cause a Claimant to surrender his or her

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Annuity, and shall not advocate any form of benefit contemplated by this Agreement;

(c)     the Administrator may not render any investment, insurance or savings advice whatsoever;

(d)     the Administrator shall provide prompt, accurate and neutral responses to inquiries from the Parties' counsel;

(e)     if, in the course of any communication with a person or entity in the Class, the person or entity requests that the Administrator and/or its agent or employee refer the communication to Class Counsel, or if the Administrator and/or its agent or employee determines that the Class Member is seeking legal advice, then the Administrator and/or its agent or employee shall promptly refer the inquiry to Class Counsel; and

(f)     if, in the course of any communication with a person or entity in the Class, an agent or employee of the Administrator reasonably concludes that the person or entity is not satisfied with the information and/or assistance provided, the communication shall promptly be referred to a supervisor.

F.     Finality of  Administrator Determinations

All determinations and awards made by the Administrator shall be final and binding, and Class Members, along with their predecessors, successors and assigns, and Class Counsel, Midland and any other party-in-interest may not appeal or seek review or vacatur of or otherwise challenge such determinations or awards in any subsequent court or administrative proceeding, including without limitation any proceeding under any applicable federal or state law, rule, or procedure, unless the Administrator does not make its decisions on Claims in accordance with the requirements of this Agreement or is grossly negligent.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

G.    Determination and Distribution of Surrender Charge Reduction Benefits

1.    Following the final determination of all Claims submitted to the Claim Review Process but before relief is distributed to Claimants, the Administrator shall prepare a list of: (a) Annuities approved for Upper Tier Benefits; and (b) Annuities approved for Lower Tier Benefits. Thereafter, a determination shall be made as to whether the approved Claims exceed either the Limit on Approved Claims for Upper Tier Benefits or the Limit on Approved Claims for Lower Tier Benefits, and if so, the adjustments to be made in the Surrender Charge Reduction Benefits pursuant to Sections V.G.2.-V.G.4.  The adjustment, if required, provided by Section V.G.2. as to Lower Tier Benefits shall be made first, and the adjustment, if required, provided by Section V.G.3. as to Upper Tier Benefits shall be made second.  In the event the adjustment under Section V.G.3. to the percentage reduction in Surrender Charges available as Upper Tier Benefits is limited by the requirement that the reduction in Surrender Charges made available by Upper Tier Benefits be at least 1.5 times the percentage reduction in Surrender Charges made available by Lower Tier Benefits, then further adjustments shall be made pursuant to Section V.G.4.

2.    Limit on Approved Claims for Lower Tier Benefits.  The determination as to whether the approved Claims exceed the Limit on Approved Claims for Lower Tier Benefits shall be made by dividing the Lower Tier Benefits Numerator by the Lower Tier Benefits Denominator. The Lower Tier Benefits Numerator shall be the sum of (a) the total Accumulation Value withdrawn by Lower Tier Benefits Claimants, on or prior to December 31, 2010, from which a Surrender Charge was deducted (which shall not include portions of withdrawals that were not subject to Surrender Charges because they were amounts available as

penalty free partial surrenders) plus (b) the Accumulation Value of each Lower Tier Benefits Claimant's Annuity on December 31, 2010.  The Lower Tier Benefits Denominator shall be the sum of (a) 50% of the total Accumulation Value withdrawn by Lower Tier Benefits Claimants, on or prior to the Limits Computation Date, from which a Surrender Charge was deducted (which shall not include portions of withdrawals that were not subject to Surrender Charges because they were amounts available as penalty free partial surrenders) and (b) the Aggregate Accumulation Value.  If the result of dividing the Lower Tier Benefits Numerator by the Lower Tier Benefits Denominator exceeds .04500, then the Lower Tier Benefits for each Lower Tier Benefit Claimant shall be reduced by multiplying the percentage reduction in Surrender Charges that otherwise would have been available as Lower Tier Benefits (40%) by the following fraction:    .04500/(the Lower Tier Benefits Numerator divided by the Lower Tier Benefits Denominator); provided, however, that a further reduction may be made pursuant to Section V.G.4. below.

3.      Limit on Approved Claims for Upper Tier Benefits.   The determination as to whether the approved Claims exceed the Limit on Approved Claims for Upper Tier Benefits shall be made by dividing the Upper Tier Benefits Numerator by the Upper Tier Benefits Denominator. The Upper Tier Benefits Numerator shall be the sum of (a) the total Accumulation Value withdrawn by Upper Tier Benefits Claimants, on or prior to December 31, 2010, from which a Surrender Charge was deducted (which shall not include portions of withdrawals which were not subject to Surrender Charges because they were amounts available as penalty free partial surrenders), plus (b) the Accumulation Value of each Upper Tier Benefits Claimant's Annuity on December 31, 2010.  The Upper Tier Benefits Denominator shall be the sum of (a) 50% of the total

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Accumulation Value withdrawn by Upper Tier Benefits Claimants, on or prior to the Limits Computation Date, from which a Surrender Charge was deducted (which shall not include portions of withdrawals that were not subject to Surrender Charges because they were amounts available as penalty free partial surrenders) and (b) the Aggregate Accumulation Value. If the result of dividing the Upper Tier Benefits Numerator by the Upper Tier Benefits Denominator exceeds .04000, then the Upper Tier Benefits for each Upper Tier Benefit Claimant shall be reduced by multiplying the percentage reduction in Surrender Charges that otherwise would have been available as Upper Tier Benefits (75%) by the following fraction: .04000/(the Upper Tier Benefits Numerator divided by the Upper Tier Benefits Denominator); provided, however, that if the effect of such reduction would be to reduce the percentage reduction in Surrender Charges that otherwise would have been available as Upper Tier Benefits to less than 1.5 times the percentage reduction in Surrender Charges available as Lower Tier Benefits after application of Section V.G.2., then the reduction under this section V.G.3. shall be limited to the amount that lowers the percentage reduction in Surrender Charges available as Upper Tier Benefits to 1.5 times the percentage reduction in Surrender Charges available as Lower Tier Benefits after application of Section V.G.2., and a further reduction shall be computed as provided in Section V.G.4.

4.      In the event the formula for adjustment of Upper Tier Benefits provided in Section V.G.3. would yield a percentage reduction in Surrender Charges  available as Upper Tier Benefits that is less than 1.5 times the percentage reduction in Surrender Charges available as Lower Tier Benefits after application of Section V.G.2. but for the limitation in Section V.G.3. that requires the percentage reduction in Surrender

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Charges available as Upper Tier Benefits to be at least 1.5 times the percentage reduction in Surrender Charges available as Lower Tier Benefits, then Upper Tier Benefits and Lower Tier Benefits shall be reduced in accordance with the following instructions:

(a)     The following terms are defined as stated for the purposes of this Section V.G.4.:

(i)     "Tentative UT Percentage" shall mean the percentage reduction in Surrender Charges that would be available as Upper Tier Benefits, adjusted as provided by Section V.G.3. without application of the limitation contained in the proviso in Section V.G.3. that requires the percentage reduction in Surrender Charges available as Upper Tier Benefits to be at least 1.5 times the percentage reduction in Surrender Charges available as Lower Tier Benefits.

(ii)     "Limited Tentative UT Percentage" shall mean the percentage reduction in Surrender Charges that would be available as Upper Tier Benefits after application of Section V.G.3., including the proviso in that Section.

(iii)     "Tentative LT Percentage" shall mean the percentage reduction in Surrender Charges that would be available as Lower Tier Benefits, adjusted for any reduction provided by Section V.G.2.

(iv)     "UT Approved Claims Percentage" shall mean the Upper Tier Benefits Numerator divided by the Upper Tier Benefits Denominator.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(v)   "LT Approved Claims Percentage" shall mean the Lower Tier Benefits Numerator divided by the Lower Tier Benefits Denominator.

(vi)   "Final UT Percentage" shall mean the percentage reduction in Surrender Charges that will be available as Upper Tier Benefits due to adjustments under this Section V.G.4.

(vii)   "Final LT Percentage" shall mean the percentage reduction in Surrender Charges that will be available as Lower Tier Benefits due to adjustments under this Section V.G.4.

(b)   Final LT Percentage = [(Tentative UT Percentage) x (UT Approved Claims Percentage) + (Tentative LT Percentage) x (LT Approved Claims Percentage)]/[1.5 x (UT Approved Claims Percentage) + (LT Approved Claims Percentage)].

(c)   Final UT Percentage = 1.5 x (Final LT Percentage).

5.   Once the Surrender Charge Reduction Benefits have been determined for all of the Claims, the Administrator will notify each Claimant of the Surrender Charge Reduction Benefits he or she has been awarded; Midland and Class Counsel will be provided with a report of all the Surrender Charge Reduction Benefits awarded pursuant to the Claim Review Process prior to notifying any Claimants of such awards pursuant to Section V.E.

6.   Those Claimants who do not cash their check for Surrender Charge Reduction Benefits within 120 days from the date of mailing by the Administrator will forfeit such benefits, and all such funds shall be paid by the Administrator to a charity or non-profit organization designated by Class Counsel and Midland.

H.   Limitation of Liability for Administrator Determinations

Neither Midland, its officers, directors and employees, Midland Counsel nor Class Counsel shall have any liability for any determinations made by the Administrator pursuant to this Agreement, and the Administrator shall have no liability for determinations made in good faith.

**VI.   NOTICE TO THE CLASS AND COMMUNICATIONS WITH CLASS MEMBERS**

A.   Timing of Class Notice

No later than 28 days after the entry of the Preliminary Approval Order, the Administrator will send a Class Notice Package to each Class Member by first-class mail, postage prepaid, to the last known address supplied by Midland based on its records as of the Eligibility Date.

B.   Content of Class Notice Package

1.    The Class Notice Package for each Annuity will include:

(a)    the Class Notice; and

(b)    a Claim Form.

2.    The Class Notice will be substantially in the form of Exhibit B hereto and will:

(a)    contain a concise statement of the background of the Action, the preliminary certification of the Class for settlement purposes and the proposed Settlement;

(b)    describe the Annuitization Bonus;

(c)    describe the benefit to be applied to Annuities already Annuitized;

(d)    describe the Claim Review Process and Surrender Charge Reduction Benefits, including both Upper Tier and Lower Tier Benefits;

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(e)      state that the provision of benefits to Class Members is contingent on the Court's approval of this Agreement and issuance of the Final Order and Judgment;

(f)      inform Class Members of the enclosed Claim Form and that to participate in the Claim Review Process, they must fully complete and return the Claim Form to the Administrator via a return e-mail and attachment addressed to the Administrator or in an envelope postmarked no later 64 days after the mailing of the Class Notice Package;

(g)      advise Class Members of their right to exclude themselves from the Class or to object to the proposed Settlement and the deadline for the same;

(h)      advise that any judgment entered in the Action will be binding on all Class Members who do not exclude themselves from the Class;

(i)      inform Class Members that they will be releasing the Released Claims (as defined in section IX.A.2.) under the Release, which will be reprinted verbatim in the Class Notice; and

(j)      provide information about the attorneys' fees and expenses requested by Class Counsel.

3.      Midland shall review and approve the Class Notice Package and the Claim Form prior to dissemination if it has been altered from the version approved by the Court in the Preliminary Approval Order.

C.   <u>Remailing of Notice</u>

The Administrator will remail any Class Notice Package returned by the Postal Service with a forwarding address.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

## VII.   REQUESTS FOR EXCLUSION

A.   Any Class Member who wishes to be excluded from the Class must mail a written request for exclusion to the Administrator at the address provided in the Class Notice, postmarked no later than 53 days after the mailing of the Class Notice Package, or as the Court otherwise may direct, and specifying the Annuity or Annuities to be excluded.

B.   The Administrator will forward copies of any written requests for exclusion to Class Counsel and Midland Counsel immediately upon receipt, and shall provide Class Counsel and Midland Counsel with a list of all Class Members who wish to be excluded no later than 64 days after the mailing of the Class Notice Package, or as the Court otherwise may direct.

C.   A list reflecting all requests for exclusion shall be filed with the Court by the Administrator no later than 64 days after the mailing of the Class Notice Package, or as the Court otherwise may direct.  Such list shall be filed under seal, be subject to the Court's Confidentiality Order, and served upon Class Counsel and Midland Counsel by the Administrator.

D.   Any Class Member who does not file a timely written request for exclusion with respect to an Annuity as provided in this Section shall be bound with respect to that Annuity by all subsequent proceedings, orders, and judgments in this Action, including, but not limited to, the Release, even if he or she has litigation pending or subsequently initiates litigation against Midland relating to that Annuity with respect to the Released Claims.  To the extent practicable, the Administrator will use reasonable efforts to serve the Class Notice Packages on legal counsel for all Class Members who have pending litigation against Midland.  Midland will promptly direct the Administrator to serve the Class Notice Packages on counsel for Class Members who subsequently initiate litigation, arbitration, or other proceedings against Midland relating to the Released Claims prior to the Final Settlement Date.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

E.     If any one Owner of an Annuity excludes himself or herself from the Class with respect to that Annuity pursuant to Section VII. of this Agreement, all other Owners of that Annuity shall be deemed excluded from the Class with respect to that Annuity, and all rights and obligations with respect to that Annuity shall be unaffected by the Settlement Agreement.

F.     A Class Member must either exclude, or not exclude, all Annuities in which the Class Member has an interest as an Owner.  A Class Member may not exclude some, but not all, Annuities in which the Class Member has an interest as an Owner.  If a Class Member submits a timely and otherwise complete request for exclusion that attempts to exclude some, but not all of the Annuities in which the Class Member has an interest as an Owner, all Annuities in which the Class Member has an interest will be deemed excluded from the Settlement.

## VIII. OBJECTIONS TO SETTLEMENT

A.     Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the award of attorneys' fees and expenses, must deliver to Class Counsel identified in the Class Notice and to Midland Counsel, and file with the Court, no later 53 days after the mailing of the Class Notice Package, or as the Court otherwise may direct, a written statement of the objections, as well as the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention, any evidence or other information the Class Member wishes to introduce in support of the objections and the Class Member's Annuity number(s).  Class Members may do so either on their own or through an attorney retained at their own expense.

B.     Any Class Member who files and serves a written objection, as described in the preceding paragraph, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to any award of attorneys' fees and expenses.  Class Members or their attorneys who

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   intend to make an appearance at the Fairness Hearing must deliver a notice of

2   intention to appear to Class Counsel identified in the Class Notice and to Midland

3   Counsel, and file said notice with the Court, no later than 53 days after the mailing of

4   the Class Notice Package, or as the Court may otherwise direct.

5        C.    Any Class Member who fails to comply with the provisions of this

6   Section shall waive and forfeit any and all rights he or she may have to appear

7   separately and/or object, and shall be bound by all the terms of this Agreement and by

8   all proceedings, orders and judgments, including, but not limited to, the Release, in the

9   Action.

10        D.    Any Class Member who objects to the Settlement shall be entitled to all

11   of the benefits of the Settlement if it is approved, so long as the objecting Class

12   Member complies with all requirements of this Agreement applicable to Class

13   Members, including, if appropriate, the timely submission of a Claim Form.  (A Class

14   Member may submit a Claim for Surrender Charge Reduction Benefits without

15   waiving his or her objection to the Settlement).

16   **IX.   RELEASE AND WAIVER**

17        A.    <u>Release and Waiver – Definitions</u>

18            For purposes of this release and waiver (the "Release"):

19            1.    "Releasees" means, individually and collectively, Midland, its

20   past, present and future parent companies, subsidiaries, affiliates,

21   predecessors, successors and assigns, together with all of its and their

22   present, former, and future officers, directors, shareholders, insurers,

23   employees, attorneys, legal representatives, and agents (including,

24   without limitation, those acting on behalf of Midland and within the

25   scope of their agency) and their predecessors, successors and assigns.

26            2.    "Released Claims" means any and all past, present or future

27   claims, complaints, causes of action, allegations of liability, damages,

28   restitution, equitable, legal or other interest, or demands or rights,

whether known or unknown, that concern, refer or relate to, or arise out of, in whole or in part any facts, events or transactions relating to the Annuities that have occurred or were in existence at any time prior to the entry of the Final Order and Judgment, including, without limitation:

    (a)    the offering of advice in any manner related to the Annuities;

    (b)    the design, marketing, solicitation, sale, appropriateness or administration of the Annuities;

    (c)    any disclosures or advertising related to the Annuities, whether written or oral;

    (d)    the computation and crediting of interest to policy accounts; or

    (e)    the calculation and availability of any accumulation or surrender values, or annuity payments, or the exercise of any rights under the Annuities.

Without limiting the foregoing, "Released Claims" include, but are not limited to, all claims that were asserted in the Action, or that could have been asserted against Midland before any court, arbitration panel, or regulatory or administrative agency based on or related to facts alleged in any of the complaints filed in this Action, whether or not brought directly, indirectly, on a representative basis, or otherwise.

B.    <u>Release</u>

Upon the Final Settlement Date, Plaintiffs and every Class Member, for themselves, their attorneys, spouses, beneficiaries, executors, conservators, personal representatives, wards, heirs, predecessors, successors, affiliates, agents and assigns, in consideration of the benefits set forth in this Agreement, fully and finally release Releasees from all Released Claims.

SETTLEMENT AGREEMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

C.   Waiver Under California Civil Code Section 1542 (and Similar Provisions)

1.   The Parties acknowledge that it is possible that unknown losses or claims exist or might exist or that present losses may have been underestimated in amount.  Plaintiffs and every member of the Class are deemed to acknowledge and understand that they are familiar with principles of law such as and including Section 1542 of the Civil Code of the State of California, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

2.   Plaintiffs and the Class are hereby deemed to agree that Section 1542 and all similar federal or state laws, rules or legal principles of any other jurisdiction are knowingly and voluntarily waived by Plaintiffs and the Class in connection with the Released Claims as defined in the foregoing paragraphs of this Release, and Plaintiffs and the Class are deemed to agree that this is an essential term of this Agreement. Plaintiffs and the Class are also deemed to acknowledge and understand that they may later discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now believe to be true with respect to the matters released in this Agreement.  Nevertheless, it is the intention of Plaintiffs and the Class to fully, finally, and forever settle and release all matters with Releasees that exist, hereafter may exist, or might have existed constituting Released Claims as defined under this Agreement.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 49 –

SETTLEMENT AGREEMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

3.      Plaintiffs acknowledge that Class Counsel have advised them and that they are familiar with the provisions of Section 1542 of the California Civil Code, as well as the provisions of any and all comparable or similar statutes or principles of law of any other state or federal jurisdiction that might otherwise be deemed applicable, and that, being aware of Section 1542 and other similar statutes or principles of law, Plaintiffs expressly waive any and all rights and benefits conferred by Section 1542 or other similar statutes or principles of law on behalf of themselves, and on behalf of the Class.  Plaintiffs admit to full knowledge and understanding of the consequences and effect of this waiver.

D.      Additional Conditions of Release

1.      Nothing in this Release shall preclude any action to enforce the terms of the Agreement, including participation in any of the processes detailed therein.

2.      Plaintiffs expressly agree that this Release shall be, and may be raised as, a complete defense to, and will preclude, any action or proceeding encompassed by the release of Releasees herein, and as a bar from indemnity and contribution claims arising out of the Released Claims herein.

3.      No Plaintiff or Class Member may participate in any settlement or other relief sought in any action brought on behalf of the Plaintiffs or any Class Members by any state or federal government officials or agencies pertaining to any  Released Claims.

4.      Each Plaintiff and each Class Member, for himself or herself, his or her attorneys, spouse, beneficiaries, executors, conservators, personal representatives, wards, heirs, predecessors, successors, and assigns agrees not to file an appeal from or otherwise seek review of any order approving this Settlement Agreement.

5.     It is the intention of the Plaintiffs, on behalf of themselves and the Class Members, in executing this Release to fully, finally, and forever settle and release all matters and all claims released under this Section.

## X.     ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS

### A.     Service Awards

Subject to Court approval, Midland agrees to pay Plaintiffs Robert Kaiser, Mary Munoz and Mary Bendzak no more than $10,000 each as a service award for participation as a Class Representative in the Action. Midland will pay the service awards approved by the Court in addition to any benefits that Plaintiffs are entitled to receive as Class Members. Midland will pay any service awards within 10 days of the Implementation Date.  Class Counsel agree not to seek service awards for the Class Representatives which exceed $30,000 in the aggregate.

### B.     Petition for Class Counsel Payment

1.     Midland agrees to pay Class Counsel no more than an aggregate of $13,970,000 as attorneys' fees and reimbursement of their expenses and costs as the Class Counsel Payment, subject to Court approval.  Class Counsel agree not to seek or accept an award of attorneys' fees and costs and expenses in excess of, or in addition to, $13,970,000 or any lesser amount approved by the Court.  Midland agrees not to oppose Class Counsel's request for the Class Counsel Payment of up to $13,970,000 for fees and costs either in this Action or on appeal; however, Midland shall have no obligation to join in Class Counsel's request or in any related submissions.

2.     The Parties have divergent views concerning the most appropriate approach to a valuation of the benefits to Class Members under this Agreement, the most appropriate method for conducting such a valuation and the proper standard against which any valuation is to be measured in

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

connection with the process for approval of the Settlement.  The Parties agree that any appropriate valuation necessarily involves assessments of uncertain future events and certain elections and actions to be made or taken by the Class Members.  For purposes of this Settlement, Plaintiffs agree that they will not assign a numerical value to the Settlement benefits in excess of $80 million in connection with the proceedings for preliminary or final approval of the Settlement, and Midland agrees that it will not contest such a valuation by Plaintiffs for those purposes.

3.      Midland further agrees to pay the Administrator's reasonable expenses actually incurred in administering the Settlement in accordance with the terms of this Agreement.

