## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| WILLIAM MURR, On Behalf of Himself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>       v.<br><br>MIDLAND NATIONAL LIFE INSURANCE COMPANY,<br><br>    Defendant. | Case No.:      4:10-cv-369<br><br><u>CLASS ACTION</u><br><br>CLASS ACTION COMPLAINT FOR:<br><br>    1.  BREACH OF CONTRACT; and<br>    2.  UNJUST ENRICHMENT<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff William H. Murr ("plaintiff") brings this action on behalf of himself and all others similarly situated against defendant Midland National Life Insurance Company ("Midland" or "defendant"), and states:

### JURISDICTION AND VENUE

1.　　This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some of the members of the class of plaintiffs are citizens of states different from Midland. Further, greater than two-thirds of the class members reside in states other than the state in which Midland is a citizen.

2.　　Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this district and because defendant:

        (a)　　is headquartered and authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution, and sale of its products in this district;

        (b)　　does substantial business in this district; and

        (c)　　is subject to personal jurisdiction in this district.

## NATURE OF ACTION

3.       Midland develops, markets and sells insurance products, including annuities. This action is about Midland's failure to abide by the express terms of its annuity contracts when calculating the amount of money its customers are owed when they surrender their annuities. Specifically, Midland incorrectly calculates the amount owed when a customer surrenders an annuity by failing to correctly apply the "Interest Adjustment" in determining the "Surrender Values," as those terms are defined in the annuity contracts.

4.       Midland's conduct constitutes a systemic breach of contract, and results in its unjust enrichment.   In addition to seeking damages and restitution, plaintiff also seeks declaratory and injunctive relief to define the parties' rights and obligations and to stop Midland's ongoing misconduct.

## PARTIES

5.       At all times relevant to this matter, plaintiff resided in Surprise, Arizona.  During the class period, plaintiff purchased and surrendered a Midland deferred annuity.  The surrender was processed and the amount of the surrender calculated from Midland's office in West Des Moines, Iowa.  Attached as Exhibit A is the certificate for plaintiff's Midland deferred annuity.

6.       Defendant Midland is, and at all times relevant herein was, a stock insurance corporation which, since 1999, has been duly organized and existing under the laws of the State of Iowa.  At all times relevant, Midland has been authorized to transact and is transacting the business of insurance in this State and within this judicial district.

7.       All of Midland's annuity operations are located in and administered from West Des Moines, Iowa and are conducted as part of the Sammons Annuity Group.  Midland and the Sammons Annuity Group are owned by Sammons Financial Group which, in turn, is owned by Sammons Enterprises, Inc.  Midland markets and sells through its licensed sales agents various annuity products, including fixed, variable, indexed and immediate annuities in 49 states, the District of Columbia, Puerto Rico, Guam, the Virgin Islands, and overseas at military installations.

8.     According to its website, Midland has more than one million life insurance policyholders and annuitants nationwide, with more than $119 billion of life insurance in force.

## FACTUAL ALLEGATIONS

9.     Annuities are contracts sold by a life insurance company that provides fixed or variable payments to the purchaser or the purchaser's designee, either immediately or at a predetermined future date, depending on the terms of the annuity agreement.  The income is paid from the agreed upon date either until the death of the person on whose life the annuity is priced (known as the annuitant) or for a specified number of years. Annuities can be classified as either deferred or immediate.

10.     With immediate annuities, in exchange for an upfront payment, a consumer acquires the right to a stream of periodic payments from the insurer beginning immediately after the first payment period (typically after one month or one year), and commonly is guaranteed to continue for as long as the annuitant is alive.

11.     A deferred annuity is an "accumulation" annuity product under which payments are made by the annuitant, either through a single premium or a series of periodic payments, and left to accumulate on a tax-deferred basis over a period of years.  Often, the annuity is structured so it will begin paying income to the annuitant at retirement.  The types of annuities at issue here are deferred annuities.

12.     There are several kinds of deferred annuities, including a "fixed" deferred annuity and an "equity-indexed" deferred annuity.[1]

13.     Purchasers of Midland's deferred annuities select from a limited number of investment options.  For example, Midland offers annuitants the option of investing premiums in: (a) an account guaranteeing a fixed minimal rate of interest return; (b) an account whose rate of return is dictated by a specific market index, such as the Dow Jones Industrial Average or Standard & Poor's Composite Stock Index; or (c) an account which combines these two interest

---

[1]     In addition, there are "variable" annuities, which are not at issue.  The annuities at issue are referred to throughout this complaint as "deferred annuities."

accrual methods.  These latter two types of deferred annuities are sometimes referred to in the insurance industry as "equity-indexed" annuities.  The accumulation value of the deferred annuity increases over time, in relation to the performance of the selected investment options.

14.    Midland utilizes a fully integrated, standardized adhesionary contract for its deferred annuity products, which it prepares and issues. In some cases, as in this case, certificates are issued under a master contract which binds the insurance company and the annuitant (and any beneficiary) to the annuity contract.  For ease of reading, and because this distinction is not relevant to the issues presented, the annuity agreement will be referred in this complaint as the contract.

15.    Midland's annuity contract strictly limits how changes to the contracts may be made: "No one has the right to change any part of this Certificate or to waive any of its provisions unless the change is approved in writing by one of Our officers.  Only our President or Secretary may modify this Certificate.  We may change this Certificate without Your consent to conform to state or federal laws or regulations.  A change will be made by attaching an endorsement to this Certificate."

16.    Midland has never issued an endorsement on the Interest Adjustment at issue or the calculation or its application to the Surrender Value.

17.    Pursuant to the terms of the annuity contracts, consumers "may surrender this Certificate for its Surrender Value at any time prior to the Maturity Date."  The Surrender Value, and each of the factors needed to calculate the Surrender Value, are set forth in the annuity contracts.  The annuity contract provides that the "Surrender Value" is equal to:

    1)    The Accumulation Value; multiplied by

    2)    The Interest Adjustment; less

    3)    The Surrender Charge; less

    4)    Any applicable Premium Tax.

18.    For the Interest Adjustment, Midland's annuity contracts provide:

An applicable Interest Adjustment will be calculated by multiplying the amount withdrawn before the reduction for any Surrender Charge by the formula described below:

$$[(1+i_o - 0.005)/(1 + i_t)^{\wedge}(T)]$$

$i_o$ = The Current Interest Rate (excluding any additional interest) when this Certificate was issued.

$i_t$ = The Current Interest Rate (excluding any additional interest) offered for new Certificates.

T = Time in years as follows:

Number of days from the date of the partial or full surrender to the end of the current Certificate Year divided by 365; plus whole number of years remaining in the Surrender Period.

An Interest Adjustment will only be made when a Surrender Charge is deducted.

19.     Midland breaches the annuity contract by failing to compute the Interest Adjustment according to its terms.  Instead, in breach of the annuity contracts, it manipulates to its benefit the value of factor "$i_t$," defined as "The Current Interest Rate (excluding any additional interest) offered for new Certificates" or "The Current Interest Rate (excluding any additional interest) offered for new Contracts."  Regardless of the language used, the "Interest Adjustment" formula specified by contract is the same.

20.     Depending on the particular Midland deferred annuity product, and for reasons not relevant to this lawsuit, Midland defines the individual annuity purchased by consumers as a "Certificate" or a "Contract."  For example, attached as Exhibit A is a copy of plaintiff's Legacy Bonus 11 annuity contract which Midland calls "Certificate Number 8500183470."   Other Midland deferred annuities are identified by a "Contract Number."

21.     Contrary to the terms of the annuity contract Midland applies the wrong interest rate to the "$i_t$" value in the Interest Adjustment formula.  Although it is not stated anywhere in the annuity contract, and in breach of the annuity contract, Midland uses a self-selected new

money rate and **not** "The Current Interest Rate (excluding any additional interest) offered for new Certificates."

22.     Midland also does not define anywhere in its annuity contracts how its self-selected new money rate is calculated.  Nor does Midland disclose in its annuity contracts that a new money rate will be used to calculate the "$i_t$" value in the Interest Adjustment formula.  Instead, its annuity contracts provide that the rate will be the Interest Adjustment.

23.     Midland's standardized annuity contracts never refer to a "new money rate" or specifically define the term.  Instead, the only reference to a new money rate is wholly unrelated to the calculation of the Surrender Value.  It is located in Section 4 entitled "CALCULATION OF THE FIXED ACCOUNT VALUE."  Section 4.2, entitled "Current Interest Rate," states in relevant part that "We will also declare the Current Interest Rate for any subsequent premiums or amounts transferred to the Fixed Account."  That is, for new money added to the existing annuity contract, Midland will declare an applicable interest rate.  However, Section 4.2's provision regarding the Current Interest Rate for new money transferred to the Fixed Account of the contract is not related to section 6.3's interest adjustment formula for section 6 surrenders and the underlying Current Interest Rate for "new Certificates" (or "new Contracts").

