1  ROBBINS GELLER RUDMAN
   & DOWD LLP
2  JOHN J. STOIA, JR. (141757)
   jstoia@rgrdlaw.com
3  THEODORE J. PINTAR (131372)
   tedp@rgrdlaw.com
4  RACHEL L. JENSEN (211456)
   rjensen@rgrdlaw.com
5  PHONG L. TRAN (204961)
   ptran@rgrdlaw.com
6  STEVEN M. JODLOWSKI (239074)
   sjodlowski@rgrdlaw.com
7  655 West Broadway, Suite 1900
   San Diego, CA  92101
8  Telephone:  619/231-1058
   619/231-7423 (fax)
9
   BONNETT, FAIRBOURN, FRIEDMAN        HAGENS BERMAN SOBOL
10   & BALINT, P.C.                      SHAPIRO LLP
   ANDREW S. FRIEDMAN                 STEVE W. BERMAN
11 (*Pro Hac Vice*)                   (*Pro Hac Vice*)
   afriedman@bffb.com                steve@hbsslaw.com
12 KIMBERLY C. PAGE                   1918 8th Avenue, Suite 3300
   kpage@bffb.com                    Seattle, WA  98101
13 2901 N. Central Avenue, Suite 1000 Telephone: 206/623-7292
   Phoenix, AZ  85012                206/623-0594 (fax)
14 Telephone:  602/274-1100
   602/274-1199 (fax)
15
   Interim Co-Lead Class Counsel
16
   [Additional counsel appear on signature page.]
17
                    UNITED STATES DISTRICT COURT
18
                    CENTRAL DISTRICT OF CALIFORNIA
19
                         WESTERN DIVISION
20
   In re MIDLAND NATIONAL LIFE   )   MDL No. CV-07-1825-CAS(MANx)
21 INSURANCE CO. ANNUITY SALES   )
   PRACTICES LITIGATION          )   PLAINTIFFS' MEMORANDUM IN
22 ─────────────────────────     )   SUPPORT OF MOTION FOR AN
                                 )   AWARD OF ATTORNEYS' FEES,
23 This Document Relates To:     )   REIMBURSEMENT OF EXPENSES,
                                 )   AND SERVICE AWARD
24     ALL ACTIONS.              )
                                 )   JUDGE:  Hon. Christina A. Snyder
25 ─────────────────────────     )   DATE:   February 28, 2011
                                     TIME:   11:00 a.m.
26                                   CTRM:   5 – Second Floor
27
28

590664_1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................... 1

II.     HISTORY OF THE LITIGATION AND SETTLEMENT ........................... 3

III.    THE SETTLEMENT CONFERS SUBSTANTIAL ECONOMIC
        BENEFITS TO CLASS MEMBERS NATIONWIDE .................................. 5

        A.    Annuitization Bonus ...................................................................... 6

        B.    Enhanced Annuity Payments ......................................................... 7

        C.    Surrender Charge Reduction Benefits Through the Claim
              Review Process ............................................................................. 7

IV.     THE COURT SHOULD AWARD THE FULL AMOUNT OF
        ATTORNEYS' FEES THAT MIDLAND HAS AGREED TO PAY ........... 9

        A.    Applicable Legal Standards ........................................................... 9

        B.    Plaintiffs' Fee Request Is Reasonable Under the Lodestar
              Method ......................................................................................... 10

              1.    Class Counsel's Hourly Rates Are Reasonable....................... 10

              2.    The Number of Hours that Class Counsel Devoted to
                    This Litigation Is Reasonable ................................................ 14

              3.    The Lodestar Calculation........................................................ 15

              4.    Class Counsel's Fees Are Reasonable Considering the
                    Time and Labor Required, the Novelty and Complexity
                    of the Litigation, Counsel's Skill and Experience, Results
                    Obtained, and Awards in Similar Cases ................................. 16

                    a.    Class Counsel Invested an Enormous Amount of
                          Time and Resources into This Case ............................... 16

                    b.    The Litigation Featured Many Novel and Complex
                          Legal and Factual Issues .............................................. 17

                    c.    Class Counsel Are Highly Skilled and Experienced
                          in Large and Complex Class Action Litigation ............. 17

                    d.    Class Counsel Obtained an Outstanding Settlement
                          Result for Class Members Nationwide .......................... 19

                    e.    The Fees and Expenses Sought Here Are Well
                          Below Those Awarded in Similar Deferred
                          Annuity Actions ........................................................... 19

590664_1

Page

     5.    Plaintiffs' Fee Request Is Reasonable in Light of the Contingent Nature of the Fee and Class Counsel's Ongoing Work ...................................................................... 20

    C.    Plaintiffs' Fee Request Is Also Well Below the Benchmark Percentage Set by the Ninth Circuit .................................... 21

V.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS .................................. 22

VI.    THE COURT SHOULD APPROVE THE SERVICE AWARD OF $10,000 FOR EACH CLASS REPRESENTATIVE .................................. 24

VII.    CONCLUSION .................................................................. 25

590664_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anderson v. Nextel Retail Stores, LLC*,
No. CV 07-4480-SVW(FFMx), 2010 U.S. Dist. LEXIS 71598
(C.D. Cal. June 30, 2010) ...................................................................................9, 10, 12

*B-K Lighting, Inc. v. Vision3 Lighting*,
No. CV 06-02825 MMM (PLAx), 2009 WL 3838264
(C.D. Cal. Nov. 16, 2009) .......................................................................................11

*Blum v. Stenson*,
465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) ................................ 10, 16

*Boeing Co. v. Van Gemert*,
444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980).........................................22

*Clark v. Los Angeles*,
803 F.2d 987 (9th Cir. 1986)............................................................................... 10

*Craft v. County of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................................21

*Crommie v. Pub. Utils. Comm'n*,
840 F. Supp. 719 (N.D. Cal. 1994) .......................................................................17

*Fleury v. Richemont N. Am. Inc.*,
No. C-05-4525 EMC, 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008).......................9

*Fresco v. Auto. Directions, Inc.*,
No. 03-CIV-61063 MARTINEZ-SIMONTON, 2009 U.S. Dist.
LEXIS 125233 (S.D. Fla. Jan. 16, 2009) ...............................................................13

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir. 1992).......................................................................... 10, 15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................................9

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) .....................................................................................23

*Hensley v. Eckerhart*,
461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ...................................... 10

*Hopson v. Hanesbrands Inc.*,
No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) .......................21

- iii -

**Page**

*Housing Rights Ctr. v. Sterling*,
　No. CV 03-859 DSF, 2005 WL 3320738 (C.D. Cal. Nov. 1, 2005)........................12

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
　263 F.R.D. 226 (E.D. Pa. 2009) ...................................................................... 19, 24

*In re Enron Corp. Sec., Derivative & Erisa Litig.*,
　586 F. Supp. 2d 732 (S.D. Tex. 2008) ................................................................13

*In re Equity Funding Corp. Sec. Litig.*,
　438 F. Supp. 1303 (C.D. Cal. 1977) ...................................................................18

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
　55 F.3d 768 (3d Cir. 1995)...................................................................................21

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
　No. 02-ML-1475-DT (RCx), 2005 U.S. Dist. LEXIS 13627
　(C.D. Cal. June 10, 2005) ....................................................................................17

*In re Ins. Brokerage Antitrust Litig.*,
　579 F.3d 241 (D.N.J. 2009) .................................................................................18

*In re Ins. Brokerage Antitrust Litig.*,
　No. 04-5184 GEB, 2007 WL 1652303 (D.N.J. June 5, 2007)...........................25

*In re Mego Fin. Corp. Sec. Litig.*,
　213 F.3d 454 (9th Cir. 2000) ..............................................................................24

*In re Mills Corp. Sec. Litig.*,
　No. 06-CV-00077, 2009 WL 5091931 (E.D. Va. Dec. 23, 2009) .........................13

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
　106 F. Supp. 2d 721 (D.N.J. 2000) .................................................................... 20

*In re Schering-Plough Corp. Sec. Litig.*,
　No. 01-cv-0829 KSH/MF, 2009 U.S. Dist. LEXIS 121173
　(D.N.J. Dec. 31, 2009) ........................................................................................13

*Jordan v. Multnomah County*,
　815 F.2d 1258 (9th Cir. 1987) ............................................................................14

*Kerr v. Screen Extras Guild*,
　526 F.2d 67 (9th Cir. 1975)........................................................................ 10, 16, 17

590664_1

**Page**

*Lingenfelter v. Astrue*,
No. SA CV 03-00264-VBK, 2009 WL 2900286
(C.D. Cal. Sept. 3, 2009)................................................................13

