ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN J. STOIA, JR. (141757)
jstoia@rgrdlaw.com
THEODORE J. PINTAR (131372)
tedp@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
PHONG L. TRAN (204961)
ptran@rgrdlaw.com
STEVEN M. JODLOWSKI (239074)
sjodlowski@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

BONNETT, FAIRBOURN, FRIEDMAN          HAGENS BERMAN SOBOL
  & BALINT, P.C.                        SHAPIRO LLP
ANDREW S. FRIEDMAN                    STEVE W. BERMAN
(*Pro Hac Vice*)                      (*Pro Hac Vice*)
afriedman@bffb.com                    steve@hbsslaw.com
KIMBERLY C. PAGE                      1918 8th Avenue, Suite 3300
kpage@bffb.com                        Seattle, WA 98101
2901 N. Central Avenue, Suite 1000   Telephone: 206/623-7292
Phoenix, AZ 85012                     206/623-0594 (fax)
Telephone: 602/274-1100
602/274-1199 (fax)

Interim Co-Lead Class Counsel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| In re MIDLAND NATIONAL LIFE INSURANCE CO. ANNUITY SALES PRACTICES LITIGATION | MDL No. CV-07-1825-CAS(MANx) |
| This Document Relates To: | JOINT DECLARATION OF ANDREW S. FRIEDMAN AND THEODORE J. PINTAR IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD |
| ALL ACTIONS. | |

JUDGE:  Hon. Christina A. Snyder
DATE:   February 28, 2011
TIME:   11:00 a.m.
CTRM:   5 – Second Floor

591468_1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ....................................................................... 1

II.  HISTORY OF THE LITIGATION ............................................. 2

    A.   History of Proceedings ..................................................... 2

        1.   Pleadings and Motions .......................................... 2

        2.   Discovery ............................................................... 7

        3.   Settlement Negotiations ......................................... 8

III. TERMS OF THE SETTLEMENT AGREEMENT ..................... 10

    A.   Annuitization Bonus ...................................................... 10

    B.   Enhanced Annuity Payments ......................................... 12

    C.   Surrender Benefit Relief Through the Claim Review Process .......... 12

IV.  SERVICE AWARD AND AWARD FOR ATTORNEYS' FEES AND EXPENSES .......... 14

V.   THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE AND REASONABLE .......... 15

    A.   The Strength of Plaintiffs' Case and Risks of Further Litigation ....... 15

    B.   The Benefits Offered Under the Settlement Agreement .......... 16

    C.   Progress in the Litigation .............................................. 16

VI.  ATTORNEYS' FEES ................................................................. 17

    A.   Class Counsel's Hourly Rates Are Reasonable .............. 17

    B.   The Number of Hours Class Counsel Worked Are Reasonable ....... 19

    C.   Additional Factors Demonstrating Class Counsels' Fees Are Reasonable .......... 20

        1.   Novelty and Complexity of the Litigation ............. 20

        2.   Skill and Experience of Counsel ........................... 20

        3.   Results Obtained .................................................... 21

VII. CLASS COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS .......... 22

- i -

1

2                                                                              **Page**

3  VIII.   SERVICE AWARD FOR CLASS REPRESENTATIVES ..........................23

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

We, ANDREW S. FRIEDMAN and THEODORE J. PINTAR hereby declare as follows:

1.      I, Andrew S. Friedman, am a shareholder in the law firm of Bonnett, Fairbourn, Friedman & Balint, PC ("Bonnett Fairbourn"), and I, Theodore J. Pintar, am a partner of the law firm of Robbins Geller Rudman & Dowd LLP[1] ("Robbins Geller").  Together, we serve as Interim Co-Lead Class Counsel for Plaintiffs in the above-captioned litigation.  We have personal knowledge of the matters set forth herein, based on our active participation in all material aspects of the prosecution and settlement of this litigation.  If called upon, we could and would competently testify that the following facts are true and correct based on our personal involvement in this litigation.  We submit this Joint Declaration in support Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Service Award.

## I.      INTRODUCTION

2.      Bonnett Fairbourn and Robbins Geller were appointed by the Court as Interim Co-Lead Class Counsel for Plaintiffs in this Action.  Bonnett Fairbourn and Robbins Geller have been primarily responsible for the prosecution of this Action and for the negotiation of the Settlement Agreement, with the assistance of other Class Counsel.  On October 25, 2010, the Court preliminarily approved the Settlement Agreement and appointed Bonnett Fairbourn and Robbins Geller, along with Barrack Rodos & Bacine, Finkelstein & Krinsk, Waters & Kraus LLP, James Hoyer Newcomer & Smiljanich, P.A., and Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as Class Counsel.

3.      Having conducted extensive investigation, discovery and research of the allegations in the complaint, including briefing the dismissal and summary judgment motions filed by Defendant, Plaintiffs' motion for class certification, and working

---

[1]      Robbins Geller was formerly Coughlin Stoia Geller Rudman & Robbins LLP.

1   with various experts, Class Counsel were in an excellent position to fully evaluate the

2   strengths and weaknesses of Plaintiffs' claims.

3       4.    The proposed Settlement Agreement is a direct result of the highly skilled

4   and innovative efforts of Class Counsel on behalf of Plaintiffs and Class Members

5   nationwide.

6   **II.    HISTORY OF THE LITIGATION**

7       **A.    History of Proceedings**

8           **1.    Pleadings and Motions**

9       5.    This Action originated as several class actions filed in Superior Court in

10  Los Angeles, and federal courts in Iowa, California and Florida.

11      6.    In the complaint styled *The Estate of John G. Migliaccio, Carmen*

12  *Migliaccio v. Midland Nat'l Life Ins. Co.*, No. BC327732 ("*Migliaccio*"), filed on

13  January 25, 2005 in Los Angeles Superior Court, plaintiffs The Estate of John G.

14  Migliaccio and Carmen Migliaccio asserted claims against Midland National Life

15  Insurance ("Midland" or "Defendant") under California's Welfare & Institutions Code

16  §15600 *et seq.*, violations of the Consumer Legal Remedies Act under California Civil

17  Code §1750 *et seq.*, violations of California's Business and Professions Code §17200

18  *et seq.*, and breach of the duty of good faith and fair dealing.  The *Migliaccio* plaintiffs

19  filed an amended state court complaint on June 7, 2005.  Plaintiffs voluntarily

20  dismissed the state court action without prejudice on February 23, 2006.

