ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN J. STOIA, JR. (141757)
jstoia@rgrdlaw.com
THEODORE J. PINTAR (131372)
tedp@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
PHONG L. TRAN (204961)
ptran@rgrdlaw.com
STEVEN M. JODLOWSKI (239074)
sjodlowski@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
(*Pro Hac Vice*)
afriedman@bffb.com
KIMBERLY C. PAGE
kpage@bffb.com
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602/274-1100
602/274-1199 (fax)

HAGENS BERMAN SOBOL
  SHAPIRO LLP
STEVE W. BERMAN
(*Pro Hac Vice*)
steve@hbsslaw.com
1918 8th Avenue, Suite 3300
Seattle, WA  98101
Telephone:  206/623-7292
206/623-0594 (fax)

Interim Co-Lead Class Counsel

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In re MIDLAND NATIONAL LIFE INSURANCE CO. ANNUITY SALES PRACTICES LITIGATION<br><br>This Document Relates To:<br><br>    ALL ACTIONS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | MDL No. CV-07-1825-CAS(MANx)<br><br>DECLARATION OF PHILIP J. BIELUCH, FSA, MAAA, FCA, ESTIMATING VALUE OF THE SETTLEMENT TO CLASS MEMBERS IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS<br><br>JUDGE:  Hon. Christina A. Snyder<br>DATE:   February 28, 2011<br>TIME:   11:00 a.m.<br>CTRM:   5 – Second Floor |

591303_1

1  I, Philip James Bieluch, hereby declares as follows:

2  1.  I have personal knowledge of the facts set forth in this Declaration and, if

3  called as a witness, I could and would competently testify to them.

4  2.  I have been asked by counsel for Plaintiffs to provide an expert opinion

5  regarding the estimated present value of the benefits made available to the Settlement

6  Class pursuant to the Settlement Agreement (the "Settlement") in this case. I have

7  calculated the value of the Settlement Benefits individually in order to determine the

8  estimated aggregate value of the Settlement Benefits available to the Settlement Class.

9  The capitalized terms used throughout this Declaration have the same meaning as

10  those same terms defined in the Settlement Agreement.

11  3.  My compensation is solely on an hourly basis at the rate of $525 per

12  hour.

13  4.  Based on the analysis described in the following paragraphs of this

14  Declaration, in my opinion the Settlement provides benefits to the Class members

15  having the estimated present values set forth below:

| Settlement Benefits | Value |
|---|---|
| Active – Annuitization Bonus | $41,096,101 |
| Annuitized – Enhanced Annuity Payments | $2,822,148 |
| Surrender Charge Reduction Benefits | $35,619,853 |
| **Total** | **$79,538,102** |

## I.  RELEVANT BACKGROUND

5.  My professional background as an actuary contributes to my ability to

understand and offer expert opinion relevant to the valuation of the benefits offered to

Class Members in the Settlement Agreement. Below I will focus upon only those

areas that are relevant to the matters before the court; a more detailed description of

- 1 -

591303_1

1   my qualifications in those areas as well as other background information, is set forth
2   in my *Curriculum Vitae*, which is attached as Exhibit A to this declaration.

3           (a)     Academic Background

4                   (i)     I received a Bachelor of Science degree in Computer
5   Coordinated with Mathematics from Trinity College in Hartford, Connecticut. I
6   studied actuarial science at the graduate level at Northeastern University. I obtained
7   Fellowship in the Society of Actuaries by passing their series of qualification
8   examinations in 1981 specializing in life insurance. The Society of Actuaries is an
9   education and research organization with over 15,000 members in over 30 countries.

10          (b)     Employment Background

11                  (i)     I am a self-employed consulting actuary. I have over 35
12  years of management and technical actuarial experience in various roles within the life
13  insurance industry. Prior to forming my consulting practice in September 2002, I was
14  Senior Vice President and Chief Actuary of Hampton Re of Hamilton, Bermuda.
15  Hampton Re was formed by the J.P. Morgan Private Bank as an investment product
16  for their Private Bank Clients. Prior to that, I was a consulting actuary in private
17  practice, a Vice President of Manulife Financial and a Principal of a predecessor firm
18  to Towers Watson.

