1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  JOHN J. STOIA, JR. (141757)
   jstoia@rgrdlaw.com
3  THEODORE J. PINTAR (131372)
   tedp@rgrdlaw.com
4  RACHEL L. JENSEN (211456)
   rjensen@rgrdlaw.com
5  PHONG L. TRAN (204961)
   ptran@rgrdlaw.com
6  STEVEN M. JODLOWSKI (239074)
   sjodlowski@rgrdlaw.com
7  655 West Broadway, Suite 1900
   San Diego, CA  92101
8  Telephone:  619/231-1058
   619/231-7423 (fax)
9
   BONNETT, FAIRBOURN, FRIEDMAN          HAGENS BERMAN SOBOL
10    & BALINT, P.C.                         SHAPIRO LLP
   ANDREW S. FRIEDMAN                    STEVE W. BERMAN
11 (*Pro Hac Vice*)                      (*Pro Hac Vice*)
   afriedman@bffb.com                    steve@hbsslaw.com
12 KIMBERLY C. PAGE                      1918 8th Avenue, Suite 3300
   kpage@bffb.com                        Seattle, WA  98101
13 2901 N. Central Avenue, Suite 1000    Telephone:  206/623-7292
   Phoenix, AZ  85012                    206/623-0594 (fax)
14 Telephone:  602/274-1100
   602/274-1199 (fax)
15
   Interim Co-Lead Class Counsel
16
   [Additional counsel appear on signature page.]
17
                    UNITED STATES DISTRICT COURT
18
                   CENTRAL DISTRICT OF CALIFORNIA
19
                          WESTERN DIVISION
20

| | |
|---|---|
| In re MIDLAND NATIONAL LIFE INSURANCE CO. ANNUITY SALES PRACTICES LITIGATION | MDL No. CV-07-1825-CAS(MANx) |
| This Document Relates To: | MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT |
| ALL ACTIONS. | JUDGE:  Hon. Christina A. Snyder<br>DATE:   February 28, 2011<br>TIME:   11:00 A.M.<br>CTRM:   5 – 2nd Floor |

21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   SUMMARY OF THE LITIGATION .................................................. 2

III.  THE PROPOSED SETTLEMENT CLASS SATISFIES THE
      REQUIREMENTS FOR CERTIFYING A SETTLEMENT CLASS ................... 2

      A.    Definition of the Proposed Settlement Class ................................. 3

      B.    The Settlement Class Satisfies the Requirements for Certification of
            a Rule 23(b)(3) Settlement Class ................................................. 3

            1.    The Settlement Class Satisfies Rule 23(a) ........................ 3

            2.    The Settlement Class Satisfies Rule 23(b)(3) ................... 5

IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
      ADEQUATE AND SHOULD BE FINALLY APPROVED ................................ 6

      A.    Applicable Legal Standard for Final Approval ............................. 6

      B.    Economic Value of the Settlement to Class Members ..................... 7

            1.    Annuitization Bonus ......................................................... 8

            2.    Enhanced Annuity Payments ............................................ 9

            3.    Surrender Benefit Relief Through the Claim Review Process ......... 9

            4.    Other Relief ...................................................................... 10

      C.    Under Ninth Circuit Law, the Settlement Warrants Final Approval ......... 11

            1.    The Strength of Plaintiffs' Case/Risks of Further
                  Litigation/Risks of Maintaining Class Action Status ...................... 11

            2.    The Proposed Settlement Has "No Obvious Deficiencies" ............. 11

            3.    The Proposed Relief Does Not "Grant Preferential Treatment
                  to Class Representatives" ................................................. 11

            4.    The Proposed Relief Is Within the "Range of Possible
                  Approval" .......................................................................... 12

            5.    Amount Offered in Settlement ........................................... 14

            6.    The Settlement Is the Product of Prolonged Litigation and
                  Serious, Informed, Non-Collusive Negotiations ............................ 14

            7.    The Reaction of the Class has been Overwhelmingly Positive
                  and Strongly Supports Approval ....................................... 15

i

V.    THE IMPLEMENTED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE TO THE SETTLEMENT CLASS ......................................................... 23

    A.    The Notice Program Provided the Best Practicable Notice, Including Direct Notice, to All Identifiable Settlement Class Members ................... 24

    B.    The Notice Program Adequately Informed Settlement Class Members of the Settlement ........................................................ 25

VI.   CONCLUSION ........................................................................... 25

ii

# TABLE OF AUTHORITIES

**CASES**

*Adams v. Inter-Con Sec. Sys., Inc.*,
  2007 WL 3225466 (N.D. Cal. 2007)........................................ 15

*Armstrong v. Davis,*
  275 F.3d 849 (9th Cir. 2001) ............................................. 4

*Chisolm v. TranSouth Fin. Corp.*,
  194 F.R.D. 538 (E.D. Va. 2000) .......................................... 6

*Churchill Village, L.L.C. v. General Elec.*,
  361 F.3d 556 (9th Cir. 2004)........................................ 3,7,15,25

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)........................................... 2, 7

*Dewey v. Volkswagon,*
  728 F. Supp.2d 546 (D.N.J. 2010) ....................................... 19

*General Tel. Co. v. Falcon,*
  457 U.S. 147 (1982) ..................................................... 4

*GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .............................................. 7

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)....................................... passim

*In re National Western Life Ins. Deferred Annuities Litig.*,
  268 F.R.D. 652 (S.D. Cal. 2010)........................................ 5-6

*Klein v. O'Neal, Inc.*,
  705 F. Supp.2d 632 (N.D. Tex. 2010) .................................... 18

*Lazy Oil, Inc. v. Witco Corp.*,
  95 F. Supp.2d 290 (W.D. Pa. 1997) .................................... 17,18

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) .................................................... 24

*National Rural Telecomm. Coop. v. DIRECTTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...................................... 7, 14

*Negrete v. Allianz Life Ins. Co.*,
  238 F.R.D. 482 (C.D. Cal. 2006) ........................................ 5

*Negrete v. Fidelity and Guarantee Life Insurance Company,*
  No. 05-6837-CAS (MANx) (C.D. Cal.)............................... 6, 17, 18, 21

*Newman v. Stein,*
  464 F.2d 689 (2d Cir. 1972) .......................................... 18-19

i

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982)...................................................................... 2,6

*Rodriquez v. West Publ'g Co.,*
    563 F.3d 948 (9th Cir. 2009)...................................................................... 2, 15

*Strube v. Am. Equity Inv. Life Ins. Co.,*
    226 F.R.D. 688 (M.D. Fla. 2005)............................................................... 13

*Zhu v. Fujitsu Group 401(k) Plan,*
    2004 WL 3252573 (N.D. Cal. 2004)........................................................... 3

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001)..................................................................... 6

**RULES**

Federal Rules of Civil Procedure Rule 23................................................... passim

**TREATISES**

4 Newberg on Class Actions, §§ 11.55 (4th ed. 2010)...............................20

Plaintiffs Mary P. Munoz, Robert D. Kaiser, Nancy Bendzak as attorney-in-fact for Mary Bendzak and Mary Bendzak, individually, on behalf of the Class defined herein, (collectively "Plaintiffs"), by and through their attorneys, respectfully submit this memorandum in support of their motion for final approval of the parties' Stipulation, dated October 6, 2010 ("Agreement" or "Settlement Agreement").[1]

## I.   INTRODUCTION

The proposed Settlement achieves an excellent result for more than 70,000 senior citizens (or their beneficiaries) nationwide who are included in the proposed Settlement Class.  Indeed, the relief made available to Class Members through the proposed Settlement is valued at approximately $80 million.  It includes, among other things, an annuitization bonus, enhanced annuity payments and surrender benefit relief for those who qualify through the Claim Review Process.