4.      Class Counsel will petition for approval of the Class Counsel Payment at least 59 days prior to the Fairness Hearing, or such other date set by the Court.  The amount of the Class Counsel Payment shall be determined at the Fairness Hearing.  The Class Counsel Payment will not reduce any other benefit provided to the Class or Plaintiffs.

5.      If Midland does not exercise any right it may have to terminate the Agreement pursuant to Section XIII, Midland will pay the Class Counsel Payment to Bonnett, Fairbourn, Friedman & Balint, P.C. and Robbins Geller Rudman & Dowd, LLP (collectively, "Receiving Class Counsel") by wire transfer or check within 5 days of the Court's entry of the Final Order and Judgment, provided that Class Counsel has satisfied the provisions of Section X.B.8. and X.B.9. below and instructed Midland as to the allocation of the amount to be paid between Receiving Class Counsel.

6.      If the Final Order and Judgment is reversed, vacated, modified and/or remanded for further proceedings or otherwise disposed of in any manner other than one resulting in an affirmance of the Final Order and

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Judgment (other than on the issue of attorneys' fees and expenses), or if Midland properly and timely terminates the Settlement Agreement in accordance with Section XIII. of this Agreement, then Receiving Class Counsel shall, within 30 days of such events, repay to Midland the full amount of the Class Counsel Payment, together with interest at the rate of 4% per annum from the date of payment through the date of repayment.

7.      If the Class Counsel Payment is reduced after entry of the Final Order and Judgment, then Receiving Class Counsel shall, within 30 days of said event, repay to Midland the amount by which the Class Counsel Payment has been reduced, together with interest at the rate of 4% per annum from the date of payment through the date of repayment.

8.      As a condition precedent to the agreement of Midland to make the Class Counsel Payment before the appeal periods have expired, Bonnett, Fairbourn, Friedman & Balint, P.C. and Robbins, Geller, Rudman & Dowd, LLP are required to execute as co-obligors a promissory note to evidence their joint and several obligations to repay the amounts specified in Sections X.B.6. and X.B.7.  The required form of the note is attached hereto as Exhibit F.

9.      As a further condition precedent to the agreement of Midland to make the Class Counsel Payment before the appeal periods have expired, John Stoia, Jr., and Andrew Friedman are each required to execute a personal guaranty of the note described in Section X.B.8.  The required form of the guaranties are attached hereto as Exhibits G-1 and G-2.

10.      Receiving Class Counsel shall be responsible for distributing the Class Counsel Payment to Class Counsel in their discretion and allocating such amounts.   Midland shall have no responsibility or liability in connection with the allocation of the Class Counsel Payment among Class Counsel.

11.     Midland will pay the Administrator directly for reasonable Administrator Expenses actually incurred by wire transfer or check sent within 30 days of receipt of appropriate invoicing and documentation from the Administrator.

12.     Midland is not responsible for the fees of those attorneys hired by individual Class Members in connection with the review or objection to the Settlement Agreement.

13.     Midland shall not be liable for, or obliged to pay any fees, expenses, costs or other disbursements to, or incur any expense on behalf of, any Plaintiff, Class Member or other person or entity, either directly or indirectly, in connection with the Action, this Agreement, or the proposed Settlement, other than the amounts expressly provided for in this Agreement.

## XI.    PRELIMINARY APPROVAL AND RELATED ORDERS

A.     The Parties shall submit this Agreement, including all attached exhibits, to the Court and seek and obtain from the Court a Preliminary Approval Order in substantially the same form as Exhibit D to this Agreement.   The Preliminary Approval Order shall, among other things:

1.     provide for the certification of the Class for settlement purposes only;

2.     preliminarily approve the proposed Settlement and find that the proposed Settlement is sufficient to warrant sending notice to the Class;

3.     schedule the Fairness Hearing based on the Court's availability, but not less than 126 days after entry of the Preliminary Approval Order, to consider the fairness, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved by the Court;

4.     approve the proposed Class Notice Package and the plan for giving notice;

SETTLEMENT AGREEMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

5.      direct the Administrator to mail the Class Notice Package to each Class Member by first-class mail, postage prepaid, to his or her last known address no later than 28 days after entry of the Preliminary Approval Order, as described in this Agreement;

6.      determine that mailing the Class Notice Package to the last known addresses of the Class Members:

(a)      constitutes the best practicable notice under the circumstances;

(b)      is reasonably calculated to apprise Class Members of the pendency of the Action and of their right to object to or exclude themselves from the proposed Settlement;

(c)      is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and

(d)      meets all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution and its Amendments;

7.      require the Administrator to file proof of the mailing of the Class Notice Packages at or before the Fairness Hearing;

8.      prohibit Midland from communicating with Class Members about the Action or the Settlement, but not preclude Midland from:

(a)      speaking to Class Members in the ordinary course of Midland's business, provided that if Class Members contact Midland regarding the Action or the Settlement, Midland shall direct such Class Members to contact Class Counsel; or

(b)      communicating with agents and employees of Midland and from communicating with its auditors, rating agencies, insurance commissioners, regulators or similar reporting organizations or

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    governmental entities regarding the impact and/or administration

2    of the Settlement;

3    9.    require each Class Member who wishes to exclude himself or

4    herself from the Class to submit an appropriate, timely written request for

5    exclusion, postmarked no later than 53 days after mailing of the Class

6    Notice Package to the Administrator, in care of the address provided in

7    the Class Notice;

8    10.    preliminarily bar and enjoin each and every Class Member who

9    has not excluded himself or herself from the Settlement, the Class

10    Member's representatives, and/or all persons in active concert or

11    participation with such Class Members from filing, commencing,

12    prosecuting, maintaining, intervening in, participating in, conducting, or

13    continuing, as class members or otherwise, any action, including without

14    limitation a class action (including by seeking to amend a pending

15    complaint to include class allegations or by seeking class certification in

16    a pending action in any jurisdiction), in any federal court, any state court,

17    or any other tribunal or forum of any kind, and from receiving any

18    benefits from any lawsuit, administrative or regulatory proceeding or

19    order in any jurisdiction, arising out of, based on, or relating to the

20    claims, causes of actions, facts, and/or circumstances alleged in the

21    Action and/or the Released Claims;

22    11.    rule that any Class Member who does not submit a timely, written

23    request for exclusion from the Class shall be bound by all proceedings,

24    orders, and judgments in the Action, even if such Class Member has

25    previously initiated or subsequently initiates individual litigation or other

26    proceedings against Midland relating to Annuities issued during the Class

27    Period;

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

12.     require each Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Agreement or the proposed Settlement, or to the award of attorneys' fees and expenses, to serve on Bonnett, Fairbourn, Friedman & Balint, P.C., Robbins Geller Rudman & Dowd LLP and Midland Counsel, and to file with the Court, no later than 53 days after mailing of the Class Notice Package, or at such other time as the Court may direct, a statement of the objection, as well as the specific reasons, if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of his or her objection, or be forever barred from separately objecting;

13.     require any attorney hired by a Class Member at the Class Member's expense for the purpose of objecting to this Agreement or the proposed Settlement, or to the award of attorneys' fees and expenses, to file with the Clerk of the Court and deliver to Bonnett, Fairbourn, Friedman & Balint, P.C., Robbins, Geller, Rudman & Dowd, LLP and Midland Counsel a notice of appearance no later than 53 days after mailing of the Class Notice Package, or as the Court otherwise may direct;

14.     require any Class Member who files and serves a written objection and who intends to make an appearance at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense (who has filed a timely notice to appear), to deliver to Bonnett, Fairbourn, Friedman & Balint, P.C., Robbins Geller Rudman & Dowd LLP and Midland Counsel, and file with the Court no later than 53 days after mailing of the Class Notice Package, or as the Court otherwise may direct, a notice of intention to appear at the Fairness Hearing;

15.     authorize Midland and Class Counsel:

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

(a)    to establish the means necessary to administer the proposed Settlement, in accordance with the terms of this Agreement;

(b)    to retain Administrator to help administer the proposed Settlement, including the notice provisions;

16.    to appoint an initial Administrator to implement the terms of this Agreement;

17.    to direct the Administrator to rent one or more post-office boxes to be used for receiving requests for exclusion from the Class and any other communications, and providing that no one other than the Court or the Clerk of the Court and the Administrator shall have access to these post-office boxes; and

18.    to direct Midland Counsel and Class Counsel promptly to furnish each other with copies of any and all objections or written requests for exclusion that might come into their possession that are not otherwise provided by the Administrator.

## XII.  FINAL APPROVAL AND FINAL ORDER AND JUDGMENT

A.    After the Fairness Hearing, and upon the Court's approval of this Agreement, the Parties shall seek and obtain from the Court a Final Order and Judgment in substantially the same form attached as Exhibit E to this Agreement. The Final Order and Judgment shall, among other things:

1.    find that the Court has personal jurisdiction over all Class Members, that the Court has subject matter jurisdiction over the claims asserted in the Action to approve this Agreement and all exhibits hereto and that venue is proper;

2.    finally approve this Agreement and the proposed Settlement as fair, reasonable and adequate, and consistent and in compliance with the applicable provisions of the United States Constitution, its Amendments, and the Federal Rules of Civil Procedure, as to, and in the best interests

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of, the Class; direct the Parties and their counsel to implement and consummate this Agreement according to its terms and provisions; and declare this Agreement to be binding on, and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and all other Class Members, as well as their heirs, executors, personal representatives, conservators and administrators, predecessors, successors and assigns, that allege Released Claims, as defined in this Agreement;

3.    finally certify the Class for settlement purposes;

4.    find that the Class Notice Package and all other instruments provided to Class Members pursuant to this Agreement:

    (a)    constituted the best practicable notice under the circumstances;

    (b)    constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, their right to object to or exclude themselves from the proposed Settlement and to appear at the Fairness Hearing;

    (c)    was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice; and

    (d)    met all applicable requirements of the Federal Rules of Civil Procedure and the United States Constitution and its Amendments, including the Due Process Clause;

5.    find that Class Counsel and the Plaintiffs adequately represented the Class for purposes of entering into and implementing the Settlement;

6.    dismiss the Action (including all individual claims and Class claims presented thereby) on the merits and with prejudice, without fees or costs to any party except as provided in this Agreement;

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

7.      declare that the judgment is binding upon all Class Members and upon Midland and extinguishes all claims of Class Members (a) that were alleged, or that could be alleged, based upon, or arise from, the matters which were alleged in the Action or (b) that were released pursuant to this Agreement;

8.      incorporate the Release set forth above in Section IX., make the Release effective as of the date of the Final Order and Judgment, and forever discharge the Releasees from any claims or liabilities arising from or related to the Released Claims;

9.      permanently bar and enjoin each and every Class Member who has not been excluded from the Settlement, the Class Member's representatives, and/or all persons in active concert or participation with such Class Members from filing, commencing, prosecuting, maintaining, intervening in, participating in, conducting, or continuing, as class members or otherwise, any action, including without limitation a class action, (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction), in any federal court, any state court, or any other tribunal or forum of any kind, and from receiving any benefits from any lawsuit, administrative or regulatory proceeding or order in any jurisdiction, arising out of, based on, or relating to the claims, causes of actions, facts, and/or circumstances alleged in the Action and/or the Released Claims;

10.      authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement and all exhibits attached hereto that are consistent with the Final Order and Judgment and do not limit the rights of Class Members under the Agreement;

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

11.     if Midland so chooses, authorize the Administrator and Midland, in consultation with Class Counsel and without approval from the Court, to advance the Implementation Date to an earlier date than otherwise specified herein;

12.     require that, in the event Midland determines to advance the Implementation Date to a date prior to the Final Settlement Date, any appeal be preceded by:

      (a)     a request for a stay of implementation of the Settlement; and

      (b)     the posting of an appropriate bond;

and, absent satisfaction of each of these requirements, authorize Midland to proceed with implementation of the Settlement, even if such implementation would moot the appeal;

13.     without affecting the finality of the Final Order and Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of this Agreement and the Final Order and Judgment, and for any other necessary purpose; *provided, however*, that nothing in this paragraph shall restrict the ability of the Parties to exercise their rights under Section XII.A.10. through Section XII.A.12., above; and

14.     order that any work product retained by Plaintiffs or Class Counsel that is based on or incorporates information designated as Confidential Material pursuant to the terms of the Protective Order previously entered in this case and provided by Midland be deemed Confidential Material pursuant to the terms of the Protective Order, and that the disclosure or use of such materials shall be subject to the same restrictions as Confidential Materials pursuant to the terms of the Protective Order previously entered in this case.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

## XIII. MODIFICATION OR TERMINATION OF THIS AGREEMENT

A.    This Agreement may be terminated at the discretion of either Midland or the Plaintiffs, through Class Counsel, if the Court, or any appellate court, rejects, modifies, or denies approval of any portion of this Agreement or the proposed Settlement that the terminating party reasonably determines is material.    The terminating Party must exercise the option to withdraw from and terminate this Agreement, as provided in this Section, in writing sent by first-class mail to the other Party, no later than 20 days after receiving notice of the event prompting the termination.

B.    Plaintiffs cannot terminate this Agreement solely because of the amount of attorneys' fees, costs and/or service awards awarded by the Court or any appellate court(s); however, Plaintiffs and their Counsel reserve all rights on appeal in relation to any award of costs and fees in the event the Court does not award the amount of costs and fees requested by the Plaintiffs, and the award is less than the Class Counsel Payment.  Midland, however, may elect to terminate this Agreement if the aggregate amount of attorneys' fees and costs awarded exceeds $13,970,000 or if the aggregate amount of service awards to Class Representatives exceeds $30,000.

C.    Midland may unilaterally terminate this Agreement if any regulator or government entity requires any modification to the Agreement, including without limitation, a constriction or expansion of the scope of the stated benefits that Midland reasonably deems to be material.

D.    Midland may unilaterally terminate this Agreement if the "Opt-Out Percentage" is greater than 1%.  The "Opt-Out Percentage" shall be computed based on data as of the last date for filing of a list reflecting all requests for exclusion pursuant to Section VII.C., and shall equal (a) the sum of (i) the Accumulation Value of all Active Deferred Annuities held by Owners who have excluded themselves from the Class, (ii) the Accumulation Value of all Annuities that have been fully surrendered by Owners who have excluded themselves from the Class, which shall be

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   determined using the Accumulation Value of such Annuities as of the date of full

2   surrender for each such Annuity, and (iii) the Accumulation Value of all Annuities that

3   have been Annuitized by Owners who have excluded themselves from the Class,

4   which shall be determined using the Accumulation Value of such Annuities as of the

5   date of Annuitization for each such Annuity, divided by (b) the aggregate

6   Accumulation Value of all Active Deferred Annuities.   All amounts used in the

7   calculation shall be compiled from Midland's business records of transactions entered

8   into its policy administration system, known as PolicyLink, as of the close of business

9   on the last date for filing of a list reflecting all requests for exclusion pursuant to

10   Section VII.C., or the first practicable day thereafter.  If Midland elects to exercise this

11   right, it shall do so by giving written notice to Class Counsel before the Fairness

12   Hearing.

13         E.    Midland may effect termination of the Settlement Agreement under

14   section XIII.C. or XIII.D. by giving written notice to Class Counsel.

15         F.    If this Agreement is terminated, it shall be void, no Party shall be bound

16   by any of its terms (except for the terms of this paragraph and Sections XIV.D.,

17   XIV.H., XIV.N., XIV.O. and as applied to these paragraphs, Sections XIV.P. and

18   XIV.Q. of this Agreement), and it shall not be admissible in any further proceedings.

19         G.    If this Agreement is terminated, Midland expressly and affirmatively

20   reserves all defenses, arguments and motions as to all claims that might have been or

21   might later be asserted in this Action, including, without limitation, any applicable

22   Statute of Limitations and the argument that the Action may not be litigated as a class

23   action.

24   **XIV. GENERAL MATTERS AND RESERVATIONS**

25         A.    <u>Integration and Drafting</u>

26               The Parties agree that this Agreement is clear and unambiguous, that it

27               was drafted and negotiated by counsel for the Parties at arm's length, that

28               it sets forth the entire Settlement Agreement among the Parties, that no

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    other agreements not expressed or referred to in this Agreement exist, and

2    that no parol or other evidence may be offered to explain, construe,

3    contradict, or clarify its terms, the intent of the Parties or their counsel, or

4    the circumstances under which the Agreement was made or executed.

5    B.    Amendment, Court Approval, Extensions

6          This Agreement may not be amended without the written consent of all

7    parties and approval of the Court; provided, however, that after entry of

8    the Final Order and Judgment, the Parties may by agreement modify this

9    Settlement Agreement and its implementing documents (including all

10   exhibits) without notice to or approval by the Court if the changes are

11   consistent in all material respects with the Court's Final Order and

12   Judgment and do not materially abridge the rights of Class Members.

13   The Parties also may agree to reasonable extensions of time that are

14   necessary to carry out any provisions of this Settlement Agreement,

15   provided that any extension of more than 30 days must be approved by

16   the Court.

17   C.    Early Implementation

18         Midland, in consultation with Class Counsel and without approval of the

19   Court, may implement the terms of the Settlement after entry of the Final

20   Order and Judgment but prior to the Final Settlement Date, in which case

21   all provisions of this Agreement that specify actions to be taken on or

22   after the Final Settlement Date shall, to the extent necessary, be deemed

23   to provide that those actions shall be taken on or after the date on which

24   Midland elects to implement the Settlement.

25   D.    Construction

26         For the purpose of construing this Agreement, the Parties agree that it

27   shall be deemed to have been drafted equally by all Parties and shall not

28   be construed strictly for or against any of the Parties.

E.   <u>Integration of Exhibits</u>

The exhibits hereto are incorporated by reference as if set forth herein verbatim and are an integral part of this Agreement.

F.   <u>Waiver</u>

The waiver by any Party of any breach of this Agreement shall not be construed as a waiver of any other breach.

G.   <u>Counterparts</u>

This Agreement may be executed in counterparts, each of which when executed and delivered shall be considered an original.   Executed signature pages shall be valid and enforceable whether they are originals or copies, and whether they are transmitted by facsimile, e-mail or any other means.

H.   <u>No Evidence, No Admission</u>

1.   In no event shall this Agreement, any of its provisions, or any negotiations, statements, or proceedings relating to it be offered as, received as, used as, or deemed to be evidence in the Action, any other action, or in any other proceeding, except in a proceeding to enforce this Agreement.

2.   Without limiting the foregoing, neither this Agreement nor any related negotiations, statements, or proceedings shall be offered as, used as, or deemed to be evidence or an admission or concession by any person of any matter, including but not limited to any liability or wrongdoing on the part of Midland or any of the Releasees or as evidence of the appropriateness of certification of any class.

I.   <u>Tax Consequences</u>

1.   No opinion concerning the tax consequences of the proposed Settlement to Class Members or anyone else is given or will be given by

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Midland, Midland Counsel, Plaintiff, or Class Counsel, nor are any representations in this regard made by virtue of this Agreement.

2.      Each Class Member's or other person's tax obligations, if any, and the determination of those obligations, are the sole responsibility of the Class Member or other person.  Midland shall act as it determines is required by the Internal Revenue Code and the regulations promulgated thereunder in reporting any Settlement benefit provided pursuant to this Agreement.

3.      Neither Midland nor the Administrator shall make any payment hereunder if Midland has determined in good faith that a withholding certificate or other document is required by any law or regulation to be provided by the payee prior to making such payment and the document has not been provided.  In the event a withholding certification or other document is required by law or regulation to be provided by the payee, the Administrator or Midland shall notify the payee within 30 days prior to the issuance of any payment to be made under this Agreement of the documents needed and notify the payee that completed copies of these documents must be received by the Administrator or Midland prior to issuance of any payment under this Agreement.

J.      Notice

1.      Whenever this Agreement requires or contemplates that one party shall or may give notice to the other, notice shall be provided by U.S. mail or overnight delivery service as follows:

If to Midland, then to:

Robert D. Phillips, Jr.

Reed Smith LLP

355 South Grand Avenue, Suite 2900

Los Angeles, CA  90071

– 66 –

SETTLEMENT AGREEMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

If to Plaintiffs, then to:

Andrew S. Friedman

Bonnett, Fairbourn Friedman & Balint, P.C.

2901 N. Central Avenue, Suite 1000

Phoenix, AZ 85012


Theodore J. Pintar

Robbins Geller Rudman & Dowd LLP

655 West Broadway, Suite 1900

San Diego, CA  92101

2.      Should any of these addresses change, the person changing his or her address shall promptly advise the Court, the Administrator and the other Parties, in writing.

K.    No Effect on Contract or Duty

1.      Neither this Agreement nor any of the benefits to be provided under this Agreement shall be interpreted to alter in any way the terms of any Class Member's Annuity or to constitute a novation of any Class Member's Annuity, except as expressly provided by this Agreement or the benefits granted in accordance with the terms of this Agreement.

2.      This Agreement does not, and shall not be deemed to, create any fiduciary or similar relationship between Midland and any of its current, past, or prospective policyholders or Annuity owners.  This Agreement does not impose, and shall not be deemed to impose, any fiduciary or other similar duty on Midland, and Midland expressly disclaims any fiduciary or other similar duties.  The duties and obligations assumed by Midland are limited to those expressly set forth in this Agreement.

MDL NO. 07-1825 CAS (MANx)          – 67 –

SETTLEMENT AGREEMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

L.    Time Computation

1.    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Agreement or by order of the Court, the day of the act, event, or default from which the designated period begins to run shall not be included.

2.    Each other day of the period to be computed shall be included, including the last day thereof, unless such last day is a Saturday, Sunday, or legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the Clerk of Court inaccessible, in which event the last day of the period shall be the next day that is not one of the aforementioned days.

3.    As used in this Section, "legal holiday" includes: New Year's Day, Martin Luther King, Jr. Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States, or by Local Rules of the Court.

4.    The Parties reserve the right to agree between themselves on any reasonable extensions of time that might be necessary to carry out the provisions of this Agreement, subject to Section XIV.B. above.