24.     The contracts for the annuities owned by plaintiff and Class members state that the Interest Adjustment will be calculated using the Current Interest Rate offered for new Certificates (or Contracts).  Therefore, Midland is not permitted under the annuity contracts to use self-selected new money rates applied to subsequent premiums or amounts to the Fixed Account of the existing annuity contract.  Instead, reasonable consumers would expect that Midland would use the interest rate that it applies at the time to new purchases of the particular Midland deferred annuity being surrendered.  That is, if a Legacy Bonus 11 certificate is being surrendered, then when calculating the Interest Adjustment, Midland must apply the current interest rate it is offering consumers who then purchase a Legacy Bonus 11 certificate or, if the Legacy Bonus 11 is not offered, the current interest rate of a comparable deferred annuity.

Case 2:07-cv-01625-GAS-MAN - Document 401-1  Filed 10/30/10  Page 7 of 31  Page ID
Case 4:10-cv-00369-JAU -CPB  Document 1  Filed 08/11/10  Page 7 of 12
#:3716

Under the contracts Midland cannot ignore the interest rate it is then paying on new contracts at the time of the surrender.

25.     The effect of Midland's improper practice of using an unspecified rate to calculate the Interest Adjustment is to decrease the Surrender Value received by plaintiff and the Class members when surrendering their annuities, in whole or in part.

26.     Like the other Class members, plaintiff was subject to Midland's unlawful Interest Adjustment practice.  Midland applied a 3.55% current interest rate to calculate the Interest Adjustment applicable to plaintiff's surrender of his Legacy Bonus 11 annuity.  Using this rate (or the method of its calculation), ostensibly a new money interest rate that would be applied to subsequent premiums or amounts transferred to the Fixed Account of the existing contract, is not permitted under the terms of the fully integrated annuity contract.  Moreover, the then current interest rates Midland was offering on new contracts for comparable Midland annuities (those having similar surrender periods and initial premium bonuses to a Legacy Bonus 11 annuity) had interest rates lower than 3.55%.  Therefore, the effect of Midland's application of an undisclosed new money interest rate to the Interest Adjustment for the surrender of plaintiff's annuity contract, and not the current interest rate Midland was then offering for the contract or comparable annuity products, was to decrease the Surrender Value paid to plaintiff by tens of thousands of dollars.

27.     Each of Midland's deferred annuity products are governed by integrated adhesionary contracts containing the same Interest Adjustment formula systematically breached by Midland.

28.     Midland's application of any interest rate other than the interest rate Midland was offering for new contracts to the Interest Adjustment formula constitutes a breach of contract.

29.     The above conduct, acts and omissions by Midland are ongoing.

30.     Plaintiff was not aware of the facts giving rise to the complaint, including the unlawful manner in which Midland calculates the Interest Adjustment until after he surrendered his annuity contract.

31.     Midland's unlawful acts resulted in the loss of money to plaintiff and the Class members, and unjustly enriched Midland.

32.     The acts complained of in this lawsuit do not relate to the offering of advice related to Midland deferred annuities, or the design, solicitation and sale of Midland deferred annuities, including the crediting of interest to policy accounts.

## CLASS DEFINITION AND ALLEGATIONS

33.     Plaintiff brings this action on behalf of himself and members of a Class defined as:

> All persons who purchased a deferred annuity issued by Midland National Life Insurance Company that was surrendered, in whole or in part, prior to the contract's Maturity Date.  Excluded from the Class are defendant and its officers, directors and employees.

34.     *Numerosity*.  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members.  The precise number of Class members is unknown to plaintiff.  The true number and identity of Class members is known by the defendant, however, and thus, Class members may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

35.     *Existence and Predominance of Common Questions of Law and Fact*. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.   These common legal and factual questions include, but are not limited to, the following:

(a)     whether Midland's deferred annuity contracts contain standardized Interest Adjustment formulas;

(b)     whether Midland calculates the Interest Adjustment pursuant to the terms of its annuity contracts;

(c)     whether the alleged conduct constitutes violations of the laws asserted;

        (d)     whether plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

        (e)     whether plaintiff and Class members are entitled to declaratory and injunctive relief.

36.    ***Typicality***.  Plaintiff's claims are typical of the claims of the members of the Class in that the claims are the same.

37.    ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

38.    ***Superiority***.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the defendant.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

39.    In the alternative, the Class may also be certified because:

        (a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the defendant;

Case 2:07-ml-01825-CAS-MAN   Document 491-1   Filed 10/30/10   Page 10 of 31   Page ID
#:3719
Case 4:10-cv-00389-JAJ -CFB   Document 1   Filed 08/11/10   Page 10 of 12

        (b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

        (c)     defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

40.    Unless a Class is certified, defendant will retain monies received as a result of its conduct that was taken from plaintiff and Class members.  Unless a Class-wide injunction is issued, defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I

## Breach of Contract

41.    Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

42.    Plaintiff brings this claim individually and on behalf of the Class.

43.    Under each Class member's annuity contract, Midland was required to calculate the Interest Adjustment pursuant to the formula specified in the annuity contract.

44.    All conditions precedent to Midland's liability under its standardized contract have been performed by plaintiff and the Class.

45.    Midland breached the terms of its standardized contract with plaintiff and the Class by failing to calculate the Interest Adjustment pursuant to the terms of the contract.  By failing to do so Midland failed to honor its agreement that "You may surrender this Certificate for its Surrender Value at any time prior to the Maturity Date."

46.    As a result of Midland's breach of the subject contracts, plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT II

### Unjust Enrichment

47.     Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

48.     Plaintiff brings this claim individually and on behalf of the Class.

49.     Midland improperly received and continues to improperly receive from plaintiff and the Class members millions of dollars as a result of the conduct alleged above.

50.     As a result, plaintiff and the Class have conferred a benefit on Midland to which Midland is not entitled.  Midland has knowledge of this benefit, wrongfully and deceptively obtained this benefit, and has voluntarily accepted and retained the benefit conferred on it. Midland will be unjustly enriched if it is allowed to retain such funds and, therefore, a constructive trust should be imposed on all monies wrongfully obtained by Midland and the money should be ordered returned to plaintiff and the Class.

### PRAYER FOR RELIEF

Wherefore, plaintiff prays for a judgment:

A.     Certifying the Class as requested herein;

B.     Awarding plaintiff and the proposed Class members damages;

C.     Awarding restitution to plaintiff and the proposed Class members;

D.     Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining defendant from continuing the practices as set forth herein, and directing defendant to identify, with Court supervision, victims of its conduct and pay them all monies acquired by defendant by means of any act or practice declared by this Court to be wrongful;

E.     Declaring the rights and obligations of the parties under the annuity contracts concerning the Surrender Value;

F.     Ordering an accounting;

G.     Awarding attorneys' fees and costs; and

H.     Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  August 11, 2010                    BRADY & O'SHEA, PC

                                           By:   /s/ Brad J. Brady
                                           BRAD J. BRADY (AT0001138)

                                           By:   /s/ Matthew L. Preston
                                           MATTHEW L. PRESTON (AT0006314)
                                           2735 First Avenue SE
                                           Cedar Rapids, IA  52402
                                           Telephone:  319/866-9277
                                           319/866-9280 (fax)
                                           bbrady@bradyoshea.com
                                           mpreson@bradyoshea.com

                                           BLOOD HURST & O'REARDON, LLP
                                           TIMOTHY G. BLOOD (CA 149343) *(pro hac
                                           vice admission to be applied for)*
                                           THOMAS J. O'REARDON II (CA 247952) *(pro
                                           hac vice admission to be applied for)*
                                           600 B Street, Suite 1550
                                           San Diego, CA  92101
                                           Telephone: 619/338-1100
                                           619/338-1101 (fax)
                                           tblood@bholaw.com
                                           toreardon@bholaw.com

                                           DOYLE LOWTHER LLP
                                           WILLIAM J. DOYLE II (CA 188069) *(pro hac
                                           vice admission to be applied for)*
                                           JAMES R HAIL (CA 202439) *(pro hac vice
                                           admission to be applied for)*
                                           ALYSON AMERSON (CA 231218) *(pro hac
                                           vice admission to be applied for)*
                                           9466 Black Mountain Road, Suite 210
                                           San Diego, CA 92126
                                           Telephone: 619/573-1700
                                           619/573-1701 (fax)
                                           bill@doylelowther.com
                                           jim@doylelowther.com
                                           alyson@doylelowther.com

                                           Attorneys for Plaintiff

Case 2:07-cv-01825-CAS-OP Document 101-1 Filed 10/26/01 Page 13 of 31 Page ID
Case 4:10-cv-00369-JAJ -CFB Document 1 Filed 08/01/10 Page 1 of 18
#:3722

# MIDLAND NATIONAL
### Life Insurance Company  A Stock Company

Principal Office: 4601 Westown Parkway, Suite 300, West Des Moines, IA 50266 • (515) 440-5500
Executive Office: One Sammons Plaza, Sioux Falls, SD 57193 • (605) 335-5700

In this Certificate, Midland National Life Insurance Company is referred to as "We", "Us", "Our", or the "Company". "You" and "Your" refer to the Owner.