*Manners v. Am. Gen'l Life Ins. Co.*,
No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880
(D. Tenn. Aug. 11, 1999) ............................................................ 20

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007)........................................................22

*Mathis v. Spears*,
857 F.2d 749 (9th Cir. 1988) ......................................................11

*McPhail v. First Command Fin. Planning, Inc.*,
No. 05cv179-IEG-JMA, 2009 WL 839841
(S.D. Cal. Mar. 30, 2009)............................................................21

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ......................................................21

*People Who Care v. Rockford Bd. of Educ.*,
90 F.3d 1307 (7th Cir. 1996) ......................................................11

*POM Wonderful, LLC v. Purely Juice, Inc.*,
No. CV 07-2633 CAS (JWJx), 2008 WL 4351842
(C.D. Cal. Sept. 22, 2008)............................................................12

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ......................................................24

*Schwartz v. Sec'y of Health & Human Servs.*,
73 F.3d 895 (9th Cir. 1995) ........................................................10

*Six Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ................................................21, 22

*Snell v. Allianz Life Ins. Co. of N. Am.*,
No. 97-2784(RLE), 2000 U.S. Dist. LEXIS 13611
(D. Minn. Sept. 8, 2000)............................................................ 20

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ......................................................23

*Torrisi v. Tucson Elec. Power*,
8 F.3d 1370 (9th Cir. 1993) ........................................................21

590664_1

**Page**

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990) ...............................................................................11

*Van Vraken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ......................................................................24

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005) ............................................................................. 19

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .............................................................................21

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ...........................................................................22

*Williams v. MGM-Pathe Commc'ns Co.*,
   129 F.3d 1026 (9th Cir. 1997) .............................................................................22

*Yamonouchi Pharm. Co. v. Danbury Pharmacal., Inc.*,
   51 F. Supp. 2d 302 (S.D.N.Y. 1999) ...................................................................13

*Yurman Designs, Inc. v. PAJ, Inc.*,
   125 F. Supp. 2d 54 (S.D.N.Y. 2000) ...................................................................13

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Evidence
   Rule 706 ...................................................................................................4, 5, 14, 17

Federal Rules of Civil Procedure
   Rule 23(h) ...............................................................................................................9

California Business and Professions Code
   §17200 ....................................................................................................................3
   §17500 ....................................................................................................................3

**SECONDARY AUTHORITIES**

Thomas E. Willging, Laural L. Hooper & Robert J. Niemic,
   (Federal Judicial Center 1996)
   *Empirical Study of Class Actions in Four Federal District Courts:*
   *Final Report to the Advisory Committee on Civil Rules* .......................................22

Theodore Eisenberg & Geoffrey P. Miller,
   53 UCLA L. Rev. 1303 (Aug. 2006)
   *Incentive Awards to Class Action Plaintiffs: An Empirical Study* .........................24

590664_1

1

2                                                                                    **Page**

3  William B. Rubenstein, Alba Conte & Herbert B. Newberg,
     4 *Newberg on Class Actions*, *Class Member Obligations for*
4       *Litigation Fees and Expenses* (4th ed. 2002)
5       §14:2 .............................................................................................................23

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiffs and Class Representatives Mary P. Munoz, Robert D. Kaiser, Mary
2  Bendzak, and Nancy Bendzak, as attorney-in-fact for Mary Bendzak ("Plaintiffs"),
3  respectfully submit this memorandum in support of their motion for an award of
4  attorneys' fees, reimbursement of expenses and service awards for their and their
5  counsel's hard work and skill in prosecuting this class action and securing a valuable
6  recovery for all members of the Settlement Class.

7  **I.    INTRODUCTION**

8    The Settlement reached by the Parties provides valuable economic relief for
9  over 70,000 senior citizens across the country who purchased deferred annuities from
10  Midland National Life Insurance Company ("Midland").  After more than four years
11  of litigation, including over six months of hard-fought, arm's-length settlement
12  negotiations, Class Counsel were able to resolve the classwide claims arising from the
13  sale of Midland deferred annuities to seniors.[1]  Under the terms of the Settlement,
14  Midland has agreed to provide substantial economic benefits to the Settlement Class
15  in the form of the "Annuitization Bonus," "Enhanced Annuity Payments," and
16  "Surrender Charge Reduction Benefits," the total value of which has been estimated at
17  around $79.5 million.

18    For their dogged efforts in achieving this Settlement,[2] Class Counsel hereby
19  seek an award of attorneys' fees and expenses.  Counsel's efforts to date have been
20  without compensation of any kind and the fee has always been wholly contingent
21  upon the result achieved.  Under the Settlement Agreement, Midland has agreed to

---

23  [1]    Pursuant to the Court's Findings and Order Preliminarily Approving Class Settlement, Directing Issuance of Notice to the Class, and Setting of Fairness Hearing
24  ("Preliminary Approval Order"), dated October 25, 2010, the Court appointed the following firms as Class Counsel: (a) Bonnett, Fairbourn, Friedman & Balint, P.C.
25  ("Bonnett Fairbourn"); (b) Robbins Geller Rudman & Dowd LLP ("Robbins Geller"); (c) Barrack Rodos & Bacine; (d) Finkelstein & Krinsk; (e) Waters & Kraus LLP;
26  (f) James Hoyer Newcomer & Smiljanich, P.A.; and (g) Hagens Berman Sobol Shapiro LLP ("Hagens Berman").

27  [2]    As set forth in the Settlement Agreement, filed with the Court on October 12,
28  2010, Plaintiffs will file their motion for final approval by the end of January 2011.

- 1 -

1   pay Class Counsel's attorneys' fees and expenses up to $13,970,000, *separate and*

2   *apart from the relief provided to the Settlement Class*.   Settlement Agreement,

3   §X.B.1.  Indeed, any award of attorneys' fees and expenses will *not* in any way affect

4   the form or amount of the benefits available to the Settlement Class.  Conversely, any

5   reduction in the fee will not increase benefits to the Settlement Class – it will simply

6   revert to Midland, which has voluntarily agreed to pay the full amount.

7        Importantly, the requested fee amount reflects only a portion of the actual time

8   and labor expended by Class Counsel.  Although lodestar multipliers of three to seven

9   are common and appropriate in large, complex class actions such as this, and although

10  a multiplier would be warranted here, Plaintiffs do not in fact seek a multiplier.  Here,

11  the fee request of $13,970,000 is *significantly less* than the lodestar and expenses

12  actually incurred in the case, in effect, resulting in a "negative multiplier."  Moreover,

13  if the fee were computed under a "common fund," percentage of recovery method, the

14  requested award of $13,970,000 would represent less than 18% of the total value of

15  the settlement benefits available to the Settlement Class, well below the 25%

16  benchmark generally accepted by the Ninth Circuit.

17       Plaintiffs' fee request is certainly fair and reasonable in light of their counsel's

18  hard-work, tenacity, and ultimate success in achieving an outstanding result on behalf

19  of the Settlement Class.  Class Counsel persisted daily in their efforts to advance the

20  litigation despite the substantial risk of non-payment due to the uncertain outcome and

21  the contingent nature of the work.  As the Court is aware, Class Counsel faced

22  numerous challenges in prosecuting the action, not the least among them, the skilled

23  and formidable defense by Midland's counsel.  And, notably, the requested fee does

24  not include the substantial work that Class Counsel must still shoulder before the

25  litigation is completed, such as claims administration, class member communications,

26  and responding to any associated objection and related appeal – further work

27  benefitting the Settlement Class that could easily last for years and which will go

28  uncompensated.

1       Additionally, Midland has agreed to pay a service award of $10,000 to each

2   Plaintiff (collectively $30,000) for their time and effort in participating in this case as

3   Class Representatives.  As with the requested award for attorneys' fees and expenses,

4   the service award is paid separately and will not affect the amount of relief available

5   to the Settlement Class.  The Class Representatives devoted a considerable amount of

6   time and undertook substantial efforts on behalf of the Settlement Class and should be

7   justly recognized for their efforts.