21      7.    The *Migliaccio* plaintiffs subsequently filed a case against Midland in the

22  United States District Court for the Southern District of California on January 27,

23  2006, styled *The Estate of John G. Migliaccio and Carmen Migliaccio v. Midland*

24  *Nat'l Life Ins. Co.*, No. 3:06-CV-00208-L-CAB, again alleging claims for civil RICO,

25  elder abuse, unlawful, deceptive and unfair business practices, unlawful, deceptive

26  and misleading advertising, breach of fiduciary duty and aiding and abetting breach of

27  fiduciary duty, unjust enrichment and imposition of constructive trust.  Plaintiffs

28  voluntarily dismissed this case without prejudice on February 17, 2006.

- 2 -

8.     Plaintiff Robert D. Kaiser filed a complaint against Midland and others in the United States District Court for the Middle District of Florida, on September 20, 2005, styled *Kaiser v. Midland Nat'l Life Ins. Co.*, No. 3:05-CV-00972-HLA-TEM ("*Kaiser*"), alleging civil RICO, common law fraud, fraudulent misrepresentation, negligent misrepresentation, fraudulent inducement, civil conspiracy, unjust enrichment, and imposition of constructive trust.  This case was voluntarily dismissed without prejudice on February 22, 2006.

9.     The *Migliaccio* plaintiffs and plaintiff Robert D. Kaiser subsequently filed a case in the United States District Court for the Central District of California on February 17, 2006, styled *The Estate of John G. Migliaccio, Carmen Migliaccio and Robert D. Kaiser v. Midland Nat'l Life Ins. Co.*, No. 2:06-CV-01007 CAS (MANx), alleging claims for civil RICO, elder abuse, unlawful, deceptive and unfair business practices, unlawful, deceptive and misleading advertising, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, negligent misrepresentation, fraudulent inducement, unjust enrichment and imposition of constructive trust.  On June 12, 2006, the Court granted, in part, Midland's motion to dismiss with leave to amend, holding that, as a matter of law, an estate cannot be a named plaintiff. Plaintiffs Carmen Migliaccio and Robert D. Kaiser subsequently filed an amended complaint on or about November 27, 2006, which added plaintiff Mary P. Munoz, and removed the Estate of John G. Migliaccio as a plaintiff.

10.    Defendant later moved to dismiss the *Migliaccio* plaintiffs' First Amended Complaint on December 15, 2006.  Plaintiffs responded on January 16, 2007 and Defendant filed its reply on January 22, 2007.  A hearing was held on January 26, 2007 regarding Midland's motion.  That same day, the Court issued an order denying Defendant's motion to dismiss as to most of the claims asserted by plaintiffs, but granted Defendant's motion to dismiss plaintiff's §17200 claim to the extent it purported to rely on the California Legal Remedies Acts, California Civil Code §1750 *et seq.*

591468_1

11.    Plaintiff Mary Bendzak filed an action against Midland in the United States District Court for the Southern District of Iowa on December 8, 2005, styled *Bendzak v. Midland Nat'l Life Ins. Co.*, No. 4:05-CV-00649-RP-TJS ("*Bendzak*"), alleging claims for violation of RICO, common law civil conspiracy and unjust enrichment.  Plaintiff Mary Bendzak filed an amended complaint on August 7, 2006. On January 12, 2007, plaintiff Mary Bendzak filed a second amended complaint adding Alan Bendzak as attorney-in-fact for Mary Bendzak.   On May 7, 2007, plaintiff Mary Bendzak filed a motion to substitute Nancy Bendzak as her attorney-in-fact in place of Alan Bendzak.  That motion was granted on May 30, 2007.

12.    Plaintiff Mary P. Munoz filed a case against Midland and others in the Superior Court of the State of California, County of Los Angeles on September 29, 2006, styled *Munoz v. Midland Nat'l Life Ins. Co.*, No. BC359541 ("*Munoz*"), alleging financial elder abuse, breach of implied covenant of good faith and fair dealing, unlawful, deceptive and unfair business practices, unfair, deceptive and misleading advertising, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraudulent concealment, negligence, negligent misrepresentation, unjust enrichment, and imposition of constructive trust.  On November 17, 2006, Plaintiff Mary P. Munoz voluntarily dismissed, without prejudice, defendants Midland, Sammons Financial Group, Inc., and Sammons Enterprises, Inc.  Plaintiff Mary P. Munoz subsequently filed an amended complaint against the remaining Parties on November 27, 2006.  The entire action was dismissed without prejudice at plaintiff Mary P. Munoz's request on June 19, 2007.

13.    On March 14, 2006, the *Migliaccio* plaintiffs and Robert D. Kaiser moved for the appointment of Bonnett, Fairbourn, Friedman & Balint, P.C. and Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP (now known as Robbins Geller Rudman & Dowd LLP) as Interim Co-Lead Class Counsel of the *Migliaccio* plaintiffs.  The Court granted this motion on April 10, 2006.

- 4 -

591468_1

14.     On December 6, 2006, plaintiff Mary Bendzak submitted a motion to the Judicial Panel for Multidistrict Litigation requesting centralization and coordination of pretrial proceedings in the *Bendzak* and *Migliaccio* matters in the United States District Court for the Southern District of Iowa.  On May 2, 2007, the Panel granted her motion but ordered the matters transferred to the United States District Court for the Central District of California styled as *In Re Midland National Life Ins. Co. Annuity Sales Practices Litigation*, MDL No. 1825 ("*MDL Proceeding*").

15.     On June 1, 2007, the Court entered an order appointing Bonnett Fairbourn and Robbins Geller as interim co-lead class counsel of the MDL proceeding.  Hagens Berman, counsel in the *Bendzak* matter, also assumed Interim Co-Lead Counsel duties.  These three firms supervised and managed the efforts of the other Class Counsel, consulted all counsel concerning litigation strategies and positions, assigned discrete tasks to various counsel and kept Plaintiffs and Class Counsel abreast of all developments in the litigation and settlement negotiations.

16.     On June 4, 2007, the *Migliaccio*, *Munoz*, *Kaiser*, and *Bendzak* plaintiffs (collectively "Plaintiffs") filed a Consolidated Class Action Complaint (the operative Complaint) in the *MDL Proceeding*, alleging civil RICO, elder abuse, unlawful, deceptive and misleading advertising, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, negligent misrepresentation, fraudulent inducement, unjust enrichment, and imposition of constructive trust.