19          (c)     Research Background

20                  (i)     I am a co-author of *BNA Portfolio 546-1st: Annuities, Life*
21  *Insurance and Long-Term Care Insurance Products*, Published April, 2000 and
22  *Enterprise Risk Management*, 2006 Edition published by ACTEX Study Materials.

23          (d)     Professional Background

24                  (i)     I am a Member of the American Academy of Actuaries, a
25  designation recognizing membership in another actuarial organization combined with
26  experience practicing as an actuary. Membership in the American Academy of
27  Actuaries is a necessary requirement in the statutes of the States of the United States
28  to certify reserves for an insurance company. I am a Fellow of the Conference of

- 2 -

591303_1

Consulting Actuaries recognizing my years of consulting actuarial experience combined with my satisfaction of their continuing education requirements.

(ii)    I was a member of the Section Council of the Futurism and Forecast Section of the Society of Actuaries from 2007-2010.

(iii)    I was Chairman of the Society of Actuaries Committee on Individual Annuity Experience from 1988 through 2009. I have been a Speaker at the Federal Bar Association, ALI-ABA, Society of Actuaries, Hartford Tax Institute and regional actuarial societies.

(e)    Testifying Experience

(i)    In the last 4 years I have testified as follows:

1)    By declaration in the case entitled *Negrete vs. Fidelity and Guaranty Life Insurance Company*, Docket No.: CV-05-6837-CAS-MANx in the United States District Court, Central District of California, Western Division.

2)    By declaration in the case entitled *Richard D. & Nancy J. Jackson, Petitioners, v. Commissioner of Internal Revenue, Respondent*, Docket No.: 21814-05 in the United States Tax Court on behalf of Plaintiffs.

3)    By testimony on behalf of Richard Blumenthal, Attorney General of the State of Connecticut, Intervener, *In the Matter of: The Proposed Rate Increase Application of Anthem Blue Cross and Blue Shield*, State of Connecticut Insurance Department Docket No. LH 10-159, on November 17, 2010.

## II.    RELEVANT TERMS OF THE SETTLEMENT AGREEMENT

6.    On October 12, 2010, the parties in this case filed with the Court a Settlement Agreement defining a "Class" of purchasers of Annuities listed in Exhibit B of this Declaration who were age 65 or older at the time of purchase of their Annuity during the period January 25, 2001 through June 30, 2007. The Class excludes annuities that were terminated by payment of a death benefit or other surrender without a surrender charge or that were returned and/or cancelled pursuant to any applicable "free-look" provision or were annuitized and the annuity payments

591303_1

have ceased. Certain other policies with legal releases or policies owned by those connected with Midland National were excluded.  I have summarized the benefits provided by the Settlement Agreement below. It is only a summary of the terms and the Settlement Agreement defines the actual terms of agreement.

7.    The Settlement Agreement provides benefits to Class members based upon their contract's status as of the Implementation Date following final settlement as follows:

(a)    Class members who have Active Annuities as of the Implementation Date and do not qualify for other relief shall receive an Annuitization Bonus that will increase the Accumulation Value by the amount of the applicable bonus percentage at the time of Annuitization and the increased Accumulation Value will be used to determine the Annuity Payment Amount. The Bonus Percentage will also apply to contracts terminated by death where the surviving spouse elects to annuitize the contract. The Bonus Percentage will only apply to annuitizations to a life annuity with at least 10 years certain. The applicable Annuitization Bonus will be an amount equal to a percentage of the Annuity's Accumulation Value on the date of Annuitization determined by the duration of the annuity according to the following table:

| Policy Year | Bonus Percentage |
|:---:|:---:|
| 1-4 | 0 |
| 5-9 | 3.3 |
| 10 | 4.4 |
| 11 | 5.5 |
| 12 | 6.6 |
| 13 | 7.7 |
| 14 | 8.8 |
| 15 | 9.9 |
| 16+ | 11.0 |

591303_1

(b)     Class members who have annuitized their contracts prior to the date of entry of the Final Order and Judgment shall have their annuity payments increase by 2%.