The parties reached this Settlement only after extensive, hard-fought, arm's length negotiations, which spanned almost two years and engaged the assistance of two well-respected mediators: initially Justice Edward Wallin (Ret.) of JAMS and thereafter, Judge Dickran Tevrizian (Ret.) of JAMS.  The Agreement fully, fairly, and finally resolves the claims of plaintiff and other Settlement Class Members and will eliminate the substantial expense, risks and uncertainties associated with continued litigation.   The proposed Settlement action compares very favorably with class settlements approved in similar cases involving the sale of deferred annuities, appropriately reflects the strengths and weaknesses associated with Plaintiffs' claims and provides finality and certainty to Midland and all Class Members.

Consistent with relevant Ninth Circuit authority, the parties' Agreement should be reviewed pursuant to Federal Rule of Civil Procedure 23(e) under "the universally applied standard [of] whether the settlement is fundamentally fair, adequate, and reasonable."

---

[1]     The terms of the Settlement Agreement are incorporated by reference herein as if specifically fully set forth below.

1

1  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Courts should

2  examine "the settlement taken as a whole, rather than the individual component parts … for

3  overall fairness." *Rodriquez v. West Publ'g Co.*, 563 F.3d 948, 964 (9th Cir. 2009) (quoting

4  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

5       As discussed below, the substantial and valuable economic relief attained as a result

6  of this Settlement, as well as the complete satisfaction of Rule 23 requirements, mandates a

7  finding that the Settlement is fair, reasonable and adequate. Further, the proposed Settlement

8  Class meets the requirements for certification of a settlement class; and the Notice Program

9  has satisfied Rule 23(c)(2)(B) and (e)(B), and has provided the best notice practicable under

10  the circumstances. Plaintiffs therefore move this Court for a final order and judgment:

11  (1) certifying the Settlement Class, and (2) granting final approval of the Settlement

12  Agreement.

13  **II.     SUMMARY OF THE LITIGATION**

14       For a history of the litigation and summary of the extensive negotiations see

15  Plaintiffs' Memorandum in Support of Motion for Award of Attorneys' Fees,

16  Reimbursement of Expenses, and Service Award at pages 3-5. *See also* Joint Decl., ¶¶5-36.[2]

17  **III.    THE PROPOSED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS FOR CERTIFYING A SETTLEMENT CLASS**

18
19       Strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  In its Preliminary Approval Order, ("Order")

20  of October 25, 2010, the Court provisionally certified the Settlement Class and determined it

21  to be "fair, reasonable, adequate and within the range of possible approval."  Order at 6 and

22  7. The Court further determined that mailing the Class Notice package to the last known

23  address of the Class Members "constitutes the best notice practicable under the

24  circumstances," and that the notice provisions of the Settlement Agreement satisfy the

25
26  [2]     Joint Declaration of Andrew S. Friedman and Theodore J. Pintar in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards, filed December 30, 2010 ("Joint Declaration" or "Joint Decl.")

27

28

requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution and its Amendments." Order at 8(d). The Court also found that Plaintiffs may serve as Class Representative, and appointed Interim Co-Lead Counsel among the firms designated to serve as Class Counsel pursuant to Rule 23(g)(1). Order at 3.

### A.   Definition of the Proposed Settlement Class

Plaintiffs request that the Court, pursuant to Federal Rule of Civil Procedure 23(b)(3), finally certify, the Settlement Class defined in the Settlement Agreement at §II.A.18.

### B.   The Settlement Class Satisfies the Requirements for Certification of a Rule 23(b)(3) Settlement Class

Certifying a settlement class is part of the approval of class action settlements. *Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 556, 572 (9th Cir. 2004). As explained below, the Settlement Class fully satisfies the requirements of certification under Federal Rules 23(a) and (b)(3).

### 1.   The Settlement Class Satisfies Rule 23(a)

Federal Rule 23(a) is made up of four subparts, all of which are satisfied here. First, the Settlement Class satisfies numerosity. While the precise number of Settlement Class Members is unknown, it unquestionably includes over 70,000 senior citizens. Joint Decl., ¶4. This number is more than sufficient to satisfy numerosity under Rule 23(a)(1). *See, e.g., Zhu v. Fujitsu Group 401(k) Plan*, 2004 WL 3252573, at *5 (N.D. Cal. 2004) (class of approximately 139 members sufficient to satisfy numerosity requirement).

Second, Rule 23(a)(2)'s requirement of commonality is satisfied. As the Ninth Circuit held in *Hanlon*: "The existence of shared legal issues with divergent factual predicate is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." 150 F.3d at 1019. Here, Plaintiffs' claims are the same as Class Members as they allege that Defendants engaged in a scheme and common course of conduct to market and sell its Annuities to senior citizens – alleged to be high cost, illiquid and opaque investment products – using standardized written sales materials that plaintiffs allege

1    misrepresented or otherwise failed to disclose certain material facts.   Accordingly,

2    commonality is satisfied here.

3         Third, the related requirement of typicality under Rule 23(a)(3) is also

4    satisfied."[T]ypicality and commonality are similar and tend to merge," yet "each factor

5    serves a discrete purpose."  *General Tel. Co. v. Falcon,* 457 U.S. 147, 153 n.13 (1982).

6    Typicality "'is satisfied when each class member's claim arises from the same course of

7    events, and each class member makes similar legal arguments to prove the defendant's

8    liability.'"  *Armstrong v. Davis,* 275 F.3d 849, 868 (9th Cir. 2001) (citation omitted).  The

9    claims of the class representative need not be substantially identical to the absent class

10   members; it is enough if "they are reasonably coextensive."  *Hanlon,* 150 F.3d at 1020.

11   Here, Plaintiffs and Class Members allege precisely the same targeted practices and claims,

12   all arising from the same alleged overarching scheme and common course of conduct.

13   Typicality is satisfied.

14        Finally, the adequacy requirement under Rule 23(a)(4) is satisfied.  To determine

15   adequacy, the Ninth Circuit looks to: "(1) the absence of any conflict between the named

16   plaintiffs and class counsel, on one hand, and the class members, on the other hand; and (2)

17   whether the named plaintiffs and class counsel will vigorously prosecute the action on behalf

18   of the class."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).  "To

19   satisfy constitutional due process concerns, absent class members must be afforded adequate

20   representation before entry of a judgment which binds them."  *Hanlon*, 150 F.3d at 1020.

21   Here, there is no conflict of interest between Plaintiff and Class Members.  Each Class

22   Member will benefit identically or similarly, according to their situation and circumstances,

23   as a result of this Settlement.

24        Moreover, the Court has directly observed Class Counsel's vigorous prosecution of

25   Plaintiffs' claims in motion practice both on procedural issues and on the merits.  *See*

26   *Hanlon*, 150 F.3d at 1022.  In addition, Class Counsel's extensive investigation, discovery

27   efforts, and successful negotiation of this Settlement are detailed in the Joint Declaration.

28   *See* Joint Decl., ¶¶19-24.  Counsel have proven to be capable, efficient and expeditious. *See*

4

1   *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal 2002) (court evaluating

2   adequacy of counsel's representation may examine "the attorneys' professional

3   qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated

4   performance in the suit itself.").

5   **2.      The Settlement Class Satisfies Rule 23(b)(3)**

6           In addition to meeting the requirement under Rule 23(a), the Settlement Class satisfies

7   the predominance and superiority requirements of Rule 23(b)(3). *Hanlon*, 150 F.3d at 1022.

8   "To qualify for certification under [Rule 23(b)(3)], a class must satisfy two conditions in

9   addition to the Rule 23(a) prerequisites: common questions must 'predominate over any

10  questions affecting only individual members,' and class resolution must be 'superior to other

11  available methods for the fair and efficient adjudication of the controversy.'" *Id* (citation

12  omitted). Rule 23(b)(3) looks to "whether proposed classes are sufficiently cohesive to

13  warrant adjudication by representation." *Id.* (citation omitted).