M.    Cooperation in Effecting Settlement

The Parties, their successors and assigns, and their attorneys, undertake to implement the terms of this Agreement in good faith, to use good faith in interpreting this Agreement and resolving any disputes that may arise in the implementation of this Agreement, to cooperate with one another in seeking Court approval of this Agreement, and to use their best efforts to effect the prompt consummation of this Agreement.

N.     Confidentiality

1.      All information and documentation provided to Class Counsel and the Administrator by Midland or the Class Members is confidential, and cannot be provided to third parties or used for any other purpose than effectuating the terms of this Agreement.

2.      The Parties and their counsel agree to keep the existence and contents of this Agreement confidential until the motion requesting the Court's preliminary approval of this Agreement is filed; provided, however, that this paragraph shall not prevent the disclosure of such information prior to the filing of such motion to (1) regulators, rating agencies, independent accountants, advisors, financial analysts, agents, insurers or reinsurers, Plaintiffs or Class Members, experts, courts, co-counsel, and/or Administrator(s) as may reasonably be required to effectuate the terms and conditions of this Agreement or as otherwise required to comply with any applicable law or regulation, or (2) any person or entity to whom the Parties agree disclosure must be made to effectuate the terms of this Agreement.  If disclosure of the existence and/or contents of this Agreement is made pursuant to the preceding sentence, to the extent the recipient of the disclosure is not already subject to an obligation of confidentiality to the disclosing Party, such Party will make reasonable efforts to secure the recipient's undertaking to maintain the existence and contents of this Agreement strictly confidential and to use such information only for the purpose for which the disclosure is made.

3.      The Parties and their counsel agree that their discussions and the information exchanged in the course of negotiating this Settlement is confidential, and was made available on the condition that neither the Parties nor their counsel may disclose it to third parties (other than

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

experts or consultants retained by the Parties in connection with this case), that it not be the subject of public comment, and that it not be publicly disclosed or used by the Parties or their counsel in any way in the Action should it not settle, or in any other proceeding.

4.      On or before the expiration of two months after the date on which the Settlement Administrator is to provide the report described in V.E.1.p, Class Counsel shall return all documents or information produced to Plaintiffs or Class Counsel by Midland in connection with any of the litigation identified in Section I.A.1.-I.A.7.  To the extent Plaintiffs or Class Counsel retain any work product that is based on or incorporates information designated as Confidential Material pursuant to the terms of the Protective Order previously entered in this case and provided by Midland, Plaintiffs and Class Counsel shall maintain such work product as Confidential Material pursuant to the terms of the Protective Order previously entered in this case, and the disclosure or use of such materials shall be subject to the same restrictions as Confidential Materials pursuant to the terms of the Protective Order previously entered in this case.

O.      <u>Media Communications</u>

The Parties agree to cooperate in good faith to ensure that any comments about or descriptions of the Settlement of the dispute forming the basis of this Agreement in the media or in any other public forum are balanced, fair, and accurate, and the Parties will attempt in good faith to agree on descriptions of the Settlement to be communicated in any statements, whether joint or unilateral, including without limitation any website or other internet postings.  Joint or unilateral press releases referring or otherwise related to the Settlement proposed to be made by any Party before the date on which the Administrator is to provide the report

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

described in V.E.1.p. shall be provided to counsel for Plaintiffs and Midland Counsel prior to the dissemination or publication so as to allow for a reasonable period of time for review prior to any dissemination or publication. Any such unilateral statements or press releases proposed by any Party must be reviewed and approved by the other Party before dissemination or publication. If a Party disseminates or publishes a unilateral statement or press release before obtaining approval from the other Party, such dissemination or publication shall constitute a breach of this Agreement.

P.    Governing Law

This Settlement Agreement shall be governed by, and interpreted according to, the law of the State of California, excluding its conflict of laws provisions.

Q.    Parties Bound

This Agreement shall be binding upon and inure to the benefit of Plaintiffs, Class Members, Class Counsel, Midland and its affiliates, and the respective heirs, predecessors, successors and assigns of each of the foregoing.

R.    Authority to Execute Agreement

Each Party or person executing this Agreement in a representative capacity on behalf of a corporate entity hereby represents that he or she is duly authorized by such entity to execute this Agreement on its behalf, and to bind it to the terms and conditions hereof.

S.    Execution Date

This Agreement shall be deemed executed upon the last date of execution by all the undersigned.

IN WITNESS WHEREOF, this Agreement has been executed by the

\\\

undersigned as of the day and year set forth:

**CLASS REPRESENTATIVES**

DATED:  September __, 2010

_____
Mary P. Munoz

DATED:  September __, 2010

_____
Robert D. Kaiser

DATED:  September __, 2010

_____
Nancy Bendzak, as attorney-in-fact for
Mary Bendzak

DATED:  September __, 2010

_____
Mary Bendzak

**DEFENDANT**

Midland National Life Insurance Company

DATED:  September __, 2010

By: _____
John J. Craig
Senior Vice President

**APPROVED AS TO FORM:**

DATED:  September __, 2010

REED SMITH LLP

By _____
Robert D. Phillips, Jr.
Attorneys for Defendant Midland National
Life Insurance Company

MDL NO. 07-1825 CAS (MANx)          – 72 –
SETTLEMENT AGREEMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  undersigned as of the day and year set forth:

2  **CLASS REPRESENTATIVES**

3
4  DATED:  September ___, 2010
   _____
   Mary P. Munoz

5
6
7  DATED:  September 29, 2010
   _____
   Robert D. Kaiser

8
9
10
11  DATED:  September ___, 2010
    _____
    Nancy Bendzak, as attorney-in-fact for
    Mary Bendzak

12
13
14  DATED:  September ___, 2010
    _____
    Mary Bendzak

15
16
17  **DEFENDANT**

18
    Midland National Life Insurance Company
19
20  DATED:  September ___, 2010
    By: _____
        John J. Craig
        Senior Vice President
21
22  **APPROVED AS TO FORM:**

23  DATED:  September ___, 2010
    REED SMITH LLP
24
25
26  By _____
    Robert D. Phillips, Jr.
    Attorneys for Defendant Midland National
    Life Insurance Company
27
28

MDL NO. 07-1825 CAS (MANx)          – 72 –
                 SETTLEMENT AGREEMENT

undersigned as of the day and year set forth:

**CLASS REPRESENTATIVES**

DATED:  September ___, 2010        _____

                                   Mary P. Munoz


DATED:  September ___, 2010        _____

                                   Robert D. Kaiser


DATED:  September 29, 2010         _____
                                   Nancy Bendzak, as attorney-in-fact for
                                   Mary Bendzak


DATED:  September 29, 2010         _____
                                   Mary Bendzak


**DEFENDANT**

                                   Midland National Life Insurance Company


DATED:  September ___, 2010        By: _____
                                       John J. Craig
                                       Senior Vice President

**APPROVED AS TO FORM:**

DATED:  September ___, 2010

                                   REED SMITH LLP


                                   By _____
                                      Robert D. Phillips, Jr.
                                      Attorneys for Defendant Midland National
                                      Life Insurance Company

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MDL NO. 07-1825 CAS (MANx)              – 72 –
                              SETTLEMENT AGREEMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  undersigned as of the day and year set forth:

2  **CLASS REPRESENTATIVES**

3
4  DATED: September ___, 2010

_____
Mary P. Munoz

5
6
7  DATED: September ___, 2010

_____
Robert D. Kaiser

8
9
10
11  DATED: September ___, 2010

_____
Nancy Bendzak, as attorney-in-fact for
Mary Bendzak

12
13
14  DATED: September ___, 2010

_____
Mary Bendzak

15
16
17  **DEFENDANT**

18
Midland National Life Insurance Company

19
20  DATED: September 29, 2010

By: _____
John J. Craig
Senior Vice President

21
22  **APPROVED AS TO FORM:**

23  DATED: September _, 2010

REED SMITH LLP

24
25
26  By _____
Robert D. Phillips, Jr.
Attorneys for Defendant Midland National
Life Insurance Company

27
28

SETTLEMENT AGREEMENT

1    undersigned as of the day and year set forth:

2    **CLASS REPRESENTATIVES**

3

4    DATED: September __, 2010        _____

5                                    Mary P. Munoz

6

7    DATED: September __, 2010        _____

8                                    Robert D. Kaiser

9

10

11   DATED: September __, 2010        _____

12                                    Nancy Bendzak, as attorney-in-fact for
                                     Mary Bendzak
13

14   DATED: September __, 2010        _____

15                                    Mary Bendzak

16

17   **DEFENDANT**

18                                    Midland National Life Insurance Company

19

20   DATED: September __, 2010        By: _____
                                         John J. Craig
21                                       Senior Vice President

22   **APPROVED AS TO FORM:**

23   DATED: September 30, 2010

24                                    REED SMITH LLP

25                                    By _____

26                                    Robert D. Phillips, Jr.
                                     Attorneys for Defendant Midland National
27                                   Life Insurance Company

28

MDL NO. 07-1825 CAS (MANx)        – 72 –
                                  SETTLEMENT AGREEMENT

1

2   DATED:  September 27 2010

3                                           By _____
                                            BONNETT, FAIRBOURN,
4                                           FRIEDMAN & BALINT, P.C.

5                                           Andrew S. Friedman
                                            afriedman@bffb.com
6                                           2901 North Central Avenue, Suite 1000
                                            Phoenix, Arizona  85012
7                                           Telephone:  (602) 274-1100
                                            Facsimile:  (602) 274-1199

8

9

10  DATED:  September _, 2010

11                                          By _____
                                            ROBBINS GELLER RUDMAN & DOWD
12                                          LLP

13                                          Theodore J. Pintar (131372)
                                            tpintar@rgrdlaw.com
14                                          655 West Broadway, Suite 1900
                                            San Diego, CA 92101-4797
15                                          Tel.:  (619) 231-1058
                                            Fax:  (619) 231-7423

16                                          **Attorneys for Class Plaintiffs**

17  DOC ID# 104396798

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

2  DATED:  September __, 2010

3                                                    By _____
                                                      BONNETT, FAIRBOURN,
4                                                     FRIEDMAN & BALINT, P.C.

5                                                       Andrew S. Friedman
                                                        afriedman@bffb.com
6                                                       2901 North Central Avenue, Suite 1000
                                                        Phoenix, Arizona  85012
7                                                       Telephone:  (602) 274-1100
                                                        Facsimile:   (602) 274-1199

8

9  DATED:  September 28, 2010

10                                                   By _____
                                                      ROBBINS GELLER RUDMAN & DOWD
11                                                    LLP

12                                                      Theodore J. Pintar (131372)
                                                        tpintar@rgrdlaw.com
13                                                      655 West Broadway, Suite 1900
                                                        San Diego, CA 92101-4797
14                                                      Tel.:  (619) 231-1058
                                                        Fax:  (619) 231-7423

15                                                     **Attorneys for Class Plaintiffs**

16

17  DOC ID# 104396798

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Exhibit A

# Exhibit A

| Product |
|---|
| APP 10 |
| APP 16 |
| Bonus 5 |
| Bonus 10 |
| Bonus 11 |
| Capstone 7 yr |
| Capstone 10 yr |
| Capstone 14 yr |
| Direct 10 |
| Direct 16 |
| Direct Bonus |
| Direct Flex |
| Direct Guarantee |
| Direct Guarantee Plus |
| Four Seasons 14 yr |
| Guarantee Bonus 15 |
| Guarantee Nine |
| Innovator 7 yr |
| Innovator 10 yr |
| Innovator 14 yr |
| Legacy 10 |
| Legacy Bonus 5 |

Page **1** of **3**

# Exhibit A

| |
|---|
| Legacy Bonus 11 |
| Legacy Select |
| Mainstreet 4 yr |
| MNL 5 |
| MNL 6 |
| MNL 10 |
| MNL Flex I |
| MNL Flex I-ROP |
| MNL Flex II |
| MNL Flex II-ROP |
| MNL Flex III |
| MNL Flex III-ROP |
| MNL Leader |
| MNL Legacy |
| MNL Select 6 yr 5% PF |
| MNL Select 6 yr 10% PF |
| MNL Select 8 yr 5% PF |
| MNL Select 10 yr 10% PF |
| MNL Select 14 yr 5% PF |
| Paragon 7 yr |
| Paragon 10 yr |
| Paragon 14 yr |
| Paragon Plus 7 yr |
| Paragon Plus 10 yr |

## Exhibit A

| |
|---|
| Paragon Plus 14 yr |
| Prosperity 7 yr |
| Prosperity 10 yr |
| Prosperity 14 yr |
| Veridian |
| Veridian 7 |
| Veridian Bonus 10 |
| Veridian Plus |
| Veridian Power 5 |
| Veridian Power 7 |
| Veridian Power 10 |
| Veridian Preferred 5 |
| Veridian Preferred 7 |
| Veridian Select |

Exhibit B

United States District Court for the Central District of California

## NOTICE OF CLASS ACTION SETTLEMENT

*In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation*, MDL No. 07-1825
(CAS)

## THIS NOTICE IS FOR PERSONS WHO OWN OR HAVE OWNED A DEFERRED ANNUITY ISSUED BY MIDLAND NATIONAL LIFE INSURANCE COMPANY TO A PERSON AGE 65 OR OLDER OR A TRUST WITH AN ANNUITANT AGE 65 OR OLDER, AND WHO MAY BE ENTITLED TO BENEFITS FROM THIS CLASS ACTION SETTLEMENT.

*A federal district court authorized this Notice.  This is not junk mail, an advertisement or a solicitation from a lawyer.*

• To be a member of the Settlement Class, you must either own, or have been the last person to own, a deferred annuity listed in section 6 of this Notice (referred to as "Annuities") that was issued by Midland National Life Insurance Co. ("Midland") to a person age 65 or older at the time of purchase or a trust with an Annuitant age 65 or older at the time of purchase, during the time period between January 25, 2001 and June 30, 2007, and not be either (1) a member of the class that was certified in Peterman v. North American Company for Life and Health Insurance and Midland National Life Insurance Company, pending in the Superior Court of California for the County of Los Angeles; or (2) the owner or former owner of a fixed indexed annuity issued by Midland from May 3, 2001 to July 25, 2006, to a person whose application was signed in Hawaii and who was 65 years of age or older on the issue date of the annuity.

• Under the Settlement, you may be entitled to receive Settlement benefits in the form of either Surrender Charge Reduction Benefits, which require submission of a Claim Form and participation in the Claim Review Process, or an Annuitization Bonus.  If you have an Active Deferred Annuity and do not elect and obtain Surrender Charge Reduction Benefits, you will be eligible for an Annuitization Bonus, which will be calculated based on the number of years that have elapsed since your Annuity was issued, if you elect to receive periodic payments calculated on the basis of the rates set forth in your Annuity and the payments are to be made over a Qualifying Period.  Further information is provided in section A of the response to Question 11 below.  Alternatively, you may choose to submit the Claim Form enclosed with this Notice and participate in the Claim Review Process, which may reduce the Surrender Charges on your Annuity by up to 75%.  If you have already surrendered your Annuity and paid Surrender Charges, you may be able to obtain a partial refund of those Surrender Charges of up to 75% by submitting a Claim Form.  If you have an Annuity that was annuitized prior to the entry of the Final Order and Judgment approving this Settlement, you will not qualify for the aforementioned Settlement benefits, but instead will automatically receive a 2% increase to your annual annuity payment during the payout period.  Each of these Settlement benefits are discussed in detail in the response to Question 11 of this Notice.

• If you surrendered your Annuity and received the full Accumulation Value without penalty you are not eligible for settlement benefits as to that Annuity.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| | |
| **DO NOTHING** | If you do nothing with respect to the matters described in this Notice, you will be subject to the Settlement.  You will be bound by the Release described in response to Question 13, which means you will give up any claims you have with respect to your Annuities.  Your ability to obtain Settlement benefits will depend on whether you have an Active Deferred Annuity or an Annuity that has been Annuitized or have fully surrendered your Annuity.<br><br>The benefits available to you will vary depending on the circumstances, as follows:<br>• If you have an Active Deferred Annuity and do not submit a Claim Form, |

| | |
|---|---|
| | you will give up any Claim you might have had to Surrender Charge Reduction Benefits; you may, however, still be entitled to receive the default relief under the Settlement.  The default relief is the Annuitization Bonus, which is available if you have an Active Deferred Annuity and you Annuitize your Annuity after entry of the Court's Final Order approving the Settlement.  The Annuitization Bonus provides a higher guaranteed periodic payment if you elect to receive payments over the longer of your lifetime or ten years. <br> • If you have an Annuity that has already been Annuitized or is Annuitized before entry of the Court's Final Order approving the Settlement, you are not eligible for Surrender Charge Reduction Benefits; you may, however, be entitled to receive a 2% enhancement to each of your periodic annuity payments to be made after the Implementation Date for the Settlement. <br> • If you have fully surrendered your Annuity, and you do not submit a Claim Form, you will not receive any benefits under the Settlement.. |
| **SUBMIT A CLAIM FORM** | If you have an Active Deferred Annuity or you have fully surrendered your Annuity and you want to apply for the Surrender Charge Reduction Benefits, you must submit a Claim Form.  Claim Forms must be mailed with a postmark no later than _____, 2010.  Surrender Charge Reduction Benefits are not available if your Annuity has been Annuitized. |
| **EXCLUDE YOURSELF** | You must submit a timely written request to exclude yourself from the Settlement by _____, 2010.  **If you choose to exclude yourself, you will not receive the benefits available under the terms of the Settlement.** |
| **OBJECT** | You may write the Court about why you do not like the Settlement.  Written objections to the Settlement must be filed with the Court no later than _____, 2010.  Making an objection does not exclude you from the Settlement.  If the Settlement is approved, you will be subject to the Settlement and will be bound by the Release described in response to Question 13, which means you will give up any claims you have with respect to your Annuities. |
| **GO TO THE HEARING** | If you timely object in writing to the Settlement as described in the Notice and file a timely Notice of Intention to Appear at the Fairness Hearing, you will be entitled to ask to speak in Court about the fairness of the Settlement during the Fairness Hearing set for _____, 2010. |
| **APPEAR THROUGH AN ATTORNEY** | You may enter an appearance in this case through an attorney if you desire, but you will still need to comply with the requirements for objecting to the Settlement and appearing at the fairness hearing. |

• These rights and options — and the deadlines to exercise them — are explained in this Notice.

• This Notice is merely a summary of the terms and provisions of the proposed Settlement.  For a complete description of the terms and provisions of the proposed Settlement, including certain exceptions, conditions, and limitations that may not be addressed herein, you should read the Settlement Agreement filed with the Court and available at www._____.com or by calling **[ADMINISTRATOR NUMBER]**.  Capitalized terms in this Notice and the Claim Form have the meanings assigned in the Settlement Agreement.

• The Court in charge of this case still has to decide whether to approve the Settlement.  Please be patient.

## BASIC INFORMATION

### 1.   Why did I get this Notice Package?

You are listed in Midland's records as being either the current or the last Owner of an Annuity that is included in the Settlement.

The Court directed that the parties send you this Notice because you have a right to know about a proposed Settlement of a class action lawsuit and about your options before the Court decides whether to approve the Settlement.  If the Court approves it and after objections and appeals are resolved, Midland will provide the benefits provided for in the approved Settlement.

This package explains the litigation, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Central District of California, and the case is known as *In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation*, MDL No. 07-1825 (CAS). Mary P. Munoz, Robert D. Kaiser, Nancy Bendzak, as attorney in fact for Mary Bendzak, and Mary Bendzak, the persons who sued and have been designated to represent all members of the Settlement Class in this matter, are called the "Plaintiffs," and the company they sued, Midland, is the "Defendant."

## 2.   What is this litigation about?

The representative Plaintiffs have brought this litigation on behalf of themselves and other persons 65 years of age or older to assert claims against Midland with respect to certain deferred Annuities issued by Midland. Plaintiffs allege that Midland targeted senior consumers and sold them costly and poorly performing deferred Annuities with steep surrender penalties, unfair interest adjustments, and excessive commissions and other costs. In addition, Plaintiffs have contended that Midland used standardized written sales and product materials that misrepresented and failed to disclose critical facts concerning its deferred Annuities, including the allegedly excessive commissions paid to Midland's sales agents and other costs associated with design, marketing, and administration of the contracts, and their effect on performance of the Annuities.

Plaintiffs claim that the conduct described above violates the federal civil RICO statute, §18 U.S.C. 1962, and certain California consumer protection laws, including §§ 17200 and 17500 of the California Business and Profession Code, and California's Financial Elder Abuse Act (Welf. & Inst. Code § 15610.30). Plaintiffs seek monetary relief arising out of Defendant's allegedly improper conduct in connection with the marketing and sale of its Annuities to senior citizens in the form of restitution, compensatory, punitive and other exemplary damages, as well as interest, legal fees and costs. The litigation also seeks injunctive relief that would require the Defendant to change certain of its business practices.

Midland denies any and all liability to Plaintiffs or the Settlement Class identified below and contends that Plaintiffs and the Settlement Class are not entitled to any form of monetary damages, restitution or injunctive relief. Midland contends that no member of the proposed Settlement Class has suffered any damage or loss. Midland contends that the Annuities contain many features that provide liquidity and are useful savings tools in that they protect the holder against substantial market uncertainties and downturns. Midland further contends that the written materials used to market and sell its Annuities are not misleading, and that it has completely fulfilled its various obligations to Owners of the Annuities as promised in the applicable Annuities.

## 3.   Why is there a class action?

In a class action, one or more people, called Class Representatives (in this case Plaintiffs Mary P. Munoz, Robert D. Kaiser, Nancy Bendzak, as attorney in fact for Mary Bendzak, and Mary Bendzak), sue on behalf of people who have similar claims. All these people are a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. United States District Court Judge Christina A. Snyder is in charge of this case, and she has conditionally certified it as a class action for purposes of settlement.