We agree to pay the benefits provided by this Certificate. This Certificate is issued in consideration of the application and payment of the Initial Premium.

**RIGHT TO EXAMINE CERTIFICATE** - It is important to Us that You are satisfied with this Certificate and that it meets Your insurance goals. Read it carefully. On written request, an insurer is required to provide within a reasonable time reasonable factual information regarding the benefits and provisions of the annuity contract to the contract holder that if for any reason the contract holder is not satisfied with the annuity contract the contract holder may return the annuity contract within ten days, or within thirty days if the contract holder is sixty-five years of age or older on the date of the application for the annuity contract, after the contract is delivered and receive a refund of all monies paid.

**THIS IS A LEGAL CONTRACT BETWEEN YOU AND US. READ IT CAREFULLY. This is an equity indexed annuity. Interest credited depends on an external index. Indices are shown on the Specifications Page.**

**PRESIDENT**                    **SECRETARY**

**Certificate of Participation Used in Connection With
Group Flexible Premium Deferred Annuity Group Contract Form No. AG094A
With Indexed Interest Accounts
Equity Indexed Annuity
Annuity Payments Starting On Maturity Date
Death Benefit Payable Before Maturity Date
Non-Participating - Not Eligible For Dividends**

**THIS CERTIFICATE CONTAINS AN INTEREST ADJUSTMENT WHICH MAY CAUSE
THE BENEFITS AND VALUES OF THIS CERTIFICATE TO INCREASE OR DECREASE**

EXHIBIT A

## SPECIFICATIONS PAGE

**OWNER:** WILLIAM H. MURR

**CERTIFICATE NUMBER:** 8500183470

**ANNUITANT:** WILLIAM H. MURR

**ISSUE DATE:** JUNE 22, 2004

**AGE OF ANNUITANT:** 64

**MATURITY DATE:** JUNE 22, 2055

**SEX OF ANNUITANT:** MALE

**INITIAL PREMIUM:** $284,626.81

**PREMIUM BONUS PERCENTAGE:** 11%
Applies to all premium, net of Partial Surrenders, received in the first Certificate Year.

**PREMIUM INCLUDING BONUS:** $315,935.76

**MINIMUM INTEREST RATE:** 2.00%

**MINIMUM GUARANTEED CASH VALUE INTEREST RATE:** 2.00% through the 27th Certificate Year; 3.00% thereafter

**MINIMUM ADDITIONAL PREMIUM:** $25

**MINIMUM PARTIAL SURRENDER AMOUNT*:** $500
*Minimum Partial Surrender Amount is not applicable for a withdrawal made in accordance with Section 7.2.

**MINIMUM ACCOUNT VALUE:** $1,000

**MINIMUM TRANSFER AMOUNT:** $500

**SURRENDER PERIOD:** 14 Years

**SURRENDER CHARGE PERCENTAGE SCHEDULE:**

We impose a surrender charge on certain surrenders. The amount of the charge is a percentage of the amount withdrawn and is described below. Surrender charges do not apply if the Owner is exercising the option described in Section 7.2.

| Certificate Year | Surrender Charge Percentage | Certificate Year | Surrender Charge Percentage |
|:---:|:---:|:---:|:---:|
| 1 | 22% | 9 | 12% |
| 2 | 22% | 10 | 10% |
| 3 | 22% | 11 | 8% |
| 4 | 22% | 12 | 6% |
| 5 | 20% | 13 | 4% |
| 6 | 18% | 14 | 2% |
| 7 | 16% | 15+ | 0% |
| 8 | 14% | | |

If you have any questions or concerns, contact your agent or write or call Us at:

Midland National Life Insurance Company
P. O. Box 79907
Des Moines, Iowa 50325-0907

Toll-free telephone: 1-877-586-0244

CS094A

**FIXED ACCOUNT:**

**INITIAL PREMIUM ALLOCATED TO THE FIXED ACCOUNT:**  $ 315,935.76

Includes 11% Premium Bonus.

**CURRENT INTEREST RATE:**  3.40%  *

*Guaranteed for one Certificate Year.  Includes 0.00% additional interest applicable only in the first Certificate Year.

**INDEX ACCOUNTS:**

| INDEX ACCOUNT | CREDITING METHOD | PREMIUM ALLOCATED[1] | PARTICIPATION RATE[2] | INDEX MARGIN[3] | INDEX CAP RATE[4] | INDEX AT ISSUE |
|---|---|---|---|---|---|---|
| S&P 500® | Averaging | $ 0.00 | N/A | N/A | N/A | N/A |
| S&P 500® | Point to Point | $ 0.00 | N/A | N/A | N/A | N/A |
| DJIA<sup>sm</sup> | Averaging | $ 0.00 | N/A | N/A | N/A | N/A |
| DJIA<sup>sm</sup> | Point to Point | $ 0.00 | N/A | N/A | N/A | N/A |
| RUSSELL 2000® | Averaging | $ 0.00 | N/A | N/A | N/A | N/A |
| RUSSELL 2000® | Point to Point | $ 0.00 | N/A | N/A | N/A | N/A |
| NASDAQ-100® | Point to Point | $ 0.00 | N/A | N/A | N/A | N/A |
| S&P Midcap 400® | Averaging | $ 0.00 | N/A | N/A | N/A | N/A |
| S&P Midcap 400® | Point to Point | $ 0.00 | N/A | N/A | N/A | N/A |

[1]  Includes 11% Premium Bonus.

[2]  Guaranteed to Maturity Date.

[3]  Guaranteed for one Certificate Year.  Guaranteed never to go above 15.00% for Averaging or 7.00% for Point to Point.

[4]  Guaranteed for one Certificate Year.  Guaranteed never to go below 10%.

**THE STANDARD & POOR'S 500® COMPOSITE STOCK PRICE INDEX**

This Index does not include dividends paid by the underlying companies.
Standard & Poor's 500® is a trademark of The McGraw-Hill Companies, Inc. and has been licensed for use by Midland National Life Insurance Company.  This product is not sponsored, endorsed, sold or promoted by Standard & Poor's and Standard & Poor's makes no representation regarding the advisability of purchasing this annuity certificate.

**THE STANDARD & POOR'S MIDCAP 400® COMPOSITE STOCK PRICE INDEX**

This Index does not include dividends paid by the underlying companies.
Standard & Poor's 400® is a trademark of The McGraw-Hill Companies, Inc. and has been licensed for use by Midland National Life Insurance Company.  This product is not sponsored, endorsed, sold or promoted by Standard & Poor's and Standard & Poor's makes no representation regarding the advisability of purchasing this annuity certificate.

**THE RUSSELL 2000® COMPOSITE STOCK PRICE INDEX**

This Index does not include dividends paid by the underlying companies.
Russell 2000® is a trademark of the Frank Russell Company, and has been licensed for use by Midland National Life Insurance Company.  This product is not sponsored, endorsed, sold or promoted by Frank Russell Company and Frank Russell Company makes no representation regarding the advisability of purchasing this annuity certificate.

**THE NASDAQ-100® STOCK PRICE INDEX**

This Index does not include dividends paid by the underlying companies.
The NASDAQ-100®, NASDAQ-100 Index® and NASDAQ® are registered marks of the NASDAQ Stock Market, Inc. (which with its affiliates are the "Corporations") and are licensed for use by Midland National Life Insurance Company.  This product has not been passed on by the Corporations as to their legality or suitability.  This product is not issued, endorsed, sold or promoted by the Corporations.  THE CORPORATIONS MAKE NO WARRANTIES AND BEAR NO LIABILITY WITH RESPECT TO THIS PRODUCT.

## THE DOW JONES INDUSTRIAL AVERAGE^sm (DJIA^sm) COMPOSITE STOCK PRICE INDEX

This product is not sponsored, endorsed, sold or promoted by Dow Jones.  Dow Jones makes no representation or warranty, express or implied, to the owners of this product or any member of the public regarding the advisability of investing in securities generally or in this product particularly.  Dow Jones' only relationship to the Midland National Life Insurance Company ("the Company") is the licensing of certain trademarks, trade name and service marks of Dow Jones and of the Dow Jones Industrial Average, which is determined, composed and calculated by Dow Jones without regard to the Company or this product.  Dow Jones has no obligation to take the needs of the Company or the owner of this product into consideration in determining, composing, or calculating the Dow Jones Industrial Average.  Dow Jones is not responsible for and has not participated in the determination of the timing of, prices at, or quantities of this product to be issued or in the determination or calculation of the equation by which this product are to be converted into cash.  Dow Jones has no obligation or liability in connection with the administration, marketing or trading of this product.