8       For the reasons set forth herein, Plaintiffs respectfully submit that the requested

9   award for attorneys' fees and expenses and the service award are reasonable under

10  Ninth Circuit case law and, in light of the excellent result achieved on behalf of the

11  Settlement Class, should be fully awarded by this Court pursuant to the Settlement

12  Agreement.

13  **II.     HISTORY OF THE LITIGATION AND SETTLEMENT**

14      As detailed in the Settlement Agreement and the Joint Declaration,[3] this action

15  originated as several class actions filed in Los Angeles Superior Court and federal

16  courts in Iowa, California and Florida.  Settlement Agreement, §I.A; Joint Decl., ¶¶5-

17  13.  On May 2, 2007, the Judicial Panel for Multidistrict Litigation ordered that the

18  action be centralized and coordinated by this Court under the caption *In re Midland*

19  *National Life Insurance Co. Annuity Sales Practices Litigation*, MDL No. 1825.  Joint

20  Decl., ¶14.

21      The operative Complaint, filed on June 4, 2007, on behalf of Plaintiffs and all

22  other similarly-situated seniors who purchased Midland deferred annuities, asserted

23  claims under the federal civil RICO statute and certain California consumer protection

24  laws, including California's Elder Abuse Statute, the Consumer Legal Remedies Act,

25  and Business and Professions Code §§17200 and 17500.  The Complaint alleges that

26

27  [3]     Joint Declaration of Andrew S. Friedman and Theodore J. Pintar in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement Agreement, filed

28  concurrently ("Joint Declaration" or "Joint Decl.").

1  Midland utilized a network of affiliated sales agents in a scheme to target senior
2  consumers and sell them costly and poor performing annuity products with onerous
3  surrender penalties. The Complaint further alleges that Midland misrepresented and
4  otherwise failed to disclose to senior consumers material facts concerning the costs
5  associated with its annuities, the surrender and withdrawal provisions, the fixed
6  maturity dates, and other material facts. Settlement Agreement, §I.B.1(a). Midland
7  has always denied any wrongdoing in connection with the sale and marketing of its
8  deferred annuities.

9  Under the direction and coordination of Interim Co-Lead Counsel, Robbins
10  Geller, Bonnett Fairbourn, and Hagens Berman, Class Counsel worked diligently to
11  develop, prosecute and ultimately settle this action. Class Counsel reviewed more
12  than 450,000 pages of documents, analyzed extensive actuarial and financial data,
13  took numerous depositions of Midland officers, employees, and agents, and conducted
14  expert witness discovery concerning the merits of Plaintiffs' claims and the defenses
15  raised by Midland. Joint Decl., ¶24. During the course of the litigation, Plaintiffs
16  successfully opposed Midland's efforts to dismiss the action. *Id.*, ¶10. And, on
17  July 2, 2007, Plaintiffs filed a motion for class certification seeking certification of a
18  California class of seniors for violations of the California Unfair Competition Law and
19  a nationwide class of seniors based on RICO. *Id.*, ¶18.

20  Shortly thereafter, on July 9, 2007, Plaintiffs vigorously opposed Midland's
21  motion for summary judgment, and later, Midland's motion to exclude and *Daubert*
22  challenge to Plaintiffs' expert, Dr. Craig McCann, which resulted in extensive expert
23  discovery and briefing over a one-year period. *Id.*, ¶¶19-24. Underscoring the
24  complexity and contentious nature of the summary judgment and expert issues, the
25  Court appointed its own expert under Rule 706 of the Federal Rules of Evidence to
26  assess the reliability of the opinions offered by Dr. McCann. Plaintiffs prepared
27  multiple briefs and appeared before the Court multiple times as part of the Rule 706
28

- 4 -

1  process.  The summary judgment and expert motions, as well as the *Daubert* hearing,

2  were pending at the time this settlement was reached.  *Id.*, ¶23.

3  Class Counsel tirelessly litigated this action while attempting, in good faith, to

4  achieve a just, fair and amicable resolution.  For more than two years, the Parties

5  engaged in intense, hard-fought settlement negotiations that stalled in 2008, then

6  resumed again in 2009.  *Id.*, ¶¶29-31.  In addition to direct settlement negotiations, the

7  Parties agreed to mediate the matter initially before Justice Edward Wallin (Ret.) of

8  JAMS and thereafter, Judge Dickran Tevrizian (Ret.) of JAMS, to assist them in

9  resolving difficult issues concerning the settlement structure and the potential benefits

10  to the Settlement Class.  The Parties exchanged settlement proposals during this

11  extended process, holding several face-to-face mediation sessions and periodic

12  conference calls, while gradually narrowing the issues to be resolved.  *Id.*, ¶¶31-34.

13  In late April 2010, the Parties finally resolved all outstanding terms of settlement

14  during a mediation session with Judge Tevrizian.  *Id.*, ¶34.  At all times during their

15  discussions, the Parties negotiated at arm's-length and refrained from discussing

16  attorneys' fees or expenses until after they finalized all material terms of the relief to be

17  provided to the Settlement Class.  *Id.*, ¶¶34-36.  Though the negotiations remained hard

18  fought, Midland ultimately agreed to pay up to $13,970,000 in attorneys' fees and

19  expenses – separate and apart from the Class relief.  *Id.*, ¶36; Settlement Agreement,

20  §X.B.1.  Moreover, the Parties structured the fee and expense award such that it would

21  not delay disbursement of relief to the Settlement Class.

22  **III.  THE SETTLEMENT CONFERS SUBSTANTIAL ECONOMIC BENEFITS TO CLASS MEMBERS NATIONWIDE**

23  Under the Settlement Agreement, valuable economic relief has been achieved

24  by Class Counsel on behalf of the Settlement Class.  The Settlement provides that

25  members of the Settlement Class who choose not to be excluded are eligible to receive

26  tangible economic benefits in the form of either an Annuitization Bonus, Enhanced

27  Annuity Payments, or Surrender Charge Reduction Benefits for those electing to

28

- 5 -

1   participate in the Claim Review Process.  Settlement Agreement, §§IV & V; Joint

2   Decl., ¶¶38-48.

3        Plaintiffs have retained Philip Bieluch, a distinguished actuary with over 35 years

4   of insurance experience, to value the settlement relief available to Class Members.[4]

5   After reviewing the terms of the Settlement Agreement and analyzing the class member

6   data provided by Midland, Mr. Bieluch has calculated the present value of each of the

7   settlement benefits, as discussed below.  Bieluch Decl., ¶¶2, 4, 17.  Based on Mr.

8   Bieluch's analysis, which is based on sound and conservative actuarial principles, these

9   settlement benefits, collectively, will provide an estimated $79.5 million in economic

10  relief to the Settlement Class.  *Id.*, ¶4.

11       **A.    Annuitization Bonus**

12       Class Members with an active deferred annuity (*i.e.*, an annuity that has not

13  been annuitized, surrendered, returned under a "free-look" provision, or otherwise

14  been rescinded, or for which a death benefit has become payable) and who do not seek

15  or otherwise qualify for Surrender Charge Reduction Benefits shall be entitled to

16  receive an Annuitization Bonus.  Settlement Agreement, §IV.A-B.  For those who

17  elect to receive the Annuitization Bonus and annuitize over a qualifying period

18  (meaning that payments will continue until the later of the annuitant's death or the

19  expiration of 10 years), Midland will increase the accumulation value of the active

20  deferred annuity by the amount of the applicable bonus, calculated at the time of

21  annuitization.  *Id.*, §IV.B.2.  The Annuitization Bonus, which directly enhances the

22  economic value of Midland annuities, effectively addresses Plaintiffs' concerns about

23  the alleged undisclosed costs embedded in the annuities.

24

25  _____

26  [4]     Mr. Bieluch is a member of the American Academy of Actuaries and former
    Senior Vice President and Chief Actuary of Hampton RE.  *See* Declaration of Philip J.

27  Bieluch FSA, MAAA, FCA, Estimating Value of Settlement to Class Members in
    Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of

28  Expenses, and Service Awards, filed concurrently ("Bieluch Decl."), ¶5.

- 6 -

Based on his review of the class member data and the application of reasonable actuarial assumptions, Mr. Bieluch estimates that 93% of the active annuity contracts in the Settlement Class qualify for the Annuitization Bonus.  Bieluch Decl., ¶13.  Mr. Bieluch further considers the average growth in the accumulation value of these contracts, the average withdrawal rate for surrenders and deaths, and a 1% annual utilization rate for the Annuitization Bonus, and based on those metrics, estimates that the Annuitization Bonus alone will provide $41,096,101 in settlement relief.  Bieluch Decl., ¶¶14, 17.

### B.   Enhanced Annuity Payments

Class Members who have already annuitized their annuity on or prior to the date of entry of the Final Order and Judgment are eligible to receive a 2% increase to each remaining annuity payment made to them after the implementation date, relative to the amount scheduled to be paid in the absence of this Settlement.  Settlement Agreement, §IV.C.