17.     On April 9, 2007, Midland moved for summary judgment or, in the alternative, for partial summary judgment as to Plaintiffs Robert Kaiser, Mary Munoz, and Carmen Migliaccio, and, on June 18, 2007 moved for the same against Plaintiff Mary Bendzak.

18.     On July 2, 2007, Plaintiffs filed their motion for class certification.  The Court took the motion for class certification off calendar pending resolution of Midland's summary judgment motions and motions to exclude, supporting memorandum, and evidentiary submission seeking certification of a nationwide class

1  for Defendant's alleged RICO violations and a California-only class for violations of

2  California statutory law.

3         19.    On July 9, 2007, Plaintiffs filed their combined opposition to Midland's

4  motion for summary judgment, including an expert declaration in support of their

5  claims.  Plaintiff Bendzak filed her opposition on July 16, 2007.

6         20.    Thereafter, on September 10, 2007, Midland filed its reply in support of

7  summary judgment.  At the same time, Defendant also moved to exclude the

8  declaration of Plaintiffs' expert, Dr. Craig McCann, and submitted two opposing

9  expert declarations in support of its motion.  On October 31, 2007, Plaintiffs filed

10  their opposition to Defendant's motion to exclude.  On February 15, 2008, Midland

11  filed its reply in support of its motion to exclude Plaintiffs' expert, along with

12  Supplemental Declarations.

13         21.    On February 25, 2008, the Court held a hearing on Midland's motion for

14  summary judgment and motion to exclude Plaintiffs' expert.  In its tentative order, the

15  Court was prepared to deny Defendant's motion for summary judgment in most

16  respects.  But, because the Court had questions regarding Dr. McCann's analysis, the

17  Court informed the Parties that it intended to appoint an expert pursuant to Rule 706

18  of the Federal Rules of Evidence.  After extensive briefing and input from the Parties,

19  on May 19, 2008, the Court appointed Zvi Bodie, Ph.D., to serve as the court-

20  appointed expert.  The Parties spent many months debating the purpose and scope of

21  the Rule 706 expert's assignment.

22         22.    After the appointment of Dr. Bodie, the Parties compiled a joint record

23  for Dr. Bodie consisting of all the motions, briefs, and evidentiary submissions

24  relating to Defendant's motion for summary judgment and motion to exclude

25  Plaintiffs' expert, all the expert depositions taken by the Parties, certain corporate

26  representative depositions, and all documents and data produced by the Parties'

27  experts.  In addition, the Parties prepared a detailed summary of the evidence for Dr.

28  Bodie.

591468_1

23.     Following Dr. Bodie's receipt of the joint record and the Parties' evidentiary summaries, he submitted three questions to Class Counsel.  On July 28, 2008, Plaintiff submitted their response to Dr. Bodie's questions.  On August 11, 2008, Defendant filed its response to Plaintiffs' July 28, 2008 submission, and Plaintiffs filed their reply on August 19, 2008.  On September 21, 2008, Dr. Bodie submitted his report to the Court and the Parties.  On January 13, 2009, and March 18, 2009, the Parties deposed Dr. Bodie regarding his report.  Following submission of Dr. Bodie's report, Class Counsel also engaged in extensive preparation for the *Daubert* hearing concerning Defendant's motion to exclude Dr. McCann.  The Rule 706 expert process, which was never completed, spanned more than a year.

### 2.     Discovery

24.     Class Counsel engaged in extensive discovery.  Plaintiffs served 4 sets of document requests (totaling 137 requests) on Defendant.  In response, and over the course of many months of meet and confer negotiations regarding topics such as electronically stored information ("ESI"), document custodians and search terms, Defendant produced over 450,000 pages.  These documents were reviewed and coded by Class Counsel.  Class Counsel also retained and consulted with multiple experts concerning the merits of Plaintiffs' claims and the defenses raised by Defendant.

25.     In addition to requests for documents, Plaintiffs propounded and Defendant responded to interrogatories.  These interrogatories were also the subject of extensive meet and confer sessions between Plaintiffs and Defendant.

26.     Plaintiffs also served Midland with Rule 30(b)(6) deposition notices, requesting that Defendant designate individuals knowledgeable to testify on several subject matter areas, including Defendant's corporate organization, computer systems, policies and procedures, agent training, agent oversight, agent compensation, sales materials, and product development and features.  Class Counsel conducted an extensive investigation of the legal and factual issues involved in this case.  This

591468_1

extensive fact discovery included the depositions of 11 corporate executives and designated witnesses and 8 expert witnesses.

27.   Plaintiffs also deposed multiple financial and economic experts retained by Midland in support of its motion to exclude Plaintiffs' expert, which required extensive and specialized preparation.

28.   Plaintiffs also served multiple subpoenas *duces tecum*, seeking materials from Defendant's agents, marketing organizations, auditors, and investment managers. After engaging in extensive meet-and-confer sessions with many of these third parties, Plaintiffs obtained and reviewed a substantial number of documents relevant to Plaintiffs' allegations in this Action.

### 3.    Settlement Negotiations

29.   After engaging in some preliminary negotiations, the Parties agreed to the appointment of a mediator.  To accomplish the Settlement, the Parties engaged in numerous, arm's-length mediation sessions beginning in 2007, first with Justice Edward Wallin (Ret.) of JAMS and later with Judge Dickran Tevrizian (Ret.) of JAMS, concluding in April 2010.  The Parties worked a substantial number of hours to reach the terms embodied in the Settlement Agreement.

30.   The first mediation session was held on December 1, 2007 with Justice Wallin.  Both Parties submitted mediation statements.  Subsequent sessions were held on December 18, 2007 and January 21, 2008.  Unable to come to a mutually agreeable resolution, the Parties left the bargaining table for some time.  On June 25, 2009 and July 1, 2009, the parties resumed negotiations before Justice Wallin.   Still, no resolution was reached.

31.   The Parties subsequently mediated the matter before Judge Tevrizian.  In advance of the mediation on September 18, 2009, the Parties submitted settlement memoranda to Judge Tevrizian setting forth their respective positions and the latest settlement proposals.  The settlement memoranda described in detail the procedural

- 8 -

591468_1

1   history and settlement negotiations to date, including the major barriers to a final and
2   comprehensive settlement.