(c)     Class members who have not annuitized their contracts will have the opportunity to elect a Surrender Charge Reduction Benefit that would allow for a refund of 75% or 40% of any surrender charge previously incurred or to be incurred based upon evaluation of a claim form through a Claim Review Process.

## III.   ANALYSIS

8.      Plaintiffs' Counsel have provided me the Excel workbook containing policy-specific values for policies in the Settlement Class. This data is as of March 27, 2009 and was provided from Defense Counsel to Plaintiffs' Counsel by letter dated April 10, 2009. This data included policy number, date of policy issuance, premium invested, status of the annuity, accumulation value, cash surrender value, surrender charges and other relevant policy information. Plaintiffs' Counsel also provided me with a file that was sent to the claims administrator of the policy numbers and name and address information for policies that were in the Settlement Class. The claims administrator file contained 79,845 records of policy numbers, names and addresses of which 76,005 reflected unique policy numbers. The data provided as of March 27, 2009 contained information on all but 67 of these contracts, or 99.91% of the Class members. There will be no adjustments made for the policies not in the March 27, 2009 database due to the small impact it would have on the overall valuation.

9.      Based upon my analysis of the data provided, I have prepared the following table which summarizes information contained in the Class members' databases provided by Midland National:

591303_1

| Status | Contracts | Premium | Accumulation Value | Surrender Value |
|---|---|---|---|---|
| Active | 69,233 | $4,336,107,449 | $4,561,516,251 | $3,673,288,889 |
| Death Pending | 109 | 6,603,597 | 7,149,537 | 5,883,013 |
| Death | 1 | 15,000 | 15,352 | N/A |
| Annuitized | 1,031 | 66,502,765 | N/A | N/A |
| Inactive | 5,564 | 303,043,387 | 296,084,909 | 250,608,861 |
| **Total** | 75,938 | $4,712,272,198 | $4,864,766,049 | $3,929,780,765 |

10.    Applying sound actuarial principles and my actuarial experience, I have made reasonable and conservative assumptions concerning policyholder behavior to estimate the present value of the Settlement Benefits, as described below.

**A.    Annuitization Bonus**

11.    Under the Settlement, the Annuitization Bonus percentage is applied to the Accumulation Value resulting in a proportional increase in the annuitization payments to those policyholders who elect a life annuity with at least 10 years certain. While the policy form only allows for annuitization at a very advanced age, some as high as 115, Midland National allows, as a company practice, annuitization at the full accumulation value after the contract has been in-force for 5 years. The waiver of the surrender charge for annuitizations during the surrender charge period has not been valued as part of this settlement as it is merely an affirmation of company practice.

12.    Because the Annuitization Bonus creates a financial incentive for policyholders to annuitize their policies as a life annuity with at least 10 years certain, the number of annuitizations is likely to increase once the Settlement becomes final. There are many reasons to believe that the annuitization rate will increase in the future from the historical experience, including the following: 1) the attractiveness of the Annuitization Bonus 2) the advanced age of Class members 3) the restriction of annuitization at the accumulation value until five years has passed.

13.    The Annuitization Bonus will only be available to active contract holders who do not elect the Surrender Charge Reduction Benefit. Information will not be available as to how many contract holders will qualify for Surrender Charge Reduction Benefit until after the settlement is implemented. As discussed in paragraph 16 below, I have assumed 3.5% will qualify for each tier of Enhanced Surrender Benefit. Therefore 93% of the current active contracts will be eligible for the Annuitization Bonus.