14          In approving a nationwide settlement class, the Ninth Circuit stated in *Hanlon* that

15  certification under Rule 23(b)(3) "is appropriate 'whenever the actual interests of the parties

16  can be served by best settling their differences in a single action.'" *Hanlon*, 150 F.3d at 1022

17  (citation omitted). "[A]lthough some class members may possess slightly differing remedies

18  based on state statute or common law, the actions asserted by the class representatives are

19  not sufficiently anomalous to deny class certification." *Id.* "[T]he idiosyncratic differences

20  between state consumer protection laws are not sufficiently substantive to predominate over

21  the shared claims." *Id.*

22          Here, a common nucleus of operative facts and shared legal claims dominate the

23  litigation. This case falls squarely within the category of cases traditionally found suitable

24  for class certification because the Complaint alleges a centrally-orchestrated fraudulent

25  scheme to sell deferred annuities to seniors through the use of uniformly misleading sales

26  materials. *See Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 496 (C.D. Cal. 2006)

27  (certifying annuity class action based on misrepresentations in company's standardized sales

28  materials); *In re National Western Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652 (S.D.

5

Cal. 2010) (same); s*ee also Negrete v. Fidelity and Guarantee Life Insurance Company*, No. 05-6837-CAS (MANx) (C.D. Cal.), Final Approval Order ("approving nationwide settlement class respecting claims arising from the sale of fixed deferred annuitants with similar allegations). Schemes predicated on centrally orchestrated frauds, "especially frauds predicated on documents," are traditionally found "suitable for class action treatment." *Chisolm v. TranSouth Fin. Corp*., 194 F.R.D. 538, 564 (E.D. Va. 2000).

With respect to superiority factors under Rule 23(b)(3), the Court is "to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1190 (9th Cir. 2001) (citation omitted). The resolution of Plaintiffs' class claims here is superior to "other available methods of fair an efficient adjudication of the controversy." *Hanlon*, 150 F.3d at 1023. As in *Hanlon*, it is neither economically feasible nor judicially efficient for over 70,000 senior citizens to pursue their claims against Defendant on an individual basis.

Manageability, even if problematic in a litigation context, is not an issue in the context of a class settlement. The Supreme Court has explained that a settlement class need not be manageable as a trial class action in order to be certified as a settlement-only class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). Accordingly, this Court should finally certify the Settlement Class and confirm its decision to appoint Plaintiffs as Class Representatives and Interim Co-Lead Counsel as Class Counsel for the Settlement Class.

## IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED

### A. Applicable Legal Standard for Final Approval

Rule 23(e) provides that the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Pro. 23(e). The Court may approve a settlement to the extent that it binds class members, "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. Pro. 23(e)(2); s*ee also Officers for Justice*, 688 F.2d at 625 (a class action settlement should be

6

1   reviewed under "the universally applied standard [of] whether the settlement is
2   fundamentally fair, adequate, and reasonable.").

3       While the approval of the proposed Settlement is committed to the sound discretion of
4   the Court, settlements of complex class actions prior to trial are strongly favored. *City of*
5   *Seattle*, 955 F.2d at 1276. Settlements are particularly favored "in class actions and other
6   complex cases where substantial judicial resources can be conserved by avoiding formal
7   Litigation." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d
8   Cir. 1995). As explained in *Hanlon*:

9           Assessing a settlement proposal requires the district court to balance a number
10          of factors: the strength of the plaintiffs' case; the risk, expense, complexity,
11          and likely duration of further litigation; the risk of maintaining class action
12          status throughout the trial; the amount offered in settlement; the extent of
13          discovery and the stage of the proceedings; the experience and views of
14          counsel; the presence of a governmental participant; and the reaction of the
15          class members to the proposed settlement.

16  *Hanlon*, 150 F.3d at 1026. The Ninth Circuit consistently has applied this non-exclusive list
17  of eight factors to assess whether, taken as a whole, the settlement is fair. *See, e.g., Churchill*
18  *Village, LLC*, 361 F.3d at 575-76.

19      Additionally, where, as here, the proposed settlement has been reached after discovery
20  and numerous arms' length negotiations conducted by capable counsel, and with the
21  assistance of a well-respected mediator, it is "presumed fair." *National Rural Telecomm.*
22  *Coop. v. DIRECTTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004). As detailed below, the
23  Settlement terms are fair, reasonable and adequate in accordance with Rule 23(e).

24      **B.    Economic Value of the Settlement to Class Members**

25      The proposed Settlement provides each member of the Settlement Class, who choose
26  not to be excluded, valuable economic benefits in the form of either an Annuitization Bonus,
27  Enhanced Annuity Payments, or Surrender Charge Reduction Benefits for those electing to

28

participate in the Claim Review Process ("CRP").  The valuable economic benefits and relief conferred upon Class Members by the Settlement are summarized below.

### 1.    Annuitization Bonus

Class Members with an Active Deferred Annuity (*i.e.*, an Annuity that has not been Annuitized, surrendered, returned under a "free-look" provision, or otherwise been rescinded, or for which a death benefit has become payable) and who do not seek or otherwise qualify for Surrender Charge Reduction Benefits shall be entitled to receive an Annuitization Bonus as to that Annuity.  *Id.* at §IV.A-B.  The Annuitization Bonus, which directly enhances the economic value of Defendant's Annuities, effectively addresses Plaintiffs' concerns about the high, undisclosed costs embedded in those Annuities.

For each Active Deferred Annuity receiving the Annuitization Bonus who Annuitizes over a Qualifying Period (meaning, generally, that payments will continue until the later of the annuitant's death or the expiration of ten years), Midland will increase the Accumulation Value of the Active Deferred Annuity (which shall include any increase in Accumulation Value provided by the terms of the Annuity in the event the Annuity is Annuitized at such time) by the amount of the applicable bonus, calculated at the time of Annuitization.  *Id.* at §IV.B.2.  The increased Accumulation Value amount and the rates provided under the corresponding settlement option in the Annuity will be used to determine the Annuity Payment amount.  *Id.*  The Annuitization Bonus will be an amount equal to a percentage of the Annuity's Accumulation Value on the date of Annuitization, and the applicable percentage will be determined by the duration of the Annuity in question, as set forth in the following table:

| Policy Year | Bonus Percentage |
|---|---|
| 1-4 | 0 |
| 5-9 | 3.3 |
| 10 | 4.4 |
| 11 | 5.5 |
| 12 | 6.6 |
| 13 | 7.7 |
| 14 | 8.8 |
| 15 | 9.9 |
| 16+ | 11.0 |

When an Annuity that did not qualify for Surrender Charge Reduction Benefits is terminated by death after the date of entry of the Final Order and Judgment, and the beneficiary or surviving spouse elects to receive the death benefit in the form of periodic payments over a Qualifying Period, Midland will apply the applicable Annuitization Bonus to determine the amount of each periodic payment to the beneficiary or surviving spouse occurring after the Implementation Date. *Id.* at §IV.B.5. Annuities that are continued by the surviving spouse of the Owner of an Annuity after a death benefit becomes payable after the Eligibility Date are also eligible to receive the applicable Annuitization Bonus if the Annuity is Annuitized over a Qualifying Period to the same extent as the Owner would have been. *Id.*

### 2.  Enhanced Annuity Payments

Class Members who have already Annuitized their Annuity on or prior to the date of entry of the Final Order and Judgment shall receive a 2% increase, relative to the amount scheduled to be paid in the absence of this Settlement, to each remaining Annuity Payment made to them after the Implementation Date. *Id.* at §IV.C. Class Members receiving Enhanced Annuity Payments are not eligible to receive Surrender Charge Reduction Benefits nor the Annuitization Bonus. *Id.* at §IV.A.

### 3.  Surrender Benefit Relief Through the Claim Review Process

Class Members who have not already Annuitized their Annuities as of the Eligibility Date may file Claims which, if approved, will provide reductions in past or future Surrender

1  Charges for their Annuities.  *Id.* at §V.A.1.  These reductions in Surrender Charges are
2  referred to as Surrender Charge Reduction Benefits.  *Id.*

3      In order to obtain Surrender Charge Reduction Benefits, a Class Member must timely
4  complete and submit to the Administrator a Claim Form (included in the Class Notice
5  Package) for the Annuity that is the subject of the Claim.  *Id.* at §V.B and D.  Based on the
6  information contained in or submitted with the Claim Form, the Administrator will
7  determine the Surrender Charge Reduction Benefits, if any, for which each Claimant
8  qualifies.  *Id.* at §V.C.  Surrender charge reductions may be at either two levels, referred to
9  as Upper Tier Benefits and Lower Tier Benefits.  *Id.* at §V.A.1.