## 4.   Why is there a Settlement?

The Court did not decide in favor of Plaintiffs or Defendant. Instead, both sides have agreed to a settlement. The Class Representatives and their attorneys think the Settlement is in the best interest of the Settlement Class.

# WHO IS IN THE SETTLEMENT

To see if you are included in this Settlement, you first have to determine if you are a Settlement Class Member.

## 5.   How do I know if I am part of the Settlement?

The Settlement includes all individuals and trusts (including co-owners, but not corporations or partnerships) who have or had an ownership interest in a deferred annuity listed in section 6 issued by Midland to a person who was 65 years old or older (or if the owner was a trust, the annuitant was 65 years old or older) between January 25, 2001 and June 30, 2007 (the "Class Period"), except individuals who are excluded from the Settlement Class as described in the response to Question 7, below.

## 6.   Do I own a Deferred Annuity included in the Settlement?

To take part in the Settlement, you must own or have owned one of the following annuity products issued by Defendant during the Class Period: APP 10, APP 16, Bonus 5, Bonus 10, Bonus 11, Capstone 7 yr, Capstone 10 yr, Capstone 14 yr, Direct 10, Direct 16, Direct Bonus, Direct Flex, Direct Guarantee, Direct Guarantee Plus, Four Seasons 14 yr, Guarantee Bonus 15, Guarantee Nine, Innovator 7 yr, Innovator 10 yr, Innovator 14 yr, Legacy 10, Legacy Bonus 5, Legacy Bonus 11, Legacy Select, Mainstreet 4 yr, MNL 5, MNL 6, MNL 10, MNL Flex I, MNL Flex I-ROP, MNL Flex II, MNL Flex II-ROP, MNL Flex III, MNL Flex III-ROP, MNL Leader, MNL Legacy, MNL Select 6 yr 5% PF, MNL Select 6 yr 10% PF, MNL Select 8 yr 5% PF, MNL Select 10 yr 10% PF, MNL Select 14 yr 5% PF, Paragon 7 yr, Paragon 10 yr, Paragon 14 yr, Paragon Plus 7 yr, Paragon Plus 10 yr, Paragon Plus 14 yr, Prosperity 7 yr, Prosperity 10 yr, Prosperity 14 yr, Veridian, Veridian 7, Veridian Bonus 10, Veridian Plus, Veridian Power 5, Veridian Power 7, Veridian Power 10, Veridian Preferred 5, Veridian Preferred 7, and Veridian Select. The foregoing list of annuity products are the marketing names for the products as reflected in Defendant's policy administration system. If you are an addressee of this Notice,

Midland's records indicate that you are or were the Owner of one of the foregoing products.  If, however, you have a question about the application of this Settlement to a particular annuity, you may contact the Settlement Administrator.  See Question 24.

## 7.   Are there exceptions to being included in the Settlement Class?

Yes.  The following persons are not included in the Settlement Class: those persons: (a) who have or had an ownership interest in an Annuity (i) for which a death benefit became payable, and for which the full accumulation value was paid in full without surrender charge prior to ____, 2010, (ii) that was issued, but not accepted, or was returned to Midland during the free look period provided with respect to the Annuity or otherwise rescinded, (iii) that was surrendered in full without having incurred a surrender charge, (iv) that was Annuitized and the Annuity Payments have ceased, or (v) that was purchased by a natural person under age 65, and in which no person age 65 or older had an ownership interest at the time of purchase; (b) who signed a document that released Midland from any further claims concerning the Annuity; (c) whose rights and claims respecting the Annuity have been finally adjudicated in a court of law; (d) who are or were members of the Board of Directors, officers or employees of Midland at any time during the Class Period, as well as the affiliates, legal representatives, attorneys, successors, or assigns of Midland; (e) who are or were judges, justices, or judicial officials presiding over the Action and the staff and immediate family of such judges, justices or officials, and all persons hired to administer the terms of the Settlement; or (f) who make a valid election to be excluded from the Class as discussed in the answer to Question 14 below.  Also, as stated above, the Settlement Class does not include members of the settlement class in Peterman v. North American and owners of fixed index annuities issued by Midland in Hawaii from May 3, 2001, to July 25, 2006, to persons age 65 or older at the time of issuance.

## 8.   Are beneficiaries of deceased contract owners entitled to relief?

Beneficiaries of deceased contract owners are not included in the Class and are not entitled to relief, but the spouses of deceased owners who elect or elected to continue the Annuity are eligible for an Annuitization Bonus if the Annuity is still Active.

## 9.   Does this settlement cancel my Annuity contract?

No.  No matter what you decide to do in response to this Settlement – submit a Claim Form, Exclude yourself, Object or Do Nothing, your Annuity contract will not be terminated by the Settlement and the future rights and benefits provided by your Annuity, if it is still in effect, will continue, although Claims with respect to the Annuities that relate to or arise out of facts, events, or transactions that have occurred or were in existence at any time prior to the entry of the Final Order and Judgment will be released.

## 10.   I'm still not sure if I am included in the Settlement Class.

If you are not sure whether you are included in the Settlement Class, call [**ADMINISTRATOR CONTACT**].

# THE SETTLEMENT BENEFITS – WHAT YOU GET

## 11.   What benefits does the Settlement provide?

If the Settlement is approved by the Court and you are a member of the Class and do not exclude yourself from the Settlement, you may receive one of the Settlement benefits Midland would provide, all of which are described further in sections A, B, and C of this answer:

(1) If you have an Active Deferred Annuity or have fully surrendered your Annuity, you may apply for Surrender Charge Reduction Benefits through the Claims Review Process; approval of such Benefits is subject to satisfaction of certain eligibility criteria.

(2)  If you have an Active Deferred Annuity, you may receive the Annuitizaton Bonus, which provides an increase in Annuity Payments guaranteed by the Annuities, subject to certain conditions.

(3)  Those Class Members who have already annuitized their Annuity before ____, 2010 will automatically receive a 2% annual enhancement to the Annuity Payments made after the Implementation Date, as discussed below in subsection C.

If you want to apply for Surrender Charge Reduction Benefits, you must complete and submit the enclosed Claim Form.  By default, if you do not submit a Claim Form, you will be eligible for the Annuitization Bonus if you have an Active Deferred Annuity**.**  In the event you apply for but do not qualify for Surrender Charge Reduction Benefits, you will still be eligible for the Annuitization Bonus if you have an Active Deferred Annuity.

The Settlement does not require you to Annuitize your Annuity.

Please note that the Court has not expressed any opinion regarding the taxability of any benefits received under the terms of the Settlement.  Any payments to the Settlement Class may be treated and reported as taxable transactions.  You should address any questions regarding taxes to your tax advisor.

## A.     ANNUITIZATION BONUS

If you have an Active Deferred Annuity and do not submit a Claim Form that is approved, you may receive an Annuitization Bonus if, after the entry of the Court's Final Order and Judgment approving the Settlement, you choose to convert your Annuity to periodic payments (called "Annuitization") over a Qualifying Period.  A Qualifying Period is a time that extends until the later of the death of the Annuitant, or the later death of joint Annuitants, and the expiration of ten years after Annuitization.  The Annuitization Bonus may be of interest to you if you have not incurred and do not expect to incur surrender charges with respect to your Annuity and would like, or would prefer, an increase to the Accumulation Value of your Annuity at the time of Annuitization.  Upon Annuitization, Midland will increase the Accumulation Value of your Active Deferred Annuity by a percentage based on the duration of your Annuity.  That increased Accumulation Value, together with the rates set forth in your Annuity for the corresponding settlement option, will be used to determine the amount of your periodic payments.  No claim form is required for this relief. In addition, upon Annuitization of any Annuity, the Accumulation Value of the Annuity will be used to determine the benefit amount in conjunction with the rates set forth in the Annuity if you elect payments over a Qualifying Period.  The Annuitization Bonus, when applicable, will be added to the Accumulation Value and will be an amount equal to a percentage of the Annuity's Accumulation Value of the date of Annuitization.  The applicable percentage will be determined by the duration of the Annuity, as set forth in the following table:

| Duration of Policy (Years) | Bonus Percentage |
| --- | --- |
| 0-4 | 0 |
| 5-9 | 3.3 |
| 10 | 4.4 |
| 11 | 5.5 |
| 12 | 6.6 |
| 13 | 7.7 |
| 14 | 8.8 |
| 15 | 9.9 |
| 16+ | 11.0 |

I

## B.     SURRENDER CHARGE REDUCTION BENEFITS

As an alternative to the Annuitization Bonus, you may submit a Claim Form and apply for Surrender Charge Reduction Benefits. Surrender Charge Reduction Benefits are intended for Class Members who are concerned about incurring Surrender Charges under their Annuity, or for Class Members who have already paid Surrender Charges on a full or partial surrender under their Annuity.  You may apply for Surrender Charge Reduction Benefits if you have an Active Deferred Annuity and are considering the full or partial surrender of the Annuity or if you have already surrendered your Annuity and incurred a Surrender Charge.  Class Members who are awarded Surrender Charge Reduction Benefits cannot receive the Annuitization Bonus.

To apply for Surrender Charge Reduction Benefits, you must submit a Claim Form and provide, under penalty of perjury, certain information concerning your purchase of the Annuity, your living and medical expenses, and your financial circumstances.  You must then submit the completed Claim Form to the Administrator no later than _____, 2010. If you own more than one Annuity and wish to elect the Claim Review Process, you must submit a separate Claim Form for each Annuity.

Owners of Active Deferred Annuities may be eligible for Surrender Charge Reduction Benefits in the form of a 40% or 75% reduction in applicable Surrender Charges on their existing Annuities.  The Surrender Charge Reduction Benefit for qualifying Owners who have paid Surrender Charges on a full or partial surrender of their Annuities is a refund of either 40% or 75% of Surrender Charges paid.  Eligibility for Surrender Charge Reduction Benefits and the amount of those benefits (40% or 75%) will be determined by a third party administrator based on the information you provide in the Claim Form.  It is therefore important that you provide accurate and complete information, under penalty of perjury, in response to the questions on the Claim Form.  Class Members with Active Deferred Annuities who apply for but are not awarded Surrender Charge Reduction Benefits will still be eligible to receive the Annuitization Bonus.

The 40% (Lower Tier Benefits) and 75% (Upper Tier Benefits) reduction in applicable Surrender Charges may be adjusted to lower percentages depending on whether the approved Claims exceed either the Limit on Approved Claims for Lower Tier Benefits or the Limit on Approved Claims for Upper Tier Benefits, as fully described in Section V.G. of the Settlement Agreement.  If you have questions regarding the potential adjustments, please refer to the Settlement Agreement or call **[ADMINISTRATOR CONTACT]**.

## C.     ANNUITIZED CONTRACTS

Class members whose Annuities that have already been Annuitized on or prior to the date of entry of the Final Order and Judgment will not qualify for the above-mentioned Settlement benefits for their Annuitized contracts.  For these contracts, Class Members will automatically receive a 2% increase to each periodic payment made after the Implementation Date.

**12.   When would I get my Settlement Benefit?**

The Court will hold a hearing on _____, 20__, called the Fairness Hearing, to decide whether to approve the Settlement.  If the Court approves the Settlement, there may be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  Also, if you elect to submit a Claim through the Claim Review Process, the Administrator will need some time to review your Claim and determine if you qualify for the Surrender Charge Reduction Benefit at one of the two levels.  This process will take several months.  Please be patient.  Benefits will not take effect until the Implementation Date, which will occur on the tenth day in the second calendar month after the month in which the Court's approval of the Settlement (if the Court approves the Settlement), becomes final and non-reviewable.

**13.   What am I giving up to get a payment or stay in the Settlement Class?**

Unless you exclude yourself, you are staying in the Class, and that means:  (1) that you can't sue, continue to sue, or be part of any other lawsuit, arbitration or other legal proceeding against Midland relating in any way to the Annuities at issue in this litigation; and (2) that you release all claims for damages or other legal remedies – including any claims presently unknown to you – relating in any way to the Annuities at issue in this litigation, if they concern, relate to, or arise out of facts, events, or transactions that have occurred or are in existence at any time prior to the Final Order and Judgment.  If you want to know more about this release of claims, you should review Section IX. of the Settlement Agreement, a copy of which is set forth as Appendix A to this Notice.  To obtain a complete copy of the Settlement Agreement, see Question and Answer 24.  Also, if you do not exclude yourself from the Settlement, all of the Court's orders will apply to you and legally bind you, even if you had objected to the proposed Settlement.

With respect to all Released Claims, Settlement Class Members agree that they are expressly waiving and relinquishing to the fullest extent permitted by law (i) the provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor.**

and (ii) the provisions of any statute or principle of law of any state or federal jurisdiction that might otherwise be applicable, or similar, comparable or equivalent to Section 1542 of the California Civil Code.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to be subject to the Settlement or you want to keep the right to sue or continue to sue Defendant on your own with respect to claims relating in any way to your Annuity, then you must take steps to get out of the Settlement.  This is called excluding yourself – or is sometimes referred to as opting out of the Settlement Class.

**14.   How do I get out of the Settlement?**

If you do not want to be part of the Settlement Class, you may exclude yourself or "opt out."  If you exclude yourself, you will not be entitled to any Settlement benefits described in this Notice, and you will not be bound by the Release.

To exclude yourself from the proposed Settlement, you must submit a written request.  This written request must be signed by you and must include:  your name, address, social security number, the contract number(s) of the Annuity or Annuities at issue, and a statement that you are requesting exclusion from the Settlement Class in *In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation*, MDL No. 07-1825 (CAS).  You must **mail** your signed request for exclusion in care of the Settlement Administrator at the following address:

*In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation* Settlement Administrator
c/o **[INSERT ADMINISTRATOR INFORMATION]**

**THE ENVELOPE CONTAINING YOUR SIGNED REQUEST FOR EXCLUSION MUST BE POSTMARKED BY NO LATER THAN [EXCLUSION DEADLINE]**

You cannot exclude yourself on the phone or by e-mail.  If your signed request for exclusion is not mailed with a postmark on or before _____, 2010, it will be ineffective and you will be part of the Settlement Class, and bound by all orders and judgments entered in connection with the Settlement, including the Release and Waiver.

**15.   If I don't exclude myself, can I sue Defendant for the same thing later?**

No.  Unless you exclude yourself, you give up the right to sue Defendant for the claims that this Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit about this Notice immediately.  You must exclude yourself from this Class to continue your own lawsuit.  Remember, the exclusion deadline is _____, 2010.

# THE LAWYERS REPRESENTING YOU

## 16.   Do I have a lawyer in this case?

Yes.  The Court appointed the following law firms to represent the Settlement Class:   Bonnett, Fairbourn, Friedman & Balint, P.C. Robbins Geller Rudman & Dowd LLP, Barrack, Rodos & Bacine, Finkelstein & Krinsk, Waters & Kraus LLP, James Hoyer Necomer & Smiljanich, P.A. and Hagens Berman Sobol Shapiro LLP.  Together the law firms are called Class Counsel.  You will not be charged for the services of these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 17.   How will the lawyers be paid?

No later than _____, 2010 [**NO LATER THAN 59 DAYS PRIOR TO THE FINAL APPROVAL HEARING**], Class Counsel will file with the Court their petition for approval of an award of attorneys' fees and costs of up to $13,970,000.  The Court may award less than these amounts.  Midland will separately pay the attorneys' fees and expenses, up to $13,970,000, that the Court awards. Midland has agreed not to oppose a request for attorneys' fees and expenses up to $13,970,000.  These payments will not affect the benefits available to Settlement Class Members.  Class Counsel will file this fee petition two weeks prior to the deadline for filing objections to the Settlement Agreement.

## 18.   What payments will be made to the Class Representatives?

Class Counsel will ask the Court to award the Class Representatives Mary P. Munoz, Robert D. Kaiser, and Mary Bendzak a total of no more than $30,000 ($10,000 for each Class Representative) as service awards.  Midland will separately pay the service awards, up to $30,000, that the Court awards.  Midland has agreed not to oppose a request for service awards up to $30,000 total.  These payments will not affect the benefits available to Settlement Class Members.  Class Counsel will file this request two weeks prior to the deadline for objections to the Settlement Agreement.

## 19.   Who will pay the Settlement Administrator?

Midland will pay the costs and fees of the Settlement Administrator, which will not be deducted from the benefits available to Settlement Class Members.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some part of it.

## 20.   How do I tell the Court that I do not like the Settlement?

If you are a Settlement Class Member, you can object to the Settlement if you do not like any part of it.  The Court will consider your views in connection with the Fairness Hearing described below.  To object, you must send your objection in writing, saying that you object to the proposed Settlement.  You may not object if you excluded yourself from the Settlement.

If you wish to object to the proposed Settlement, you must file your written objection with the Clerk of the Court, [**CONTACT INFO**], and deliver a copy to Class Counsel and Defendant's Counsel at the addresses listed below.  The objection must be in writing and must be filed and served on Parties' counsel no later than _____, 2010.  An objection that is not timely and properly made shall be forever barred.

All objections must contain the following:  (i) the objecting party's name, address, telephone number, social security number, and, if applicable, Annuity number(s); (ii) the factual basis and legal grounds for the objection; and (iii) the signature of the individual who is objecting.

| **Class Counsel** | **Defendant's Counsel** |
|---|---|
| Andrew S. Friedman | |
| Bonnett, Fairbourn, Friedman & Balint, P.C. | |
| 2901 N. Central Avenue, Suite 1000 | |
| Phoenix, AZ  85012 | |
| | |
| Theodore J. Pintar | Robert D. Phillips, Jr. |
| Robbins Geller Rudman & Dowd LLP | Reed Smith LLP |
| 655 West Broadway, Suite 1900 | 355 South Grand Avenue, Suite 2900 |
| San Diego, CA 92101 | Los Angeles, CA 90071 |

## 21.   What is the difference between objecting and excluding?

Objecting is simply telling the Court that you do not like something about the Settlement.  You can object only if you stay in the Settlement Class.  If you object, you will remain in the Settlement Class and will be bound by the Settlement, even if the Court disagrees with you and approves the Settlement over your objection.  (You may submit a Claim Form and apply for Surrender Charge Reduction Benefits without waiving your objection to the Settlement.)  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement.  You may attend and you may ask to speak, but you don't have to.

## 22.   When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at 10:00 a.m. on ____, 20__ (or such continued dates or times as the Court may direct without further notice to the Class) in Courtroom 5, Second Floor, located at 312 North Spring Street, Los Angeles, California 90012.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  The Court may listen to people who, prior to the hearing, have asked to speak at the hearing.  The Court will also decide how much to pay Class Counsel and whether to approve the service awards to the Class Representatives.  After the hearing, the Court will issue its decision on the matters addressed at the Fairness Hearing.  We do not know when that decision will be made.

## 23.   Do I have to come to the Fairness Hearing?

No.  Class Counsel will answer questions that the Court may have.  You are welcome to come at your own expense.  If you send an objection, you do not have to come to Court to talk about it.  As long as you filed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must do two things: First, you must object to the Settlement in accordance with the procedures described above in the response to Question 20.  Second, you must file a Notice of Intention to Appear at the Fairness Hearing with the Clerk of the Court, [**INSERT INFO**], and deliver a copy to Parties' counsel at the addresses listed above, under Question 20.  The Notice of Intention to Appear must be in writing and must be filed and served on Parties' counsel no later than [**INSERT INFO**].  Be sure to include your name, address, telephone number, and your signature on your Notice of Intention to Appear.  You cannot speak at the hearing if you do not follow these procedures or if you excluded yourself.

# GETTING MORE INFORMATION

## 24.   How do I get more information about the Settlement?

This Notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement or Class Counsel's petition for approval of fees and costs, once the petition is filed, by visiting the Settlement website at www._____.com, by writing to the *In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation* Settlement Administrator, [**CONTACT INFO**], or by calling [**CONTACT INFO**]..

# IMPORTANT DATES

## 25.   What are the important dates and deadlines relating to the Settlement?

| Deadline | Event |
|---|---|
| _____, 2010 | Last day to submit a request for exclusion from the proposed Settlement |
| _____, 2010 | Class Counsel will file a petition for approval of an award of attorneys' fees and costs and request for service awards for Class Representatives Mary P. Munoz, Robert D. Kaiser, and Mary Bendzak |
| _____, 2010 | Last day to submit objections to the proposed Settlement |
| _____, 2010 | Last day to file Notice of Intent to Appear |
| _____, 2010 | Last day to submit a Claim Form for Reduced Surrender Charge Benefits |
| _____, 20__ | Fairness Hearing |

Dated: ████████████                                    /s/ Christina A Snyder
                                                       Honorable Christina A Snyder

QUESTIONS?  CALL [INSERT NUMBER] TOLL FREE

**Appendix A**

**Section IX of Settlement Agreement**

**Released Claims**

IX.   **RELEASE AND WAIVER**

A.   <u>Release and Waiver – Definitions</u>

For purposes of this release and waiver (the "Release"):

1.       "Releasees" means, individually and collectively, Midland, its past, present and future parent companies, subsidiaries, affiliates, predecessors, successors and assigns, together with all of its and their present, former, and future officers, directors, shareholders, insurers, employees, attorneys, legal representatives, and agents (including, without limitation, those acting on behalf of Midland and within the scope of their agency) and their predecessors, successors and assigns.

2.       "Released Claims" means any and all past, present or future claims, complaints, causes of action, allegations of liability, damages, restitution, equitable, legal or other interest, or demands or rights, whether known or unknown, that concern, refer or relate to, or arise out of, in whole or in part any facts, events or transactions relating to the Annuities that have occurred or were in existence at any time prior to the entry of the Final Order and Judgment, including, without limitation:

a.       the offering of advice in any manner related to the Annuities;

b.       the design, marketing, solicitation, sale, appropriateness or administration of the Annuities;

c.       any disclosures or advertising related to the Annuities, whether written or oral;

d.       the computation and crediting of interest to policy accounts; or

e.       the calculation and availability of any accumulation or surrender values, or annuity payments, or the exercise of any rights under the Annuities.