DOW JONES DOES NOT GUARANTEE THE ACCURACY AND/OR THE COMPLETENESS OF THE DOW JONES INDUSTRIAL AVERAGE OR ANY DATA INCLUDED THEREIN AND DOW JONES SHALL HAVE NO LIABILITY FOR ANY ERRORS, OMISSIONS, OR INTERRUPTIONS THEREIN. DOW JONES MAKES NO WARRANTY, EXPRESS OR IMPLIED AS TO RESULTS TO BE OBTAINED BY THE COMPANY, OWNERS OF THIS PRODUCT OR ANY OTHER PERSON OR ENTITY FROM THE USE OF THE DOW JONES INDUSTRIAL AVERAGE OR ANY DATA INCLUDED THEREIN.  DOW JONES MAKES NO EXPRESS OR IMPLIED WARRANTIES, AND EXPRESSLY DISCLAIMS ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE WITH RESPECT TO THE DOW JONES INDUSTRIAL AVERAGE OR ANY DATA INCLUDED THEREIN. WITHOUT LIMITING ANY OF THE FOREGOING, IN NO EVENT SHALL DOW JONES HAVE ANY LIABILITY FOR ANY LOST PROFITS OR INDIRECT, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES OR LOSSES, EVEN IF NOTIFIED OF THE POSSIBILITY THEREOF.   THERE ARE NO THIRD PARTY BENEFICIARIES OF ANY AGREEMENT OR ARRANGEMENTS BETWEEN DOW JONES AND THE COMPANY.

CS094A

## TABLE OF CONTENTS

|  | SECTION |
|---|---|
| **RIGHT TO EXAMINE CERTIFICATE** ................................................ | CERTIFICATE FACE PAGE |
| **DEFINITIONS**................................................................................... | 1 |
| **GENERAL PROVISIONS** ................................................................... | 2 |
|     Entire Contract ........................................................................ | 2.1 |
|     Changes to the Certificate ....................................................... | 2.2 |
|     Beneficiary ............................................................................... | 2.3 |
|     Change of Beneficiary............................................................... | 2.4 |
|     Incontestability ........................................................................ | 2.5 |
|     Misstatement of Age or Sex...................................................... | 2.6 |
|     Periodic Reports ...................................................................... | 2.7 |
|     Non-participating ...................................................................... | 2.8 |
|     Claims of Creditors .................................................................. | 2.9 |
|     Minimum Benefits..................................................................... | 2.10 |
|     Payment of Premiums .............................................................. | 2.11 |
|     Ownership................................................................................ | 2.12 |
|     Assignment.............................................................................. | 2.13 |
| **ALLOCATIONS AND TRANSFERS** ..................................................... | 3 |
|     Allocation of Premiums............................................................. | 3.1 |
|     Transfers ................................................................................ | 3.2 |
| **CALCULATION OF FIXED ACCOUNT VALUE** ...................................... | 4 |
|     Fixed Account Value ................................................................ | 4.1 |
|     Current Interest Rate................................................................ | 4.2 |
| **CALCULATION OF INDEX ACCOUNT VALUE**..................................... | 5 |
|     Index Account Value ................................................................ | 5.1 |
|     Index Credit ............................................................................. | 5.2 |
|     Index Value .............................................................................. | 5.3 |
|     Index Cap Rate........................................................................ | 5.4 |
|     Index Margin ........................................................................... | 5.5 |
|     Participation Rate…………………………………………………… | 5.6 |
|     Index Average…………………………………………………….… | 5.7 |
| **SURRENDERS**................................................................................... | 6 |
|     Surrender................................................................................. | 6.1 |
|     Surrender Value....................................................................... | 6.2 |
|     Interest Adjustment.................................................................. | 6.3 |
|     Minimum Guaranteed Cash Value ............................................ | 6.4 |
|     Surrender Charges ................................................................... | 6.5 |
| **PARTIAL SURRENDERS** ................................................................... | 7 |
|     Partial Surrenders ................................................................... | 7.1 |
|     Penalty-Free Partial Surrenders............................................... | 7.2 |
|     Surrender Charges ................................................................... | 7.3 |
| **DEATH BENEFIT** ............................................................................... | 8 |
|     Death of Annuitant or Owner Before the Maturity Date ............. | 8.1 |
|     Spousal Continuance............................................................... | 8.2 |
|     Death of Annuitant or Owner On or After the Maturity Date.... | 8.3 |
|     Simultaneous Death…………………………………………….… | 8.4 |
| **PAY-OUT PROVISIONS** ..................................................................... | 9 |
|     Payment of Certificate Proceeds.............................................. | 9.1 |
|     Frequency of Annuity Payments............................................... | 9.2 |
|     Payment Plans ........................................................................ | 9.3 |
|     Additional Payment Plans........................................................ | 9.4 |
|     Evidence of Age and Survival .................................................. | 9.5 |
| **SETTLEMENT OPTION TABLES** ........................................................ | APPENDIX |

AC094A02

## SECTION 1:   DEFINITIONS

The following are key words used in this Certificate.  They are important in describing both Your rights and Ours.  When they are used, they are capitalized.  As You read Your Certificate, refer back to these definitions.

**Account(s):** Means the Fixed Account or Index Account(s).

**Accumulation Value:** Means the value used to determine annuity benefits at maturity and death benefits under this Certificate.  The Accumulation Value is equal to the sum of the Fixed Account Value and the Index Account Value(s).

**Annuitant:** The person(s) named in the application and on the Specifications Page to whom periodic income will be paid.  This is the person whose life is used to determine the amount and duration of any periodic income involving life contingencies.  The Annuitant will be considered the Owner of the Certificate unless otherwise stated on the application.

**Beneficiary:** The person(s) to whom the death benefit will be paid in the event of the death of the Owner or Annuitant.

**Certificate Anniversary:** The same date in each Certificate Year as the Issue Date.

**Certificate Year:** The period from one Certificate Anniversary to the next Certificate Anniversary.  The first Certificate Year is from the Issue Date to the first Certificate Anniversary.

**Fixed Account:** An account which will earn interest at the Current Interest Rate.

**Fixed Account Value:** A portion of the Accumulation Value, allocated according to Your instructions, which will earn interest at the Current Interest Rate.

**Index Account:** An account which will earn an Index Credit based upon changes in the index listed on the Specifications Page.  The index crediting methods are further explained in Section 5.2.

**Index Account Value:** A portion of the Accumulation Value, allocated according to Your instructions, which will earn Index Credit linked to changes in the appropriate Index shown on the Specifications Page.

**Index Cap Rate:** The Index Cap Rate is used in the calculation of the point-to-point Index Credit.  The Index Cap Rate at issue is shown on the Specifications Page and is further explained in Section 5.4.

**Index Margin:** The Index Margin is used in the determination of the Index Credit as explained in Section 5.5.  The Index Margin at issue is shown on the Specifications Page.

**Index Value:** The Index Value on any specified date is the closing value on the previous trading day associated with the appropriate index shown on the Specifications Page.

**Initial Premium:** The premium as shown on the Specifications Page.

**Issue Date:** The date this Certificate is issued and Your rights and benefits begin.  The Issue Date is shown on the Specifications Page.

**Maturity Date:** The date on which monthly income payments will begin.  The Maturity Date is the Certificate Anniversary immediately following the Annuitant's 115th birthday.

**Minimum Account Value:** The Minimum Account Value is shown on the Specifications Page.

**Minimum Partial Surrender Amount:** The amount as defined on the Specifications Page.

**Owner:** The person(s) or entity named in the application or the latest change filed with Us who is entitled to exercise all rights and privileges provided in the Certificate.

**Participation Rate:** The Participation Rate is used in the determination of the Index Credit.  The Participation Rate at issue is shown on the Specifications Page and is explained in Section 5.6.

**Payee:** The Annuitant is the Payee on the Maturity Date. The Beneficiary is the Payee of the proceeds at the death of the Annuitant or Owner if the date of death is prior to the Maturity Date.

**Premium Bonus:** The Premium Bonus is equal to the Premium, net of Partial Surrenders, multiplied by the Premium Bonus Percentage, if applicable, as shown on the Specifications Page.

**Premium Bonus Percentage:** We may declare a Premium Bonus Percentage that will be applied to the premiums received. The Premium Bonus Percentage, if any, is shown on the Specifications Page.

**Premium Tax:** An amount that may be deducted from the Accumulation Value at full surrender, annuitization or death.

**Proof of Death:** Proof of Death may consist of a certified copy of the death certificate or any other proof satisfactory to the Company.

**Surrender Period:** The Surrender Period is shown on the Specifications Page. During the Surrender Period, a Surrender Charge will apply to any full or partial surrender, except as described in Section 7.2.