Mr. Bieluch estimates that around 2% of the active annuity contracts in the Settlement Class have been, or will be, annuitized by the implementation date.  The class member data provided by Midland indicates that the total premium for annuitized contracts is $66,502,765.  Based on the reasonable actuarial assumption that 75% of the total premium amount, or $49,877,074, remains to be paid out on those annuitized contracts, Mr. Bieluch estimates that the 2% enhancement to the remaining annuity payments will provide $2,822,148 in settlement relief.  Bieluch Decl., ¶¶4, 15, 17.

### C.   Surrender Charge Reduction Benefits Through the Claim Review Process

Class Members who have not already annuitized their annuities may file claims which, if approved, will provide reductions in past or future surrender charges for their annuities.  Settlement Agreement, §V.A.1.  These reductions in surrender charges are referred to as Surrender Charge Reduction Benefits.  *Id.*

Class Members who apply for Surrender Charge Reduction Benefits must submit to the Administrator a claim form (included in the class notice package) for the annuity that is the subject of the claim. *Id.*, §V.B & D. Based on the information contained in or submitted with the claim form, the Administrator will determine the Surrender Charge Reduction Benefits, if any, for which each claimant qualifies. *Id.*, §V.C. In evaluating whether a Class Member is entitled to a surrender charge reduction, the Administrator will consider certain factors, particularly: (i) whether there was a misrepresentation concerning the applicable surrender charges, the right to annuitize or other terms; (ii) whether full or potential surrender was necessary to pay for necessities such as medical expenses, nursing or home care, retention of the claimant's residence, or other essential living expenses; (iii) whether the Class Member's annual income is less than or equal to $35,000; and/or (iv) whether the accumulation value of the annuity as of the eligibility date is more than 20% of the Class Member's net worth, or three times the Class Member's annual income. *Id.*, §V.D.3.

Based on the Administrator's evaluation of the aforementioned factors, claimants may receive surrender charge reductions at two levels, referred to as Upper Tier Benefits and Lower Tier Benefits. *Id.*, §II.A.38 & 54. Claimants who qualify for Upper Tier Benefits will receive a refund of up to 75% of surrender charges incurred prior to the implementation date, or a reduction of up to 75% in any surrender charge incurred on or after the implementation date. *Id.*, §V.A.1. Claimants who qualify for Lower Tier Benefits will receive a refund of up to 40% of surrender charges incurred prior to the implementation date, or a reduction of up to 40% in any surrender charge incurred on or after the implementation date. *Id.*

Based on the number of claims filed to date, Mr. Bieluch estimates that 3.5% of Class Members will qualify for Upper Tier Benefits (75% reduction in surrender charges) and another 3.5% of Class Members will qualify for Lower Tier Benefits (40% reduction in surrender charges), resulting in approximately $35,619,853 in Surrender Charge Reduction relief to the Settlement Class. Bieluch Decl., ¶¶4, 16, 17.

- 8 -

1   Accordingly, based on Mr. Bieluch's analysis, the three settlement benefits

2   provide a total of $79,538,102 in potential economic relief to the Settlement Class.

3   Bieluch Decl., ¶¶4, 17.  Notably, this amount does not include: (i) the cost of notice to

4   the Settlement Class and expense of settlement administration; (ii) the $30,000 service

5   award for the Class Representatives; and (iii) Class Counsel's attorneys' fees and

6   expenses, which the Settlement Class would otherwise be obligated to pay.

7   For their hard work, skill and diligence in securing this valuable economic relief

8   for the Settlement Class, Class Counsel should be awarded the full amount of requested

9   attorneys' fees and expenses, as agreed upon by the Parties. *See* Settlement Agreement,

10   §X.B.1.  The requested fee award of $13,970,000 is reasonable and fair under both the

11   lodestar and percentage of recovery methods approved by the Ninth Circuit.

## IV.   THE COURT SHOULD AWARD THE FULL AMOUNT OF ATTORNEYS' FEES THAT MIDLAND HAS AGREED TO PAY

### A.   Applicable Legal Standards

Rule 23(h) of the Federal Rules of Civil Procedure provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  The Ninth Circuit has long accepted "two separate methods for determining attorneys fees, depending on the case," the percentage of recovery and lodestar methods.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  In common fund cases where the settlement creates a large fund for distribution to the class, a court may assess attorneys' fees as a percentage of the settlement fund.  *Id.*; *Anderson v. Nextel Retail Stores, LLC*, No. CV 07-4480-SVW(FFMx), 2010 U.S. Dist. LEXIS 71598, at *4 (C.D. Cal. June 30, 2010).  In the absence of a common fund and where, as here, the defendant has agreed to pay attorneys' fees separate and apart from any relief to the Settlement Class, it is appropriate to determine the fee award using a lodestar analysis. *See Hanlon*, 150 F.3d at 1029; *Fleury v. Richemont N. Am. Inc.*, No. C-05-4525 EMC, 2008 WL 3287154, at *3 (N.D. Cal. Aug. 6, 2008).

- 9 -

Under the lodestar method, a reasonable attorneys' fee is determined by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). The fee amount calculated under the lodestar method is ***presumptively reasonable***. *Anderson*, 2010 U.S. Dist. LEXIS 71598, at *4 (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)). Here, Plaintiffs' fee request of $13,970,000 is significantly less than the actual lodestar and expenses incurred by counsel. Considering the time and labor required to successfully prosecute this matter, the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, the results obtained, and awards in similar cases, the requested award is plainly reasonable and fair. *Clark v. Los Angeles*, 803 F.2d 987, 991 n.3 (9th Cir. 1986) (citing *Blum v. Stenson*, 465 U.S. 886, 898-900, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)); *Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir. 1975).

Moreover, the reasonableness of Plaintiffs' fee request is confirmed when analyzed under the percentage of recovery method. *Anderson*, 2010 U.S. Dist. LEXIS 71598, at *4. Indeed, the requested award represents less than 18% of the total value of the settlement benefits achieved for the Settlement Class, well below the 25% benchmark accepted by the Ninth Circuit.

**B.      Plaintiffs' Fee Request Is Reasonable Under the Lodestar Method**

**1.      Class Counsel's Hourly Rates Are Reasonable**

Under the lodestar method, reasonable hourly rates are determined by the "'prevailing market rates in the relevant community,'" which are the rates a lawyer of comparable skill, experience and reputation could command in the relevant community. *Anderson*, 2010 U.S. Dist. LEXIS 71598, at *6 (citing *Blum*, 465 U.S. 886). The relevant community is that in which the court sits, here the Central District of California. *Schwartz v. Sec'y of Health & Human Servs.,* 73 F.3d 895, 906 (9th Cir. 1995).

- 10 -

An attorney's actual billing rate is presumptively appropriate to use as the lodestar market rate. *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "Courts also frequently use survey data in evaluating the reasonableness of attorneys' fees." *B-K Lighting, Inc. v. Vision3 Lighting*, No. CV 06-02825 MMM (PLAx), 2009 WL 3838264, at *5 (C.D. Cal. Nov. 16, 2009) (citing *Mathis v. Spears*, 857 F.2d 749, 755-56 (9th Cir. 1988)).

Plaintiffs here have submitted sworn declarations by their counsel, attesting to their hourly rates and total hours devoted to the case, their experience, and describing their efforts to prosecute this case.[5] The hourly rates submitted by Class Counsel reflect their actual billing rates; thus, they are presumptively appropriate. Class Counsel are highly-respected members of the bar with extensive experience in prosecuting high-stakes complex litigation, including consumer class actions. Joint Decl., ¶¶58-59; *see also* Co-Counsel Decls., Exs. A, 1. Table 1 sets forth the hourly rates, total hours worked and fee amounts for each of the law firms involved in the

---

[5]   *See* Declaration of Theodore J. Pintar in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Expenses and Incentive Award, filed concurrently ("Pintar Decl."), ¶¶3-6; Declaration of Andrew S. Friedman in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Award, filed concurrently ("Friedman Decl."), ¶¶4-7; Declaration of Jeffrey R. Krinsk in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Award, filed concurrently ("Krinsk Decl."), ¶¶3-6; Declaration of Ingrid M. Evans in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Award Payments, filed concurrently ("Evans Decl."), ¶¶5-8; Declaration of John A. Yanchunis in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Award, filed concurrently ("Yanchunis Decl."), ¶¶3-6; Declaration of Stephen R. Basser in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Award, filed concurrently ("Basser Decl."), ¶¶3-6; Declaration of Elizabeth A. Fegan in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Award, filed concurrently ("Fegan Decl."), ¶¶3-6 (collectively, "Co-Counsel Decls.").