3         32.    The September 2009 mediation sessions were followed by several
4   substantive conference calls with Judge Tevrizian and Midland's counsel and
5   numerous email exchanges among the Parties and Judge Tevrizian.  The Parties
6   continued to negotiate, exchanging several versions of the memorandum of
7   understanding before reaching agreement.   These efforts culminated in a
8   November 20, 2009 Memorandum of Understanding, reflecting the principal terms of
9   a settlement.   Several more substantive conference calls and email exchanges
10  followed, as the Parties negotiated the Settlement Agreement and related settlement
11  issues, including the Class Notice and the Claim Forms to be used.

12        33.    During the course of the negotiations and mediation on the Settlement
13  Agreement terms, Class Counsel did not raise the issue of attorneys' fees and
14  expenses.  The Parties refrained from such discussion until after all of the material
15  terms of the Settlement Agreement had been fully and finally agreed upon.

16        34.    After the substantive terms of the Settlement Agreement were agreed on,
17  Plaintiffs made an attorneys' fee and expense demand on Defendant. This demand for
18  fees and expenses was separate and apart from the relief negotiated for the Class. The
19  Parties continued the mediation on April 29, 2010 before Judge Tevrizian to reach an
20  agreement regarding Plaintiffs' attorneys' fees and expenses.

21        35.    Class Counsel have billed close to 37,000 hours in collective time at an
22  hourly rate range of $180.00 to $540.00 per hour and approximately $1.89 million in
23  expenses, representing over $17.94 million in time and expenses that Class Counsel
24  collectively invested in the case to date.

25        36.    On June 28, 2010, the Parties attended a status conference and advised
26  the Court of the substantive terms of the Settlement Agreement.  Following the status
27  conference, the Parties met on the issue of attorneys' fees and expenses.  Thereafter,
28  the Parties participated in a number of conference calls and exchanged emails

- 9 -

1    regarding the issue of Plaintiffs' attorneys' fees and expenses.  The Parties ultimately

2    agreed that Midland would pay up to $13,970,000 in attorneys' fees and expenses,

3    *separate and apart from the* relief provided to the Class.

4         37.    On October 12, 2010, Plaintiffs filed the Settlement Agreement and their

5    memorandum in support of preliminary approval of the Settlement.  On October 25,

6    2010, the Court granted preliminary approval of the Settlement, conditionally certified

7    the proposed Class, appointed Class Counsel, and Garden City Group as the Claims

8    Administrator, and appointed the Plaintiff Mary P. Munoz, Robert D. Kaiser and Mary

9    Bendzak to serve as Class Representatives.

10   **III.   TERMS OF THE SETTLEMENT AGREEMENT**

11        38.    Pursuant to the terms of the Settlement Agreement, each Class Member

12   who chooses not to be excluded will receive valuable economic benefits in the form of

13   an Annuitization Bonus, Enhanced Annuity Payments for Class Members who have

14   already annuitized their Annuity contracts, or Surrender Benefit Relief for those who

15   elect to participate in the Claim Review Process.  Settlement Agreement, §§IV & V.

16        **A.    Annuitization Bonus**

17        39.    Class Members with Active Deferred Annuity contracts who elect this

18   settlement benefit, or who do not elect any other benefit under the Settlement

19   Agreement,[2] will receive an increase in the Account Value of their Annuity through an

20   Annuitization Bonus.  *Id.*, §IV.B.  For those who elect to receive the Annuitization

21   Bonus and annuitize over a qualifying period (meaning that payments will continue

22   until the later of the annuitant's death or the expiration of 10 years), Midland will

23   increase the accumulation value of the active deferred annuity by the amount of the

24

25   [2]    The Annuitization Bonuses will also be awarded to those Settlement Class
26   members with Active Deferred Annuities who elect the Claim Review Process but are
     not qualified for the Surrender Charge Reduction Benefits relief or who attempt to
27   exclude some, but not all of the Annuities that he or she has an ownership interest in,
     pursuant to §IV.B.2 of the Settlement.

28

applicable bonus, calculated at the time of annuitization.  *Id.*, §IV.B.2.   The
Annuitization Bonus is intended for those Class Members who have no intention of
surrendering their Annuities and wish to annuitize their contracts.  *Id.*   The
Annuitization Bonus, which directly enhances the economic value of Defendant's
Annuities, effectively addresses Plaintiffs' concerns about the high, undisclosed costs
embedded in those Annuities.

40.   The applicable Annuitization Bonus will be an amount equal to a
percentage of the Annuity's Accumulation Value on the date of Annuitization, and the
applicable percentage will be determined by the duration of the annuity in question, as
set forth in the following table.

| Policy Year | Bonus Percentage |
| --- | --- |
| 1-4 | 0 |
| 5-9 | 3.3 |
| 10 | 4.4 |
| 11 | 5.5 |
| 12 | 6.6 |
| 13 | 7.7 |
| 14 | 8.8 |
| 15 | 9.9 |
| 16 | 11.0 |

*Id.*, §IV.B.2 & B.3.

41.   When an Annuity that did not qualify for Surrender Charge Reduction
Benefits is terminated by death after the date of entry of the Final Order and
Judgment, and the beneficiary or surviving spouse elects to receive the death benefit
in the form of periodic payments over a Qualifying Period, Defendant will apply the
applicable Annuitization Bonus to determine the amount of each periodic payment to
the beneficiary or surviving spouse occurring after the Implementation Date.  *Id.*,
§IV.B.5.  Annuities that are continued by the surviving spouse of the Owner of an
Annuity after a death benefit becomes payable after the Eligibility Date are also

- 11 -

1   eligible to receive the applicable Annuitization Bonus if the Annuity is Annuitized
2   over a Qualifying Period to the same extent as the Owner would have been.  *Id.*

3   **B.     Enhanced Annuity Payments**

4          42.     Class Members who have already annuitized their policies prior to the
5   effective date of the Settlement Agreement will have their current applicable annuity
6   payment amount automatically increased by 2%, relative to the amount scheduled to
7   be paid absent the settlement, for each remaining annuity payment made to them after
8   the Implementation Date.  Settlement Agreement, §IV.C.  Class Members receiving
9   Enhanced Annuity Payments are not eligible to receive Surrender Charge Reduction
10  Benefits nor the Annuitization Bonus.  *Id*., §IV.A.

11  **C.     Surrender Benefit Relief Through the Claim Review**
12  **         Process**

13         43.     Class Members who have not already Annuitized their Annuities as of the
14  Eligibility Date may file Claims which, if approved, will provide reductions in past or
15  future Surrender Charges for their Annuities.  Settlement Agreement, §V.A.2.  These
16  reductions in Surrender Charges are referred to as Surrender Charge Reduction
17  Benefits.  *Id*., §IV.A.  To obtain Surrender Charge Reduction Benefits, a Class
18  Member must timely complete and submit to the Administrator a Claim Form
19  (included in the Class Notice Package) for the Annuity that is the subject of the Claim.
20  *Id*., §V.B & D.