14.    Each year, the Accumulation Value of each contract grows with interest earnings and/or decreases for partial withdrawals. Based upon the data provided on the active contracts in the database, the average growth in accumulation value is 3.31%. This growth was assumed in the valuation of the Annuitization Bonus. The same rate was used to discount the future benefits to today to determine a present value.  Discounting at the earned rate is a common actuarial practice in evaluating benefits. Further, contracts are either surrendered or a death benefit is paid. The average withdrawal rate for surrenders and deaths combined is 3.89% for the policies in the database. In the future, deaths are likely to increase as the population of annuitants covered by this settlement ages. Surrenders are likely to decrease as the contracts advance in duration. Surviving spouses are more likely to accept annuitization of the proceeds due to the Annuitization Bonuses offered by this settlement. Transfer of the Accumulation Value to a competitor's annuity is likely to decrease due to competitors limiting issues at advanced ages. A 1% annual utilization rate of the Annuitization Benefit was assumed for the next 20 years. This results in a value of $41,096,101 for this benefit.

**B.    Enhanced Annuity Payments**

15.    Based upon the data provided, total premium of $66,502,765 was the only metric provided for contracts that had already annuitized. Based upon my experience analyzing annuitized contracts, a reasonable assumption for the value of the remaining payments on these contracts is 75% of the premiums or $49,877,074 of

- 7 -

remaining value. Adjustments to this percentage would have a minimal effect on the overall value of the Settlement Agreement. Annuitizations on active contracts from the date of the data in the policyholder database of March 27, 2009 and now are assumed to be 2% of the then accumulation value in-force. The present value of the 2% annuitization benefit for contracts that have annuitized is $2,822,148.

### C.   Surrender Charge Reduction Benefits

16.   The Settlement Agreement provides for Enhanced Surrender Benefits reducing surrender charges on in-force contracts and on contracts already surrendered. Contract owners must submit claim forms that are evaluated based upon eligibility criteria. Two tiers of relief are provided, an Upper Tier that waives 75% of the surrender charges with the total benefit being subject to a limit of 4% of accumulation value in the aggregate and a Lower Tier that waives 40% of the surrender charges with the total benefit being subject to a limit of 4.5% of accumulation value in the aggregate. As of December 27, 2010, Plaintiffs' counsel has informed me that 4,400 Class members, or approximately 5.8% of Class members have submitted claim forms to the settlement administrator. With over a month for additional forms to be submitted, to calculate the worth of this benefit it is reasonable to assume 3.5% will qualify for each tier of relief. Because such utilization percentages are below the limitations on the benefit in the Settlement Agreement, they do not need to be reduced. I projected surrender charges to the Implementation Date to determine the amount of waived surrender charges on active contracts. The present value of this Claim Review Process Relief using the above assumptions is $35,619,853.

### D.   Estimated Value of Settlement

17.   Based on the assumptions and methodologies described above, in my opinion, the reasonable estimated present value of the total benefits likely to be utilized by Class members is $79,538,102, distributed among the benefit categories as follows:

591303_1

| Benefit | Value |
|---|---|
| Active – Annuitization Bonus | $41,096,101 |
| Annuitized – Enhanced Annuity Payments | $2,822,148 |
| Surrender Charge Reduction Benefits | $35,619,853 |
| **Total** | **$79,538,102** |

18.    Several additional observations bear on the foregoing estimated present values. First, the foregoing analysis is conducted from the perspective of the Class members. Substantially different values may be applicable if the Settlement is evaluated based on the estimated reserve costs to Midland National. Second, while it is my opinion that the foregoing values provide a reasonable estimate of the present value of the Settlement benefits likely to be realized by Class members, the actual value of those benefits will vary based on the actual utilization of the Settlement benefits by Class members over the lifetime of the business.

19.    I, Philip James Bieluch, am a member of the American Academy of Actuaries and I meet the Qualification Standards of the American Academy of Actuaries to render the actuarial opinion contained herein.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on December 30, 2010.