10      Each Claimant must provide, under penalty of perjury, certain information relating to
11  facts relating the misrepresentations at the time of sale, the reason necessitating the
12  surrender, and net worth.  This information is necessary for the Settlement Administrator to
13  effectuate the allocation plan under the proposed Settlement. *Id.* at §V.D.3.

14      If the Administrator determines that the information set forth in a Claim Form
15  establishes that either of the circumstances described in subparts (a) or (b) exist, the Claimant
16  shall be entitled to receive Upper Tier Benefits.  *Id.* at §V.D.6.  If the information set forth in
17  the Claim Form establishes that either of the circumstances described in subparts (c) or (d)
18  exist, but none of the circumstances described in subparts (a) or (b) exist, the Claimant shall be
19  entitled to receive Lower Tier Benefits.  *Id.*  Subject to certain limitations specified in the
20  Agreement, Claimants who qualify for Upper Tier Benefits will receive a refund of up to 75%
21  of Surrender Charges incurred prior to the Implementation Date, or a reduction of up to 75% in
22  any Surrender Charge incurred on or after the Implementation Date.  *Id.* at V.A.1.  Likewise,
23  Claimants who qualify for Lower Tier Benefits will receive a refund of up to 40% of Surrender
24  Charges incurred prior to the Implementation Date, or a reduction of up to 40% in any
25  Surrender Charge incurred on or after the Implementation Date.  *Id.*

26      **4.**    **Other Relief**

27      In addition, Midland will also pay each plaintiff – Munoz, Kaiser and Bendzak –
28  $10,000 apiece (for a total of $30,000), as a service award for participation as a Class

Representative.[3]  Settlement Agreement, §1XA.  This service award is in addition to any benefits Plaintiffs are entitled to receive as a Class Member.  Defendant will also pay Plaintiffs' counsel $13,970,000 in attorneys' fees and expenses.  11.A.20: X.B.1.  This is a substantial benefit to the Class as neither the service award nor the attorneys' fees and expense payment will in any way reduce the relief provided to the Settlement Class.

### C.   Under Ninth Circuit Law, the Settlement Warrants Final Approval

By applying the above-enumerated factors set forth by the Ninth Circuit, the proposed Settlement should be finally approved.

#### 1.   The Strength of Plaintiffs' Case/Risks of Further Litigation/Risks of Maintaining Class Action Status

Although Plaintiffs believe the Action warrants certification as a litigation class and presents a strong case for liability, Midland vigorously contested certification and denies any wrongdoing or liability.  Midland also contends that Plaintiffs may suffer failures of proof at trial, including inability to prove certain elements of the claims on a classwide basis.  Order at 2.  Plaintiffs thus recognize the risks and uncertainty if the action proceeds to trial.  Joint Decl., ¶¶50-52.

#### 2.   The Proposed Settlement Has "No Obvious Deficiencies"

The proposed Settlement "has no obvious deficiencies."  *Young*, 2006 WL 3050861, at *5.  To the contrary, as described in detail below, the Settlement favorably compares to other settlements of similar claims, and is structured to address the alleged shortcomings in Defendant's annuities, providing valuable economic benefits, tailored to the circumstances of Class Members and Defendant's challenged conduct.  Joint Decl., ¶53.

#### 3.   The Proposed Relief Does Not "Grant Preferential Treatment to Class Representatives"

Plaintiffs do not receive any unduly preferential treatment under the proposed Settlement.  The service awards of up to $10,000 for Plaintiffs Mary P. Munoz, Robert D.

---

[3]     As the Ninth Circuit recently observed in *Rodriguez*:  "Incentive awards are fairly typical in class action cases."  563 F.3d at 958.

11

1    Kaiser, and Mary Bendzak compensate them for the time and effort they devoted to

2    prosecuting the common claims.  This award is not excessive and does not amount to

3    preferential treatement.  See, e.g., In re CV Therapeutics, No. C-03-3709 (SI), 2007 WL

4    1033478, at *3 (N.D. Cal. Apr. 4, 2007) (awarding $26,000 to lead plaintiff).

5          Nor does the proposed Settlement provide excessive compensation to Plaintiffs'

6    counsel.  The proposed Settlement contemplates a fee and expense award not to exceed

7    $13,970,000.  This amount is *less* than Plaintiffs' counsel's lodestar and expenses.  *See* Joint

8    Decl., ¶59 and supporting declarations of Class Counsel.   In addition, it represents

9    approximately 17.5% of the $79.5 million Settlement value, which is substantially less than

10   the Ninth Circuit benchmark of 25%.  Indeed, Plaintiffs' counsel's fee under the Settlement

11   is especially modest in that it encompasses all of counsel's future, post-approval work

12   necessary to effectuate the Settlement, such as monitoring claims administration, responding

13   to Class Member inquiries and litigating any appeals.  As demonstrated in Plaintiffs' motion

14   for approval of attorneys' fees and costs and supporting materials, filed December 31, 2011

15   in compliance with Rule 23(h), Plaintiffs' requested fee is appropriate and reasonable in light

16   of the time, effort and resources expended to resolve this Action and the substantial

17   settlement benefits that Plaintiffs' counsel will have achieved on behalf of Class Members.

18   Joint Decl., ¶¶58-73.

19          **4.      The Proposed Relief Is Within the "Range of Possible Approval"**

20          The proposed Settlement also falls well within the "range of possible approval," as it

21   provides carefully-tailored economic benefits to all Class Members, without the risk and

22   delays of continued litigation, trial and appeal.  The relief offered under the proposed

23   Settlement specifically addresses Midland's alleged deceptive sales and marketing practices,

24   including its alleged failure to disclose certain costs of its annuities and its use of a product

25   spread to recover those costs.  The proposed Settlement also addresses the surrender

26   penalties and illiquidity allegedly associated with the annuities.  Settlement Class Members

27   will be able to receive settlement relief through the Annuitization Bonus, Enhanced Annuity

28   Payments, and Surrender Charge Reduction Benefits.

1        The proposed Settlement compares favorably with class settlements approved in

2  similar cases alleging misrepresentations in connection with the marketing and sale of

3  deferred annuity products, including the settlement approved by this Court in *Negrete v.*

4  *Fidelity and Guarantee Life Insurance Company*, No. 05-6837-CAS (MANx) (C.D. Cal.),

5  Final Approval Order at 2.  Indeed, the Annuitization Bonus, Enhanced Annuity Payments

6  and Surrender Charge Reduction Benefits offered under the proposed Settlement are more

7  beneficial to Class Members than the corresponding relief afforded under other comparable

8  settlements.  *See, e.g.*, *In re Am. Investors Life Ins. Co. Annuity Mktg. and Sales Practices*

9  *Litig.*, 263 F.R.D. 226 (E.D. Pa. 2009) (automatic annuitization bonus of .4% for contracts in

10  deferral with possible additional bonus up to 2% as part of claims process, with no waiver of

11  penalties for surrendered contracts); *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688

12  (M.D. Fla. 2005) (2% annuitization bonus for annuities with a minimum 10 year payout

13  required and unspecified relief as part of claims process).

14        Importantly, the proposed Settlement recognizes the inherent risks, costs and delay

15  associated with the continued prosecution of this complex class action lawsuit.  If this

16  litigation were to proceed to trial, there is no guarantee against a defense verdict.