Without limiting the foregoing, "Released Claims" include, but are not limited to, all claims that were asserted in the Action, or that could have been asserted against Midland before any court, arbitration panel, or regulatory or administrative agency based on or related to facts alleged in any of the complaints filed in this Action, whether or not brought directly, indirectly, on a representative basis, or otherwise.

B.    Release

Upon the Final Settlement Date, Plaintiffs and every Class Member, for themselves, their attorneys, spouses, beneficiaries, executors, conservators, personal representatives, wards, heirs, predecessors, successors, affiliates, agents and assigns, in consideration of the benefits set forth in this Agreement, fully and finally release Releasees from all Released Claims.

C.    Waiver Under California Civil Code Section 1542 (and Similar Provisions)

1.    The Parties acknowledge that it is possible that unknown losses or claims exist or might exist or that present losses may have been underestimated in amount. Plaintiffs and every member of the Class are deemed to acknowledge and understand that they are familiar with principles of law such as and including Section 1542 of the Civil Code of the State of California, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

2.    Plaintiffs and the Class are hereby deemed to agree that Section 1542 and all similar federal or state laws, rules or legal principles of any other jurisdiction are knowingly and voluntarily waived by Plaintiffs and the Class in connection with the Released Claims as defined in the foregoing paragraphs of this Release, and Plaintiffs and the Class are deemed to agree that this is an essential term of this Agreement.    Plaintiffs and the Class are also deemed to acknowledge and understand that they may later discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now believe to be true

- 11 -

with respect to the matters released in this Agreement.  Nevertheless, it is the intention of Plaintiffs and the Class to fully, finally, and forever settle and release all matters with Releasees that exist, hereafter may exist, or might have existed constituting Released Claims as defined under this Agreement.

3.      Plaintiffs acknowledge that Class Counsel have advised them and that they are familiar with the provisions of Section 1542 of the California Civil Code, as well as the provisions of any and all comparable or similar statutes or principles of law of any other state or federal jurisdiction that might otherwise be deemed applicable, and that, being aware of Section 1542 and other similar statutes or principles of law, Plaintiffs expressly waive any and all rights and benefits conferred by Section 1542 or other similar statutes or principles of law on behalf of themselves, and on behalf of the Class.  Plaintiffs admit to full knowledge and understanding of the consequences and effect of this waiver.

D.      <u>Additional Conditions of Release</u>

1.      Nothing in this Release shall preclude any action to enforce the terms of the Agreement, including participation in any of the processes detailed therein.

2.      Plaintiffs expressly agree that this Release shall be, and may be raised as, a complete defense to, and will preclude, any action or proceeding encompassed by the release of Releasees herein, and as a bar from indemnity and contribution claims arising out of the Released Claims herein.

3.      No Plaintiff or Class Member may participate in any settlement or other relief sought in any action brought on behalf of the Plaintiffs or any Class Members by any state or federal government officials or agencies pertaining to any Released Claims.

4.      Each Plaintiff and each Class Member, for himself or herself, his or her attorneys, spouse, beneficiaries, executors, conservators, personal representatives, wards, heirs, predecessors, successors, and assigns agrees not to file an appeal from or otherwise seek review of any order approving this Settlement Agreement.

5.      It is the intention of the Plaintiffs, on behalf of themselves and the Class Members, in executing this Release to fully, finally, and forever settle and release all matters and all claims released under this Section.

Exhibit C

## EXHIBIT C

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| IN RE MIDLAND NATIONAL LIFE INSURANCE CO. ANNUITY SALES PRACTICES LITIGATION | MDL NO. 07-1825 CAS (MANx) |
| _____ | |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS. | |

### CLAIM FORM FOR SURRENDER CHARGE REDUCTION BENEFITS

#### I.      INSTRUCTIONS

This Claim Form is for Class Members who want to apply for Surrender Charge Reduction Benefits.   You must submit a separate Claim Form for each Annuity for which you are listed as an Owner if you want to apply for Surrender Charge Reduction Benefits. If you do not submit a Claim Form and the Court approves the Settlement, you will be eligible for an Annuitization Bonus on the terms and conditions described in the Settlement Agreement and the Class Notice if your Annuity is still Active.  (An Active Annuity is one that has not been surrendered or converted to periodic payments made or to be made by Midland and no death benefit has become payable, except if the Annuity was continued in effect by the surviving spouse.  It is one that still has an Accumulation Value to which additional interest may be credited.)  If you do not want Surrender Charge Reduction Benefits, you do not need to submit a Claim Form.

DEADLINE FOR SUBMISSION:  To participate in the Claims Review Process, this Claim Form must be properly completed and returned to the following address by U.S. mail bearing a postmark date of not later than _____, 2010.

Midland National Class Action Information Center
{-----------------ADDRESS--------------------}

A self-addressed envelope has been provided for your use in returning this Claim Form. Proper postage must be affixed.

If this Claim Form is not returned, is returned but postmarked after the deadline stated above, or is timely returned but does not comply with the instructions specified in this Claim Form, you will not be eligible for Surrender Charge Reduction Benefits, However, if the Court approves the Settlement, you will be eligible for an Annuitization Bonus on the terms and conditions described in the Settlement Agreement and the Class Notice if your Annuity is still Active.

1

If you have any questions, please call the Midland National Class Action Information Center at 1-8XX-XXX-XXXX (The hearing impaired should email questions to _____@_____).

## II.      OWNER AND ANNUITY IDENTIFICATION:

Owner Name(s) & Address(es):                    Policy No. [to be pre-printed on form]_____

[to be pre-printed on form]_____

_____

_____

If the address above is incorrect, provide correct address information here:

## III.      SURRENDER CHARGE REDUCTION BENEFITS

A.  General Instructions

If you want Surrender Charge Reduction Benefits, please answer the following Questions.  Your responses will be reviewed by the Settlement Administrator to determine the level of benefits, if any, you may receive under the Claims Review Process. You may attach copies of any documents you deem relevant, but you are NOT required to do so.  Any documents you attach will NOT be returned to you, so please make sure you send no original documents. Please provide a complete answer for every question on the Claim Form.  If you leave a question blank, the Administrator will assume that your answer to that question is no, or in the negative.  Attach additional pages if necessary to complete your answers.  The Settlement Administrator will notify you once Claim processing is completed and the Settlement becomes final, if it is approved by the Court.

If you were not the original purchaser of the Annuity, you may either skip Question 1, in which case the answer will be treated as "no," or you may obtain a statement from the original purchaser providing the requested information, in which case the statement at the bottom of the form with respect to responses to Question 1 provided by persons who were not the original purchaser must be signed and dated by the original purchaser.

B.  Instructions For Annuities Owned By Trusts

If the Annuity is owned by a revocable trust, the answers to all questions should be completed by the settlor for the trust, and "you" refers to the settlor.

2

If the Annuity is owned by an irrevocable trust, only question 1 needs to be answered, and it must be answered by a person with first hand knowledge of the purchase of the Annuity, and "you" refers to the person who purchased the Annuity.

C.  Questions to be Answered

    1.  Do you believe you were misled regarding the applicable Surrender Charges, right to Annuitize or other policy benefits when you purchased your Annuity?
       ___ Yes   ___ No

       If Yes, please explain how, by whom, and the nature of the Misrepresentation:

_____
_____
_____
_____
_____
_____
_____
_____

    2.  Did you incur a Surrender Charge on a withdrawal from the Annuity in the past, or do you now need to withdraw funds from the Annuity in excess of the penalty free amount and thereby incur a Surrender Charge, because you needed the funds at the time of the past surrender or now need the funds to pay for any of the following:

       (Please check any or all that apply)

       A. _____medical expenses;

       Please describe the medical expenses: _____

_____
_____
_____

       B. _____nursing or home care;

       Please describe the nursing or home care expenses:_____

_____
_____
_____

       C. _____retention of the your sole residence; or

       Please describe the expenses for retention of your sole residence:_____

_____
_____
_____

3

D.  _____ other expenses necessary for food, rent, necessary housing repairs and upkeep,

utilities, and/or transportation for you or a member of your household;

If you are claiming any expenses under "D," explain and describe the nature of those expenses and why you could not or cannot afford these expenses under your financial circumstances without surrendering or withdrawing funds from your Annuity beyond the amount you may withdraw without Surrender Charges.  Please provide a reasonable level of detail for each type of expense that you identified: _____
_____
_____
_____

3.  What is your current annual income from all sources, including both earned income and income from wages, dividends, interest, capital gains, pension or retirement plan payments, annuities, and social security? _____

4.  What is your net worth, which is the value of any money, investments or other assets, minus any debts or liabilities, excluding the equity in your primary residence and any debts owed on your primary residence? _____

5.  Are you an original Owner of the Annuity ? ___ Yes    ___ No

6.  If your answer to Question No. 5 is no, was one of the original Owners of the Annuity age 65 or over at the time the Annuity was issued? ___ Yes    ___ No

**<u>REQUIRED SIGNATURES:</u>**

One or more of the current Owners of the applicable Annuity must sign and date the statement below.

If more than one person or entity has an ownership interest in the Annuity, but only one Owner is executing this Claim Form, by signing the Claim Form, he or she is representing that he or she is authorized to elect the form of relief with respect to the Annuity on behalf of all co-Owners.

-------------------------------

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

_____          _____
**Signature of Owner**                                            **Signature of Co-Owner**

4

**Printed Name of Owner:**                        **Printed Name of Co-Owner:**

_____      _____

**Date:** _____      **Date:** _____

IF THE INFORMATION PROVIDED IN RESPONSE TO QUESTION 1 ABOVE WAS PROVIDED BY A PERSON OTHER THAN THE CURRENT OWNER, THAT PERSON MUST SIGN AND DATE THE FOLLOWING STATEMENT:

**I declare under penalty of perjury under the laws of the United States of America that the information provided in response to Question 1 above is true and correct.**

_____

**Signature of Person Providing Response to Question 1 Above**

**Printed Name and Address of Person Providing Response to Question 1 Above:**

_____

**Name**

_____

_____

_____

**Address**

**Date:** _____

*********************************

*********************************

**IT IS RECOMMENDED THAT YOU KEEP A COPY OF THE COMPLETED CLAIM FORM FOR YOUR RECORDS.**

5

Exhibit D

1

**EXHIBIT D**

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

WESTERN DIVISION

11

12

IN RE MIDLAND NATIONAL LIFE
INSURANCE CO. ANNUITY SALES
PRACTICES LITIGATION

13

14

_____

THIS DOCUMENT RELATES TO:

15

16

ALL ACTIONS.

17

_____

MDL NO. 07-1825 CAS (MANx)

Honorable Christina A. Snyder

**[PROPOSED] FINDINGS AND
ORDER PRELIMINARILY
APPROVING CLASS
SETTLEMENT, DIRECTING
ISSUANCE OF NOTICE TO THE
CLASS, AND SETTING OF
FAIRNESS HEARING**

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1      The motion of Plaintiffs Mary P. Munoz, Robert D. Kaiser, Nancy Bendzak, as

2    attorney-in-fact for Mary Bendzak, and Mary Bendzak, individually and on behalf of

3    the Class as defined in the Settlement Agreement (collectively "Plaintiffs"), for

4    preliminary approval of the proposed class action Settlement reached with Defendant

5    Midland Life Insurance Company ("Midland") came on for hearing before this Court

6    on _____ ___, 2010 **{insert Preliminary Approval Hearing Date}**.

7    _____ appeared as attorney for Midland, and _____

8    appeared as attorney for Plaintiffs.  After considering the Settlement Agreement, the

9    moving papers, arguments of counsel and all other matters presented to the Court, the

10   Court finds that:

11      1.    Plaintiffs filed a Consolidated Class Action Complaint in this MDL

12   proceeding on June 4, 2007, alleging civil RICO, elder abuse, unlawful, deceptive and

13   unfair business practices, unfair, deceptive and misleading advertising, breach of

14   fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, fraudulent

15   misrepresentation, negligent misrepresentation, fraudulent inducement, civil

16   conspiracy, unjust enrichment, and imposition of constructive trust.

17      2.    Midland expressly denies any and all wrongdoing alleged in the

18   pleadings and Plaintiffs' other filings, and does not admit or concede any actual or

19   potential fault, wrongdoing, or liability in connection with any facts or claims that

20   have been or could have been alleged against it in the Action.  Midland contends that

21   Plaintiffs' allegations do not state a cause of action and are not sustainable as a matter

22   of law.  In addition, Midland contends that Plaintiffs would be unable to prove the

23   elements of the causes of action at trial, and that this would be fatal to both individual

24   and class claims.  In this regard, Midland contends that it would be inappropriate to

25   certify a litigation class in this matter, in part due to the manageability and superiority

26   problems inherent in presenting the case in a trial involving thousands of

27   individualized sales.

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

3.      The proposed Settlement resulted from numerous arm's-length mediation sessions and was concluded only after Plaintiffs and Midland conducted their own investigations and evaluations of the factual and legal issues raised by Plaintiffs' claims, as well as Midland's defenses.

4.      Plaintiffs and Class Counsel have agreed to settle the Action after considering such factors as (a) the benefits to Plaintiffs and the Class provided by the Settlement Agreement; (b) the risks and uncertainty of litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (c) the desirability of consummating the Settlement Agreement in order to provide relief to Plaintiffs and the Class.  Midland considers it desirable for this Action to be settled and dismissed because this proposed Settlement will finally put Plaintiffs' claims and the underlying matters to rest.  Midland is also entering into this Settlement Agreement to avoid the expense, burden, inconvenience, and inherent risk of litigation and the concomitant disruption of its business operations.

5.      The Parties have entered into a Settlement Agreement previously filed with this Court.

6.      The Court has reviewed the Settlement Agreement (and all the attachments thereto) and determined the proposed Settlement to be fair, reasonable, adequate and within the range of possible approval.  The proposed Settlement does not improperly grant preferential treatment to the Class Representatives or any segment of the Class.  The proposed Settlement is sufficient to warrant sending notice to the Class.  The procedures for establishing and administering the benefits provided by the proposed Settlement and for notice of the proposed Settlement, exclusion from the proposed Settlement, and objections to the proposed Settlement are fair, reasonable, and in the best interests of the Class.

7.      Based on Plaintiffs' motion, the Memorandum of Points and Authorities, the Settlement Agreement, and all supporting exhibits and attachments, the Court preliminarily certifies the Class, as defined in Section II.A.18. of the Settlement

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    Agreement, pursuant to Rule 23(a) and 23(b)(3) for settlement purposes.  The Court

2    hereby finds for settlement purposes that:

3         (a)    the numerosity requirement of Rule 23(a)(1) is satisfied because

4    the proposed settlement Class comprised of more than _____ Owners of over

5    _____ Annuities satisfies the requirement that a class be sufficiently

6    numerous such that joinder of all members is impractical;

7         (b)    the commonality requirement of Rule 23(a)(2) is satisfied because

8    the Midland products owned by the various Class Members have some similar

9    elements;

10        (c)    the typicality requirement of Rule 23(a)(3) is satisfied because the

11   products provided to Plaintiffs were similar to those provided to members of the

12   Class;

13        (d)    the adequacy requirement of Rule 23(a)(4) is satisfied because (i)

14   Class Counsel are qualified and competent to prosecute the Action vigorously, (ii)

15   Plaintiffs' interests are not antagonistic to the interests of the Class, and (iii) Class

16   Counsel and Plaintiffs have fairly and adequately protected the interests of the Class;

17   and

18        (e)    common questions "'predominate over any questions affecting

19   only individual members'" and "class resolution [is] 'superior to other available

20   methods for the fair and efficient adjudication of the controversy.'"  *Amchem*

21   *Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

22        8.    The Court has reviewed the notice provisions of Section VI. of the

23   Settlement Agreement, and the Class Notice Package, including the Class Notice and

24   the Claim Form attached to the Settlement Agreement as Exhibits B and C.  The Court

25   has determined that mailing the Class Notice Package to the last known addresses of

26   the Class Members:

27        (a)    constitutes the best practicable notice under the circumstances;

28

1    (b)    is reasonably calculated to apprise Class Members of the pendency

2    of the Action and of their right to object to or exclude themselves from the proposed

3    Settlement;

4    (c)    is reasonable and constitutes due, adequate, and sufficient notice to

5    all persons entitled to receive notice; and

6    (d)    meets all applicable requirements of Rule 23 of the Federal Rules

7    of Civil Procedure, the United States Constitution, and its Amendments.

8    Accordingly, it is hereby ORDERED AND DECREED AS FOLLOWS:

9    1.    The Motion for Preliminary Approval is GRANTED.    The Court

10   preliminarily approves the proposed Settlement.    All defined terms in the foregoing

11   findings and this Order shall have the same meanings as in the Settlement Agreement.

12   2.    The Class, as defined in Section II.A.18. of the Settlement Agreement, is

13   preliminarily certified for settlement purposes only.

14   3.    The Court appoints the law firms of (a) Bonnett, Fairbourn, Friedman &

15   Balint, P.C.; (b) Robbins, Geller, Rudman & Dowd, LLP; (c) Barrack Rodos &

16   Bacine; (d) Finkelstein & Krinsk; (e) Waters & Kraus LLP; (f) James Hoyer

17   Newcomer & Smiljanich, P.A.; and (g) Hagens Berman Sobol Shapiro LLP as Class

18   Counsel.    For settlement purposes only, the Court appoints Mary P. Munoz, Robert D.

19   Kaiser, Nancy Bendzak, as attorney-in-fact for Mary Bendzak, and Mary Bendzak as

20   the Class Representatives.

21   4.    A hearing (the "Fairness Hearing") will be held on _____ __,

22   _____ {a date that is not less than 126 days after entry of this Order} at _____

23   [a.m./p.m.] before the undersigned in the United States District Court for the Central

24   District of California, Western Division, to consider the fairness, reasonableness, and

25   adequacy of the proposed Settlement and whether it should be finally approved by the

26   Court.

27   5.    The Court approves the proposed Class Notice Package and the plan for

28   giving notice.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

6.    Midland and Class Counsel are authorized to:

(a)    establish the means necessary to administer the proposed Settlement, in accordance with the terms of the Settlement Agreement; and

(b)    retain an Administrator to help administer the proposed Settlement, including the notice provisions.

7.    The Court appoints _____ as the initial Administrator to implement the terms of the Settlement Agreement.

8.    The Administrator shall mail the Class Notice Package to each Class Member by first-class mail, postage prepaid, to his or her last known address no later than 28 days after entry of this Order, as described in the Settlement Agreement.

9.    The Administrator shall file proof of the mailing of the Class Notice Packages at or before the Fairness Hearing.

10.    Class Counsel shall file their petition for approval of Class Counsel's fees and expenses no later than 59 days prior to the Fairness Hearing.

11.    Midland is prohibited from communicating with Class Members about the Action or the Settlement, but Midland is not precluded from:

(a)    speaking to Class Members in the ordinary course of Midland's business, provided that if Class Members contact Midland regarding the Action or the Settlement, Midland shall direct such Class Members to contact Class Counsel; or

(b)    communicating with agents and employees of Midland or communicating with its auditors, rating agencies, insurance commissioners, regulators or similar reporting organizations or governmental entities regarding the impact and/or administration of the Settlement.

12.    Each Class Member who wishes to exclude himself or herself from the Class must submit an appropriate, timely written request for exclusion, postmarked no later than 53 days after mailing of the Class Notice Package to the Administrator, in care of the address provided in the Class Notice.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

13.     Any Class Member who does not submit a timely, written request for exclusion from the Class shall be bound by all proceedings, orders, and judgments in the Action, even if such Class Member has previously initiated or subsequently initiates individual litigation or other proceedings against Midland relating to Annuities issued during the Class Period.

14.     Each Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement Agreement, the proposed Settlement, or to the award of attorneys' fees and expenses, shall serve on Bonnett, Fairbourn, Friedman & Balint, P.C., Robbins, Geller, Rudman & Dowd, LLP, and Midland Counsel, and file with the Court, no later than or 53 days after mailing of the Class Notice Package, a statement of the objection, as well as the specific reasons, if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of his or her objection, or be forever barred from separately objecting.

15.     Any attorney hired by a Class Member at the Class Member's expense for the purpose of objecting to the Settlement Agreement, the proposed Settlement, or the award of attorneys' fees and expenses, shall file with the Clerk of the Court and deliver to Bonnett, Fairbourn, Friedman & Balint, P.C., Robbins, Geller, Rudman & Dowd, LLP, and Midland Counsel a notice of appearance no later than 53 days after mailing of the Class Notice Package or as the Court otherwise may direct.

16.     Any Class Member who files and serves a written objection and who intends to make an appearance at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense (who has filed a timely notice to appear), shall deliver to Bonnett, Fairbourn, Friedman & Balint, P.C., Robbins, Geller, Rudman & Dowd, LLP, and Midland Counsel, and file with the Court no later than 53 days after mailing of the Class Notice Package a notice of intention to appear at the Fairness Hearing.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

17. The Administrator shall rent one or more post-office boxes to be used for receiving requests for exclusion from the Class and any other communications, and provided that no one other than the Court or the Clerk of the Court and the Administrator shall have access to these post-office boxes.

18. Midland Counsel and Class Counsel shall promptly furnish each other with copies of any and all objections or written requests for exclusion that might come into their possession that are not otherwise provided by the Administrator.

19. All proceedings in the Action are stayed until further order of the Court, except as may be necessary to implement the proposed Settlement or to comply with the terms of the Settlement Agreement. Further, pending the Court's final determination of whether the proposed Settlement will be approved, each and every Class Member who has not excluded himself or herself from the Settlement, the Class Member's representatives, and/or all persons in active concert or participation with such Class Members are barred and enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in, conducting, or continuing, as class members or otherwise, any action, including without limitation a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction), in any federal court, any state court, or any other tribunal or forum of any kind, and from receiving any benefits from any lawsuit, administrative or regulatory proceeding or order in any jurisdiction, arising out of, based on, or relating to the claims, causes of actions, facts, and/or circumstances alleged in the Action and/or the Released Claims.