**Surrender Value:** The amount available at time of full surrender.

**Written Notice:** A notice or request submitted in a written form satisfactory to Us, that is signed by the Owner and received by Us at the address shown on the Specifications Page.

### SECTION 2: GENERAL PROVISIONS

2.1 **Entire Contract:** The entire Contract between You and Us consists of the Group Master Contract, this Certificate, the attached written application and any attached endorsements, riders, and amendments.

2.2 **Changes to the Certificate:** No one has the right to change any part of this Certificate or to waive any of its provisions unless the change is approved in writing by one of Our officers. Only our President or Secretary may modify this Certificate.

We may change this Certificate without Your consent to conform to state or federal laws or regulations. A change will be made by attaching an endorsement to this Certificate.

2.3 **Beneficiary:** You named the Beneficiary in the application. A Beneficiary is revocable unless otherwise stated in the Beneficiary designation. If no Beneficiary is living when the Owner or Annuitant dies, the death benefit will be paid to You or Your estate.

2.4 **Change of Beneficiary:** You may change a revocable Beneficiary. We must receive Written Notice informing Us of the change. Upon receipt and acceptance, a change takes effect as of the date the Written Notice was signed. We will not be liable for any payment made before We record the Written Notice.

2.5 **Incontestability:** We will not contest this Certificate.

2.6 **Misstatement of Age or Sex:** If the age or sex of the Annuitant has been misstated, We will adjust the amount of each annuity payment to whatever the applied value would have purchased at the correct age and sex.

Any underpayments made by Us will be paid to the Payee. Any overpayments made by Us will be charged against benefits falling due after adjustment. All underpayments and overpayments will include interest at the rate required by the jurisdiction in which this Certificate is delivered.

2.7 **Periodic Reports:** At least once each year, We will send You a report containing information required by applicable state law.

2.8 **Non-participating:** This Certificate does not participate in the surplus or profits of the Company and the Company does not pay any dividends on it.

AC094A02

**2.9**    **Claims of Creditors:** To the extent permitted by law, no benefits payable under this Certificate to a Beneficiary or Payee are subject to the claims of creditors.

**2.10**   **Minimum Benefits:** The annuity payments, Surrender Values and Death Benefit under this Certificate are not less than the minimum required by the laws of the state in which this Certificate is delivered.

**2.11**   **Payment of Premiums:** The Initial Premium is due on the Issue Date. You may make additional premium payments in any amount and frequency, subject to the limits shown on the Specifications Page.

**2.12**   **Ownership:** This Certificate belongs to You. You have all rights granted by this Certificate, including the right to change Owners and Beneficiaries, subject to the rights of:

    1) Any assignee of record with Us;

    2) Any irrevocable Beneficiary; and

    3) Any restricted Ownership.

We must receive Written Notice informing Us of any change, designation or revocation. Once recorded, a change, designation or revocation takes effect as of the date the Written Notice was signed. However, We are not liable for payments made by Us before We record the Written Notice.

**2.13**   **Assignment:** You may assign this Certificate by giving Us Written Notice. We will not be responsible for the validity of any assignment. We will not be liable for any payments We make prior to recording the Written Notice of assignment.

<h3 style="text-align:center">SECTION 3:   ALLOCATIONS AND TRANSFERS</h3>

**3.1**   **Allocation of Premiums:** You must select how the Initial Premium and any Premium Bonus is to be allocated among the Fixed and Index Account(s). The amount allocated to an Account and the applicable index crediting method(s) must be at least equal to the Minimum Account Value shown on the Specifications Page.

All subsequent premiums received during a Certificate Year will be credited to the Fixed Account.

**3.2**   **Transfers:** You may request a transfer between the Fixed Account, the Index Account(s), and the Index Account(s)' applicable index crediting method(s), to be effective on the Certificate Anniversary, subject to the following:

    1.   We must receive Your Written Notice requesting a transfer five business days prior to the Certificate Anniversary.

    2.   The amount transferred cannot be less than the Minimum Transfer Amount shown on the Specifications Page.

    3.   If You do not transfer the entire balance of an Account, the amount remaining in an Account after the transfer must be equal to or greater than the Minimum Account Value shown on the Specifications Page.

On each Certificate Anniversary, We will allocate any premiums received since the prior Certificate Anniversary among the accounts according to Your most recent instructions.

## SECTION 4: CALCULATION OF THE FIXED ACCOUNT VALUE

4.1 **Fixed Account Value:** The Fixed Account Value equals:

1) Your Initial Premium and any Premium Bonus allocated to the Fixed Account; plus

2) Subsequent premiums and Premium Bonus, if any; plus or minus

3) Any transfers in or out of the Fixed Account; less

4) Any Partial Surrenders (before any Interest Adjustment or reduction for Surrender Charges); plus

5) Interest credited at the Current Interest Rate.

4.2 **Current Interest Rate:** The Current Interest Rate on the Issue Date is shown on the Specifications Page and is applicable to the Initial Premium and Premium Bonus allocated to the Fixed Account. The rate is guaranteed for the duration shown on the Specifications Page. An interest rate will be declared for future durations. We may declare a first year interest bonus that will be added to the Current Interest Rate during the first Certificate Year. The interest bonus at issue, if any, is shown on the Specifications Page.

We will also declare the Current Interest Rate for any subsequent premiums or amounts transferred to the Fixed Account. The declared rate will never be less than the Minimum Interest Rate shown on the Specifications Page.

## SECTION 5: CALCULATION OF THE INDEX ACCOUNT VALUE

5.1 **Index Account Value:** The Certificate's Index Account Value is the sum of the individual Index Account Values for each index and crediting methodology. Each individual Index Account Value equals:

1) Your Initial Premium and any Premium Bonus allocated to the individual Index Account and crediting method(s); plus or minus

2) Any transfers in or out of the individual Index Account and crediting method(s); less

3) Any Partial Surrenders (before any Interest Adjustment or reduction for Surrender Charges); plus

4) Index Credit calculated by Your chosen crediting method(s).

5.2 **Index Credit:** An Index Credit may be added to the appropriate individual Index Account Value at the end of each Certificate Year. You may elect at the beginning of each Certificate Year to have the Index Credit calculated using an averaging methodology, a point-to-point methodology or a combination of both.

**The Index Credit using the averaging methodology will equal:**

1) The Index Average for the current Certificate Year, minus the Index Value on the last Certificate Anniversary; divided by

2) The Index Value on the last Certificate Anniversary; less

3) The Index Margin; multiplied by

4) The Participation Rate; multiplied by

5) The Index Account Value and any transfers on the last Certificate Anniversary; less any Partial Surrenders (before any Interest Adjustment or reduction for Surrender Charges) during the Certificate Year.

The Index Credit will not be less than zero.

**The Index Credit using the point-to-point methodology will equal:**

1) The Index Value for the current Certificate Anniversary, minus the Index Value on the last Certificate Anniversary; divided by

2) The Index Value on the last Certificate Anniversary; adjusted

3) To be not greater than the Index Cap Rate; less

4) The Index Margin; multiplied by

5) The Participation Rate; multiplied by

6) The Index Account Value and any transfers on the last Certificate Anniversary; less any Partial Surrenders (before any Interest Adjustment or reduction for Surrender Charges), during the Certificate Year.

The Index Credit will not be less than zero.

You may request to change Your index crediting methodology, to be effective on the Certificate Anniversary, for the subsequent year. We must receive Your Written Notice requesting this change five business days prior to the Certificate Anniversary.

5.3 **Index Value:** The Index Value on any specified date is the closing value on the previous trading day associated with the index shown on the Specifications Page. If the Index Value is not available for any Index Value date, We will use the Index Value on the immediately preceding day for which the Index Value is available. If publication of the appropriate index is discontinued, or the calculation is substantially changed, We will substitute a suitable index and notify You.

5.4 **Index Cap Rate:** The Index Cap Rate is used in the calculation of the point-to-point Index Credit. The Index Cap Rate is the maximum annual percentage increase in the Index Value. Ending and beginning Index Values during a Certificate Year are used to determine any increase in the Index Account Value. This calculation is described in Section 5.2.

The initial Index Cap Rate is declared at issue and for the duration shown on the Specifications Page. The Index Cap Rate for future durations will be declared on each Certificate Anniversary and is guaranteed for the following Certificate Year. The minimum Index Cap Rate is shown on the Specifications Page.

5.5 **Index Margin:** The Index Margin is used in the calculation of both the averaging and point-to-point Index Credit. The initial Index Margin is declared at issue and for the duration shown on the Specifications Page. The Index Margin for future durations will be declared on each Certificate Anniversary and is guaranteed for the following Certificate Year. The maximum Index Margin is shown on the Specifications Page.