590664_1

prosecution of this action.   Class Counsel's rates are appropriate for complex, nationwide litigation and reflect a high level of experience and skill necessary for success in this action.[6]

| TABLE 1 Class Counsel's Hourly Rates and Hours Worked | | | |
|---|---|---|---|
| **Prosecuting Firm** | **Range of Attorney Hourly Rates** | **Total Hours** | **Lodestar Amount**[7] |
| Robbins Geller Rudman & Dowd LLP | $305.00 to $795.00 | 11,132.50 | $4,998,537.50 |
| Bonnett Fairbourn Friedman & Balint, P.C. | $180.00 to $650.00 | 8,641.90 | $3,950,930.50 |
| Hagens Berman Sobol Shapiro LLP | $250.00 to $650.00 | 5,860.20 | $2,275,785.00 |
| Finkelstein & Krinsk LLP | $325.00 to $525.00 | 3,828.55 | $1,618,954.25 |
| Waters Kraus & Paul | $375.00 to $700.00 | 1,959.47 | $808,833.05 |
| Barrack Rodos & Bacine | $275.00 to $700.00 | 3,584.25 | $1,594,328.75 |
| James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A. | $400.00 to $600.00 | 1,961.90 | $805,169.00 |
| **Total** | | **36,968.77** | **$16,052,538.05** |

*See* Co-Counsel Decls., ¶¶3-8.

Class Counsel's hourly rates are comparable to those approved in this District. *See, e.g., Housing Rights Ctr. v. Sterling*, No. CV 03-859 DSF, 2005 WL 3320738, at *2 (C.D. Cal. Nov. 1, 2005) (noting hourly rates may run up to $1,000.00 per hour in L.A., with $125.00 to $650.00 routine in California); *Anderson*, 2010 U.S. Dist. LEXIS, at *10-*12; *POM Wonderful, LLC v. Purely Juice, Inc.*, No. CV 07-2633 CAS (JWJx), 2008 WL 4351842, at *4 (C.D. Cal. Sept. 22, 2008) (approving partner rates

---

[6]    As set forth in the declarations of Class Counsel, the rates range from $180.00 to $540.00 per hour for associates and from $400.00 to $795.00 per hour for partners, with the high-end reserved for only the most senior attorneys on the case.

[7]    Total hours and lodestar amount include work performed by the litigation support staff at each firm.

- 12 -

1  of $475.00 to $750.00 and associate rates of $275.00 to $425.00); *Lingenfelter v.*

2  *Astrue*, No. SA CV 03-00264-VBK, 2009 WL 2900286, at *4 (C.D. Cal. Sept. 3,

3  2009) ($600.00 is "reasonable").

4      Survey data also supports the reasonableness of the rates sought.  Each year, the

5  National Law Journal issues a survey of prevailing hourly rates.  Courts rely on this

6  annual survey as evidence of prevailing hourly rates.  *See, e.g.*, *Yurman Designs, Inc.*

7  *v. PAJ, Inc.*, 125 F. Supp. 2d 54, 58 (S.D.N.Y. 2000); *Yamonouchi Pharm. Co. v.*

8  *Danbury Pharmacal., Inc.*, 51 F. Supp. 2d 302, 305 (S.D.N.Y. 1999).  Class Counsel's

9  rates are comparable to the rates of California law firms in the National Law Journal's

10  2010 survey.  *See* Pintar Decl., Ex. B (2010 National Law Journal Billing Survey)

11  (partners in Los Angeles firms charge up to $850.00 per hour).

12      Notably, Class Counsel's customary rates have been previously approved by the

13  courts.  *See In re Enron Corp. Sec., Derivative & Erisa Litig.*, 586 F. Supp. 2d 732,

14  778-80, 804-05 (S.D. Tex. 2008) (approving Robbins Geller's hourly rates after

15  specifically reviewing them for reasonableness); *In re Schering-Plough Corp. Sec.*

16  *Litig.*, No. 01-cv-0829 KSH/MF, 2009 U.S. Dist. LEXIS 121173, at *15-*16 (D.N.J.

17  Dec. 31, 2009) (approving 1.5 multiplier of Barrack Rodos' lodestar); *In re Mills*

18  *Corp. Sec. Litig.*, No. 06-CV-00077, 2009 WL 5091931, at *20 (E.D. Va. Dec. 23,

19  2009) (approving hourly average rate of $402.00 per hour for group of lead plaintiffs'

20  counsel, including Barrack Rodos); *Fresco v. Auto. Directions, Inc.*, No. 03-CIV-

21  61063 MARTINEZ-SIMONTON, 2009 U.S. Dist. LEXIS 125233, at *27-*28 (S.D.

22  Fla. Jan. 16, 2009) (approving customary hourly rates of various partners and

23  associates at James, Hoyer, Newcomer & Smiljanich, P.A.).

24      Class Counsel's hourly rates, which are on par with the prevailing market rates

25  of attorneys in this District, are reasonable, particularly given counsel's demonstrated

26  skill, experience and reputation in the area of complex class action litigation.

27

28

590664_1

### 2.   The Number of Hours that Class Counsel Devoted to This Litigation Is Reasonable

Class Counsel have devoted a considerable amount of time and effort pursuing this litigation on behalf of over 70,000 Class Members on a nationwide basis, as documented by the supporting declarations submitted by each prosecuting firm.  Since its inception, Class Counsel have collectively spent a total of 36,968.77 hours of attorney and litigation support time to this four-year litigation.  Considering the complexity of the RICO and the consumer protection claims asserted, the duration of the litigation, and the scope of the proposed classes, the total number of hours worked by Class Counsel is reasonable.  *See Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987) (lodestar calculation requires court to determine that time spent by counsel was reasonably necessary).

The extensive and persistent efforts of counsel to bring this litigation to a successful resolution are described at length and in detail in the Joint Declaration and Co-Counsel Declarations.  *See* Joint Decl., ¶¶5-37; Co-Counsel Decls., ¶¶3-8.  As detailed therein, Class Counsel conducted an extensive investigation of the legal and factual issues involved in this case.  This extensive fact discovery included the depositions of 11 corporate executives and designated witnesses, depositions of 8 expert witnesses, 4 sets of document requests (totaling 137 requests) covering a wide array of subject matter areas, and subpoenas to numerous actuarial and financial consultants and insurance agents affiliated with Midland. Joint Decl., ¶¶24-28. These efforts resulted in the production of more than 450,000 pages of documents and a voluminous amount of electronic discovery.  *Id.*, ¶24.

Class Counsel also briefed complex issues arising from the motion for class certification, as well as Midland's motion to dismiss, motion for summary judgment, and motion to exclude the declaration of Plaintiffs' expert, Dr. Craig J. McCann.  *Id.*, ¶¶9, 10, 18-23.  Plaintiff also submitted multiple briefs and appeared multiple times before the Court as part of the Rule 706 independent expert process, which spanned

- 14 -

1   more than a year. *Id.*, ¶¶20-23. Finally, Class Counsel engaged in extensive arm's-

2   length negotiations with Midland over many months to achieve the proposed

3   Settlement. *Id.*, ¶¶29-34. This included numerous mediation sessions with Judge

4   Tevrizian after preliminary mediation sessions with Justice Wallin, along with direct

5   settlement discussions with defense counsel. *Id.*

6           Class Counsel endeavored throughout the litigation to delegate and coordinate

7   the efforts of counsel so as to maximize the impact of their collective resources, while

8   minimizing duplication of efforts and streamlining the prosecution of the case. Shortly

9   after the action was filed, Class Counsel sought to ensure the orderly prosecution and

10  efficient representation for the Class by moving for an order appointing Interim Co-

11  Lead Class Counsel. *Id.*, ¶15. The Court appointed two firms, Coughlin Stoia Geller

12  Rudman & Robbins LLP (now Robbins Geller) and Bonnett Fairbourn as Interim Co-

13  Lead Class Counsel, and Hagens Berman also assumed Co-Lead Class Counsel duties.

14  These three firms carefully supervised and managed the efforts of the other Class

15  Counsel, consulted all counsel concerning litigation strategies and positions, assigned

16  discrete tasks to various counsel and kept Plaintiffs and counsel abreast of all

17  developments in the litigation and settlement negotiations. *Id.*

18          The hours that Class Counsel devoted to this case were reasonable and

19  necessary. Their hard work and commitment have ultimately paid off, as it allowed

20  Interim Co-Lead Counsel to adequately prepare and represent the interests of the Class

21  Members in the litigation and during the hard-fought settlement negotiations with

22  Midland.

23                  **3.      The Lodestar Calculation**

24          Multiplying the hours spent by Class Counsel and their litigation support staff

25  on the litigation by their respective hourly rates yields a lodestar calculation of

26  $16.05 million. *See* Joint Decl., ¶59 (Table 1); Co-Counsel Decls., ¶¶3-8. The

27  lodestar amount, which again is "strongly presumed" to be reasonable, exceeds the

28  award of $13,970,000 sought by Plaintiffs and agreed upon by Midland. *Gates*, 987

F.2d at 1397.  Plaintiffs therefore are seeking a fee award that covers only a portion of their total time and expenses – effectively, a negative multiplier.  Notwithstanding the fact that Plaintiffs' fee request is much lower than their presumptively reasonable lodestar, the factors set forth by the Supreme Court in *Blum*, 465 U.S. at 898-900, and the Ninth Circuit in *Kerr*, 526 F.2d 67, also dictate that Plaintiffs be awarded the full amount requested.