21         44.     In order to obtain Surrender Charge Reduction Benefits, a Claimant must:
22  (a) timely submit a Claim Form; and (b) satisfy the requirements for Upper Tier
23  Benefits or Lower Tier Benefits.  *Id*., §IV.D.

24         45.     To submit a Claim for Surrender Charge Reduction relief, a Class
25  Member must provide, under penalty of perjury, the following explanatory
26  information:

27                 (a)     whether a Misrepresentation concerning the applicable Surrender
28                         Charges, right to annuitize or other policy terms occurred at the

- 12 -

591468_1

1        time of the Annuity's sale, and, if so, whether the Claimant would

2        not have purchased the Annuity but for the Misrepresentation;

3        (b)    whether full surrender of the Annuity or withdrawal of more of

4        the Annuity's Accumulation Value than would be permitted

5        without a Surrender Charge is, or at the time of a prior full or

6        partial surrender was, necessary to pay for:

7        (i)    medical expenses;

8        (ii)   nursing or home care;

9        (iii)  retention of the Claimant's sole residence; or

10       (iv)  other essential living expenses (such as food, rent,

11       necessary housing repairs and upkeep, utilities and/or

12       transportation for the Claimant or a member of Claimant's

13       household);

14       and if so, as to any of items (i) – (iii), a description of the claimed

15       expense, and as to any expenses claimed under (iv), an

16       explanation, in reasonable detail, of the need and the financial

17       circumstances indicating the Claimant cannot or could not afford

18       the expenses without reduction of the Surrender Charges

19       otherwise applicable under the Claimant's Annuity;

20       (c)    whether the Class Member's Annual Income is less than or equal

21       to $35,000; and/or

22       (d)    whether the Accumulation Value of the Annuity as of the

23       Eligibility Date is more than 20% of the Class Member's Net

24       Worth or three times the Class Member's Annual Income.

25  *Id.*, §V.D.3.

26      46.   Under the Settlement Agreement, the Parties contemplate the

27  appointment of a neutral, third-party Administrator, who will review submitted Claim

28

Forms and determine whether claimants are eligible for Surrender Benefit Relief. *Id.*, §V.E.

47.     If the Administrator determines that the information set forth in a Claim Form establishes that either of the circumstances described in §V.D.3, subparts (a) or (b) exist, the Claimant shall be entitled to receive Upper Tier Benefits. *Id.*, §V.D.6. If the information set forth in the Claim Form establishes that either of the circumstances described in subparts (c) or (d) exist, but none of the circumstances described in §V.D.3, subparts (a) or (b) exist, the Claimant shall be entitled to receive Lower Tier Benefits. *Id.*, §V.D.6.  Subject to certain limitations specified in the Settlement Agreement, Claimants who qualify for Upper Tier Benefits will receive a refund of up to 75% of Surrender Charges incurred prior to the Implementation Date, or a reduction of up to 75% in any Surrender Charge incurred on or after the Implementation Date. *Id.*, §V.A.1.  Likewise, Claimants who qualify for Lower Tier Benefits will receive a refund of up to 40% of Surrender Charges incurred prior to the Implementation Date, or a reduction of up to 40% in any Surrender Charge incurred on or after the Implementation Date.  *Id*.

48.     All determinations and awards made by the Administrator are final and binding.  Class Members, along with their predecessors, successors and assigns, and Class Counsel, Defendant and any other party-in-interest may not appeal or seek review or vacatur of or otherwise challenge such determinations or awards in any subsequent court or administrative proceeding, including without limitation any proceeding under any applicable federal or state law, rule, or procedure, unless the Administrator does not make its decisions on Claims in accordance with the requirements of this Settlement Agreement or is grossly negligent.

## IV.   SERVICE AWARD AND AWARD FOR ATTORNEYS' FEES AND EXPENSES

49.     Under the Settlement Agreement, Midland has agreed to pay Plaintiffs Robert Kaiser, Mary Munoz and Mary Bendzak $10,000, each as a service award for

their participation and commitment as Class Representatives in the Action.  Further, Defendant has agreed to pay Class Counsel's attorneys' fees and expenses up to $13,970,000, if approved by the Court.  Any fees and expenses awarded by the Court will be paid by Defendant separately and will not affect the relief provided to the Class Members.  *Id.*, §X.B.  Conversely, any reduction in these amounts will not further benefit the Class but will revert to Defendant.

## V.   THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE AND REASONABLE

### A.   The Strength of Plaintiffs' Case and Risks of Further Litigation

50.   The Parties have vigorously disputed the merits of the claims and defenses at issue throughout the case.  Although Plaintiffs believe they have a strong case for liability, they recognize the inherent risks and uncertainties of litigation.  Midland has always denied any wrongdoing in connection with the marketing and sale of its deferred annuities.  Defendant believes that it has substantial defenses to Plaintiffs' claims, many of which were previewed in the Defendant's motion for summary judgment and motion to exclude Plaintiffs' expert.

51.   If Plaintiffs continued to litigate the case and ultimately try their claims, Plaintiffs would face the risk of not recovering at all and or not recovering relief as extensive as that provided by the Settlement Agreement.  Midland has never conceded liability, the appropriateness of class certification, or the existence of causation or damages and has vigorously challenged these issues throughout the litigation.  Moreover, Plaintiffs would face the risk of a determination that the case is not manageable as a class action for purposes of trial.

52.   Regardless of the ultimate outcome of the case, it is indisputable that further proceedings in this matter would be contentious, protracted, costly, and would drain this Court of valuable time and resources.  The Settlement Agreement provides tangible economic benefits relating to the sale of Defendant's Annuities that Plaintiffs

- 15 -

1    sought to recover in this Action and thus, as explained herein, provides an excellent

2    result for Class Members nationwide.

3          **B.    The Benefits Offered Under the Settlement Agreement**

4          53.   The Settlement Agreement provides the Class Members with the relief

5    that they could seek in trial, and possibly more than they would receive if the case

6    went to trial.  The benefits offered under the Settlement provides the principal relief

7    sought in this Action – an Annuitization Bonus or Enhanced Annuity Payments,

8    which directly address Plaintiffs' claims regarding the high, undisclosed costs and

9    illiquidity of Defendant's Annuities – and also Surrender Charge Reduction Benefits,

10   which provide relief through a streamlined Claims Process to other Class Members

11   who have surrendered their Annuity or may have to surrender their Annuity.