_____
PHILIP J. BIELUCH, FSA, MAAA, FCA

591303_1

1

<u>CERTIFICATE OF SERVICE</u>

2       I hereby certify that on December 30, 2010, I authorized the electronic filing of

3 the foregoing with the Clerk of the Court using the CM/ECF system which will send

4 notification of such filing to the e-mail addresses denoted on the attached Electronic

5 Mail Notice List, and I hereby certify that I caused to be mailed the foregoing

6 document or paper via the United States Postal Service to the non-CM/ECF

7 participants indicated on the attached Manual Notice List.

8       I certify under penalty of perjury under the laws of the United States of America

9 that the foregoing is true and correct.  Executed on December 30, 2010.

10

11                      s/ Theodore J. Pintar
                     THEODORE J. PINTAR

12                    ROBBINS GELLER RUDMAN

13                      & DOWD LLP
                   655 West Broadway, Suite 1900

14                    San Diego, CA  92101-3301
                   Telephone:  619/231-1058

15                    619/231-7423 (fax)

16                    E-mail:  TPintar@rgrdlaw.com

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 2:07-ml-01825-CAS -MAN

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Fletcher C Alford**
  falford@gordonrees.com

- **Stephen R Basser**
  sbasser@barrack.com

- **Steve W Berman**
  steve@hbsslaw.com,heatherw@hbsslaw.com

- **Elaine T Byszewski**
  elaine@hbsslaw.com,JenniferB@hbsslaw.com,sharons@hbsslaw.com

- **Lance A Etcheverry**
  lance.etcheverry@skadden.com

- **Ingrid M Evans**
  ievans@waterskraus.com,jmcintosh@waterskraus.com,rredmayne@waterskraus.com

- **Thomas A Evans**
  tevans@reedsmith.com

- **Denise A Fee**
  daf@jordenusa.com

- **Elizabeth A Fegan**
  beth@hbsslaw.com,Chi_Filings@hbsslaw.com

- **Andrew S Friedman**
  afriedman@bffb.com,rcreech@bffb.com,ngerminaro@bffb.com

- **Laura L Geist**
  lgeist@gordonrees.com,dmckee@gordonrees.com

- **Terence N Hawley**
  thawley@reedsmith.com

- **William Hayden Higgins**
  whiggins@reedsmith.com,dkelley@reedsmith.com

- **Rachel L Jensen**

rjensen@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Steven M Jodlowski**
  sjodlowski@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James F Jorden**
  jfj@jordenusa.com,lw@jordenusa.com

- **Daniel J Kurowski**
  dank@hbsslaw.com,chi_filings@hbsslaw.com

- **Timothy Mahoney**
  timm@hbsslaw.com,chi_filings@hbsslaw.com

- **Thomas Jerome Nolan**
  tnolan@skadden.com,carl.roth@skadden.com

- **Thomas Joseph O'Reardon , II**
  toreardon@bholaw.com,christinas@csgrr.com

- **Linda B Oliver**
  loliver@reedsmith.com,swurth@reedsmith.com

- **Kimberly C Page**
  kpage@bffb.com

- **Robert D Phillips , Jr**
  rphillips@reedsmith.com

- **Henry Pietrkowski**
  hpietrkowski@reedsmith.com

- **Theodore J Pintar**
  tedp@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Teresa R Ponder**
  tponder@bergerkahn.com

- **James A Rolfes**
  jrolfes@reedsmith.com

- **Tamara M Rowles**
  trowles@reedsmith.com,aswenson@reedsmith.com

- **Amir Shlesinger**
  ashlesinger@reedsmith.com

- **Craig S Simon**
  csimon@bergerkahn.com

- **John J Stoia , Jr**
  johns@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Phong L Tran**
  ptran@rgrdlaw.com

- **Samuel M Ward**
  sward@barrack.com,lxlamb@barrack.com

- **Jeffrey L Williams**
  jlw@jordenusa.com,ksm@jordenusa.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Michael C McKay**
Bonnett Fairbourn Friedman and Balint PC
2901 North Central Avenue  Suite 1000
Phoenix, AZ 85012