17  Furthermore, even if a judgment were obtained against Midland at trial, the recovery might

18  be of no greater value to the Settlement Class and indeed might be substantially less valuable

19  than the proposed Settlement.  Joint Decl., ¶51.  And even if Plaintiffs ultimately prevailed, it

20  could be years before Class Members would receive any recovery, given the likelihood of

21  appeals.  Moreover, in negotiating the proposed Settlement, Plaintiffs were mindful of

22  Midland's obligations to existing policyholders.  The proposed Settlement is the best vehicle

23  to assure that Class Members receive the relief with respect to the challenged conduct in a

24  prompt and efficient fashion.  *Id*. at ¶52.

25        Indeed, the price of delay is particularly high in this litigation because it was brought

26  on behalf of elderly consumers who may not be able to wait years for relief.  Thus, although

27  the Parties have already engaged in protracted litigation, continuation of the litigation would

28  be extremely expensive and risky, and in the absence of the proposed Settlement, senior

1   annuity purchasers would have to wait substantially longer before they obtain any relief,

2   even assuming Plaintiffs successfully overcame every obstacle to relief. *Id.* at ¶¶ 50-52.

3        Without question, the Parties worked long and hard to achieve a comprehensive

4   settlement that provides valuable and far-reaching benefits for the Settlement Class. *Id.* at ¶¶

5   37, 52, * 55-56. There is no reason to doubt the fairness, reasonableness and adequacy of the

6   proposed Settlement, which is surely within the range of possible approval.

7        **5.       Amount Offered in Settlement**

8        The terms of the proposed Settlement certainly meet the standard for "overall

9   fairness." *See Hanlon*, 150 F.3d at 1026. As set forth above, Class Members will receive the

10  same type of economic relief that they could seek in trial, and possibly more than they would

11  receive if they proceeded with litigation. Joint Decl., ¶53. In addition, the parties have

12  agreed to a Release that is properly tailored to this case and is fair and reasonable. The

13  definitions and terms of the Release are set forth more fully in the Settlement Agreement.

14  *See* Settlement Agreement, §IX.

15       **6.       The Settlement Is the Product of Prolonged Litigation and
             Serious, Informed, Non-Collusive Negotiations**

16       The Court is familiar with the long and adversarial history of this case. The parties

17  agreed upon the terms of the proposed Settlement following substantial fact investigation,

18  fact discovery, expert discovery, and litigation on the merits of Plaintiffs' claims, including

19  motions to dismiss and for summary judgment. Joint Decl., ¶¶5-28, 54-55. It is not a case in

20  which the lawsuit was filed and the proposed settlement agreement was achieved quickly.

21  *Id.* Rather, both the parties and the Court are in a position to assess the relative strength of

22  the case, the risks and uncertainty of the litigation, and the comparative benefits of settling

23  the action prior to trial. *Id.*

24       Additionally, the well-informed, lengthy and arm's-length settlement negotiations

25  demonstrate the fairness of the Settlement. *Id.* at ¶56. "A settlement following sufficient

26  discovery and genuine arm's length negotiation is presumed fair." *Nat'l Rural Telecomm.*

27  *Coop.*, 221 F.R.D. at 528. As in *Hanlon*, [t]here is no evidence to suggest that the settlement

28

14

1    was negotiated in haste or in the absence of information illuminating the value of plaintiff['s]

2    claims." 150 F.3d at 1027.  To the contrary, the long mediation process conducted before

3    Judge Tevrizian, as discussed more fully in paragraphs 29-37 of the Joint Declaration, and

4    the hard fought nature of those settlement discussions, further validates the non-collusive

5    nature of the proposed Settlement. *See also, Adams v. Inter-Con Sec. Sys., Inc*., 2007 WL

6    3225466, at *3 (N.D. Cal. 2007) ("The assistance of an experienced mediator in the

7    settlement process confirms that the settlement is non-collusive."). Thus, the progress of the

8    litigation, including the amount of discovery completed, favors final approval.

### 7.    The Reaction of the Class has been Overwhelmingly Positive and Strongly Supports Approval

9

10          As of January 14, 2011, the Objection and Opt-Out Deadline, the parties have

11   received only 153 opt-outs and seven objections to the proposed Settlement – out of a Class

12   of over 70,000.  Declaration of Amanda Horn filed January 25, 2011("Horn Decl.") at ¶¶4-

13   6.[4]

14          The relatively low number of opt-outs and Class Member objections compares

15   favorably to the numbers of opt-outs and objections that other courts have considered when

16   approving similar settlements. *Rodriquez*, 563 F.3d at 967 (finding a favorable reaction by

17   class members where of the 376,301 putative class members who received notice, 54

18   submitted objections); *Churchill Village*, 361 F.3d at 577 (finding a favorable reaction by

19   class members where of the 90,000 putative class members who received notice, 45

20   submitted objections and 500 submitted opt-outs).  These numbers reflect a positive reaction

21   from the Settlement Class that also weighs in favor of the fairness of the Settlement. *See

22   Hanlon*, 150 F.3d at 1027 ("the fact that the overwhelming majority of the class willingly

23

24

25   ───────────────

26   [4]     The Settlement Administrator received 143 timely complete exclusion requests and 10 incomplete exclusion requests.  With respect to the 10 incomplete requests, the parties instructed the Settlement Administrator to provide Notice of Incomplete Exclusion Request to Class Members and an opportunity to cure.  Horn Decl., ¶¶4-5.

27

28

15

1    approved the offer and stayed in the class presents at least some objective positive

2    commentary as to its fairness.").

3           In response to the few Class Member objections that were submitted, they are not well

4    taken and should be overruled.   They either misconstrue the terms of the proposed

5    Settlement or they simply complain that the relief is insufficient, an argument which courts

6    routinely reject in approving class action settlements.   None of the objections here undermine

7    approval of the Settlement.[5]

8           Ms. Kathleen McWhorter and her attorneys – Paul Rothstein,[6] Frank Tomlinson, and

9    N. Albert Bacharach – are "professional objectors" who have filed a generic and meritless

10   objection to the proposed Settlement.   Ms. McWhorter objects to the proposed Settlement on

11   the grounds that Class Members will have to wait 12-18 months in order to receive payment

12   if they elect to surrender.   Horn Decl., Ex. C – McWhorter Obj. at 6.   Ms. McWhorter is

13   mistaken in her assertion that the Settlement Agreement provides for any such waiting

14   period.   Second Joint Declaration of Andrew S. Friedman and Theodore J. Pintar dated

15   February 3, 2011 ("Second Joint Decl."), ¶2.   Furthermore, in response to Ms. McWhorter's

16   counsel's December 13, 2010 correspondence questioning this alleged delay, Mr. Phillips

17   explained that "there is *no* delay of '12-18 months' after a request for surrender is made."

18   Second Joint Decl., ¶3 & Exs. A &B(emphasis added).   Mr. Phillips further explained that

19   "[s]uch request will be processed promptly, and if a policyholder qualifies for the relief

20   requested, that benefit will be applied to the calculation of the surrender payment."   Second

21   Joint Decl., ¶3, Ex. B.   Accordingly, this objection should be rejected.

22          Ms. McWhorter also contends that the Claim Form is unclear.   Horn Decl., Ex. C –

23   McWhorter Obj. at 4.   She maintains that it is unclear whether sections III.C.2 thru III.C.4

24   ───────────────────────

25   [5]      Only one objector, Kathleen McWhorter, is represented by counsel, and she has requested to be heard at the Fairness Hearing on February 28, 2011.

26   [6]      It appears that Ms. McWhorter is related to Mr. Rothstein by marriage.   Second Joint

27   Declaration of Andrew S. Friedman and Theodore J. Pintar dated February 3, 2011 ("Second Joint Decl."), ¶9 & Ex. C.

28

1    need to be filled out if section III.C.1 is completed, in order to qualify for upper tier benefits.