20. This Order shall become null and void, and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if: (a) the proposed Settlement is not finally approved by the Court, or does not become final, pursuant to the terms of the Settlement Agreement; or (b) the Settlement is terminated in accordance with the terms of the Settlement Agreement or does not become effective

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  as required by the terms of the Settlement Agreement for any other reason.  In such

2  event, the Settlement and Settlement Agreement shall become null and void and be of

3  no further force and effect, and neither the Settlement Agreement nor the Court's

4  orders, including this Order, shall be used or referred to for any purpose whatsoever.

5       21.    In no event shall the Settlement Agreement, any of its provisions, or any

6  negotiations, statements, or proceedings relating to it be offered as, received as, used

7  as, or deemed to be evidence in the Action, any other action, or in any other

8  proceeding, except in a proceeding to enforce the Settlement Agreement.  Without

9  limiting the foregoing, neither the Settlement Agreement nor any related negotiations,

10  statements, or proceedings shall be offered as, used as, or deemed to be evidence or an

11  admission or concession by any person of, any matter, including but not limited to any

12  liability or wrongdoing on the part of Midland or as evidence of the appropriateness of

13  certification of any class.

14       22.    The Court reserves the right to continue the Fairness Hearing without

15  further written notice to the Class, but will notify counsel for the Parties and any

16  objectors or their counsel who have timely filed a notice of intention to appear in these

17  proceedings.  Unless the Court specifically orders otherwise, any such continuance

18  shall not be interpreted to expand or change any deadlines contained in this Order or

19  the Settlement Agreement.

20

21  **IT IS SO ORDERED.**

22

23  DATED: _____.  _____

24                              THE HON. CHRISTINA A. SNYDER

                            UNITED STATES DISTRICT JUDGE

25

26

27

28

Exhibit E

1

**EXHIBIT E**

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

WESTERN DIVISION

11

12

IN RE MIDLAND NATIONAL LIFE
INSURANCE CO. ANNUITY SALES
PRACTICES LITIGATION

13

MDL NO. 07-1825 CAS (MANx)

Honorable Christina A. Snyder

_____

14

**[PROPOSED] FINAL ORDER
APPROVING CLASS ACTION
SETTLEMENT AND FINAL
JUDGMENT OF DISMISSAL WITH
PREJUDICE THEREON**

THIS DOCUMENT RELATES TO:

15

ALL ACTIONS.

16

_____

17

18

19

20

21

22

23

24

25

26

27

28

*(vertical text, left margin)* REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MDL NO. 07-1825 CAS (MANx)

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    The motion of Plaintiffs Mary P. Munoz, Robert D. Kaiser, Nancy Bendzak, as

2    attorney-in-fact for Mary Bendzak, and Mary Bendzak, individually and on behalf of

3    the Class as defined in the Settlement Agreement previously filed in this Action

4    (collectively "Plaintiffs"), for final approval of the class action Settlement reached

5    with Defendant Midland Life Insurance Company ("Midland") came on for hearing

6    before this Court on _____ ___, 2010 **{insert Fairness Hearing Date}**.

7    _____ appeared as attorney for Midland, and _____

8    appeared as attorney for Plaintiffs.  After considering the Settlement Agreement, the

9    moving papers, arguments of counsel and all other matters presented to the Court, it is

10   hereby ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

11   1.    The Motion for Final Approval of Class Action Settlement is hereby

12   GRANTED.

13   2.    This Final Order Approving Class Action Settlement and Final Judgment

14   of Dismissal With Prejudice Thereon ("Final Order and Judgment") incorporates and

15   makes part hereof: (a) the Parties' Settlement Agreement, filed _____ ___,

16   2010, including Exhibits A to H (collectively the "Settlement Agreement") and (b) the

17   Court's findings and conclusions contained in its Findings and Order Preliminarily

18   Approving Class Settlement, Directing Issuance of Notice to the Class, and Setting of

19   Fairness Hearing ("Preliminary Approval Order").  All defined terms in this Final

20   Order and Judgment shall have the same meanings as in the Settlement Agreement.

21   3.    All preliminary findings and conclusions in the Court's Preliminary

22   Approval Order are hereby made final.

23   4.    The Court has personal jurisdiction over all Class Members.  The Court

24   has subject matter jurisdiction over the claims asserted in this Action to approve the

25   Settlement Agreement and all exhibits attached thereto.  Venue is proper.  The

26   Settlement Agreement and Settlement are fair, reasonable and adequate, and

27   consistent and in compliance with the applicable provisions of the United States

28   Constitution, its Amendments, and the Federal Rules of Civil Procedure, as to, and in

[PROPOSED] FINAL ORDER APPROVING CLASS ACTION SETTLEMENT AND FINAL JUDGMENT OF
DISMISSAL WITH PREJUDICE THEREON

1    the best interests of, the Class.  The Court also finds that the Settlement resulted from

2    numerous, arm's-length mediation sessions and was concluded only after Plaintiffs

3    and Midland conducted their own investigations and evaluations of the factual and

4    legal issues raised by Plaintiffs' claims, as well as Midland's defenses.   [[No

5    objections have been made to the Settlement by any member of the Class.] or [The

6    Court has considered and denied all objections filed in this Action]].  Accordingly, the

7    Settlement Agreement is hereby finally approved.

8         5.    The Class, as defined in Section II.A.18. of the Settlement Agreement, is

9    finally certified for settlement purposes.

10        6.    The Court hereby directs the Parties and their counsel to implement and

11   consummate the Settlement Agreement according to its terms and provisions.

12        7.    Pursuant to the Court's Preliminary Approval Order, the notice

13   requirement was satisfied in that the Administrator mailed the Class Notice Package to

14   each Class Member, no later than 28 days after entry of the Preliminary Approval

15   Order, by first-class mail, postage prepaid, to his or her last known address.  Members

16   of the Class had the opportunity to object to the Settlement or to exclude themselves

17   from the Settlement, and they were informed of the date, time, and location of the

18   Fairness Hearing and had the opportunity to appear at the Fairness Hearing.   These

19   procedures afforded protections to Class Members and provide the basis for the Court

20   to make an informed decision on approval of the Settlement based on the responses of

21   Class Members.

22        8.    The Class Notice Package and all other instruments provided to Class

23   Members:

24        (a)    constituted the best practicable notice under the circumstances;

25        (b)    constituted notice that was reasonably calculated to apprise Class

26   Members of the pendency of the Action, their right to object to or exclude themselves

27   from the proposed Settlement and to appear at the Fairness Hearing;

28

[PROPOSED] FINAL ORDER APPROVING CLASS ACTION SETTLEMENT AND FINAL JUDGMENT OF DISMISSAL WITH PREJUDICE THEREON

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(c)     was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and

(d)     met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution, and its Amendments, including the Due Process Clause.

9.     Class Counsel and the Plaintiffs adequately represented the Class for purposes of entering into and implementing the Settlement.

10.     The list of those persons who have requested exclusion from the Class in accordance with the terms of the Settlement Agreement and the Preliminary Approval Order has been filed with the Court, is attached to this Order, and is hereby approved. Those persons are hereby excluded from the Class.  The Court finds that it is a complete list of all Class Members who have timely requested exclusion from the Class, and accordingly, such Class Members shall neither share in nor be bound by this Final Order and Judgment or the Settlement Agreement.

11.     Class Counsel are hereby awarded attorneys' fees, expenses, and costs in the amount of $_____{not to exceed $13,970,000} ("Class Counsel Payment").  This amount covers any and all claims for attorneys' fees, expenses, and costs incurred by any and all Class Counsel in connection with the Settlement of the Action and the administration of such Settlement. Class Counsel Payment shall be provided by Midland to Receiving Class Counsel in accordance with Sections X.B.5. through X.B.9. of the Settlement Agreement upon satisfaction of the conditions set forth therein.

12.     If this Final Order and Judgment is reversed, vacated, modified and/or remanded for further proceedings or otherwise disposed of in any manner other than one resulting in an affirmance of this Final Order and Judgment (other than on the issue of attorneys' fees and expenses), or if Midland properly and timely terminates the Settlement Agreement in accordance with Section XIII. of the Settlement Agreement, then Receiving Class Counsel shall, within 30 days of such events, repay

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  to Midland the full amount of the Class Counsel Payment, together with interest at the

2  rate of 4% per annum from the date of payment through the date of repayment.

3       13.    If the Class Counsel Payment is reduced after entry of this Final Order

4  and Judgment, then Receiving Class Counsel shall, within 30 days of said event, repay

5  to Midland the amount by which the Class Counsel Payment has been reduced,

6  together with interest at the rate of 4% per annum from the date of payment through

7  the date of repayment.

8       14.    As a condition precedent to the agreement of Midland to make the Class

9  Counsel Payment before the appeal periods have expired, Bonnett, Fairbourn,

10  Friedman & Balint, P.C. and Robbins, Geller, Rudman & Dowd, LLP are required to

11  execute as co-obligors a promissory note to evidence their joint and several

12  obligations to repay the amounts specified in Paragraphs 12 and 13 of this Final Order

13  and Judgment.

14       15.    As a further condition precedent to the agreement of Midland to make the

15  Class Counsel Payment before the appeal periods have expired, Andrew Friedman and

16  John Stoia, Jr. are each required to execute a personal guaranty of the promissory note

17  described in Paragraph 14 of this Final Order and Judgment.  Receiving Class Counsel

18  shall be responsible for distributing the Class Counsel Payment to Class Counsel in

19  their discretion and allocating such amounts.  Midland shall have no responsibility or

20  liability in connection with the allocation of the Class Counsel Payment among Class

21  Counsel.

22       16.    As service awards for participation as the Class Representatives in the

23  Action, the Court awards:

24          $_____ **{not to exceed $10,000}** to Plaintiff Robert Kaiser;

25          $_____ **{not to exceed $10,000}** to Plaintiff Mary Munoz; and

26          $_____ **{not to exceed $10,000}** to Plaintiff Mary Bendzak.

27

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   Midland shall pay the service award in addition to any benefits that Plaintiffs are
2   entitled to receive as Class Members.  Midland shall pay the service award within 10
3   days of the Implementation Date.

4     17. The Release set forth in the Settlement Agreement in Section IX. is
5   incorporated herein and effective as of the date of this Final Order and Judgment, and
6   forever discharges the Releasees from any claims or liabilities arising from or related
7   to the Released Claims.

8     18. Without affecting the finality of this Final Order and Judgment for
9   purposes of appeal, the Court shall retain jurisdiction as to all matters relating to
10  administration, consummation, enforcement, and interpretation of the Settlement
11  Agreement and this Order, and for any other necessary purpose; *provided, however,*
12  that nothing in this paragraph shall restrict the ability of the Parties to exercise their
13  rights under Paragraphs 19, 20, and 23 of this Final Order and Judgment.  The Parties
14  submit to the jurisdiction of the Court for purposes of administration, construction,
15  consummation, enforcement, and interpretation of the Settlement Agreement and the
16  Settlement.

17    19. Midland and the Administrator are authorized, if Midland so chooses, in
18  consultation with Class Counsel and without approval from the Court, to advance the
19  Implementation Date to an earlier date than otherwise specified in the Settlement
20  Agreement.

21    20. In the event Midland determines to advance the Implementation Date to a
22  date prior to the Final Settlement Date, any appeal must be preceded by:

23      (a) a request for a stay of implementation of the Settlement; and

24      (b) the posting of an appropriate bond.

25  Absent satisfaction of each of these requirements, Midland is authorized to proceed
26  with implementation of the Settlement, even if such implementation would moot the
27  appeal.

28

MDL NO. 07-1825 CAS (MANx)  – 5 –

[PROPOSED] FINAL ORDER APPROVING CLASS ACTION SETTLEMENT AND FINAL JUDGMENT OF
DISMISSAL WITH PREJUDICE THEREON

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

21.     The Settlement Agreement is binding on, and has *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and any other Class Members, as well as their heirs, executors, personal representatives, conservators and administrators, predecessors, successors and assigns, that allege Released Claims, as defined in the Settlement Agreement.

22.     Neither this Final Order and Judgment, nor the Settlement Agreement, nor any other document referred to herein or therein, nor any action taken to carry out this Final Order and Judgment or the Settlement Agreement is, may be construed as, or may be used as an admission or concession by or against Midland of the validity of any claim or any actual or potential fault, wrongdoing or liability whatsoever. Entering into or carrying out the Settlement Agreement, and any negotiations or proceedings relating to it, shall not in any event be construed as, or deemed evidence of, an admission or concession as to Midland's denials or defenses, and shall not be offered or received in evidence in any action or proceeding against any party hereto in any court, administrative agency or other tribunal for any purpose whatsoever, except as evidence of the Settlement or to enforce the provisions of this Final Order and Judgment or the Settlement Agreement; provided, however, that this Final Order and Judgment and the Settlement Agreement may be filed in any action against or by Midland or Releasees to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith Settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim to the extent allowed by law.

23.     The Parties are authorized, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement and all exhibits attached thereto that are consistent with this Final Order and Judgment, and do not limit the rights of Class Members under the Settlement Agreement.

MDL NO. 07-1825 CAS (MANx)                – 6 –

[PROPOSED] FINAL ORDER APPROVING CLASS ACTION SETTLEMENT AND FINAL JUDGMENT OF DISMISSAL WITH PREJUDICE THEREON

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

24.     Any work product retained by Plaintiffs or Class Counsel that is based on or incorporates information designated as Confidential Material pursuant to the terms of the Protective Order previously entered in this case and provided by Midland shall be deemed Confidential Material pursuant to the terms of the Protective Order, and the disclosure or use of such materials shall be subject to the same restrictions as Confidential Materials pursuant to the terms of the Protective Order previously entered in this case.

25.     This Action (and all individual claims and Class claims presented thereby) is dismissed on the merits and with prejudice, without fees or costs to any party except as provided in the Settlement Agreement.  The judgment is binding upon all Class Members and upon Midland and extinguishes all claims of Class Members (a) that were alleged, or that could be alleged, based upon, or arise from, the matters which were alleged in the Action or (b) that were released pursuant to the Settlement Agreement.

26.     Each and every Class Member who has not been excluded from the Settlement, the Class Member's representatives, and/or all persons in active concert or participation with such Class Members are permanently barred and enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in, conducting, or continuing, as class members or otherwise, any action, including without limitation a class action, (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction), in any federal court, any state court, or any other tribunal or forum of any kind, and from receiving any benefits from any lawsuit, administrative or regulatory proceeding or order in any jurisdiction, arising out of, based on, or relating to the claims, causes of actions, facts, and/or circumstances alleged in the Action and/or the Released Claims.

MDL NO. 07-1825 CAS (MANx)                    – 7 –

[PROPOSED] FINAL ORDER APPROVING CLASS ACTION SETTLEMENT AND FINAL JUDGMENT OF DISMISSAL WITH PREJUDICE THEREON

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    27.    There being no just reason for delay, the Court, in the interests of justice,

2   expressly directs the Clerk of the Court to enter this Final Order and Judgment, and

3   hereby decrees that, upon entry, it be deemed a final judgment.

4         **IT IS SO ORDERED.**

5

6         DATED: _____.    _____

7                                      THE HON. CHRISTINA A. SNYDER
                                       UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit F

**EXHIBIT F**

**PROMISSORY NOTE**

$____[Class Counsel Payment Amount]_____                    [Promisors' Location]
                                                              [DATE]

THIS PROMISSORY NOTE (this "Note") is made and dated as of the date set forth above by Bonnett, Fairbourn, Friedman & Balint, P.C. and Robbins, Geller, Rudman & Dowd, LLP (collectively, the "Promisors"), in respect of the following:

A.    The Promisors are among Class Counsel for the Plaintiffs and the Class in the class action lawsuit *In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation*, MDL No. 07-1825 CAS (MANx) in the United States District Court for the Central District of California, Western Division (the "Action").

B.    The Action was settled, and a settlement (the "Settlement") was memorialized in a Settlement Agreement filed with the Court on _____ __, _____ (the "Settlement Agreement"). All capitalized terms not defined herein, but defined in the Settlement Agreement shall be given the meaning of such term in the Settlement Agreement.

C.    Section X.B.1. of the Settlement Agreement provides that Midland National Life Insurance Company ("Midland") agrees to pay Class Counsel up to an aggregate of $13,970,000 as attorneys' fees and for reimbursement of all of their expenses and costs, subject to Court approval.

D.    In the Final Order and Judgment entered on _____ __, _____, (the "Order"), the Court approved the Settlement and awarded attorneys' fees, expenses, and costs to Class Counsel in the amount of $_____ (the "Class Counsel Payment"), and directed that the Class Counsel Payment be paid by Midland to Class Counsel in accordance with the terms of the Settlement Agreement.

E.    In accordance with Section X.B.5. of the Settlement Agreement, Midland has agreed to pay the Class Counsel Payment to Promisors by wire transfer or check within 5 days of the Court's entry of the Order, which is before the applicable appeals periods have expired. Promisors have instructed Midland as to the allocation of the amount to be paid between the Promisors. The allocation shall be as follows: $_____ to be paid to Bonnett, Fairbourn, Friedman & Balint, P.C. and $_____ to be paid to Robbins, Geller, Rudman & Dowd, LLP.

F.    Pursuant to Section X.B.8. of the Settlement Agreement and as a condition precedent to the agreement of Midland to make the Class Counsel Payment before the appeal periods have expired, each of the Promisors execute this Note as co-obligors to evidence their joint and several obligations to repay the following amounts on the terms and conditions set forth herein:

(i)    If the Order is reversed, vacated, modified and/or remanded for further proceedings or otherwise disposed of in any manner other than one resulting in an

affirmance of the Order (other than on the issue of attorneys' fees and expenses), or if Midland properly and timely terminates the Settlement Agreement in accordance with Section XIII. of the Settlement Agreement, then Promisors shall, within 30 days of such events, repay to Midland the full amount of the Class Counsel Payment, together with interest at the rate of 4% per annum from the date of payment through the date of repayment; or

     (ii)   If the Class Counsel Payment is reduced after entry of the Order, then Promisors shall, within 30 days of said event, repay to Midland the amount by which the Class Counsel Payment has been reduced, together with interest at the rate of 4% per annum from the date of payment through the date of repayment.

     G.   Pursuant to Section X.B.9. of the Settlement Agreement and as a further condition precedent to the agreement of Midland to make the Class Counsel Payment before the appeal periods have expired, John Stoia, Jr. and Andrew S. Friedman as Guarantors each execute a Personal Guaranty of this Note.

     NOW, THEREFORE, in consideration of the above Recitals and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and subject to receipt by the Promisors of $[Class Counsel Payment Amount] in immediately available funds, the Promisors agree as follows:

     1.   The Promisors promise jointly and severally to pay on demand by and to the order of Midland in legal money of the United States of America and immediately available funds, the amounts set forth as follows:

     (a)   Within 30 days of demand and delivery of a written notice from Midland: (i) that the Order has been reversed, vacated, modified and/or remanded for further proceedings or otherwise disposed of in any manner other than one resulting in an affirmance of the Order (other than on the issue of attorneys' fees and expenses), or (ii) that Midland properly and timely terminated the Settlement Agreement in accordance with Section XIII. of the Settlement Agreement, Promisors shall repay to Midland the full amount of the Class Counsel Payment, together with interest at the rate of 4% per annum from the date of payment through the date of repayment; or

     (b)   Within 30 days of demand and delivery of a written notice from Midland that the Class Counsel Payment has been reduced after entry of the Order, Promisors shall repay to Midland the amount by which the Class Counsel Payment has been reduced, together with interest at the rate of 4% per annum from the date of payment through the date of repayment; or

     (c)   Immediately upon demand and delivery of a written notice from Midland that any of the representations and warranties made by the Promisors in Paragraph 4 below is or has become untrue, Promisors shall repay to Midland the Class Counsel Payment together with interest at the rate of 4% per annum from the date of payment through the date of repayment.

- 2 -

2.       Neither Midland nor the Promisors shall, by any act, delay, omission or otherwise, be deemed to have waived any of its or their rights or remedies hereunder, and no waiver whatsoever shall be valid unless it is in writing, signed by Midland or the Promisors, as applicable, and then only to the extent set forth therein.

3.       This Note shall be governed and construed in accordance with the laws of the State of California, excluding its conflict-of-law provisions.

4.       The Promisors hereby represent and warrant to Midland that:

(a)       The Promisors have full power and authority under applicable law, and have taken all partnership and other action necessary, to enter into and perform this Note;

(b)       The undersigneds are duly authorized and empowered to execute and deliver this Note on behalf of the Promisors;

(c)       No consent, approval, authorization of or registrations, declaration or filing with any person is required on the part of the Promisors or any other person in connection with the execution and delivery of this Note and the performance of the obligations hereunder; and

(d)       This Note constitutes the legal and binding obligation of the Promisors, enforceable against the Promisors, in accordance with its terms.

5.       Any rights, obligations, and interests of the Promisors hereunder may not be transferred or assigned without the prior written consent of Midland, and any purported transfer or assignment without such consent shall be automatically deemed null and void.

6.       This Note shall bind the respective partners, successors and permitted assigns of the Promisors.

7.       Notwithstanding anything herein to the contrary, this Note shall be canceled, the obligation satisfied, and all amounts due hereunder, including principal and interest, if any, shall be deemed satisfied if the Final Settlement Date (as defined in the Settlement Agreement) occurs.  In such event, Midland will return this Note to [Designated Contact at Class Counsel].

8.       All payments received by Midland hereunder shall be applied first against costs of collection (if any), then against accrued and unpaid interest on this Note, then against the outstanding principal balance of this Note.