5.6 **Participation Rate:** The Participation Rate is used in the calculation of both the averaging and point-to-point Index Credit. The initial Participation Rate is declared at issue and is guaranteed for the duration shown on the Specifications Page. Upon expiration of the initial guarantee, the Participation Rate will be declared on each Certificate Anniversary and is guaranteed for the following Certificate Year.

5.7 **Index Average:** The Index Average for a Certificate Year equals:

1) The sum of the Index Values from each trading day during the Certificate Year; divided by

2) The number of trading days during the Certificate Year.

## SECTION 6:    SURRENDERS

6.1    **Surrender:** You may surrender this Certificate for its Surrender Value at any time prior to the Maturity Date. The Surrender Value will be determined as of the date that We receive Written Notice and the Certificate.

We may defer payment of the Surrender Value for up to six months. If payment is deferred for 30 or more days, interest at the rate required by the jurisdiction in which this Certificate is delivered will be paid during the period of deferment.

6.2    **Surrender Value:** The Surrender Value is equal to:

1)    The Accumulation Value; multiplied by

2)    The Interest Adjustment; less

3)    The Surrender Charge; less

4)    Any applicable Premium Tax.

The Surrender Value cannot be less than the Minimum Guaranteed Cash Value or greater than the Accumulation Value.

6.3    **Interest Adjustment:** We may make an Interest Adjustment on amounts withdrawn from this Certificate.

An applicable Interest Adjustment will be calculated by multiplying the amount withdrawn before the reduction for any Surrender Charge by the formula described below:

$[(1+i_o - .005)/(1 + i_t)]\wedge(T)$

$i_o$ = The Current Interest Rate (excluding any additional interest) when this Certificate was issued.

$i_t$ = The Current Interest Rate (excluding any additional interest) offered for new Certificates.

T= Time in years as follows:

Number of days from the date of the partial or full surrender to the end of the current Certificate Year divided by 365; plus whole number of years remaining in the Surrender Period.

An Interest Adjustment will only be made when a Surrender Charge is deducted.

The Interest Adjustment, either positive or negative, will be limited to the difference between:

1)    The Accumulation Value less any applicable Surrender Charge; and

2)    The Minimum Guaranteed Cash Value.

6.4    **Minimum Guaranteed Cash Value:** The Minimum Guaranteed Cash Value of this Certificate on any day will be no less than:

1)    100% of premiums (excluding Premium Bonus); less

2)    Any Partial Surrenders (before any Interest Adjustment or reduction for Surrender Charges); plus

3)    Interest earned at the  Minimum Guaranteed Cash Value Interest Rate shown on the Specifications Page; less

4)    Surrender Charges, if any.

6.5 **Surrender Charges:** We will deduct a Surrender Charge upon any full surrender. The charge is equal to:

1) The Accumulation Value; less

2) The Penalty-Free Partial Surrender amount, if any; multiplied by

3) The Surrender Charge Percentage shown on the Specifications Page.

## SECTION 7: PARTIAL SURRENDERS

7.1 **Partial Surrenders:** You may withdraw part of the Accumulation Value at any time before the Maturity Date, subject to the Minimum Partial Surrender Amount shown on the Specifications Page. A Partial Surrender may not bring any account value below the Minimum Account Value shown on the Specifications Page.

The Minimum Partial Surrender Amount does not apply if You exercise the penalty-free partial surrender as described in Section 7.2.

We may defer payment of the partial surrender for up to six months. If payment is deferred for 30 or more days, interest at the rate required by the jurisdiction in which this Certificate is delivered will be paid during the period of deferment.

Partial Surrenders will be deducted first from the Fixed Account then from the Index Account(s).

7.2 **Penalty-Free Partial Surrenders:** Once in each Certificate Year, except the first, You may withdraw up to 10% of the Accumulation Value as of the date of the Partial Surrender, without any Surrender Charge or Interest Adjustment.

If this option is not exercised during any Certificate Year, or if less than 10% is withdrawn, any unused amount will not be carried over to a subsequent Certificate Year.

7.3 **Surrender Charges:** We will deduct a Surrender Charge upon any partial surrender in excess of the allowable penalty-free partial surrender. The charge is equal to:

1) The requested amount; less

2) The penalty-free partial surrender amount (if available); multiplied by

3) The Surrender Charge Percentage shown on the Specifications Page.

## SECTION 8: DEATH BENEFIT

8.1 **Death of Annuitant or Owner Before the Maturity Date:** If the Annuitant or Owner dies prior to the Maturity Date We will pay the Death Benefit to the appropriate Beneficiary. The Death Benefit is the Accumulation Value as of the date of death, increased by interest at the rate required by the jurisdiction in which this Certificate is delivered until the date of payment and less any applicable Premium Tax.

If there are joint Owners, the Death Benefit will be paid upon the first death.

If there are joint Annuitants, the Death Benefit will be paid upon the second death.

Payments under this provision are in full settlement of all liability under this Certificate.

8.2 **Spousal Continuance:** If the Owner dies, and the Beneficiary is the deceased Owner's spouse, the Beneficiary may elect to continue this Certificate as the new Owner.

8.3 **Death of Annuitant or Owner On or After the Maturity Date:** If the Annuitant or Owner dies on or after the Maturity Date, We will pay the Beneficiary any remaining balance at least as rapidly as under the payment option in effect on the date of death.

AC094A02

8.4 **Simultaneous Death**: If Joint Owners or Joint Annuitants die within 24 hours of one another, they are considered to have died simultaneously and the eldest is presumed to have died first. In the event of the simultaneous death of the Owner and the Annuitant, the Owner is presumed to have died first, and the Owner's Beneficiary would be paid the Death Benefit.

## SECTION 9:    PAY-OUT PROVISIONS

9.1 **Payment of Certificate Proceeds:** On the Maturity Date, We will pay the Accumulation Value of this Certificate, less any applicable Premium Tax, to the Annuitant if living. You may elect to have the value paid under one of the payment plans described in Section 9.3. The election of a payment plan must be made in writing at least 30 days prior to the Maturity Date. If no election is made, the automatic payment plan of a life annuity with 10 year certain period (monthly income for a minimum of 120 months and as long thereafter as the Annuitant lives) will be applied.

If the Accumulation Value on the Maturity Date is less than $2,500, the annual payment is less than $50, or the Payee is a corporation, partnership, association, trustee or assignee, We reserve the right to pay the full value to the Owner in a lump sum cash payment.

9.2 **Frequency of Annuity Payments:** Annuity payments will be made monthly, unless a different mode of payment is elected. If monthly payments would be less than $50, We reserve the right to change the payment frequency, so that payments are at least $50.

9.3 **Payment Plans:** Annuity Payments will be made under one of the following payment plans:

**Option 1 - Income for Specified Period:** We will pay an income for a specific number of years in equal installments. We guarantee these payments to be at least those shown in Table 1.

Installments shown are for each $1,000 of value applied based on a minimum interest of 2.00% per annum.

At Our sole discretion, excess interest may be paid or credited from time to time in addition to the payments guaranteed under Option 1.

**Option 2 - Life Annuity:**

**Life Annuity:** We will pay equal monthly payments during the lifetime of the Payee. Upon the death of the Payee, payments will cease.

**With Certain Period:** We will pay equal monthly payments for a selected number of guaranteed payments, and then for as long as the Payee is living thereafter.

We guarantee these payments to be at least those shown in Table 2.

Installments shown are for each $1,000 of value applied, based on Annuity 2000 Tables and a minimum interest of 2.00% per annum

**Option 3 - Income for a Specified Amount:** We pay income of the specified amount until the principal and interest are exhausted. Equal monthly payments will be at least $4.23 per month for each $1,000 of value. Payments will begin on the Maturity Date and will continue until the principal and interest, at the rate of 2.00% compounded per annum, are exhausted.

**Option 4 - Joint and Survivor Income:** We will pay monthly payments during the lifetime of the Annuitant and the named Beneficiary. We determine the payment by the sex and age of each person from Table 3. The Annuitant must be at least 50 years old, and the Beneficiary/Payee must be at least 45 years old, at the time of the first monthly payment. We will furnish values for age or sex combinations not shown in the table on request.

Installments shown are monthly and are for each $1,000 of value applied, based on Annuity 2000 Tables and a minimum interest of 2.00% per annum.

9.4 **Additional Payment Plans:** Annuity payments may be made under any payment plan offered by Us at the time an election is made.

AC094A02

**9.5**   **Evidence of Age and Survival:** Income under Options 2 and 4 is based on the age of each Payee. We require proof of age.  We reserve the right to require proof of survival under Options 2 and 4.

# APPENDIX

## TABLE 1

### INCOME FOR SPECIFIED PERIOD FACTORS

Installments shown are for each $1,000 of net proceeds applied. Interest is 2.00%, and is subject to change as described in the Pay-out Provisions Section.