### 4. Class Counsel's Fees Are Reasonable Considering the Time and Labor Required, the Novelty and Complexity of the Litigation, Counsel's Skill and Experience, Results Obtained, and Awards in Similar Cases

In considering the reasonableness of attorneys' fees, the Ninth Circuit has directed courts to consider the time and labor required, novelty and complexity of the litigation, skill and experience of counsel, the results obtained, and awards in similar cases.  *Blum*, 465 U.S. at 898-900; *Kerr*, 526 F.2d at 70.  All of these factors weigh heavily in favor of granting the full award of $13,970,000 in fees and expenses here.

### a. Class Counsel Invested an Enormous Amount of Time and Resources into This Case

To date, Class Counsel and their litigation support staff have expended nearly 37,000 hours, totaling $16.05 million in lodestar, and incurred almost $1.89 million in expenses prosecuting this litigation for the benefit of the Settlement Class.  Joint Decl., ¶¶59, 70; Co-Counsel Decls., ¶¶6-8.  As discussed above and in the Joint Declaration, Class Counsel vigorously litigated the case for nearly four years and were challenged by aggressive, skilled and well-funded defense counsel nearly every step of the way.  *See generally* Joint Decl.  To effectively prosecute this very large and complex class action, Class Counsel had to commit a significant amount of time, personnel and expenses to this litigation on a contingency basis with absolutely no guarantee of being compensated in the end.  Despite the significant risks and uncertainty, Class Counsel obtained an outstanding result on behalf of seniors nationwide who purchased Midland annuities.  Again, the requested fee award does

- 16 -

1    not cover Plaintiffs' lodestar amount and reflects only a portion of the total, actual

2    fees incurred by counsel in prosecuting this action.

### b. The Litigation Featured Many Novel and Complex Legal and Factual Issues

Many of the core issues that Plaintiffs faced in this litigation were novel and

complex, including, for example, the appropriate standard for demonstrating

proximate causation under RICO, the legal measure of damages under RICO and

California's Unfair Competition Law statute, the admissibility and use of expert

testimony to show causation and damages, the existence of a RICO "enterprise," and

the appropriate financial methods of valuing a deferred annuity contract. Joint Decl.,

¶64. Indeed, due in large part to the complexity of these issues, the Court appointed

an independent expert under Rule 706 of the Federal Rules of Evidence to assist it in

evaluating the proffered opinions of the Parties' experts made in connection with

Midland's motion for summary judgment and accompanying motion to exclude Dr.

McCann, and *Daubert* challenge. *Id.*, ¶¶21, 64.

### c. Class Counsel Are Highly Skilled and Experienced in Large and Complex Class Action Litigation

The Court also should consider the experience, skill and reputation of Class

Counsel. *See Kerr*, 526 F.2d at 70; *In re Heritage Bond Litig. v. U.S. Trust Co. of*

*Tex., N.A.*, No. 02-ML-1475-DT (RCx), 2005 U.S. Dist. LEXIS 13627, at *38 (C.D.

Cal. June 10, 2005); *Crommie v. Pub. Utils. Comm'n*, 840 F. Supp. 719, 725 (N.D.

Cal. 1994).

It took a great deal of skill and experience to achieve the proposed settlement

for the benefit of the Settlement Class. Class Counsel are well-respected leaders in

the fields of consumer and class action litigation. *See* Joint Decl., ¶¶58-59; Co-

Counsel Decls., Exs. A, 1. From the outset, Class Counsel used their expertise and

skill to obtain the maximum recovery for the Settlement Class. Class Counsel

launched a thorough investigation and consulted and retained numerous experts to

- 17 -

1   assist in the evaluation of Midland's deferred annuity policies.  Ultimately, Plaintiffs

2   collectively dedicated many years to successfully prosecuting this action.  During the

3   litigation, Plaintiffs defeated Midland's motion to dismiss, prepared their motion for

4   class certification, conducted extensive discovery and document review, and

5   negotiated a comprehensive settlement on behalf of the Settlement Class.  *See*

6   *generally* Joint Decl.

7         Had this Settlement not been achieved, complex legal questions would have

8   continued to be the subject of debate.  At no time has Midland ever conceded liability,

9   the appropriateness of class certification, or the existence of causation or damages.

10   Moreover, the Court intended to hold a lengthy, three-day *Daubert* hearing at which

11   the Parties would have presented testimony and evidence regarding the admissibility

12   of Plaintiffs' expert's testimony.  That hearing would have been followed by a hearing

13   on Midland's motion for summary judgment, as well as additional briefing on

14   Plaintiffs' motion for class certification.  Given the significant risks and uncertainty

15   associated with this complex class action, it is a testament to Class Counsel's skill,

16   creativity and determination that they were able to negotiate an excellent settlement

17   providing substantial economic relief to all Class Members.  *See, e.g.*, *In re Ins.*

18   *Brokerage Antitrust Litig.*, 579 F.3d 241, 281 (D.N.J. 2009) (considering skill and

19   efficiency of attorneys involved).

20         The quality of opposing counsel should also be considered.  *See, e.g.*, *In re*

21   *Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977).  Here,

22   counsel for Midland – Reed Smith LLP – is a nationally recognized law firm in the

23   defense of class actions in general and the defense of class actions involving the

24   marketing and sale of deferred annuities, in particular.  *See, e.g.*, Pintar Decl., Ex. C

25   (Reed Smith attorney profile for Robert D. Phillips, Jr.).  Class Counsel have

26   vigorously litigated, and defense counsel have vigorously defended against, the

27   classwide claims asserted by Plaintiffs.  Indeed, virtually every point in this litigation

28   has been disputed by counsel for Midland.

1
2

### d. Class Counsel Obtained an Outstanding Settlement Result for Class Members Nationwide

3      In light of the looming risks and uncertain outcome of the litigation, the results

4   obtained for the class are outstanding.  As discussed in §III, Plaintiffs have achieved a

5   large and meaningful settlement that provides Class Members tangible economic

6   benefits relating to their Midland annuities in the form of an Annuitization Bonus,

7   Enhanced Annuity Payments, or Surrender Charge Reduction Benefits.  Settlement

8   Agreement, §§IV & V.  This settlement relief is indeed valuable – worth close to

9   $79.5 million in the aggregate – and substantial as to each Class Member receiving

10  relief.  Bieluch Decl., ¶¶4, 17.

11
12

### e. The Fees and Expenses Sought Here Are Well Below Those Awarded in Similar Deferred Annuity Actions

13     Plaintiffs' fee request is also reasonable in light of fees awarded in other similar

14  cases involving the sale of insurance products, including actions involving the sale of

15  the deferred annuities to senior citizens.  As an example, in *In re Am. Investors Life Ins.*

16  *Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226 (E.D. Pa. 2009), an action

17  involving the fraudulent sale of deferred annuities to seniors, the defendant insurance

18  company recently agreed to settle the case by providing the class with similar relief,

19  although not as strong, to that provided by the Settlement here.  *Compare id.* at 231,

20  *with* Settlement Agreement, §IV.A-C & §V. A-D.  In *American Investors*, defendant

21  agreed to provide either a bonus or a payment based upon the surrender charges, if any,

22  previously incurred by the policy owners.  *Am. Investors*, 263 F.R.D. at 245.  Based

23  upon the value of that settlement, the court awarded plaintiffs' counsel $17,699,840 in

24  attorneys' fees and $550,159 for expenses incurred.  *Id*.  The fee award represented a

25  multiplier of 2.3 times counsel's lodestar of $7,942,757.  *Id.*

26     Similar amounts have been awarded in litigation involving the improper

27  marketing and sale of insurance products.  *Varacallo v. Mass. Mut. Life Ins. Co.*, 226

28

- 19 -

1   F.R.D. 207, 255 (D.N.J. 2005) (applying a 2.83 multiplier in awarding $58.2 million in

2   attorneys' fees on total recovery of $698 million of life insurance policyholder

3   benefits); *Snell v. Allianz Life Ins. Co. of N. Am.*, No. 97-2784(RLE), 2000 U.S. Dist.