12         **C.    Progress in the Litigation**

13         54.   The Parties agreed upon the terms of the Settlement Agreement following

14   substantial fact investigation, legal analysis, discovery, expert consultations, and

15   litigation on the merits of Plaintiffs' claims, including the resolution of Defendants'

16   motions to dismiss, full briefing and argument on Defendant's motion for summary

17   judgment, and Plaintiffs' motion for class certification.  The Settlement Agreement

18   was reached only after extensive, arm's-length negotiations by experienced counsel

19   under the extensive guidance of skilled mediators.

20         55.   From the discovery completed to date and the issues raised in the motions

21   for summary judgment, motions to exclude Plaintiffs' experts, and motion for class

22   certification, the Parties are in a position to assess the risks and possible litigation

23   outcomes, as compared to the benefits to be gained from the specific terms of the

24   Settlement Agreement, including the valuable monetary relief made available to Class

25   Members.

26         56.   The well-informed, lengthy and intensive arm's-length settlement

27   negotiations, with the involvement of a respected mediator, as detailed herein, also

28   indicate the fairness of the Settlement Agreement.  The history of the settlement

1  negotiations recounted above creates a presumption that the Settlement Agreement's

2  terms are facially fair, adequate, and reasonable.

3  **VI.    ATTORNEYS' FEES**

4       57.    As set forth above and for the reasons detailed in the Plaintiffs'

5  Memorandum in Support of Motion for an Award of Attorneys' Fees, Reimbursement

6  of Expenses, and Service Award, the requested fees, expenses, and service awards are

7  fair and reasonable under Ninth Circuit legal standards and, in light of the excellent

8  result achieved on behalf of the Class, should be fully awarded by this Court, as

9  agreed upon by the Parties under the Settlement Agreement.  Because Class Counsel

10  seek an award of fees and expenses separate and apart from the relief provided to the

11  Class, and because there is no evidence of collusion, this Court should grant the award

12  of fees and expenses in its entirety.

13      **A.    Class Counsel's Hourly Rates Are Reasonable**

14       58.    Under the lodestar method, a reasonable attorney's fee may be

15  determined by the number of hours reasonably expended on the litigation multiplied

16  by an hourly rate.  As set forth in detail in the Co-Counsel's Declarations,[3] Interim

17  Co-Lead Class Counsel and Class Counsel are well-respected members of the bar who

18  are highly experienced in the areas of consumer class actions and complex litigation.

19  _____

20  [3]    Declaration of Theodore J. Pintar in Support of Plaintiffs' Motion for an Award
of Attorneys' Fees, Expenses and Incentive Award, filed concurrently ("Pintar
Decl."); Declaration of Andrew S. Friedman in Support of Plaintiffs' Motion for an

21  Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Award, filed
concurrently ("Friedman Decl."); Declaration of Jeffrey R. Krinsk in Support of

22  Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and
Incentive Award, filed concurrently ("Krinsk Decl."); Declaration of Ingrid M. Evans

23  in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of
Expenses and Incentive Award Payments, filed concurrently ("Evans Decl.");

24  Declaration of John A. Yanchunis in Support of Plaintiffs' Motion for an Award of
Attorneys' Fees, Reimbursement of Expenses and Incentive Award, filed concurrently

25  ("Yanchunis Decl."); Declaration of Stephen R. Basser in Support of Plaintiffs'
Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Incentive

26  Award, filed concurrently ("Basser Decl."); Declaration of Elizabeth A. Fegan in
Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of

27  Expenses and Incentive Award, filed concurrently ("Fegan Decl.") (collectively, "Co-
Counsel Decls.").

28

591468_1

59.   Class Counsel have collectively devoted 36,968.77 hours of attorney and litigation support time to this four-year litigation, which results in $16,052,538.05 million in lodestar. *See generally* Co-Counsel Decls.  The hourly rates submitted by Class Counsel reflect their actual and customary billing rates.  These rates are reasonable and have thus been approved in various Courts and are comparable to the rates for other California law firms.  The hourly rates of the firms seeking fees in this motion are appropriate for complex, nationwide litigation, ranging from $180.00 to $540.00 per hour for associates, and from $400.00 to $795.00 per hour for partners. The table below sets for the hourly rates, total hours worked and lodestar amounts for each of the law firms involved in the prosecution of this Action.

| TABLE 1 Class Counsel's Hourly Rates and Hours Worked | | | |
|---|---|---|---|
| Prosecuting Firm | Range of Attorney Hourly Rates | Total Hours | Lodestar Amount[4] |
| Robbins Geller Rudman & Dowd LLP | $305.00 to $795.00 | 11,132.50 | $4,998,537.50 |
| Bonnett Fairbourn Friedman & Balint, P.C. | $180.00 to $650.00 | 8,641.90 | $3,950,930.50 |
| Hagens Berman Sobol Shapiro LLP | $250.00 to $650.00 | 5,860.20 | $2,275,785.00 |
| Finkelstein & Krinsk LLP | $325.00 to $525.00 | 3,828.55 | $1,618,954.25 |
| Waters Kraus & Paul | $375.00 to $700.00 | 1,959.47 | $808,833.05 |
| Barrack Rodos & Bacine | $275.00 to $700.00 | 3,584.25 | $1,594,328.75 |
| James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A. | $400.00 to $600.00 | 1,961.90 | $805,169.00 |
| **Total** | | **36,968.77** | **$16,052,538.05** |

*See* Co-Counsel Decls., ¶¶3-8.

60.   Additionally, the fees and expenses incurred by Class Counsel in this matter are well below those awarded in similar cases involving the sale of life insurance, including actions involving the sale of the deferred annuities to senior

---

[4]   Total hours and lodestar amount include work performed by the litigation support staff at each firm.

591468_1

citizens.  For example, in *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226 (E.D. Pa. 2009), an action similarly involving the fraudulent sale of deferred annuities to seniors, the Court awarded plaintiffs' counsel $17,699,840 in attorneys' fees and $550,159 for expenses incurred.  *Id*.  The fee award represented a multiplier of 2.3 times counsel's lodestar of $7,942,757.  *Id*.