2    *Id.*  Ms. McWhorter further contends that the personal information sought by section III.C.2

3    through III.C.4 could dissuade some Class Members from participating in the Settlement.  *Id.*

4    Ms. McWhorter therefore asks that the deadline for submitting claims be extended as a result

5    of the purported ambiguity in the Claim Form.  *Id.*

6            The Claim Form is not unclear, ambiguous or otherwise defective and certainly does

7    not warrant rejection of the proposed Settlement.  The criteria for upper and lower tier

8    benefits are clearly explained.  Specifically, although there is nothing preventing Class

9    Members from answering only section III.C.1, completing the entire Claim Form allows the

10   Settlement Administrator to consider them for upper tier benefits under section III.C.2 or

11   lower tier benefits under sections III.C.3 and III.C.4. Second Joint Decl., ¶4.  In addition, if a

12   Class Member had a question about the Claim Form, they could have called the Settlement

13   Administrator or Class Counsel.  *Id.*  Finally, this Claim Form is similar to the Active

14   Annuity Claim Form used in the settlement approved by this Court in *Negrete v. Fidelity and*

15   *Guaranty Ins. Co.  Id.*at ¶5.  Accordingly, there is no evidence here or in *Fidelity* that the

16   Claim Form is unclear or that it has dissuaded any Class Member, including McWhorter

17   herself, from filing a claim sufficient to cause this Court to extend the filing deadline or to

18   reject the proposed Settlement.  *Id.*

19           Ms. McWhorter also objects on the basis that neither the Notice nor the Settlement

20   Agreement disclose the value of the Settlement, the size of the Class, the anticipated average

21   claim size or an estimation of damages borne by the Class.  Horn Decl., Ex. C – McWhorter

22   Obj. at 5.  This objection should be overruled on numerous levels.  First, none of these items

23   are required to be provided in the Settlement Agreement or Class Notice in order for the

24   Court to find that the proposed Settlement is fair, adequate and reasonable. S*ee also Lazy*

25   *Oil, Inc. v. Witco Corp.,* 95 F. Supp.2d 290, 307 n.13 (W.D. Pa. 1997) (overruling objections

26   that notice did not provide estimate of overall damage estimate as well as potential individual

27   recovery and holding that "none of the alleged deficiencies in the notice rise to such a level

28   as to compromise the fundamental fairness of the Settlement or require this Court's

17

disapproval of it"). Second, Plaintiffs' motion for approval of attorneys' fees and costs, filed December 30, 2010, disclosed the size of the class (over 70,000) and that the Settlement value was approximately $79.5 million. Plaintiffs' fee and expense motion and supporting memorandum were publicly accessible on the website maintained by the Settlement Administrator. Second Joint Decl., ¶6. Moreover, because the Settlement Administrator is still in the process of reviewing the Claim Forms received to determine each Class Member's election and qualification for the various forms of relief, the parties do not know the breakdown of claims and thus cannot provide an estimate of the average size of Class Member claims. *Id.*at ¶7.

Providing an estimate of the damages available at trial is also not required in order for the Court to evaluate the fairness of the proposed Settlement. *See Lazy Oil, Inc.,* 95 F. Supp.2d at 307 n.13. Indeed, because the issue of damages was a hotly contested issue in this case which hinged on a number of factors, it would be speculative at best to provide an estimate. More importantly, such an estimate is not necessary to determine whether the proposed Settlement is fair, reasonable and adequate and therefore does not prevent the Court from approving the proposed Settlement. Here, such an estimate is certainly not necessary where Class Members qualifying for either upper tier or lower tier relief are entitled to a reduction of their surrender charges by 75% or 40%, respectively. Receiving even 40% of a Class Member's potential damage is wholly sufficient to show the reasonableness and adequacy of the proposed Settlement.[7] *See, e.g., Newman v. Stein,* 464 F.2d 689, 698 (2d Cir. 1972) (approving settlement agreement which provide recovery of

---

[7] Moreover, the Court is not without any basis for evaluating the reasonableness of the proposed Settlement. Indeed, the relief provided under the proposed Settlement compares favorably to the value and relief provided under the Settlement Agreement approved in *Negrete v. Fidelity and Guaranty Life Ins. Co.* – a case raising similar allegations and involving approximately the same size class as the present case. Second Joint Decl., ¶8; *see, e.g., Klein v. O'Neal, Inc.,* 705 F. Supp.2d 632, 654 (N.D. Tex. 2010) (in approving settlement, court did not require estimate of damages, but rather evaluated the settlement in comparison to results achieved in similar settlements). The proposed Settlement, here, has been valued at $79.5 million, which is over $25 million more than the F&G Settlement which was valued at around $52 million. Second Joint Decl., ¶8.

1    approximately 14% of potential damages); *Dewey v. Volkswagon,* 728 F. Supp.2d 546, 586-

2    87 (D.N.J. 2010) (finding settlement reasonable where it provided immediate and certain

3    relief in light of the attendant risks of continued litigation).   Finally, Class Counsel has

4    testified that the relief provided in the Settlement Agreement could potentially exceed the

5    amount of damages awarded at trial.  Joint Decl., ¶¶54-56.

6        Ms. McWhorter further objects on the basis that the relief should be "better" – that

7    she will receive an inadequate percentage of her actual damages under the proposed

8    Settlement and should be made whole.  Horn Decl., Ex. C – McWhorter Obj. at 5.  Such

9    objections are routinely overruled. *See Hanlon*, 150 F.3d at 1027.  Ms. McWhorter fails to

10   recognize that settlements, by their very nature, are the product of compromise and therefore

11   offer less than a full recovery. Second Joint Decl., ¶12; *see also Hiram Walker & Sons, Inc.*,

12   768 F.2d at 889.

13       Ms. McWhorter next objects on the basis that the exact benefit to the Class as a result

14   of the Surrender Charge Reduction Benefit cannot be determined without an estimate of the

15   Premium Tax.  Horn Decl., Ex. C – McWhorter Obj. at 6.  As Ms. McWhorter stated in her

16   objection, on December 23, 2010, her counsel wrote the parties' counsel asking about the

17   "Premium Tax."  Mr. Phillips, counsel for Midland, responded by letter, dated January 12,

18   2011, that "*there is no 'premium tax deduction' made in the calculation of the surrender*

19   *charge.*"   Second Joint Decl., ¶13 & Ex. B (emphasis added).   Further, Plaintiffs have

20   provided a valuation estimate of the proposed Settlement in the amount of $79.5 million,

21   $35,619,853 of which is the estimated value of the surrender charge reduction relief.

22   Bieluch Decl., ¶17.  Accordingly, this objection is without merit.

23       Ms. McWhorter's meritless objections are not surprising in light of the fact that she

24   and her attorneys are *professional objectors*.  McWhorter is the mother-in-law of her

25   counsel, Mr. Rothstein, and has objected to at least six proposed class action settlements

26   since 1999 – often represented by Mr. Rothstein, Mr. Tomlinson, or N. Alber Bacharach –

27   another professional objector. Second Joint Decl., ¶10 & Exs. D-F.  In most of those cases,

28   the objections were either overruled or ultimately dismissed by the objector. *Id.* at ¶11-13.

1   For example, in 2009, the court in the *In re GlaxcoSmithKline* litigation dismissed
2   McWhorter's objection to the proposed settlement.  *Id.* at ¶11 & Ex. G.  The court in *In re*
3   *Currency Conversion Fee Antitrust Litigation* similarly rejected McWhorter's objection,
4   concluding that the objectors did little to aid the court.  *Id.* at ¶12 & Ex. H.  **In a couple of**
5   **instances, McWhorter's objections were dismissed on the grounds that she was not even a**
6   **member of the class**.  *Id.* at ¶13 & Exs. I & J.

7        While McWhorter is a member of the Class here, in light of her history of lodging
8   serial objections to class action settlements, the lack of merit – and outright falsity – with
9   respect to her present objection, as discussed above, demonstrates that her true motivation is
10  to benefit herself and her attorneys by extracting an individualized payoff in exchange for
11  dismissal of her objection.  Objecting to class action settlements is "big business."  4
12  Newberg on Class Actions § 11:55 (4th ed. 2010).  The objections are often "obviously
13  'canned'" objections filed by professional objectors who seek out class actions to simply
14  extract a fee by lodging generic, unhelpful protests."  *Id.*  Particularly relevant to the present
15  litigation involving senior citizens, Newberg advises that "objections in 'boilerplate' form
16  filed by 'professional objectors' often delay and unnecessarily complicate class proceedings
17  by requiring court review of purported issues with no colorable merit."  *Id.* at 15:37.