9.       The Promisors and all endorsers, sureties, guarantors and accommodation parties of this Note, and all other persons liable or to become liable for all or any part of the indebtedness evidenced hereby, hereby waive, jointly and severally, presentment, protest, notice of dishonor, diligence, any release or discharge arising from any extension of time, discharge of a prior party, or other cause of release or discharge other than actual payment in full hereof.

- 3 -

10.     If any provision of this Note would require the Promisors to pay interest hereon at a rate exceeding the highest rate allowed by applicable law, the Promisors shall instead pay interest under this Note at the highest rate permitted by applicable law.

11.     Nothing in this Note shall create or be deemed to create any rights in any person or entity not a party to this Note, except for an assignee or transferee in accordance with Paragraph 5 above.

12.     As used herein, dollars or "$" means United States Dollars.

13.     **PROMISORS HEREBY CONSENT AND AGREE THAT THIS MATTER APPROPRIATELY FALLS WITHIN THE CONTINUING JURISDICTION OF THE HONORABLE CHRISTINA A. SNYDER, UNITED STATES DISTRICT JUDGE FOR THE CENTRAL DISTRICT OF CALIFORNIA, OR HER DULY-APPOINTED SUCCESSOR, IN THE FINALLY APPROVED SETTLEMENT IN IN RE MIDLAND NATIONAL LIFE INSURANCE CO. ANNUITY SALES PRACTICES LITIGATION, MDL No. 07-1825 CAS (MANx), AS WELL AS TO THE JURISDICTION OF ALL COURTS TO WHICH AN APPEAL MAY BE TAKEN FROM THIS COURT, FOR THE PURPOSE OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF, OR IN CONNECTION WITH, THIS NOTE.  EACH PARTY HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS TO BRING ANY SUIT, ACTION OR OTHER PROCEEDING IN OR BEFORE ANY COURT OR TRIBUNAL OTHER THAN THE COURTS DESCRIBED ABOVE AND COVENANTS THAT IT SHALL NOT SEEK IN ANY MANNER TO RESOLVE ANY DISPUTE OTHER THAN AS SET FORTH IN THIS PARAGRAPH OR TO CHALLENGE OR SET ASIDE ANY DECISION, AWARD OR JUDGMENT OBTAINED IN ACCORDANCE WITH THE PROVISIONS HEREOF. PROMISORS HEREBY EXPRESSLY WAIVE ANY AND ALL OBJECTIONS IT MAY HAVE TO VENUE, INCLUDING, WITHOUT LIMITATION, THE INCONVENIENCE OF SUCH FORUM, IN ANY OF SUCH COURTS.  IN ADDITION, PROMISORS CONSENT TO THE SERVICE OF PROCESS BY PERSONAL SERVICE OR ANY MANNER IN WHICH NOTICES MAY BE DELIVERED HEREUNDER IN ACCORDANCE WITH THIS AGREEMENT.**

14.     **PROMISORS HEREBY IRREVOCABLY WAIVE ANY RIGHT TO TRIAL BY JURY IN AN ACTION, SUIT, COUNTERCLAIM OR PROCEEDING (A) TO ENFORCE OR DEFEND ANY RIGHTS UNDER OR IN CONNECTION WITH THIS NOTE, THE PERSONAL GUARANTY, OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR (B) ARISING FROM ANY DISPUTE OR CONTROVERSY ARISING IN CONNECTION WITH OR RELATED TO THIS NOTE, THE PERSONAL GUARANTY, OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT AND AGREES THAT ANY SUCH ACTION, SUIT, COUNTERCLAIM OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.**

- 4 -

Bonnett, Fairbourn, Friedman & Balint, P.C.

BY_____          DATE_____

      Andrew S. Friedman
      Bonnett, Fairbourn, Friedman & Balint, P.C.


Robbins, Geller, Rudman & Dowd, LLP

BY_____          DATE_____

      John Stoia, Jr.
      Robbins, Geller, Rudman & Dowd, LLP


DOC ID# 103792277

- 5 -

159

Exhibit G-1

# EXHIBIT G-1

## <u>PERSONAL GUARANTY OF THE PROMISSORY NOTE</u>

THIS PERSONAL GUARANTY (this "Guaranty") is made and dated as of _____ ___, _____ by John J. Stoia, Jr. (the "Guarantor"), residing at the address listed below, in respect of the following:

A. The Guarantor is of counsel at Robbins, Geller, Rudman & Dowd, which is among Class Counsel for the Plaintiffs and the Class in the class action lawsuit *In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation*, MDL No. 07-1825 CAS (MANx), in the United States District Court for the Central District of California, Western Division (the "Action"), and Guarantor represents this to be true and correct.

B. The Action was settled, and a settlement (the "Settlement") was memorialized in the Settlement Agreement filed with the Court on _____.

C. Section X.B.1. of the Settlement Agreement provides that Midland National Life Insurance Company ("Midland") agrees to pay Class Counsel no more than an aggregate of $13,970,000 as attorneys' fees and for reimbursement of all of their expenses and costs, subject to Court approval.

D. In the Final Order and Judgment entered on _____, (the "Order"), the Court approved the Settlement and awarded attorneys' fees, expenses, and costs to Class Counsel in the amount of $_____ (the "Class Counsel Payment"), and directed that the Class Counsel Payment be paid by Midland to Class Counsel in accordance with the terms of the Settlement Agreement.

E. In accordance with Section X.B.5. of the Settlement Agreement, Midland has agreed to pay the Class Counsel Payment to Bonnett, Fairbourn, Friedman & Balint, P.C. and Robbins, Geller, Rudman & Dowd, LLP (collectively, the "Promisors") by wire transfer or check within 5 days of the Court's entry of the Order, which is before the applicable appeals periods have expired. Promisors have instructed Midland as to the allocation of the amount to be paid between the Promisors. The allocation shall be as follows: $_____ to be paid to Bonnett, Fairbourn, Friedman & Balint, P.C. and $_____ to be paid to Robbins, Geller, Rudman & Dowd, LLP. ,

F. Pursuant to Section X.B.8. of the Settlement Agreement and as a condition precedent to the agreement of Midland to make the Class Counsel Payment before the appeal periods have expired, Promisors execute with this Guaranty as co-obligors a Promissory Note (the "Note") to evidence their joint and several obligations to repay the following amounts:

(i) If the Order is reversed, vacated, modified and/or remanded for further proceedings or otherwise disposed of in any manner other than one resulting in an affirmance of the Order (other than on the issue of attorneys' fees and expenses), or if Midland properly and timely terminates the Settlement Agreement in accordance with Section XIII. of the Settlement Agreement, then Promisors shall, within 30 days of such events, repay to Midland the full

- 1 -

amount of the Class Counsel Payment, together with interest at the rate of 4% per annum from the date of payment through the date of repayment; or

        (ii)  If the Class Counsel Payment is reduced after entry of the Order, then Promisors shall, within 30 days of said event, repay to Midland the amount by which the Class Counsel Payment has been reduced, together with interest at the rate of 4% per annum from the date of payment through the date of repayment.

        G.     Pursuant to Section X.B.9. of the Settlement Agreement and as a further condition precedent to the agreement of Midland to make the Class Counsel Payment before the appeal periods have expired, Guarantor executes this Guaranty of the Note described in Paragraph F of this Guaranty.

        H.     All capitalized terms not defined herein, but defined in the Settlement Agreement shall be given the meaning of such term in the Settlement Agreement.

        FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, and in order to induce Midland to make the Class Counsel Payment to Promisors before the appeal periods have expired, Guarantor John J. Stoia, Jr., an individual residing in _____, California, does hereby irrevocably, unconditionally, absolutely, and personally guarantee, as a primary co-obligor and not merely as a surety, to Midland and its successors and assigns, the full and prompt payment and performance by Promisors of each and every covenant, agreement and obligation of Promisors set out in that certain Promissory Note of even date ("Note") made by Promisors signed and dated on _____ ___, 2010, and all of the payment obligations under such Note as and when demanded  (the "Obligations").  This Guaranty is a present and continuing guaranty of payment and performance of the Obligations and not of collection.

        1.     Guarantor waives presentment, demand, notice of dishonor, protest, notice of protest, nonpayment or default to Guarantor, and all other notices to which Guarantor may otherwise be entitled, other than notices, if any, to which Promisors are entitled pursuant to the Note.  Guarantor hereby waives any and all suretyship defenses now or hereafter available to him under the California Civil Code or the California Commercial Code or any similar provision of law.

        2.     The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Promisors or any other person or entity.  Guarantor irrevocably waives any and all rights to require that an action be brought against Promisors or any other person or entity prior to action against Guarantor hereunder.  If the Obligations are partially performed through the election of Midland to pursue any of the remedies mentioned herein or if any Obligation is otherwise partially performed, Guarantor shall remain unconditionally and absolutely liable for the entire unperformed amount of any such Obligations.

        3.     Guarantor agrees that his obligations, covenants and agreements under this Guaranty shall not be discharged, affected or impaired by any act of Promisors or any event or condition except indefeasible payment in full and full and timely performance of the Obligations.

- 2 -

For greater certainty, and not in limitation of the foregoing, Guarantor agrees that, without indefeasible payment in full and full and timely performance of the Obligations, the liability of Guarantor hereunder shall not be discharged, affected or impaired by:

a.  any modification or amendment of the Note, with or without notice to or the knowledge or consent of Guarantor, including but not limited to any change or modification of the interest rate, payment terms, or any other covenant of any agreement of Promisors;

b.  any transfer, including without limitation any transfer of any rights, obligations, or interests of Promisors under the Note, waiver, compromise, settlement, modification, surrender, or release of the Note;

c.  the release or agreement not to sue without reservation of rights of Promisors;

d.  the existence of any defenses to enforcement of the Note, other than indefeasible payment in full of all Obligations;

e.  any failure, omission, delay or inadequacy, whether entire or partial, of Midland to exercise any right, power or remedy regarding the Note;

f.  the existence of any set-off, claim, reduction, or diminution of the Obligations, or any defense of any kind or nature, which Guarantor may have against Promisors or which Promisors has against Midland, other than indefeasible payment in full of the Obligations;

g.  the application of payments received from any source to the payment of any obligation other than the Obligations, even though Midland might lawfully have elected to apply such payments to any part or all of the Obligations;

h.  the addition of any and all other endorsers, guarantors, obligors and other persons liable for the payment or performance of the Obligations and the acceptance of any other security for the payment or performance of the Obligations;

i.  the power or authority or lack of power or authority of Promisors to execute, deliver or perform its Obligations under the Note;

j.  the validity or invalidity of the Note;

k.  the existence or non-existence of either of the Promisors as legal entities or the death or incompetency of any person signing on behalf of either of the Promisors;

l.  the institution by or against either of the Promisors of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmation of the Note in any such proceedings or otherwise;

m.  any irregularity or the unenforceability (by reason of any governmental authority purporting to reduce or amend or otherwise affect the Note) or the release or

discharge of either of the Promisors in any receivership, bankruptcy, winding-up or other creditor proceedings;

n.   the determination by a court of competent jurisdiction that Promisors are not required to pay or perform any Obligations pursuant to operation of law;

o.   the acceptance by Midland of payment of a part of the Obligations, or any failure, neglect or omission on the part of Midland to realize on or protect any of the Obligations, or to exercise any lien upon, or right of appropriation of, any monies, credits or property of either of the Promisors toward liquidation of the Obligations;

p.   any right or claim whatsoever which Guarantor may have against either of the Promisors or Midland or the successors or assigns of any of them; or

q.   any request by Midland for the approval, acknowledgement, acquiescence or ratification by Guarantor of any act or omission of either of the Promisors, Midland or any other person, relating to the Note or any modification thereof;

all whether or not Guarantor shall have had notice or knowledge of any act or omission referred to in the foregoing clauses (a) through (q) above.

4.   Waiver and Release by Guarantor.

(a)   Enforcement Against Other Parties.  Guarantor hereby waives the right to require Midland to:  (i) proceed against Promisors or any other person or guarantor; (ii) proceed or exhaust any security held from any person; (iii) proceed against any other guarantor; or (iv) pursue any other remedy available to Midland.

(b)   Subrogation.  Until the Obligations have been paid or otherwise discharged in full, Guarantor does hereby waive all rights of subrogation and any right to enforce any remedy which Midland now has, or may have, against Promisors, and Guarantor does hereby waive any benefit of, and any right to participate in, any security now or hereafter held by Midland.  Guarantor hereby waives any defense it may have now or in the future based on any election of remedies by Midland which destroys Guarantor's subrogation rights or Guarantor's rights to proceed against Promisors for reimbursement and Guarantor acknowledges that they will be liable to Midland even though Guarantor may well have no such recourse against Promisors.

(c)   Notices.  Guarantor hereby waives notice of (i) acceptance and reliance on this Guaranty, (ii) notice of renewal, extension or modification of any of the Obligations, and (iii) notice of default or demand in the case of default.

(d)   Release of Third Parties.  Guarantor hereby waives any right or defense it may now or hereafter have based upon (i) Midland's release of any party who may be obligated to Midland; (ii) Midland's release or impairment of any collateral for the Obligations; and (iii) the modification or extension of the obligations or agreements guaranteed under this Guaranty.

- 4 -

(e)      Guarantor Defenses.  Guarantor hereby waives, to the maximum extent such waiver is permitted by law, any and all benefits or defenses arising directly or indirectly under any one or more of:  (i) California Civil Code Sections 2799, 2808, 2809, 2810, 2815, 2819, 2820, 2821, 2822, 2838, 2839, 2845, 2846, 2847, 2848, 2849, 2850, 2899 and 3433; (ii) Chapter 2 of Title 14 of the California Civil Code; (iii) California Code of Civil Procedure Sections 580a, 580b, 580c, 580d, 725a and 726; or (iv) California Commercial Code 3605.

(f)      Statute of Limitations.  Guarantor hereby waives any statute of limitation affecting liability under this Guaranty or the enforceability of this Guaranty.

(g)      Cessation of Liability of Promisors.  Guarantor waives any defense arising by reason of any disability or other defense of Promisors or by reason of the cessation from any cause whatsoever of the liability of Promisors.

(h)      Confidentiality of Accounting.  Guarantor waives the right to assert a confidential relationship, if any, Guarantor may have with any accounting firm and/or service bureau in connection with any information requested by Midland pursuant to or in accordance with this Guaranty or any agreement in connection with this Guaranty, and agrees that Midland may contact directly any such accounting firm and/or service bureau in order to obtain such information.

(i)      Duty of Disclosure.  Guarantor hereby waives any duty on the part of Midland to disclose to Guarantor any facts Midland may now or hereafter know about Promisors or Promisors financial condition regardless of whether Midland has reason to believe that any such facts materially increase the risk beyond that which Guarantor intends to assume, or has reason to believe that such facts are unknown to Guarantor, or has a reasonable opportunity to communicate such facts to Guarantor.

5.      Information.  Guarantor hereby represents that Guarantor is fully aware of the financial condition and operation of Promisors and is in a position by virtue of its relationship to Promisors to obtain all necessary financial and operational information concerning Promisors. Promisors need not disclose to Guarantor any information about:  (i) the Obligations or any modification thereto, and any action or non-action in connection therewith; (ii) any other obligation guaranteed hereby; (iii) the financial condition or operation of Promisors; or (iv) any other guaranties.

6.      Subordination.  Until the Obligations have been paid or otherwise discharged in full, Guarantor does hereby subordinate any and all liability or indebtedness of Promisors owed to Guarantor to the obligations of Promisors to Midland which arise under the Note.  However, if any Guarantor is an officer of Promisors, such Guarantor may receive payment of current reasonable salary and current reasonable payments made in the ordinary course of business for goods provided or services rendered.

7.      Guarantor agrees to pay to Midland attorneys' fees, expenses, and costs incurred in successfully enforcing its rights under this Guaranty.  Guarantor agrees that, if at any time all or any part of the payments theretofore applied by Midland from Promisors to any Obligations is

rescinded or Midland is required to pay any amount thereof to any other party due to the insolvency, bankruptcy, liquidation or reorganization of either of the Promisors or the determination that such payment by either of the Promisors is held to constitute a preference under the bankruptcy laws, such Obligation and/or Guarantor's liability hereunder shall, for the purposes of this Guaranty, be deemed to have continued in existence to the extent of such payment, and this Guaranty shall continue to be effective or be reinstated, as the case may be, as though such application by Midland had not been made and Guarantor agrees to pay such amount to Midland upon demand.

8.      Except for any settlement or compromise of the Obligations voluntarily entered into by Midland, this is a continuing Guaranty until all Obligations have been extinguished, and Guarantor agrees, subject to the foregoing exception, that the obligations, covenants and agreements of Guarantor hereunder shall not be discharged, affected or impaired by any act, event or condition other than indefeasible payment in full and full and timely performance of the Obligations.  Guarantor expressly waives any rights to setoff or subrogation.  The provisions of this Guaranty shall be binding upon Guarantor and his successors and assigns, and shall inure to the benefit of Midland and its respective successors and assigns.

9.      Guarantor represents and warrants to, and agrees with, Midland that the execution and delivery of this Guaranty by Guarantor, and his consummation of the transactions contemplated hereby, have been duly authorized in accordance with all applicable laws, and no further action is necessary on the part of Guarantor to make this Guaranty valid and binding on Guarantor and enforceable against Guarantor in accordance with its terms.  The execution and delivery of this Guaranty by the Guarantor, and his consummation of the transactions contemplated hereby, (a) do not now and will not, with the passage of time, the giving of notice or otherwise, result in a violation or breach of, or constitute a default under, any term or provision of any indenture, mortgage, deed of trust, lease, instrument, order, judgment, decree, rule, regulation, law, contract, agreement or any other restriction to which Guarantor is a party or to which Guarantor or any of his assets is subject or bound, and (b) will not result in any acceleration or termination of any loan or security interest agreement to which Guarantor is a party or to or by which Guarantor or any of his assets is subject or bound.

10.     Any notice required or permitted in this Guaranty shall be given in writing and shall be delivered personally, sent by facsimile, or sent by mail, registered or certified with postage and fees prepaid, to Guarantor and Midland at the addresses and facsimile numbers below:

John J. Stoia, Jr.
_____
_____
_____
Facsimile: _____

Robert D. Phillips, Jr.
Counsel for Midland National Life Insurance Company
101 Second Street, Suite 1800
San Francisco, CA 94105

- 6 -

Facsimile:  415-391-8269

or at such other address or facsimile number as either party may designate by ten (10) days' advance written notice to the other party, pursuant to this Paragraph.  Any notice pursuant to this Guaranty shall be deemed received when personally delivered or sent by facsimile, or five (5) days after mailing in the manner stated above.

11.     In the event that any one or more provisions contained herein shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Guaranty shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

12.     This Guaranty shall be deemed a contract made under and shall be construed in accordance with and governed by the laws of the State of California.

13.     Guarantor declares that he knows and understands the contents of this Guaranty and has had an opportunity to consult with counsel regarding its form and content.

14.     Guarantor shall not have the right to assign any of his obligations in this Guaranty.  Midland has the right to assign any of its rights or obligations in this Guaranty, and Guarantor hereby waives notice with respect to any such assignment.

15.     **GUARANTOR HEREBY CONSENTS AND AGREES THAT THIS MATTER APPROPRIATELY FALLS WITHIN THE CONTINUING JURISDICTION OF THE HONORABLE CHRISTINA A. SNYDER, UNITED STATES DISTRICT JUDGE FOR THE CENTRAL DISTRICT OF CALIFORNIA, OR HER DULY-APPOINTED SUCCESSOR, IN THE FINALLY APPROVED SETTLEMENT IN IN RE MIDLAND NATIONAL LIFE INSURANCE CO. ANNUITY SALES PRACTICES LITIGATION, MDL No. 07-1825 CAS (MANx), AS WELL AS TO THE JURISDICTION OF ALL COURTS TO WHICH AN APPEAL MAY BE TAKEN FROM THIS COURT, FOR THE PURPOSE OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF, OR IN CONNECTION WITH, THIS GUARANTY.  GUARANTOR HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS TO BRING ANY SUIT, ACTION OR OTHER PROCEEDING IN OR BEFORE ANY COURT OR TRIBUNAL OTHER THAN THE COURTS DESCRIBED ABOVE AND COVENANTS THAT HE SHALL NOT SEEK IN ANY MANNER TO RESOLVE ANY DISPUTE OTHER THAN AS SET FORTH IN THIS PARAGRAPH OR TO CHALLENGE OR SET ASIDE ANY DECISION, AWARD OR JUDGMENT OBTAINED IN ACCORDANCE WITH THE PROVISIONS HEREOF.  GUARANTOR HEREBY EXPRESSLY WAIVES ANY AND ALL OBJECTIONS IT MAY HAVE TO VENUE, INCLUDING, WITHOUT LIMITATION, THE INCONVENIENCE OF SUCH FORUM, IN ANY OF SUCH COURTS.  IN ADDITION, GUARANTOR CONSENTS TO THE SERVICE OF PROCESS BY PERSONAL SERVICE OR ANY MANNER IN WHICH NOTICES MAY BE DELIVERED HEREUNDER IN ACCORDANCE WITH THIS AGREEMENT.**

16.     **GUARANTOR HEREBY IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN AN ACTION, SUIT, COUNTERCLAIM OR PROCEEDING (A) TO**

- 7 -

**ENFORCE OR DEFEND ANY RIGHTS UNDER OR IN CONNECTION WITH THIS GUARANTY, THE NOTE, OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR (B) ARISING FROM ANY DISPUTE OR CONTROVERSY ARISING IN CONNECTION WITH OR RELATED TO THIS GUARANTY, THE NOTE, OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT AND AGREES THAT ANY SUCH ACTION, SUIT, COUNTERCLAIM OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.**

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the _____ day of _____, 20_____.

_____

JOHN J. STOIA, JR. (GUARANTOR)

Guarantor's Residence Address:

_____

Guarantor's SS#:

_____


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>NOTARIZATION</u>

State of _____ )

                       ) ss.