Specified Period not to exceed 20 years. Payment will begin on the Maturity Date.

| ANNUAL YEARS | ANNUAL | SEMI-ANNUAL | QUARTERLY | MONTHLY |
|---|---|---|---|---|
| 1 | N/A | N/A | N/A | N/A |
| 2 | N/A | N/A | N/A | N/A |
| 3 | N/A | N/A | N/A | N/A |
| 4 | N/A | N/A | N/A | N/A |
| 5 | 207.99 | 104.51 | 52.38 | 17.49 |
| 6 | 175.02 | 87.94 | 44.08 | 14.71 |
| 7 | 151.48 | 76.11 | 38.15 | 12.73 |
| 8 | 133.83 | 67.24 | 33.70 | 11.25 |
| 9 | 120.11 | 60.35 | 30.25 | 10.10 |
| 10 | 109.14 | 54.84 | 27.48 | 9.17 |
| 11 | 100.17 | 50.33 | 25.22 | 8.42 |
| 12 | 92.70 | 46.58 | 23.34 | 7.79 |
| 13 | 86.39 | 43.40 | 21.75 | 7.26 |
| 14 | 80.98 | 40.69 | 20.39 | 6.80 |
| 15 | 76.29 | 38.33 | 19.21 | 6.41 |
| 16 | 72.20 | 36.28 | 18.18 | 6.07 |
| 17 | 68.59 | 34.46 | 17.27 | 5.76 |
| 18 | 65.39 | 32.85 | 16.47 | 5.49 |
| 19 | 62.53 | 31.42 | 15.74 | 5.25 |
| 20 | 59.95 | 30.12 | 15.10 | 5.04 |

AC094A02

## TABLE 2

### MONTHLY INCOME FOR LIFE AND LIFE WITH GUARANTEED PERIODS

Equal monthly payments for life only, for guaranteed periods of 10 or 20 years as elected, and for life thereafter as shown in the table below. Amount of each monthly installment shown is per $1,000 of net proceeds. Amounts are based on Annuity 2000 Table and 2.00% interest.

Payment will begin on the Maturity Date.

**Unisex**

| Age of Payee | Life Only | Life with 10 Year Certain | Life with 20 Year Certain | Age of Payee | Life Only | Life with 10 Year Certain | Life with 20 Year Certain |
|---|---|---|---|---|---|---|---|
| 25 | 2.38 | 2.38 | 2.38 | 63 | 4.37 | 4.30 | 4.05 |
| 26 | 2.40 | 2.40 | 2.40 | 64 | 4.49 | 4.42 | 4.12 |
| 27 | 2.42 | 2.42 | 2.42 | 65 | 4.63 | 4.54 | 4.20 |
| 28 | 2.44 | 2.44 | 2.44 | 66 | 4.77 | 4.66 | 4.27 |
| 29 | 2.47 | 2.47 | 2.46 | 67 | 4.92 | 4.80 | 4.35 |
| 30 | 2.49 | 2.49 | 2.49 | 68 | 5.09 | 4.94 | 4.42 |
| 31 | 2.52 | 2.52 | 2.51 | 69 | 5.26 | 5.09 | 4.49 |
| 32 | 2.54 | 2.54 | 2.54 | 70 | 5.45 | 5.25 | 4.56 |
| 33 | 2.57 | 2.57 | 2.56 | 71 | 5.66 | 5.42 | 4.62 |
| 34 | 2.60 | 2.60 | 2.59 | 72 | 5.88 | 5.59 | 4.68 |
| 35 | 2.63 | 2.63 | 2.62 | 73 | 6.12 | 5.77 | 4.73 |
| 36 | 2.66 | 2.66 | 2.65 | 74 | 6.38 | 5.96 | 4.78 |
| 37 | 2.69 | 2.69 | 2.68 | 75 | 6.66 | 6.15 | 4.82 |
| 38 | 2.72 | 2.72 | 2.71 | 76 | 6.96 | 6.35 | 4.86 |
| 39 | 2.76 | 2.75 | 2.74 | 77 | 7.28 | 6.55 | 4.90 |
| 40 | 2.79 | 2.79 | 2.78 | 78 | 7.64 | 6.76 | 4.92 |
| 41 | 2.83 | 2.83 | 2.81 | 79 | 8.02 | 6.96 | 4.95 |
| 42 | 2.87 | 2.87 | 2.85 | 80 | 8.44 | 7.17 | 4.97 |
| 43 | 2.91 | 2.91 | 2.89 | 81 | 8.89 | 7.37 | 4.99 |
| 44 | 2.96 | 2.95 | 2.93 | 82 | 9.37 | 7.56 | 5.00 |
| 45 | 3.00 | 2.99 | 2.97 | 83 | 9.90 | 7.75 | 5.01 |
| 46 | 3.05 | 3.04 | 3.01 | 84 | 10.47 | 7.92 | 5.02 |
| 47 | 3.10 | 3.09 | 3.06 | 85 | 11.09 | 8.08 | 5.02 |
| 48 | 3.15 | 3.14 | 3.11 | 86 | 11.75 | 8.23 | 5.03 |
| 49 | 3.20 | 3.19 | 3.15 | 87 | 12.46 | 8.37 | 5.03 |
| 50 | 3.26 | 3.25 | 3.21 | 88 | 13.22 | 8.49 | 5.03 |
| 51 | 3.32 | 3.31 | 3.26 | 89 | 14.02 | 8.60 | 5.04 |
| 52 | 3.38 | 3.37 | 3.31 | 90 | 14.86 | 8.69 | 5.04 |
| 53 | 3.45 | 3.43 | 3.37 | 91 | 15.74 | 8.78 | 5.04 |
| 54 | 3.52 | 3.50 | 3.43 | 92 | 16.66 | 8.85 | 5.04 |
| 55 | 3.60 | 3.57 | 3.49 | 93 | 17.61 | 8.92 | 5.04 |
| 56 | 3.67 | 3.65 | 3.55 | 94 | 18.61 | 8.98 | 5.04 |
| 57 | 3.76 | 3.73 | 3.62 | 95 | 19.64 | 9.02 | 5.04 |
| 58 | 3.84 | 3.81 | 3.69 | 96 | 20.74 | 9.07 | 5.04 |
| 59 | 3.94 | 3.90 | 3.75 | 97 | 21.92 | 9.10 | 5.04 |
| 60 | 4.03 | 3.99 | 3.83 | 98 | 23.21 | 9.12 | 5.04 |
| 61 | 4.14 | 4.09 | 3.90 | 99 | 24.66 | 9.14 | 5.04 |
| 62 | 4.25 | 4.19 | 3.97 | 100 | 26.32 | 9.16 | 5.04 |

**TABLE 2 (continued)**

**MONTHLY INCOME FOR LIFE AND LIFE WITH GUARANTEED PERIODS**

Equal monthly payments for life only, for guaranteed periods of 10 or 20 years as elected, and for life thereafter as shown in the table below. Amount of each monthly installment shown is per $1,000 of net proceeds. Amounts are based on Annuity 2000 Table and 2.00% interest.

Payment will begin on the Maturity Date.