4   LEXIS 13611, at *20 (D. Minn. Sept. 8, 2000) (awarding $6.6 million in attorneys' fees

5   for 11,000 hours of attorney time totaling $3.2 million under a lodestar approach); *In re*

6   *Prudential Ins. Co. of Am. Sales Practices Litig.*, 106 F. Supp. 2d 721 (D.N.J. 2000)

7   (awarding $90 million in attorneys' fees for recovery totaling $1.8 billion in

8   policyholder benefits); *Manners v. Am. Gen'l Life Ins. Co.*, No. 3-98-0266, 1999 U.S.

9   Dist. LEXIS 22880, at *84-*88 (D. Tenn. Aug. 11, 1999) (awarding $19.5 million, or

10   11.5% of the economic value of the settlement, in attorneys' fees in an action alleging

11   misleading sales practices in connection with sale of whole life policies).

12       Here, Class Counsel have achieved an outstanding settlement on behalf of

13   seniors all over the country who purchased Midland annuities, and their fee request is

14   wholly in line with awards granted in similar insurance class actions cases.  And,

15   again, Plaintiffs seek an amount that is much lower than the fees and expenses

16   actually incurred by counsel in the prosecution of this action.

17
18       **5.**    **Plaintiffs' Fee Request Is Reasonable in Light of the Contingent Nature of the Fee and Class Counsel's Ongoing Work**

19       Finally, Plaintiffs' fee request is reasonable in light of all of the future work and

20   expenses that will be incurred by Class Counsel under the settlement, which will not

21   be included in their current lodestar.  This includes all post-approval work such as

22   claims administration, class member communications, any claims dispute, appeals,

23   and any other issues that may arise under the Settlement Agreement.  This future work

24   is substantial and could potentially last for years, and it will further increase the

25   current negative multiplier.

26       In sum, Plaintiffs' request for an award of $13,970,000 is reasonable and fair,

27   considering the time and labor required to litigate the case, the novelty and complexity

28

of the litigation, the skill and experience of counsel, the valuable settlement relief ultimately obtained on behalf of Class Members, and awards in similar cases.  The requested award is not based on any multiplier and, in fact, reflects only a portion of Class Counsel's actual lodestar and expenses.  Importantly, any award of fees and expenses will not in any way affect the form or amount of the settlement relief and economic benefits provided to Class Members under the Settlement Agreement. Settlement Agreement, §X.B.  The Court should grant the full amount of the fee award, as agreed upon by the Parties.

### C.  Plaintiffs' Fee Request Is Also Well Below the Benchmark Percentage Set by the Ninth Circuit

Plaintiffs' fee request, which is plainly reasonable under a lodestar analysis, is also firmly supported under a common fund, percentage of recovery analysis.

"Courts have relied on 'common fund' principles and the inherent management powers of the court to award fees to lead counsel in cases that do not actually generate a common fund."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995); *see also Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *11 (N.D. Cal. Apr. 3, 2009) (citing *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).  Plaintiffs in the Ninth Circuit are normally entitled to an award for attorney fees of a benchmark percentage of 25% of the common fund, but courts have found fee awards of up to 30% to be reasonable. *Graulty*, 886 F.2d at 272; *see also Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1376 (9th Cir. 1993) (reaffirming 25% benchmark); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (28%); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (25%); *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA, 2009 WL 839841, at *7 (S.D. Cal. Mar. 30, 2009) (30% for first $10 million and 25% for additional $2 million settlement); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) (25%); *accord* Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions*

- 21 -

1   *in Four Federal District Courts: Final Report to the Advisory Committee on Civil*

2   *Rules*, 69 (Federal Judicial Center 1996) available at http://ftp.resource.org/courts.gov/

3   fjc/rule23.pdf ("[m]edian rate[] range[] from 27% to 30%").

4        In determining the amount of the benefit conferred upon a class, the appropriate

5   measure is the total recovery ***available*** for that class, not the amount actually claimed

6   by class members after-the-fact.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81,

7   100 S. Ct. 745, 62 L. Ed. 2d 676 (1980); *see also Williams v. MGM-Pathe Commc'ns*

8   *Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (holding district court abused its discretion

9   in basing fees on class members' claims against fund rather than on a percentage of

10  entire fund); *Six Mexican Workers*, 904 F.2d at 1311 (benchmark is 25% of entire

11  fund).  This is because the entire settlement is created through the efforts of class

12  counsel for the benefit of the entire class.  *Masters v. Wilhelmina Model Agency, Inc.*,

13  473 F.3d 423, 437 (2d Cir. 2007) (citing *Williams*, 129 F.3d at 1027); *see also Waters*

14  *v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) (finding that fees

15  should be based on entire settlement because class counsel's negotiation of

16  $40 million settlement was beneficial to entire class regardless of fact that a reduced

17  number of claims were made).

18       Here, the Settlement, through the three forms of settlement benefits available to

19  Class Members, provides an estimated $79.5 million in economic relief.  Bieluch

20  Decl., ¶¶4, 17.  Plaintiffs' requested award of $13,970,000 represents less than 18% of

21  the value of the available settlement relief.  This is much less than the benchmark 25%

22  typically allowed by this Circuit.  Clearly, Plaintiffs' request for fees and expenses is

23  reasonable and fair under the percentage of recovery analysis.

24  **V.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND**
    **NECESSARILY INCURRED TO ACHIEVE THE BENEFIT**
25  **OBTAINED ON BEHALF OF THE CLASS**

26       Included within the $13,970,000 sought by Plaintiffs to be awarded to Class

27  Counsel are significant expenses incurred in connection with the prosecution of this

28

- 22 -

1  class action.  The Ninth Circuit allows recovery of pre-settlement litigation costs in

2  the context of class action settlements.  *See Staton v. Boeing Co.*, 327 F.3d 938, 974

3  (9th Cir. 2003); *see also* William B. Rubenstein, Alba Conte & Herbert B. Newberg, 4

4  *Newberg on Class Actions*, *Class Member Obligations for Litigation Fees and*

5  *Expenses* §14:2 at 510-511 (4th ed. 2002).  All expenses that are typically billed by

6  attorneys to paying clients in the marketplace are compensable.  *Harris v. Marhoefer*,

7  24 F.3d 16, 19 (9th Cir. 1994).

8       Class Counsel have submitted separate declarations attesting to the accuracy of

9  their expenses.  Class Counsel have incurred expenses in the aggregate amount of

10  $1.89 million over more than four years spent prosecuting this litigation.  *See* Joint

11  Decl., ¶70; Pintar Decl., ¶5; Co-Counsel Decls., ¶¶6-9.  As detailed in the Joint

12  Declaration and Co-Counsel Declarations, Class Counsel incurred substantial costs on

13  experts,  discovery,  consultants,  travel,  computer  research,  motion  practice,

14  photocopies, postage, filing fees, transcripts, and telephone charges.  Joint Decl.,

15  ¶¶70-73; Co-Counsel Decls., ¶¶6-9.

16       Class Counsel were required to travel in connection with this litigation and thus

17  incurred the related costs of airfare, meals, lodging and transportation.  Since many of

18  the witnesses were located in Iowa, the site of Midland's primary business operations,

19  Class Counsel traveled extensively to conduct depositions.  Joint Decl., ¶72.  Counsel

20  also traveled to Los Angeles on numerous occasions to appear before the Court for

21  hearings and attend mediation.  *Id.*  In addition, Class Counsel incurred the costs of

22  computerized research.  These are also charges for computerized factual and legal

23  research services including LEXIS and Westlaw.  It is standard practice for attorneys

24  to use these services to assist them in researching legal and factual issues.  A

25  significant component of Class Counsel's expenses were the cost of experts and

26  consultants, which were necessary given the difficult and complex financial and

27  actuarial issues presented in this action.  *Id.*, ¶71; Co-Counsel Decls., ¶¶6-9.

28

590664_1

1   All of these costs were necessary and reasonably incurred to bring this case to a

2   successful conclusion, and they reflect market rates for the various categories of

3   expenses incurred.  *See* Pintar Decl., ¶¶6-7; Co-Counsel Decls., ¶¶6-9.