61.   Similar amounts have been awarded in litigation concerning improper practices in connection with the marketing and sale of insurance products.  *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 255 (D.N.J. 2005) (applying a 2.83 multiplier in awarding $58.2 million in attorneys' fees on total recovery of $698 million of life insurance policyholder benefits); *Snell v. Allianz Life Ins. Co. of N. Am.*, No. 97-2784(RLE), 2000 U.S. Dist. LEXIS 13611, at *20 (D. Minn. Sept. 8, 2000) (awarding $6.6 million in attorneys' fees for 11,000 hours of attorney time totaling $3.2 million under a lodestar approach); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 106 F. Supp. 2d 721 (D.N.J. 2000) (awarding $90 million in attorneys' fees for recovery totaling $1.8 billion in policyholder benefits); *Manners v. Am. Gen'l Life Ins. Co.*, No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880, at *84-*88 (D. Tenn. Aug. 10, 1999) (awarding $19.5 million, or 11.5% of the economic value of the settlement, in attorneys' fees in an action alleging misleading sales practices in connection with sale of whole life policies).

## B.   The Number of Hours Class Counsel Worked Are Reasonable

62.   Class Counsel have devoted approximately 36,968.77 hours, collectively, to this case, representing a $16,052,538.05 in lodestar.  Pintar Decl., ¶4; Friedman Decl., ¶6; Fegan Decl., ¶5; Krinsk Decl., ¶5; Yanchunis Decl., ¶5; Evans Decl., ¶7; Basser Decl., ¶5.  The number of hours submitted by Class Counsel is reasonable and justifiably incurred.  The extensive effort put forth in this litigation is detailed above and in the declarations provided by Class Counsel.  *See generally* Co-Counsel Decls.  Because Midland agreed to pay the requested attorneys' fees apart from Class relief

and after arm's-length negotiation with the guidance and review of an experienced and well-respected mediator, the Court may approve the fees requested by Plaintiffs based on the summary exhibits and declarations submitted by Class Counsel.

63.     The fees and expenses were negotiated only after the Parties had reached agreement on all material terms of the settlement relief for Class Members. However, once the Settlement Agreement and exhibits were finalized in all other respects, the Parties engaged in hard-fought negotiations and mediation concerning these fees and expenses.

### C.     Additional Factors Demonstrating Class Counsels' Fees Are Reasonable

#### 1.     Novelty and Complexity of the Litigation

64.     Over the course of this Action, the Parties briefed novel and complex issues concerning the financial and economic mechanics of Defendant's annuity products, the appropriate method for calculating damages arising from the purchase of Defendant's annuities, the existence of a RICO "enterprise," and the requirements of causation and damages under RICO and California's Unfair Competition Law. Moreover, the Parties were asked to provide substantial additional briefing related to the appointment of the Rule 706 expert.

#### 2.     Skill and Experience of Counsel

65.     The Settlement Agreement was achieved by Class Counsel who have decades of experience in prosecuting and trying complex class actions. Co-Lead Class Counsel and the other Class Counsel are well-respected leaders in the fields of consumer class action litigation. *See generally* Co-Counsel's Decls. and firm biographies attached as exhibits thereto. But the outstanding result here achieved is the clearest reflection of Class Counsel's skill and experience.

66.     From the outset, Class Counsel made a concerted effort to obtain the maximum recovery for the Class. Class Counsel launched a thorough investigation and consulted with experts about financial features of Defendant's Annuities,

591468_1

1   alternative investments, and sales of Annuities to senior citizens.  Plaintiffs defeated

2   Defendant's motion to dismiss, were poised to defeat Defendant's motion for

3   summary judgment, conducted extensive written discovery, obtained and reviewed

4   over 450,000 pages of documents produced from Defendant and third parties, engaged

5   in extensive briefing regarding Plaintiffs' expert analyses, and dedicated nearly three

6   years to negotiating a beneficial settlement for the Class.  In addition to being

7   factually complex, this case also involved numerous complex issues relating to

8   Plaintiffs' expert analyses and damage calculation.  This was by no means a garden

9   variety consumer class action.  Had this Settlement Agreement not been achieved,

10  complex legal questions would continue to be the subject of much debate.  But

11  through their formidable efforts, Class Counsel expeditiously negotiated a Settlement

12  Agreement providing valuable, substantive benefits and immediate relief to seniors all

13  over the country who purchased Midland deferred annuities.

14                          **3.     Results Obtained**

15          67.     In light of the many uncertainties of the outcome, the Settlement

16  Agreement provides valuable relief to the Class.  Plaintiffs' valuation expert, Philip J.

17  Bieluch, an experienced and knowledgeable actuary, values the total relief afforded to

18  Class Members under the Settlement Agreement at around $79.5 million.  *See*

19  Declaration of Phillip Bieluch FSA, MAAA, FCA, Estimating Value of the Settlement

20  to Class Members in Support of Plaintiffs' Motion for an Award of Attorneys' Fees,

21  Reimbursement of Expenses, and Service Award, filed concurrently, ¶17.

22          68.     From the outset of this litigation, Class Counsel litigated this matter on a

23  contingent basis and placed their own resources at risk to do so.  All of this with

24  absolutely no guarantee of recovery.  Because counsel's fee in this matter was entirely

25  contingent, the only certainty was that there would be no fee without a successful

26  result and that such result would be realized only after significant amounts of time,

27  effort, and expense had been expended.  Absent this Settlement Agreement, there was

28  a sizeable risk that, at the end of the day, the Class Members, as well as their counsel,

would obtain no recovery at all.  Indeed, there was no guarantee that Plaintiffs would prevail at the *Daubert* hearing on Defendant's motion to exclude Plaintiffs' expert or would eventually succeed on class certification, motions for summary judgment, trial or appeal.  At no time has Defendant ever conceded liability, the appropriateness of class certification, the availability of damages, or the proper measure of damages.

69.    Despite this uncertainty, Class Counsel succeeded in reaching a favorable Settlement Agreement on behalf of the Class, in which Defendant will provide meaningful economic relief to Class Members.  Accordingly, the requested $13,970,000 in attorneys' fees and expenses is certainly justified in light of the contingent nature of this Action and the fact that Class Counsel are not recovering their full lodestar and are taking a reduction in the amount of fees and expenses reasonably and necessarily incurred in the successful prosecution of this Action.

## VII.   CLASS COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS

70.    Class Counsel incurred expenses in an aggregate amount of $1.89 million in prosecuting the litigation.  Pintar Decl., ¶5; Friedman Decl., ¶7; Fegan Decl., ¶6; Krinsk Decl., ¶6; Basser Decl., ¶6; Yanchunis Decl., ¶6; Evans Decl., ¶8.   These expenses are set forth in the Co-Counsel Declarations submitted to the Court concurrently herewith.