18       In 2005, Mr. Tomlinson acknowledged, in response to questioning by U.S. District
19  Court Judge Aleta A. Trauger in *In re Allstate Insurance Co.*, 02-MD-1457, that he had
20  objected to class action settlements more than 50 times and Mr. Bacharach admitted that he
21  had objected to over 100 class action settlements.  Second Joint Decl., ¶14 & Ex. K.
22  Moreover, Mr. Tomlinson and Mr. Rothstein have filed objections to at least 14 class action
23  settlements negotiated by the Robbins Geller firm, one of Plaintiffs' counsel here. Second
24  Joint Decl., ¶15.  In many of these cases, the objections were overruled or voluntarily
25  withdrawn.  *Id.*

26       This is not the first case in which Mr. Rothstein has been accused of being a
27  professional objector who has filed a frivolous objection in hopes of obtaining additional
28  payment.  In *In re GlaxcoSmithKline*, Mr. Rothstein and Mr. Bacharach were sued under

1    RICO and accused on extortionate behavior.   Second Joint Decl., ¶16 & Ex. L.   The

2    complaint alleged that the attorneys did not file their objection in good faith, but rather used

3    the objection as a threat to cause economic harm by impeding and delaying payment under

4    the settlement unless they were paid money to withdraw their objection. *Id.* Shortly after it

5    was filed, the case was dismissed without prejudice by the Court. *Id.* at ¶15 & Ex. M.

6          The Court should not allow similarly meritless objections to impede or delay the

7    approval of the proposed Settlement and ultimate payment of benefits to the senior citizen

8    Class Members here.

9          Mr. Eugene DiSalvo objects to the proposed Settlement on the grounds that the Claim

10   Form seeks "irrelevant" information and that the Surrender Charge Reduction Benefits

11   provide uneven benefits to the Class.   Horn Decl., Ex. C – DiSalvo Obj. at 2-3.   Mr.

12   DiSalvo's objections to the information sought in the Claim Form are not well-taken.   The

13   Claim Form seeks information relevant to determine eligibility for relief under the

14   Settlement Agreement.  The information requested in the present Claim Form is substantially

15   similar to the information requested in the Active Deferred Annuity Claim Form used in

16   connection with the Settlement Agreement approved in *Negrete v. Fidelity & Guaranty Ins.*

17   *Co.* Second Joint Decl., ¶5.

18         With respect to the relief made under the proposed Settlement being unequal, the

19   relief is tailored to address Class Members' financial needs and the alleged harm imposed by

20   the challenged conduct.  The Claim Review Process, for instance, is specifically designed to

21   address those Class Members who were or will be adversely affected by the surrender

22   charges where a Class Member was misled or has financial hardship necessitating surrender.

23   *Id.* at ¶17.  The annuitization bonus and enhanced annuity payments are designed to address

24   Plaintiffs' allegations regarding the annuities' hidden costs and illiquidity.   *Id.*   Mr.

25   DiSalvo's attempt to have all Class Members receive precisely the same relief under the

26   proposed Settlement would actually undermine the ability of the proposed Settlement to

27   address the alleged harm.

28

21

Mr. David Ward objects on the basis that providing relief for those who purchased annuities at the time they were 65 years or older is arbitrary.  Horn Decl., Ex. C – Ward Obj. at 1.  Mr. Ward was 63 years old at the time he purchased his annuity and thus is not a Class Member.  Accordingly, he has no standing to object.  In any event, the inclusion of only those 65 and above is certainly not arbitrary.  Rather, it reflects one of Plaintiffs' primary allegations that Midland targeted senior citizens in the sale of deferred annuities.  Mr. Ward's objection should therefore be overruled.

Mr. and Mrs. William Cadenhead object to the amount of attorneys' fees based on the incorrect assumption that they will cause Midland to become insolvent and force the Cadenheads to surrender their annuities before such insolvency.  Horn Decl., Ex. C – Cadenhead Obj. at 1.  The agreed upon payment of attorneys' fees poses absolutely no risk of insolvency for Midland.  As Plaintiffs explained in detail in Plaintiffs' motion for approval of attorneys' fees, the parties engaged in extensive, arms-length negotiations over the terms of the Settlement Agreement, including the amount of attorneys' fees, with the assistance and guidance of former federal judge and skilled mediator, Dickran Tevrizian.  Joint Decl., ¶¶29-37.  With the assistance of experienced counsel, Midland determined that it was in its best interest from a business perspective to enter into the Settlement Agreement.  *Id.*  Moreover, Midland informed the various state insurance departments – which are responsible for monitoring the financial health of insurance companies – of the terms of the Settlement Agreement, and none of these regulators has raised an issue or even inquired into Midland's solvency in light of the relief provided under the proposed Settlement.  Second Joint Decl., ¶18.  Accordingly, the Cadeheads' objection should be overruled.

Mr. Meldon Kirk objects because the three categories of relief under the proposed Settlement force a policyholder to surrender or annuitize or else forfeit participation in the proposed Settlement.  Horn Decl., Ex. C – Kirk Obj. at 1.  According to Mr. Kirk, class counsel failed to consider the differing situations of all Class Members.  *Id.*  Mr. Kirk is inaccurate in his reading of the proposed Settlement.  Under the proposed Settlement, Class Members who wish to participate in the Surrender Charge Reduction Benefit only need to

file a claim form at this time.  Class Members deemed eligible for the Surrender Charge Reduction Benefit are not required to surrender their annuity at the time they are deemed eligible.  Settlement Agreement, § V.A.1.  Mr. Kirk also fails to recognize that a class action settlement cannot address every individual's situation but, rather, must be fair, reasonable and adequate to the Class as a whole.  As discussed herein, the Settlement Agreement satisfies this standard.  As a result, Kirk's objection is not well taken and should be overruled.

Mr. and Mrs. Joseph Reo object on the basis that the surrender charges should be completely removed rather than merely reduced as provided in the Settlement Agreement. Horn Decl., Ex. C – Reo Obj. at 1.  Again, this objection is tantamount to complaining that the Settlement relief should be "better," which is not a valid objection. *Hanlon*, 150 F.3d at 1027.  Mr. Reo fails to recognize that settlement, as the product of compromise, tends to offer less than a full recovery.  *Hiram Walker & Sons, Inc*., 768 F.2d at 889.  This objection should therefore be overruled.

Mr. Roger Berry generically states that he objects to scope of the Settlement and that he wants his claim to be included in the action.  Horn Decl., Ex. C – Berry Obj. at 1.  Mr. Berry then explains that pursuant to his divorce, he was forced to pay a portion of his annuity to his former wife.  *Id.*  According to Mr. Berry, Defendant stated that he would not incur surrender charges as a result of the partial surrender, but in fact, did impose surrender charges.  *Id.*  It is far from clear that Mr. Berry is in fact objecting to the terms of the proposed Settlement.  Indeed, that Mr. Berry may have a cause of action against Defendant based on allegations outside the scope of the Complaint and Settlement Agreement in this litigation is not grounds for objecting to the proposed Settlement.  Mr. Berry was entitled to opt-out and pursue his individual litigation, but he has chosen to file a claim for benefits. Second Joint Decl., ¶19.