County of _____ )

On this _____, day of _____, 20_____ before me the subscriber personally appeared John J. Stoia, Jr., who being by me duly sworn, did depose and say; that he resides at _____, that he is the person described in and who executed the foregoing instrument; and that he signed his name thereto freely and of his own volition.

_____

Notary Public

My commission expires: _____


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DOC ID# 104509906

- 8 -

Exhibit G-2

**EXHIBIT G-2**

**PERSONAL GUARANTY OF THE PROMISSORY NOTE**

THIS PERSONAL GUARANTY (this "Guaranty") is made and dated as of _____ ___, _____ by Andrew S. Friedman (the "Guarantor"), residing at the address listed below, in respect of the following:

A.      The Guarantor is a shareholder at Bonnett, Fairbourn, Friedman & Balint, P.C., which is among Class Counsel for the Plaintiffs and the Class in the class action lawsuit *In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation*, MDL No. 07-1825 CAS (MANx), in the United States District Court for the Central District of California, Western Division (the "Action"), and Guarantor represents this to be true and correct.

B.      The Action was settled, and a settlement (the "Settlement") was memorialized in the Settlement Agreement filed with the Court on _____.

C.      Section X.B.1. of the Settlement Agreement provides that Midland National Life Insurance Company ("Midland") agrees to pay Class Counsel no more than an aggregate of $13,970,000 as attorneys' fees and for reimbursement of all of their expenses and costs, subject to Court approval.

D.      In the Final Order and Judgment entered on _____, (the "Order"), the Court approved the Settlement and awarded attorneys' fees, expenses, and costs to Class Counsel in the amount of $_____ (the "Class Counsel Payment"), and directed that the Class Counsel Payment be paid by Midland to Class Counsel in accordance with the terms of the Settlement Agreement.

E.      In accordance with Section X.B.5. of the Settlement Agreement, Midland has agreed to pay the Class Counsel Payment to Bonnett, Fairbourn, Friedman & Balint, P.C. and Robbins, Geller, Rudman & Dowd, LLP (collectively, the "Promisors") by wire transfer or check within 5 days of the Court's entry of the Order, which is before the applicable appeals periods have expired.  Promisors have instructed Midland as to the allocation of the amount to be paid between the Promisors.  The allocation shall be as follows:  $_____ to be paid to Bonnett, Fairbourn, Friedman & Balint, P.C. and  $_____ to be paid to Robbins, Geller, Rudman & Dowd, LLP. ,

F.      Pursuant to Section X.B.8. of the Settlement Agreement and as a condition precedent to the agreement of Midland to make the Class Counsel Payment before the appeal periods have expired, Promisors execute with this Guaranty as co-obligors a Promissory Note (the "Note") to evidence their joint and several obligations to repay the following amounts:

(i)  If the Order is reversed, vacated, modified and/or remanded for further proceedings or otherwise disposed of in any manner other than one resulting in an affirmance of the Order (other than on the issue of attorneys' fees and expenses), or if Midland properly and timely terminates the Settlement Agreement in accordance with Section XIII. of the Settlement Agreement, then Promisors shall, within 30 days of such events, repay to Midland the full

- 1 -

amount of the Class Counsel Payment, together with interest at the rate of 4% per annum from the date of payment through the date of repayment; or

        (ii)  If the Class Counsel Payment is reduced after entry of the Order, then Promisors shall, within 30 days of said event, repay to Midland the amount by which the Class Counsel Payment has been reduced, together with interest at the rate of 4% per annum from the date of payment through the date of repayment.

     G.     Pursuant to Section X.B.9. of the Settlement Agreement and as a further condition precedent to the agreement of Midland to make the Class Counsel Payment before the appeal periods have expired, Guarantor executes this Guaranty of the Note described in Paragraph F of this Guaranty.

     H.     All capitalized terms not defined herein, but defined in the Settlement Agreement shall be given the meaning of such term in the Settlement Agreement.

     FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, and in order to induce Midland to make the Class Counsel Payment to Promisors before the appeal periods have expired, Guarantor Andrew S. Friedman, an individual residing in _____, Arizona, does hereby irrevocably, unconditionally, absolutely, and personally guarantee, as a primary co-obligor and not merely as a surety, to Midland and its successors and assigns, the full and prompt payment and performance by Promisors of each and every covenant, agreement and obligation of Promisors set out in that certain Promissory Note of even date ("Note") made by Promisors signed and dated on _____ ___, 2010, and all of the payment obligations under such Note as and when demanded  (the "Obligations").  This Guaranty is a present and continuing guaranty of payment and performance of the Obligations and not of collection.

     1.     Guarantor waives presentment, demand, notice of dishonor, protest, notice of protest, nonpayment or default to Guarantor, and all other notices to which Guarantor may otherwise be entitled, other than notices, if any, to which Promisors are entitled pursuant to the Note.  Guarantor hereby waives any and all suretyship defenses now or hereafter available to him under the California Civil Code or the California Commercial Code or any similar provision of law.

     2.     The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Promisors or any other person or entity.  Guarantor irrevocably waives any and all rights to require that an action be brought against Promisors or any other person or entity prior to action against Guarantor hereunder.  If the Obligations are partially performed through the election of Midland to pursue any of the remedies mentioned herein or if any Obligation is otherwise partially performed, Guarantor shall remain unconditionally and absolutely liable for the entire unperformed amount of any such Obligations.

     3.     Guarantor agrees that his obligations, covenants and agreements under this Guaranty shall not be discharged, affected or impaired by any act of Promisors or any event or condition except indefeasible payment in full and full and timely performance of the Obligations.

- 2 -

For greater certainty, and not in limitation of the foregoing, Guarantor agrees that, without indefeasible payment in full and full and timely performance of the Obligations, the liability of Guarantor hereunder shall not be discharged, affected or impaired by:

a.    any modification or amendment of the Note, with or without notice to or the knowledge or consent of Guarantor, including but not limited to any change or modification of the interest rate, payment terms, or any other covenant of any agreement of Promisors;

b.    any transfer, including without limitation any transfer of any rights, obligations, or interests of Promisors under the Note, waiver, compromise, settlement, modification, surrender, or release of the Note;

c.    the release or agreement not to sue without reservation of rights of Promisors;

d.    the existence of any defenses to enforcement of the Note, other than indefeasible payment in full of all Obligations;

e.    any failure, omission, delay or inadequacy, whether entire or partial, of Midland to exercise any right, power or remedy regarding the Note;

f.    the existence of any set-off, claim, reduction, or diminution of the Obligations, or any defense of any kind or nature, which Guarantor may have against Promisors or which Promisors has against Midland, other than indefeasible payment in full of the Obligations;

g.    the application of payments received from any source to the payment of any obligation other than the Obligations, even though Midland might lawfully have elected to apply such payments to any part or all of the Obligations;

h.    the addition of any and all other endorsers, guarantors, obligors and other persons liable for the payment or performance of the Obligations and the acceptance of any other security for the payment or performance of the Obligations;

i.    the power or authority or lack of power or authority of Promisors to execute, deliver or perform its Obligations under the Note;

j.    the validity or invalidity of the Note;

k.    the existence or non-existence of either of the Promisors as legal entities or the death or incompetency of any person signing on behalf of either of the Promisors;

l.    the institution by or against either of the Promisors of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmation of the Note in any such proceedings or otherwise;

m.    any irregularity or the unenforceability (by reason of any governmental authority purporting to reduce or amend or otherwise affect the Note) or the release or

- 3 -

discharge of either of the Promisors in any receivership, bankruptcy, winding-up or other creditor proceedings;

n.   the determination by a court of competent jurisdiction that Promisors are not required to pay or perform any Obligations pursuant to operation of law;

o.   the acceptance by Midland of payment of a part of the Obligations, or any failure, neglect or omission on the part of Midland to realize on or protect any of the Obligations, or to exercise any lien upon, or right of appropriation of, any monies, credits or property of either of the Promisors toward liquidation of the Obligations;

p.   any right or claim whatsoever which Guarantor may have against either of the Promisors or Midland or the successors or assigns of any of them; or

q.   any request by Midland for the approval, acknowledgement, acquiescence or ratification by Guarantor of any act or omission of either of the Promisors, Midland or any other person, relating to the Note or any modification thereof;

all whether or not Guarantor shall have had notice or knowledge of any act or omission referred to in the foregoing clauses (a) through (q) above.

4.   Waiver and Release by Guarantor.

(a)   Enforcement Against Other Parties.  Guarantor hereby waives the right to require Midland to:  (i) proceed against Promisors or any other person or guarantor; (ii) proceed or exhaust any security held from any person; (iii) proceed against any other guarantor; or (iv) pursue any other remedy available to Midland.

(b)   Subrogation.  Until the Obligations have been paid or otherwise discharged in full, Guarantor does hereby waive all rights of subrogation and any right to enforce any remedy which Midland now has, or may have, against Promisors, and Guarantor does hereby waive any benefit of, and any right to participate in, any security now or hereafter held by Midland.  Guarantor hereby waives any defense it may have now or in the future based on any election of remedies by Midland which destroys Guarantor's subrogation rights or Guarantor's rights to proceed against Promisors for reimbursement and Guarantor acknowledges that they will be liable to Midland even though Guarantor may well have no such recourse against Promisors.

(c)   Notices.  Guarantor hereby waives notice of (i) acceptance and reliance on this Guaranty, (ii) notice of renewal, extension or modification of any of the Obligations, and (iii) notice of default or demand in the case of default.

(d)   Release of Third Parties.  Guarantor hereby waives any right or defense it may now or hereafter have based upon (i) Midland's release of any party who may be obligated to Midland; (ii) Midland's release or impairment of any collateral for the Obligations; and (iii) the modification or extension of the obligations or agreements guaranteed under this Guaranty.

- 4 -

(e)      Guarantor Defenses.  Guarantor hereby waives, to the maximum extent such waiver is permitted by law, any and all benefits or defenses arising directly or indirectly under any one or more of:  (i) California Civil Code Sections 2799, 2808, 2809, 2810, 2815, 2819, 2820, 2821, 2822, 2838, 2839, 2845, 2846, 2847, 2848, 2849, 2850, 2899 and 3433; (ii) Chapter 2 of Title 14 of the California Civil Code; (iii) California Code of Civil Procedure Sections 580a, 580b, 580c, 580d, 725a and 726; or (iv) California Commercial Code 3605.

(f)      Statute of Limitations.  Guarantor hereby waives any statute of limitation affecting liability under this Guaranty or the enforceability of this Guaranty.

(g)      Cessation of Liability of Promisors.  Guarantor waives any defense arising by reason of any disability or other defense of Promisors or by reason of the cessation from any cause whatsoever of the liability of Promisors.

(h)      Confidentiality of Accounting.  Guarantor waives the right to assert a confidential relationship, if any, Guarantor may have with any accounting firm and/or service bureau in connection with any information requested by Midland pursuant to or in accordance with this Guaranty or any agreement in connection with this Guaranty, and agrees that Midland may contact directly any such accounting firm and/or service bureau in order to obtain such information.

(i)      Duty of Disclosure.  Guarantor hereby waives any duty on the part of Midland to disclose to Guarantor any facts Midland may now or hereafter know about Promisors or Promisors financial condition regardless of whether Midland has reason to believe that any such facts materially increase the risk beyond that which Guarantor intends to assume, or has reason to believe that such facts are unknown to Guarantor, or has a reasonable opportunity to communicate such facts to Guarantor.

5.      Information.  Guarantor hereby represents that Guarantor is fully aware of the financial condition and operation of Promisors and is in a position by virtue of its relationship to Promisors to obtain all necessary financial and operational information concerning Promisors. Promisors need not disclose to Guarantor any information about:  (i) the Obligations or any modification thereto, and any action or non-action in connection therewith; (ii) any other obligation guaranteed hereby; (iii) the financial condition or operation of Promisors; or (iv) any other guaranties.

6.      Subordination.  Until the Obligations have been paid or otherwise discharged in full, Guarantor does hereby subordinate any and all liability or indebtedness of Promisors owed to Guarantor to the obligations of Promisors to Midland which arise under the Note.  However, if any Guarantor is an officer of Promisors, such Guarantor may receive payment of current reasonable salary and current reasonable payments made in the ordinary course of business for goods provided or services rendered.

7.      Guarantor agrees to pay to Midland attorneys' fees, expenses, and costs incurred in successfully enforcing its rights under this Guaranty.  Guarantor agrees that, if at any time all or any part of the payments theretofore applied by Midland from Promisors to any Obligations is

- 5 -

rescinded or Midland is required to pay any amount thereof to any other party due to the insolvency, bankruptcy, liquidation or reorganization of either of the Promisors or the determination that such payment by either of the Promisors is held to constitute a preference under the bankruptcy laws, such Obligation and/or Guarantor's liability hereunder shall, for the purposes of this Guaranty, be deemed to have continued in existence to the extent of such payment, and this Guaranty shall continue to be effective or be reinstated, as the case may be, as though such application by Midland had not been made and Guarantor agrees to pay such amount to Midland upon demand.

8.      Except for any settlement or compromise of the Obligations voluntarily entered into by Midland, this is a continuing Guaranty until all Obligations have been extinguished, and Guarantor agrees, subject to the foregoing exception, that the obligations, covenants and agreements of Guarantor hereunder shall not be discharged, affected or impaired by any act, event or condition other than indefeasible payment in full and full and timely performance of the Obligations.  Guarantor expressly waives any rights to setoff or subrogation.  The provisions of this Guaranty shall be binding upon Guarantor and his successors and assigns, and shall inure to the benefit of Midland and its respective successors and assigns.

9.      Guarantor represents and warrants to, and agrees with, Midland that the execution and delivery of this Guaranty by Guarantor, and his consummation of the transactions contemplated hereby, have been duly authorized in accordance with all applicable laws, and no further action is necessary on the part of Guarantor to make this Guaranty valid and binding on Guarantor and enforceable against Guarantor in accordance with its terms.  The execution and delivery of this Guaranty by the Guarantor, and his consummation of the transactions contemplated hereby, (a) do not now and will not, with the passage of time, the giving of notice or otherwise, result in a violation or breach of, or constitute a default under, any term or provision of any indenture, mortgage, deed of trust, lease, instrument, order, judgment, decree, rule, regulation, law, contract, agreement or any other restriction to which Guarantor is a party or to which Guarantor or any of his assets is subject or bound, and (b) will not result in any acceleration or termination of any loan or security interest agreement to which Guarantor is a party or to or by which Guarantor or any of his assets is subject or bound.

10.      Any notice required or permitted in this Guaranty shall be given in writing and shall be delivered personally, sent by facsimile, or sent by mail, registered or certified with postage and fees prepaid, to Guarantor and Midland at the addresses and facsimile numbers below:

Andrew S. Friedman
_____
_____
_____
Facsimile: _____

Robert D. Phillips, Jr.
Counsel for Midland National Life Insurance Company
101 Second Street, Suite 1800
San Francisco, CA 94105

- 6 -

Facsimile:  415-391-8269

or at such other address or facsimile number as either party may designate by ten (10) days' advance written notice to the other party, pursuant to this Paragraph.  Any notice pursuant to this Guaranty shall be deemed received when personally delivered or sent by facsimile, or five (5) days after mailing in the manner stated above.

11.     In the event that any one or more provisions contained herein shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Guaranty shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

12.     This Guaranty shall be deemed a contract made under and shall be construed in accordance with and governed by the laws of the State of California.

13.     Guarantor declares that he knows and understands the contents of this Guaranty and has had an opportunity to consult with counsel regarding its form and content.

14.     Guarantor shall not have the right to assign any of his obligations in this Guaranty.  Midland has the right to assign any of its rights or obligations in this Guaranty, and Guarantor hereby waives notice with respect to any such assignment.

15.     **GUARANTOR HEREBY CONSENTS AND AGREES THAT THIS MATTER APPROPRIATELY FALLS WITHIN THE CONTINUING JURISDICTION OF THE HONORABLE CHRISTINA A. SNYDER, UNITED STATES DISTRICT JUDGE FOR THE CENTRAL DISTRICT OF CALIFORNIA, OR HER DULY-APPOINTED SUCCESSOR, IN THE FINALLY APPROVED SETTLEMENT IN IN RE MIDLAND NATIONAL LIFE INSURANCE CO. ANNUITY SALES PRACTICES LITIGATION, MDL No. 07-1825 CAS (MANx), AS WELL AS TO THE JURISDICTION OF ALL COURTS TO WHICH AN APPEAL MAY BE TAKEN FROM THIS COURT, FOR THE PURPOSE OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF, OR IN CONNECTION WITH, THIS GUARANTY.  GUARANTOR HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS TO BRING ANY SUIT, ACTION OR OTHER PROCEEDING IN OR BEFORE ANY COURT OR TRIBUNAL OTHER THAN THE COURTS DESCRIBED ABOVE AND COVENANTS THAT HE SHALL NOT SEEK IN ANY MANNER TO RESOLVE ANY DISPUTE OTHER THAN AS SET FORTH IN THIS PARAGRAPH OR TO CHALLENGE OR SET ASIDE ANY DECISION, AWARD OR JUDGMENT OBTAINED IN ACCORDANCE WITH THE PROVISIONS HEREOF.  GUARANTOR HEREBY EXPRESSLY WAIVES ANY AND ALL OBJECTIONS IT MAY HAVE TO VENUE, INCLUDING, WITHOUT LIMITATION, THE INCONVENIENCE OF SUCH FORUM, IN ANY OF SUCH COURTS.  IN ADDITION, GUARANTOR CONSENTS TO THE SERVICE OF PROCESS BY PERSONAL SERVICE OR ANY MANNER IN WHICH NOTICES MAY BE DELIVERED HEREUNDER IN ACCORDANCE WITH THIS AGREEMENT.**

16.     **GUARANTOR HEREBY IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN AN ACTION, SUIT, COUNTERCLAIM OR PROCEEDING (A) TO**

**ENFORCE OR DEFEND ANY RIGHTS UNDER OR IN CONNECTION WITH THIS GUARANTY, THE NOTE, OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR (B) ARISING FROM ANY DISPUTE OR CONTROVERSY ARISING IN CONNECTION WITH OR RELATED TO THIS GUARANTY, THE NOTE, OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT AND AGREES THAT ANY SUCH ACTION, SUIT, COUNTERCLAIM OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.**

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the _____ day of _____, 20____.

_____

ANDREW S. FRIEDMAN (GUARANTOR)

Guarantor's Residence Address:

_____

Guarantor's SS#:

_____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>NOTARIZATION</u>

State of _____ )
                      ) ss.
County of _____ )

On this _____, day of _____, 20_____ before me the subscriber personally appeared Andrew Friedman, who being by me duly sworn, did depose and say; that he resides at _____, that he is the person described in and who executed the foregoing instrument; and that he signed his name thereto freely and of his own volition.

_____

Notary Public

My commission expires: _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DOC ID# 104441358

- 8 -

# Exhibit H

**EXHIBIT H**

In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation Settlement Administrator
c/o_____
Address1
Address2
City, ST  Zip

                                                                                        Date

Name1
Address1
Address2
City, ST  Zip

Claim ID no.:

Re:  In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation

.

**RESPONSE DUE DATE:  <<30 days after mailing>>**

Dear Sir or Madam:

The Settlement Administrator for the class action settlement involving Midland National Life Insurance Company has reviewed the Claim Form you submitted.  The Settlement Administrator has determined that your Claim Form is deficient for the following reason(s) (each reason is marked with an "X."):

_____ You indicated that you believe that you were misled with respect to Surrender Charges, right to Annuitize, or other policy benefits, but you failed to offer an explanation of how, by whom, and the nature of the Misrepresentation;

_____ You indicated that you incurred a Surrender Charge on a withdrawal from an Annuity in the past, or that you now need to withdraw funds from the Annuity in excess of the penalty free amount and would incur a Surrender Charge, because you needed or currently need funds from the Annuity to pay for medical expenses, nursing or home care, and/or retention of your sole residence, but you failed to provide a description of the claimed expense(s);

_____ You indicated that you incurred a Surrender Charge on a withdrawal from an Annuity in the past, or that you now need to withdraw funds from the Annuity in excess of the penalty free amount and would incur a Surrender Charge, because you needed or currently need funds from the Annuity to pay for other essential living expenses, but you did not explain the nature of the expense(s) or the circumstances indicating that you could not or cannot afford the expenses  without withdrawing fund subject to a Surrender Charge from your Annuity;

_____ You did not state your annual income;

_____ You did not state your estimated net worth.

_____ You did not state whether you were an original Owner of the Annuity.

_____ You indicated you were not the original Owner of the Annuity but did not state if the original purchaser of the Annuity was over age 65 at the date of issue.

_____ You did not sign the Claim Form.

_____ You did not date the Claim Form.

_____ The person who provided the response to Question 1 did not sign the Claim Form.

_____ The person who provided the response to Question 1 did not date the Claim Form.

_____   _____


A copy of the Claim Form that you submitted is enclosed.  To be fully considered for the Surrender Charge Reduction Benefit, you must provide the information requested in your Claim Form and mail it to the Settlement Administrator within 30 days after the date on this Notice of Deficiency by First-Class United States Mail to the following address:

In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation Settlement Administrator
[Address]

You must sign and date your Claim Form under penalty of perjury again before you re-submit it.  If you re-submit the Claim Form with adequate information, your Claim will be reviewed by the Settlement Administrator based on the additional information you provide.  If you do not re-submit the Claim Form postmarked by <<30 days after mailing>>, your Claim will be reviewed based on the information you originally provided and may be denied due to the deficiency(ies) indicated above.  If your Claim is approved, you will receive or be notified of your Surrender Charge Reduction Benefit as soon as practicable.   If your Claim is not approved, you will be eligible for an Annuitization Bonus on the terms and conditions described in the Settlement Agreement and the Class Notice if your Annuity is still active.


Respectfully,


In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation. Settlement Administrator