**Female**

| Age of Payee | Life Only | Life with 10 Year Certain | Life with 20 Year Certain | Age of Payee | Life Only | Life with 10 Year Certain | Life with 20 Year Certain |
|---|---|---|---|---|---|---|---|
| 25 | 2.38 | 2.38 | 2.38 | 63 | 4.37 | 4.30 | 4.05 |
| 26 | 2.40 | 2.40 | 2.40 | 64 | 4.49 | 4.42 | 4.12 |
| 27 | 2.42 | 2.42 | 2.42 | 65 | 4.63 | 4.54 | 4.20 |
| 28 | 2.44 | 2.44 | 2.44 | 66 | 4.77 | 4.66 | 4.27 |
| 29 | 2.47 | 2.47 | 2.46 | 67 | 4.92 | 4.80 | 4.35 |
| 30 | 2.49 | 2.49 | 2.49 | 68 | 5.09 | 4.94 | 4.42 |
| 31 | 2.52 | 2.52 | 2.51 | 69 | 5.26 | 5.09 | 4.49 |
| 32 | 2.54 | 2.54 | 2.54 | 70 | 5.45 | 5.25 | 4.56 |
| 33 | 2.57 | 2.57 | 2.56 | 71 | 5.66 | 5.42 | 4.62 |
| 34 | 2.60 | 2.60 | 2.59 | 72 | 5.88 | 5.59 | 4.68 |
| 35 | 2.63 | 2.63 | 2.62 | 73 | 6.12 | 5.77 | 4.73 |
| 36 | 2.66 | 2.66 | 2.65 | 74 | 6.38 | 5.96 | 4.78 |
| 37 | 2.69 | 2.69 | 2.68 | 75 | 6.66 | 6.15 | 4.82 |
| 38 | 2.72 | 2.72 | 2.71 | 76 | 6.96 | 6.35 | 4.86 |
| 39 | 2.76 | 2.75 | 2.74 | 77 | 7.28 | 6.55 | 4.90 |
| 40 | 2.79 | 2.79 | 2.78 | 78 | 7.64 | 6.76 | 4.92 |
| 41 | 2.83 | 2.83 | 2.81 | 79 | 8.02 | 6.96 | 4.95 |
| 42 | 2.87 | 2.87 | 2.85 | 80 | 8.44 | 7.17 | 4.97 |
| 43 | 2.91 | 2.91 | 2.89 | 81 | 8.89 | 7.37 | 4.99 |
| 44 | 2.96 | 2.95 | 2.93 | 82 | 9.37 | 7.56 | 5.00 |
| 45 | 3.00 | 2.99 | 2.97 | 83 | 9.90 | 7.75 | 5.01 |
| 46 | 3.05 | 3.04 | 3.01 | 84 | 10.47 | 7.92 | 5.02 |
| 47 | 3.10 | 3.09 | 3.06 | 85 | 11.09 | 8.08 | 5.02 |
| 48 | 3.15 | 3.14 | 3.11 | 86 | 11.75 | 8.23 | 5.03 |
| 49 | 3.20 | 3.19 | 3.15 | 87 | 12.46 | 8.37 | 5.03 |
| 50 | 3.26 | 3.25 | 3.21 | 88 | 13.22 | 8.49 | 5.03 |
| 51 | 3.32 | 3.31 | 3.26 | 89 | 14.02 | 8.60 | 5.04 |
| 52 | 3.38 | 3.37 | 3.31 | 90 | 14.86 | 8.69 | 5.04 |
| 53 | 3.45 | 3.43 | 3.37 | 91 | 15.74 | 8.78 | 5.04 |
| 54 | 3.52 | 3.50 | 3.43 | 92 | 16.66 | 8.85 | 5.04 |
| 55 | 3.60 | 3.57 | 3.49 | 93 | 17.61 | 8.92 | 5.04 |
| 56 | 3.67 | 3.65 | 3.55 | 94 | 18.61 | 8.98 | 5.04 |
| 57 | 3.76 | 3.73 | 3.62 | 95 | 19.64 | 9.02 | 5.04 |
| 58 | 3.84 | 3.81 | 3.69 | 96 | 20.74 | 9.07 | 5.04 |
| 59 | 3.94 | 3.90 | 3.75 | 97 | 21.92 | 9.10 | 5.04 |
| 60 | 4.03 | 3.99 | 3.83 | 98 | 23.21 | 9.12 | 5.04 |
| 61 | 4.14 | 4.09 | 3.90 | 99 | 24.66 | 9.14 | 5.04 |
| 62 | 4.25 | 4.19 | 3.97 | 100 | 26.32 | 9.16 | 5.04 |

AC094A02

**TABLE 2 (continued)**

**MONTHLY INCOME FOR LIFE AND LIFE WITH GUARANTEED PERIODS**

Equal monthly payments for life only, for guaranteed periods of 10 or 20 years as elected, and for life thereafter as shown in the table below.  Amount of each monthly installment shown is per $1,000 of net proceeds.  Amounts are based on Annuity 2000 Table and 2.00% interest.

Payment will begin on the Maturity Date.

**Male**

| Age of Payee | Life Only | Life with 10 Year Certain | Life with 20 Year Certain | Age of Payee | Life Only | Life with 10 Year Certain | Life with 20 Year Certain |
|---|---|---|---|---|---|---|---|
| 25 | 2.47 | 2.47 | 2.47 | 63 | 4.81 | 4.68 | 4.24 |
| 26 | 2.50 | 2.50 | 2.49 | 64 | 4.96 | 4.81 | 4.31 |
| 27 | 2.52 | 2.52 | 2.51 | 65 | 5.12 | 4.94 | 4.38 |
| 28 | 2.55 | 2.55 | 2.54 | 66 | 5.29 | 5.08 | 4.44 |
| 29 | 2.57 | 2.57 | 2.56 | 67 | 5.47 | 5.23 | 4.50 |
| 30 | 2.60 | 2.60 | 2.59 | 68 | 5.67 | 5.38 | 4.56 |
| 31 | 2.63 | 2.63 | 2.62 | 69 | 5.87 | 5.54 | 4.62 |
| 32 | 2.66 | 2.66 | 2.65 | 70 | 6.09 | 5.70 | 4.67 |
| 33 | 2.69 | 2.69 | 2.68 | 71 | 6.33 | 5.87 | 4.72 |
| 34 | 2.72 | 2.72 | 2.71 | 72 | 6.58 | 6.04 | 4.77 |
| 35 | 2.76 | 2.76 | 2.74 | 73 | 6.84 | 6.21 | 4.81 |
| 36 | 2.79 | 2.79 | 2.77 | 74 | 7.13 | 6.39 | 4.84 |
| 37 | 2.83 | 2.83 | 2.81 | 75 | 7.43 | 6.57 | 4.88 |
| 38 | 2.87 | 2.87 | 2.85 | 76 | 7.76 | 6.75 | 4.91 |
| 39 | 2.91 | 2.91 | 2.88 | 77 | 8.11 | 6.93 | 4.93 |
| 40 | 2.96 | 2.96 | 2.92 | 78 | 8.48 | 7.11 | 4.95 |
| 41 | 3.00 | 2.99 | 2.96 | 79 | 8.88 | 7.28 | 4.97 |
| 42 | 3.05 | 3.04 | 3.01 | 80 | 9.30 | 7.46 | 4.99 |
| 43 | 3.10 | 3.09 | 3.05 | 81 | 9.76 | 7.63 | 5.00 |
| 44 | 3.15 | 3.14 | 3.09 | 82 | 10.25 | 7.79 | 5.01 |
| 45 | 3.20 | 3.19 | 3.14 | 83 | 10.77 | 7.94 | 5.02 |
| 46 | 3.26 | 3.24 | 3.19 | 84 | 11.32 | 8.09 | 5.02 |
| 47 | 3.32 | 3.30 | 3.24 | 85 | 11.91 | 8.22 | 5.03 |
| 48 | 3.38 | 3.36 | 3.29 | 86 | 12.54 | 8.35 | 5.03 |
| 49 | 3.44 | 3.42 | 3.34 | 87 | 13.21 | 8.46 | 5.03 |
| 50 | 3.51 | 3.48 | 3.40 | 88 | 13.92 | 8.57 | 5.03 |
| 51 | 3.58 | 3.55 | 3.46 | 89 | 14.68 | 8.66 | 5.04 |
| 52 | 3.65 | 3.62 | 3.51 | 90 | 15.48 | 8.75 | 5.04 |
| 53 | 3.73 | 3.70 | 3.57 | 91 | 16.33 | 8.83 | 5.04 |
| 54 | 3.81 | 3.77 | 3.64 | 92 | 17.22 | 8.90 | 5.04 |
| 55 | 3.90 | 3.86 | 3.70 | 93 | 18.18 | 8.96 | 5.04 |
| 56 | 3.99 | 3.94 | 3.76 | 94 | 19.19 | 9.01 | 5.04 |
| 57 | 4.09 | 4.03 | 3.83 | 95 | 20.28 | 9.05 | 5.04 |
| 58 | 4.19 | 4.13 | 3.90 | 96 | 21.45 | 9.09 | 5.04 |
| 59 | 4.30 | 4.23 | 3.97 | 97 | 22.73 | 9.11 | 5.04 |
| 60 | 4.41 | 4.33 | 4.03 | 98 | 24.16 | 9.14 | 5.04 |
| 61 | 4.54 | 4.44 | 4.10 | 99 | 25.76 | 9.15 | 5.04 |
| 62 | 4.67 | 4.56 | 4.17 | 100 | 27.58 | 9.16 | 5.04 |

AC094A02

## TABLE 3

### JOINT AND SURVIVOR INCOME FACTORS

We will furnish values for age combinations not shown in the table on request. They will be calculated on the same basis as those in this table.

| Female Age | Male Age | | | | | |
|---|---|---|---|---|---|---|
| | 45 | 50 | 55 | 60 | 65 | 70 |
| 45 | 2.76 | 2.83 | 2.89 | 2.93 | 2.95 | 2.97 |
| 50 | 2.87 | 2.97 | 3.06 | 3.12 | 3.17 | 3.21 |
| 55 | 2.96 | 3.10 | 3.23 | 3.34 | 3.43 | 3.49 |
| 60 | 3.03 | 3.21 | 3.40 | 3.57 | 3.72 | 3.83 |
| 65 | 3.09 | 3.31 | 3.54 | 3.79 | 4.02 | 4.22 |
| 70 | 3.13 | 3.38 | 3.66 | 3.98 | 4.32 | 4.64 |

Installments shown are monthly and are for each $1,000 of net proceeds applied. Based on Annuity 2000 Tables, and 2.00% interest.

Payment will begin on the Maturity Date.

AC094A02