## VI.   THE COURT SHOULD APPROVE THE SERVICE AWARD OF $10,000 FOR EACH CLASS REPRESENTATIVE

For their service and long-term commitment as Class Representatives, Robert

Kaiser, Mary Munoz and Mary Bendzak respectfully request that the Court approve a

service award of $10,000 for each of them (totaling $30,000).  "Incentive awards are

fairly typical in class action cases."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948,

958 (9th Cir. 2009); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to

Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303 (Aug. 2006)

(30% of class actions include incentive awards to class representatives).  In the Ninth

Circuit, incentive awards "compensate class representatives for work done on behalf

of the class, to make up for financial or reputational risk undertaken in bringing the

action, and, sometimes, to recognize their willingness to act as a private attorney

general."  *Rodriguez*, 563 F.3d at 958-59.  A court has discretion to approve incentive

awards based on, *inter alia*, the amount of time and effort spent, the duration of the

litigation, and the personal benefit (or lack thereof) as a result of the litigation.  *See

Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, each of the Class Representatives spent a significant amount of time

assisting in the litigation of this action.  Among other things, they: (i) assisted Class

Counsel in gathering facts so that counsel could develop potential legal claims against

Midland; (ii) prepared and testified at depositions; and (iii) assisted Class Counsel in

responding to multiple sets of discovery requests from defendant, including numerous

requests for production of documents.  Joint Decl., ¶¶5-28.

The amount requested here per Class Representative is comparable to the

amount awarded in other cases.  *See, e.g.*, *Am. Investors*, 263 F.R.D. 3d at 245

(approving incentive awards of $10,500); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

- 24 -

1   454, 457, 463 (9th Cir. 2000) (approving incentive award of $5,000); *In re Ins.*

2   *Brokerage Antitrust Litig.*, No. 04-5184 GEB, 2007 WL 1652303, at *11 (D.N.J.

3   June 5, 2007) (approving incentive award of $10,000).  The Class Representatives'

4   efforts and time should not go unrecognized.  Plaintiffs respectfully request that the

5   Court approve the service award in the collective amount of $30,000 to be allocated

6   equally among them.

7   **VII.   CONCLUSION**

8          For the foregoing reasons, Plaintiffs respectfully request that the Court award

9   Class Counsel $13,970,000 in attorneys' fees and expenses, and award each of the

10  Plaintiffs Robert Kaiser, Mary Munoz and Mary Bendzak $10,000 ($30,000

11  cumulatively) for their time and effort as Class Representatives in this successful action.

12                                         Respectfully submitted,

13  DATED:  December 30, 2010             ROBBINS GELLER RUDMAN
                                            & DOWD LLP
14                                         JOHN J. STOIA, JR.
                                           THEODORE J. PINTAR
15                                         RACHEL L. JENSEN
                                           PHONG L. TRAN
16                                         STEVEN M. JODLOWSKI

17
                                                  s/ Theodore J. Pintar
18                                         THEODORE J. PINTAR

19                                         655 West Broadway, Suite 1900
                                           San Diego, CA  92101
20                                         Telephone:  619/231-1058
                                           619/231-7423 (fax)
21
    DATED:  December 30, 2010             BONNETT, FAIRBOURN, FRIEDMAN
22                                          & BALINT, P.C.
                                           ANDREW S. FRIEDMAN
23                                         KIMBERLY C. PAGE

24
                                                  s/ Andrew S. Friedman
25                                         ANDREW S. FRIEDMAN

26                                         2901 N. Central Avenue, Suite 1000
                                           Phoenix, AZ  85012
27                                         Telephone:  602/274-1100
                                           602/274-1199 (fax)
28

                                    - 25 -
590664_1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
MANFRED MUECKE
501 W. Broadway, Suite 1450B
San Diego, CA 92101
Telephone: 619/756-7748

HAGENS BERMAN SOBOL
   SHAPIRO LLP
STEVE W. BERMAN
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone: 206/623-7292
206/623-0594 (fax)

Interim Co-Lead Class Counsel for
Plaintiffs

SHERNOFF BIDART & DARRAS
WILLIAM M. SHERNOFF
JOEL A. COHEN
EVANGELINE F. GARRIS
600 South Indian Hill Blvd.
Claremont, CA 91711
Telephone: 909/621-4935
909/ 625-6915 (fax)

FINKELSTEIN & KRINSK LLP
HOWARD D. FINKELSTEIN
MARK L. KNUTSON
501 West Broadway, Suite 1250
San Diego, CA 92101
Telephone: 619/238-1333
619/238-5425 (fax)

BARRACK, RODOS & BACINE
STEPHEN R. BASSER
402 West Broadway, Suite 850
San Diego, CA 92101
Telephone: 619/230-0800
619/230-1874 (fax)

JAMES, HOYER, NEWCOMER
   & SMILJANICH, P.A.
JOHN A. YANCHUNIS
4830 West Kennedy Blvd.
Urban Centre One, Suite 550
Tampa, FL 33609
Telephone: 813/286-4100
813/286-4174 (fax)

590664_1

1

2

3

4

WATERS KRAUS & PAUL LLP
INGRID M. EVANS
711 Van Ness Avenue, Suite 220
San Francisco, CA  94102
Telephone:  800/226-9880
214/777-0470 (fax)

5

Additional Counsel for Plaintiffs

6

7

## ECF CERTIFICATION

8

9

The filing attorney attests that he has obtained concurrence regarding the filing
of this document from the signatories to this document.

10

11

Dated:  December 30, 2010                    By:   s/Theodore J. Pintar
                                                          THEODORE J. PINTAR

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 30, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 30, 2010.

  s/ Theodore J. Pintar
THEODORE J. PINTAR

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: TedP@rgrdlaw.com

- 28 -

590664_1

# Mailing Information for a Case 2:07-ml-01825-CAS -MAN

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Fletcher C Alford**
  falford@gordonrees.com

- **Stephen R Basser**
  sbasser@barrack.com

- **Steve W Berman**
  steve@hbsslaw.com,heatherw@hbsslaw.com

- **Elaine T Byszewski**
  elaine@hbsslaw.com,JenniferB@hbsslaw.com,sharons@hbsslaw.com

- **Lance A Etcheverry**
  lance.etcheverry@skadden.com

- **Ingrid M Evans**
  ievans@waterskraus.com,jmcintosh@waterskraus.com,rredmayne@waterskraus.com

- **Thomas A Evans**
  tevans@reedsmith.com

- **Denise A Fee**
  daf@jordenusa.com

- **Elizabeth A Fegan**
  beth@hbsslaw.com,Chi_Filings@hbsslaw.com

- **Andrew S Friedman**
  afriedman@bffb.com,rcreech@bffb.com,ngerminaro@bffb.com

- **Laura L Geist**
  lgeist@gordonrees.com,dmckee@gordonrees.com

- **Terence N Hawley**
  thawley@reedsmith.com

- **William Hayden Higgins**
  whiggins@reedsmith.com,dkelley@reedsmith.com

- **Rachel L Jensen**

rjensen@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Steven M Jodlowski**
  sjodlowski@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James F Jorden**
  jfj@jordenusa.com,lw@jordenusa.com

- **Daniel J Kurowski**
  dank@hbsslaw.com,chi_filings@hbsslaw.com

- **Timothy Mahoney**
  timm@hbsslaw.com,chi_filings@hbsslaw.com

- **Thomas Jerome Nolan**
  tnolan@skadden.com,carl.roth@skadden.com

- **Thomas Joseph O'Reardon , II**
  toreardon@bholaw.com,christinas@csgrr.com

- **Linda B Oliver**
  loliver@reedsmith.com,swurth@reedsmith.com

- **Kimberly C Page**
  kpage@bffb.com

- **Robert D Phillips , Jr**
  rphillips@reedsmith.com

- **Henry Pietrkowski**
  hpietrkowski@reedsmith.com

- **Theodore J Pintar**
  tedp@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Teresa R Ponder**
  tponder@bergerkahn.com

- **James A Rolfes**
  jrolfes@reedsmith.com

- **Tamara M Rowles**
  trowles@reedsmith.com,aswenson@reedsmith.com

- **Amir Shlesinger**
  ashlesinger@reedsmith.com

- **Craig S Simon**
  csimon@bergerkahn.com

- **John J Stoia , Jr**
  johns@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Phong L Tran**
  ptran@rgrdlaw.com

- **Samuel M Ward**
  sward@barrack.com,lxlamb@barrack.com

- **Jeffrey L Williams**
  jlw@jordenusa.com,ksm@jordenusa.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for
this case (who therefore require manual noticing). You may wish to use your mouse to
select and copy this list into your word processing program in order to create notices or
labels for these recipients.

**Michael C McKay**
Bonnett Fairbourn Friedman and Balint PC
2901 North Central Avenue  Suite 1000
Phoenix, AZ 85012