71.    These expenses reflect the costs of prosecuting this Action, including fees incurred on motion practice, discovery, experts, travel, computer research, photocopies, postage, filing fees, transcripts, and telephone charges.  Charges for computerized factual and legal research included online legal services such as LEXIS/Nexis and Westlaw.

72.    Class Counsel were required to travel in connection with this litigation and incurred the related costs of airfare, meals, lodging and transportation.  Since many of the witnesses were located in Iowa, the site of Midland's primary business operations, Class Counsel traveled extensively to conduct depositions.  Counsel also

591468_1

- 22 -

1   traveled to Los Angeles on numerous occasions to appear before the Court for
2   hearings and attend mediation sessions.

3        73.    All of these expenses were reasonable and necessary to the prosecution of
4   this case.

5   **VIII.  SERVICE AWARD FOR CLASS REPRESENTATIVES**

6        74.    For the reasons set forth herein and in Plaintiffs' Memorandum in
7   Support of Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and
8   Service Award, Plaintiffs respectfully request that this Court approve the payment of
9   service awards to the Class Representatives Robert Kaiser, Mary Munoz and Mary
10  Bendzak in the amount totaling $10,000.00 each and $30,000.00 cumulatively.

11       75.    The Class Representatives have spent a significant amount of time
12  litigating this Action for the benefit of absent Class Members.  Among other things,
13  the Class Representatives assisted Class Counsel in gathering facts for this case and
14  reviewing pleadings and discovery, including sitting for depositions.  The Class
15  Representatives' efforts and time should not go unrecognized.

16       I declare under penalty of perjury under the laws of the United States of
17  America that the foregoing is true and correct to the best of my knowledge and that
18  this declaration was executed this 30th day of December, 2010 at Phoenix, Arizona.

19
20                             s/ Andrew S. Friedman
                          ANDREW S. FRIEDMAN

21       I declare under penalty of perjury under the laws of the United States of
22  America that the foregoing is true and correct to the best of my knowledge and that
23  this declaration was executed this 30th day of December, 2010 at San Diego,
24  California.

25
26                             s/ Theodore J. Pintar
                          THEODORE J. PINTAR

27

28

1

**ECF CERTIFICATION**

2      The filing attorney attests that he has obtained concurrence regarding the filing

3   of this document from the signatories to this document.

4

5   Dated:  December 30, 2010          By:   s/ Theodore J. Pintar
                                              THEODORE J. PINTAR

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 24 -

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on December 30, 2010, I authorized the electronic filing of

3

the foregoing with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to the e-mail addresses denoted on the attached Electronic

5

Mail Notice List, and I hereby certify that I caused to be mailed the foregoing

6

document or paper via the United States Postal Service to the non-CM/ECF

7

participants indicated on the attached Manual Notice List.

8

I certify under penalty of perjury under the laws of the United States of America

9

that the foregoing is true and correct.  Executed on December 30, 2010.

10

11

  s/ Theodore J. Pintar

THEODORE J. PINTAR

12

13

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

14

15

16

E-mail:   TPintar@rgrdlaw.com

17

18

19

20

21

22

23

24

25

26

27

28

591468_1

# Mailing Information for a Case 2:07-ml-01825-CAS -MAN

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Fletcher C Alford**
  falford@gordonrees.com

- **Stephen R Basser**
  sbasser@barrack.com

- **Steve W Berman**
  steve@hbsslaw.com,heatherw@hbsslaw.com

- **Elaine T Byszewski**
  elaine@hbsslaw.com,JenniferB@hbsslaw.com,sharons@hbsslaw.com

- **Lance A Etcheverry**
  lance.etcheverry@skadden.com

- **Ingrid M Evans**
  ievans@waterskraus.com,jmcintosh@waterskraus.com,rredmayne@waterskraus.com

- **Thomas A Evans**
  tevans@reedsmith.com

- **Denise A Fee**
  daf@jordenusa.com

- **Elizabeth A Fegan**
  beth@hbsslaw.com,Chi_Filings@hbsslaw.com

- **Andrew S Friedman**
  afriedman@bffb.com,rcreech@bffb.com,ngerminaro@bffb.com

- **Laura L Geist**
  lgeist@gordonrees.com,dmckee@gordonrees.com

- **Terence N Hawley**
  thawley@reedsmith.com

- **William Hayden Higgins**
  whiggins@reedsmith.com,dkelley@reedsmith.com

- **Rachel L Jensen**

rjensen@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Steven M Jodlowski**
  sjodlowski@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James F Jorden**
  jfj@jordenusa.com,lw@jordenusa.com

- **Daniel J Kurowski**
  dank@hbsslaw.com,chi_filings@hbsslaw.com

- **Timothy Mahoney**
  timm@hbsslaw.com,chi_filings@hbsslaw.com

- **Thomas Jerome Nolan**
  tnolan@skadden.com,carl.roth@skadden.com

- **Thomas Joseph O'Reardon , II**
  toreardon@bholaw.com,christinas@csgrr.com

- **Linda B Oliver**
  loliver@reedsmith.com,swurth@reedsmith.com

- **Kimberly C Page**
  kpage@bffb.com

- **Robert D Phillips , Jr**
  rphillips@reedsmith.com

- **Henry Pietrkowski**
  hpietrkowski@reedsmith.com

- **Theodore J Pintar**
  tedp@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Teresa R Ponder**
  tponder@bergerkahn.com

- **James A Rolfes**
  jrolfes@reedsmith.com

- **Tamara M Rowles**
  trowles@reedsmith.com,aswenson@reedsmith.com

- **Amir Shlesinger**
  ashlesinger@reedsmith.com

- **Craig S Simon**
  csimon@bergerkahn.com

- **John J Stoia , Jr**
  johns@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Phong L Tran**
  ptran@rgrdlaw.com

- **Samuel M Ward**
  sward@barrack.com,lxlamb@barrack.com

- **Jeffrey L Williams**
  jlw@jordenusa.com,ksm@jordenusa.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for
this case (who therefore require manual noticing). You may wish to use your mouse to
select and copy this list into your word processing program in order to create notices or
labels for these recipients.

**Michael C McKay**
Bonnett Fairbourn Friedman and Balint PC
2901 North Central Avenue  Suite 1000
Phoenix, AZ 85012