## V.    THE IMPLEMENTED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE TO THE SETTLEMENT CLASS

Pursuant to the Court's Preliminary Approval Order, Garden City Group, Inc.,

23

("Garden City"), the third-party Administrator, implemented the approved Class Notice Program ("Notice Program"), as detailed in the Second Declaration of Amanda Horn ("Second Horn Decl."). On November 22, 2010, the Administrator sent a Class Notice Package to 79,874 Class Members by first-class, pre-paid mail to the last known address based on Defendant's records. Second Horn Decl. at ¶4. After the November 22, 2010 mailing of the Class Notice Package, on a weekly basis, Garden City performed advanced address searches when Class Notice Packages were returned by the USPS as undeliverable without forwarding information. *Id.* at ¶8. Garden City had a total of 2358 notice packages returned. *Id.* at ¶9. Upon completion of the advanced address searches, Garden City promptly remailed Class Notice Packages to the updated addresses for these Class Members. *Id.* at ¶9. After the advanced address search process was conducted, a total of 1599 Class Notice Packages were returned for invalid addresses. *Id.* Garden City staffed, and continues to staff, a toll-free number to respond to questions from Class Members regarding the Settlement Agreement, Claim Review Process, and objection and exclusion procedures. *Id.* at ¶9.

## A.   The Notice Program Provided the Best Practicable Notice, Including Direct Notice, to All Identifiable Settlement Class Members

The Class Notice Package satisfies the requirements that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In its Preliminary Approval Order, the Court approved a comprehensive Class Notice Package as the best practicable notice under the circumstances. Order at 5, 8. The Court authorized the parties to establish the necessary means to administer the proposed Settlement and the Claim Review Process in accordance with the terms of the Settlement Agreement. *Id.* at 6. Thereafter, the parties and Garden City implemented the Notice Program, through which approximately 98% of the potential Settlement Class received the Notice Package. This is more than sufficient. *See, e.g., In re*

24

*Intergra Realty Res., Inc.*, 262 F.3d 1089, 1110-1118 - (10th Cir. 2001) (Rule 23 and due process satisfied where 77% of class members received notice of settlement).

### B. The Notice Program Adequately Informed Settlement Class Members of the Settlement

The Court-Approved Notice satisfies Rule 23(c)(2)(B). To provide adequate notice of a class-action settlement, the notice should "'generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, LLC*, 361 F.3d at 575 (internal citations omitted). In addition, Rule 23(h)(1) requires that notice of Class Counsel's request for attorneys' fees be "directed to class members in a reasonable manner." The Notice Program here easily satisfies these requirements.

The Class Notice "clearly and concisely state[s] in plain, easily understood language" the nature of the action, the definition of the class certified, the class claims, issues and defenses, that a Class Member may enter an appearance through an attorney if he or she so desires, that the Court will exclude anyone from the Class who requests exclusion, the time and manner for requesting exclusion, the terms of the proposed Settlement, and the binding effect of a class judgment on members under Rule 23(c)(3). Second Horn Decl. at Ex. A. The Notice adequately informs Class Members of the proposed Settlement.

## VI. CONCLUSION

Plaintiffs respectfully move this Court to issue an Order: (1) finally certifying the Settlement Class for settlement purposes and appointing Plaintiffs Munoz, Kaiser, and Bendzak as Class Representatives and Interim Co-Lead Counsel as Class Counsel; (2) finding that the Notice Program has been adequate and reasonable, has met the requirements of Rule 23, and has constituted the best notice practicable under the circumstances; (3) overruling the objections and granting final approval of the proposed Settlement and Settlement Agreement; and (4) directing the entry of Final Judgment, dismissing the Action (including all individual and Class claims presented thereby) on the merits with prejudice.

1   DATED:  February 4, 2011                    Respectfully submitted,

2                                               BONNETT, FAIRBOURN, FRIEDMAN
3                                                  & BALINT, P.C.

4
                                                        /s/ Andrew S. Friedman
5                                               ANDREW S. FRIEDMAN
6                                               KIMBERLY C. PAGE
                                                2901 N. Central Avenue, Suite 1000
7                                               Phoenix, AZ  85012
                                                Telephone:  602/274-1100
8                                               602/274-1199 (fax)

9

10                                              ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
11                                              JOHN J. STOIA, JR.
                                                THEODORE J. PINTAR
12                                              RACHEL L. JENSEN
                                                PHONG L. TRAN
13                                              STEVEN M. JODLOWSKI

14
                                                        /s/ Theodore J. Pintar
15                                              THEODORE J. PINTAR

16                                              655 West Broadway, Suite 1900
                                                San Diego, CA  92101
17                                              Telephone:  619/231-1058
                                                619/231-7423 (fax)
18
                                                HAGENS BERMAN SOBOL
19                                                 SHAPIRO LLP
                                                STEVE W. BERMAN
20                                              1918 8th Avenue, Suite 3300
                                                Seattle, WA  98101
21                                              Telephone:  206/623-7292
                                                206/623-0594 (fax)
22
                                                Interim Co-Lead Class Counsel for
23                                              Plaintiffs

24                                              BARRACK, RODOS & BACINE
                                                STEPHEN R. BASSER
25                                              402 West Broadway, Suite 850
                                                San Diego, CA  92101
26                                              Telephone:  619/230-0800
                                                619/230-1874 (fax)
27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINKELSTEIN & KRINSK LLP
HOWARD D. FINKELSTEIN
501 West Broadway, Suite 1250
San Diego, CA  92101
Telephone:  619/238-1333
619/238-5425 (fax)


WATERS KRAUS & PAUL LLP
INGRID M. EVANS
711 Van Ness Avenue, Suite 220
San Francisco, CA  94102
Telephone:  800/226-9880
214/777-0470 (fax)


SHERNOFF BIDART & DARRAS
WILLIAM M. SHERNOFF
600 South Indian Hill Blvd.
Claremont, CA  91711
Telephone:  909/621-4935
909/ 625-6915 (fax)

27

# CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

The foregoing will be mailed via US mail and sent via email to:

Paul S. Rothstein, Esq.
626 N. E. 1st St.
Gainesville, FL 32608
psr@rothsteinforjustice.com

Frank H. Tomlinson, Esq.
15 North 21st St., Suite 302
Birmingham, AL 35203
htomlinson@bellsouth.net

N. Albert Bacharach, Jr., Esq.
115 Northeast 6th Ave.
Gainesville, FL 32601-3416
N.A.Bacharach@att.net

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 4, 2011.

/s/Kimberly C. Page _____

## SERVICE LIST

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

**Stephen R Basser**
sbasser@barrack.com

**Steve W Berman**
steve@hbsslaw.com,heatherw@hbsslaw.com

**Elaine T Byszewski**
elaine@hbsslaw.com,JenniferB@hbsslaw.com,sharons@hbsslaw.com

**Ingrid M Evans**
ievans@evanslaw.com

**Thomas A Evans**
tevans@reedsmith.com

**Elizabeth A Fegan**
beth@hbsslaw.com,Chi_Filings@hbsslaw.com

**Andrew S Friedman**
afriedman@bffb.com,rcreech@bffb.com,ngerminaro@bffb.com

**Terence N Hawley**
thawley@reedsmith.com

**William Hayden Higgins**
whiggins@reedsmith.com,dkelley@reedsmith.com

**Rachel L Jensen**
rjensen@rgrdlaw.com,e_file_sd@rgrdlaw.com

**Steven M Jodlowski**
sjodlowski@rgrdlaw.com,e_file_sd@rgrdlaw.com

**Daniel J Kurowski**
dank@hbsslaw.com,chi_filings@hbsslaw.com

**Timothy Mahoney**
timm@hbsslaw.com,chi_filings@hbsslaw.com

**Linda B Oliver**
loliver@reedsmith.com,swurth@reedsmith.com

**Kimberly C Page**
kpage@bffb.com

**Robert D Phillips , Jr**
rphillips@reedsmith.com

**Henry Pietrkowski**
hpietrkowski@reedsmith.com

29

**Theodore J Pintar**
  tedp@rgrdlaw.com,e_file_sd@rgrdlaw.com

**James A Rolfes**
  jrolfes@reedsmith.com

**Tamara M Rowles**
  trowles@reedsmith.com,aswenson@reedsmith.com

**Amir Shlesinger**
  ashlesinger@reedsmith.com

**John J Stoia . Jr**
  johns@rgrdlaw.com,e_file_sd@rgrdlaw.com

**Phong L Tran**
  ptran@rgrdlaw.com

**Samuel M Ward**
  sward@barrack.com,lxlamb@barrack.com