# EXHIBIT C

# EXHIBIT C

Exhibit C
- 32 -

NO: 11-55432

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ESTATE OF JOHN G MIGLIACCIO; CARMEN MIGLIACCIO, et al.
Plaintiffs-Appellees

MIDLAND NATIONAL LIFE INSURANCE, an Iowa corporation,
Defendant – Appellee,

vs.

KATHLEEN MCWHORTER,
Objector-Appellant,

ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA;
AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY,
Intervenors,
and
SAMMONS FINANCIAL GROUP, INC.
Defendant.

From the United States District Court for the Central District of California
No. 2:07-ml-01825-CAS-MAN

## OPENING BRIEF OF APPELLANT KATHLEEN MCWHORTER

Joseph Darrell Palmer
Law Offices of Darrell Palmer PC
603 North Highway 101, Ste A
Solana Beach, CA 92075
(858) 792-5600 Ph / (866) 583-8115 Fax
Email: darrell.palmer@palmerlegalteam.com
Attorneys for Appellant Kathleen McWhorter

Exhibit C
- 33 -

## TABLE OF CONTENTS

I.   STATEMENT OF APPELLATE AND SUBJECT
     MATTER JURISDICTION      ....................................   1

II.  STATEMENT OF ISSUES ......................................   2

III. STANDARD OF REVIEW ......................................   2

IV.  STATEMENT OF THE CASE ..................................   3

V.   STATEMENT OF FACTS ......................................   5

VI.  SUMMARY OF THE ARGUMENT ..........................   7

VII. ARGUMENT .....................................................   8

     A.   THE DISTRICT COURT ABUSED ITS DISCRETION
          BY FAILING TO CONDUCT A PROPER ANALYSIS
          TO SUPPORT THE FEE AWARD ..........................   8

     B.   THE DISTRICT COURT ABUSED ITS DISCRETION
          WHEN IT FAILED TO PROVIDE THE SETTLEMENT
          AGREEMENT THE PROPER HEIGHTENED LEVEL
          OF SCRUTINY AND APPROVED AN UNFAIR,
          INADEQUATE, AND UNREASONABLE
          SETTLEMENT ...............................................   15

          1.   THE DISTRICT COURT ABUSED ITS DISCRETION
               BY FAILING TO PROVIDE THE REQUISITE
               HEIGHTENED SCRUTINY GIVEN THAT THE
               SETTLEMENT WAS ENTERED INTO PRIOR TO
               CERTIFICATION, AND THE SETTLEMENT
               CONTAINED A "CLEAR SAILING" PROVISION
               AND REVERTER CLAUSE FOR ATTORNEYS'
               FEES .....................................................   16

          2.   THE TYING OF SURRENDER CHARGE
               REDUCTION BENEFITS TO AN ARBITRARY
               LIMITATION MAKES THE SETTLEMENT
               AGREEMENT UNFAIR, INADEQUATE, AND
               UNREASONABLE ......................................   20

i

Exhibit C
- 34 -

      3. THE CLAIM FORM UNREASONABLY
         PURPORTS TO REQUIRE INVASIVE
         PERSONAL INFORMATION FROM ALL
         CLASS MEMBERS SEEKING SURRENDER
         CHARGE REDUCTION BENEFITS ........................ 21

   C. THE NOTICE FAILS PROVIDE THE REQUISITE
      INFORMATION TO ALLOW CLASS MEMBERS TO
      CALCULATE THEIR POTENTIAL RECOVERY
      UNDER THE SETTLEMENT, THUS VIOLATING
      DUE PROCESS ..................................................... 23

VIII. CONCLUSION .......................................................... 29

CERTIFICATE OF COMPLIANCE ............................................. 30

STATEMENT OF RELATED CASES .......................................... 31

ii

Exhibit C
- 35 -

## TABLE OF AUTHORITIES

### Cases

*Camacho v. Bridgeport Financial, Inc.*
523 F.3d 973 (9th Cir. 2008) ……………………………………….. 3

*Churchill Vill., L.L.C. v. Gen. Elec.*
361 F.3d 566, 575 (9th Cir. 2004) ……………………………… 16 - 18

*Durham v. Lockheed Martin Corp.*
45 F.3d 1247, 1251 (9th Cir. 2006) …………………………… 3

*Epstein v. MCA, Inc.*
126 F.3d 1235 (9th Cir. 1997) ………………………………… 23

*Hanlon v. Chrysler Corp.*
150 F.3d 1011, 1027 (9th Cir. 1998) …………………………… 3, 12, 15

*Hensley v. Eckerhart*
461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983) ……… 12, 14

*Holiday Magic*
550 F.2d at 1177-78 …………………………………………… 23

*In re Bluetooth Headset Products Liability Litigation*
— F.3d —, 2011 WL 3632604 (9th Cir. (Cal.) ……………… 8 -16, 18 - 21

*Knisley v. Network Assoc.*
312 F.3d 1123, 1125 (9th Cir. 2002) …………………………… 11, 14

*Marshall v. Holiday Magic, Inc.*
550 F.2d 1173, 1178 (9th Cir. 1977) …………………………… 23

*Staton v. Boeing Co.*
327 F.3d 938, 963-64 (9th Cir. 2003) ………………………… 11, 12, 14, 18

*Torrisi v. Tuscon Elec. Power Co.*
8 F.3d 1370, 1374 (9th Cir. 1993) …………………………… 3, 16, 23

*Weinberger v. Great N. Nekoosa Corp.*
925 F.2d 518, 525 (1st Cir. 1991) ………………………… 19, 20

*Zucker v. Occidental Petroleum Corp.*
192 F.3d 1323, 1328-29 & n. 20 (9th Cir. 1999) ……………………… 11

Exhibit C
- 36 -

<u>**Codes, Rules and Other Materials**</u>

18 U.S.C. §§ 1961-1968  ..................................................  1

28 U.S.C. § 1332(d)(2)  ..................................................  1

28 U.S.C. §§ 1332(d)(2)(A) ..............................................  1

28 U.S.C. §§ 1332(d)(2)(C) ..............................................  1

28 U.S.C. §§ 1291..........................................................  1

28 U.S.C. §§ 1294 ........................................................  1

Federal Rules of Civil Procedure

    23(e)  ..............................................................  15, 17

Exhibit C
- 37 -

## I.   STATEMENT OF APPELLATE AND SUBJECT MATTER JURISDICTION

The district court had federal question jurisdiction over this action because it included claims under the civil provisions of the Racketeer Influenced & Corrupt Organization Act, 18 U.S.C. §§ 1961-1968 ("RICO").  (Excerpts of Record ("ER") 82).  The district court had diversity jurisdiction over the action under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2)(A) and 1332(d)(2)(C), because the case is a class action, the number of class members is at least 100, the aggregate amount in controversy exceeds $5 million, minimal diversity exists as this action includes a national class, and no statutory exception to 28 U.S.C. § 1332(d)(2) applies.  The district court's  Final Order Approving Class Action Settlement And Final Judgment Of Dismissal With Prejudice Thereon ("Final Order") issued on February 28, 2011.  (ER 1-9).   Appellant McWhorter objected to the settlement (ER 24-34) and timely filed her Notice of Appeal from the Final Order on March 15, 2011.  (ER 19).  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 1294.   This appeal is from a final order and judgment that disposes of all parties' claims.

/ / /

1

Exhibit C
- 38 -

## II.  ISSUES PRESENTED

A.    Whether the district court abused its discretion by awarding Class Counsel attorneys' fees under the lodestar method without conducting its own explicit lodestar calculation and analysis to confirm that the fee awarded was reasonable;

B.    Whether the district court applied the proper legal standard in its award of attorneys' fees:

C.    Whether the district court abused its discretion by approving a class action settlement without sufficient analysis; whether the district court abused its discretion by approving a class action settlement with an unreasonable and confusing claims form, and that attempted to limit the ways Class Members could use their benefit under the settlement; and

D.    Whether the notice provided to absent class members was sufficient when it failed to provide absent class members a useful formula for calculating individual benefits.

## III.  STANDARD OF REVIEW

A.    The standard of review for whether the district court erred in determining attorneys' fees is abuse of discretion. *Durham v.*

2

Exhibit C
- 39 -

*Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (where the Ninth Circuit reviews the award of fees and costs for abuse of discretion, but will overturn it if it is based on an erroneous determination of law).

B.   The legal premises used by the district court to determine an award of attorneys' fees are reviewed *de novo. Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973 (9th Cir. 2008).

C.   The standard of review for determining whether the district court erred in approving a proposed class action settlement agreement is abuse of discretion. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

D.   The standard of review for determining whether the district court erred in approving the notice to class members, and whether the notice satisfies due process, is *de novo. Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993).

## IV.   STATEMENT OF THE CASE

This action arises out of a number of constituent actions consolidated into a Multi-District Litigation based on claims for civil RICO, elder abuse, unlawful, deceptive and unfair business practices; unfair, deceptive and misleading

3

Exhibit C
- 40 -

advertising; breach of fiduciary duty; as well as other claims.  (ER 11).  Plaintiffs

filed a Consolidated Complaint on June 4, 2007.  (ER 82).  Plaintiffs asserted that

Midland did not disclose to consumers material facts regarding, *inter alia*, the costs

associated with its Annuities, the interest credited to the Annuities, the surrender

penalties and withdrawal provisions, and the fixed maturity date of the Annuities.

(ER 83).  Midland filed motions for summary judgment on April 9, 2007 and June

18, 2007.  (ER 82).  On July 2, 2007 Plaintiffs filed a Motion for Class

Certification.  (ER 83).  On October 12, 2010, before any hearing on the motion for

class certification or the summary judgment motions, Plaintiffs moved for

preliminary approval (ER 248) of the negotiated Settlement Agreement.  (ER 78-

155).  The district court granted Plaintiffs' Motion for Preliminary Approval on

October 25, 2010 (ER 10-18).  Class Counsel moved for an award of attorneys'

fees and incentive awards for named plaintiffs on December 30, 2010.  (ER 39-77).

On January 14, 2011 Appellant McWhorter timely filed objections to the

Settlement Agreement.  (ER 24-34).  After Plaintiffs moved for final approval of

the Settlement Agreement, the final fairness hearing was held on February 28,

2011.  (ER 2).  On February 28, 2011 the district court issued its Final Order

Approving Class Action Settlement And Final Judgment Of Dismissal With

Prejudice Thereon ("Final Order") (ER 1-9), which also awarded attorneys' fees.

4

Exhibit C
- 41 -

(ER 4). Appellant McWhorter timely filed her Notice of Appeal from the Final
Order. (ER 19).

## V.   STATEMENT OF FACTS

The Settlement Agreement was entered into prior to formal class
certification. (ER 82-83). The Settlement Agreement provides Class Members
with either of two different categories of benefits: increased benefits upon or after
annuitization, or Surrender Charge Reduction Benefits. (ER 99). To receive
Surrender Charge Reduction Benefits, Class Members must fill out a Claim Form
with a number of questions, such as explanations of the need for the funds, net
worth, and annual income, and which are unnecessary if the Class Member
answers the first question (which inquires as to whether the Class Member was
misled regarding aspects of their Annuity) in the affirmative. (ER 103-05; 108;
170-72). Neither the Notice nor the Claim Form notifies Class Members that
answers to subsequent questions are unnecessary if they answer the first question
on the Claim Form in the affirmative. (ER 169-73; 156-68). In order to determine
the effects of the settlement on the decision to surrender an annuity, Class
Members must determine the "Surrender Value" of the annuity, which is, in part, a
function of the "Surrender Charge." (ER 184). To determine Surrender Value,
Class Members must deduct a "Premium Tax." (*Id.*). The Premium Tax is not

5

Exhibit C
- 42 -

defined or addressed in the Settlement Agreement or the Notice, and is only vaguely defined in the Annuity.  (ER 78-155; 156-68; 180).  The Settlement Administrator was unable to provide any clarity regarding the Premium Tax issue (ER 37-38) and Midland's counsel, Robert Phillips, in response to an inquiry regarding the Premium Tax by Appellant McWhorter's counsel, denied that the Premium Tax had any effect on the calculation of surrender value. (ER 23).

Midland agreed to pay, and to not challenge any application for, attorneys' fees and costs that did not exceed $13,970,000.  (ER 128).  Any amount of that $13,970,000 not awarded to Class Counsel by the district court was to revert back to Midland and provide no benefit to the Class.  (ER 48).    The district court awarded to Class Counsel $13,946,500 in fees and costs, $500 less than the full amount of fees and costs Midland agreed to pay, without providing its own lodestar analysis, without providing any explicit analysis of Class Counsel's lodestar figure, and without comparing the fees awarded to the benefit obtained for the Class.  (ER 4).  The district court approved the Settlement Agreement and found it was "fair, reasonable and adequate," but did not consider the pre-certification posture of the settlement, the clear sailing provision, nor the fee reversion clause. (ER 2-3).

/ / /

6

Exhibit C
- 43 -

## VI.    SUMMARY OF THE ARGUMENT

The district court abused its discretion when it failed to provide any analysis to support its award of attorneys' fees.  The district court must conduct its own, explicit calculation of the lodestar amount, which it did not do.  Awarding attorneys' fees without analysis was an abuse of discretion because it must be apparent from the face of the fee award that the district court calculated a reasonable lodestar amount, and that the district court considered the relationship between the fee award and the results obtained.  The district court must provide its explicit lodestar calculation and an explanation of its result, which it did not.

Settlement agreements entered into prior to formal certification must be subject to heightened scrutiny.  The district court abused its discretion when it failed to analyze the fairness of the settlement under that heightened scrutiny, and, in fact, provided no real analysis at all.  The district court also failed to consider the implications of the Settlement Agreement's clear sailing and fee reversion provisions, when such provisions, by their very existence, raise questions of fairness.  The district court also abused its discretion in approving the Settlement Agreement because it failed to conduct the proper explicit lodestar fee analysis.

The provision in the Settlement Agreement that attempts to limit the ways Class members can use their Surrender Charge Reduction Benefits is wholly

7

Exhibit C
- 44 -

unfair.  The Claim Form, which purports to require *all* Class members seeking Surrender Charge Reduction Benefits to answer potentially irrelevant and invasive questions regarding their net worth, their annual income, and explanations of health and other expenses, also makes the Settlement Agreement unfair, inadequate and unreasonable.

The Notice to absent Class members violates due process because it fails to provide Class members an effective formula for determining their benefits, *i.e.*, the effect of the Settlement on the actual amount available upon surrender, if they seek Surrender Charge Reduction Benefits.  The Notice and the Settlement Agreement should define or address the applicable Premium Tax term.  At a minimum, Class members should be notified that the Premium Tax term will affect their Surrender Value, the actual amount they can expect to receive upon surrender of the annuity.

## VII.  ARGUMENT

### A.    The District Court Abused Its Discretion By Failing To Conduct A Proper Analysis To Support The Fee Award.

The district court abused its discretion by failing to conduct any analysis prior to its award of attorney's fees. *See In re Bluetooth Headset Products Liability Litigation*, — F.3d —, 2011 WL 3632604 (9th Cir. (Cal.)). The only discussion of fees occurs in the Final Order Approving Class Action Settlement And Final

8

Exhibit C
- 45 -

Judgment Of Dismissal With Prejudice Thereon ("Final Order") (ER 1-9), which

states:

> 11.   Class Counsel are hereby awarded attorneys' fees, expenses,
> and costs in the amount of $13,946,500 ("Class Counsel
> Payment").    This amount covers any and all claims for
> attorneys' fees, expenses, and costs incurred by any and all
> Class Counsel in connection with the Settlement of the Action
> and the administration of such Settlement.    Class Counsel
> Payment shall be provided by Midland to Receiving Class
> Counsel in accordance with Sections X.B.5 through X.B.9 of
> the Settlement Agreement upon satisfaction of the conditions
> set forth therein.

(ER 4).   The only part of the Final Order that even suggests an analysis of

attorneys' fees is where the district court stated, in basic boilerplate language:

"After considering the Settlement Agreement, the moving papers, arguments of

counsel and all other matter presented to the Court, it is hereby ORDERED,

ADJUDGED, AND DECREED AS FOLLOWS:." (ER 2).   There is nothing in the

Final Order or any memorandum that even hints that the district court conducted

the proper analysis to support the award of fees. *Bluetooth Headset, supra.*   There

is no indication of what "moving papers" or "arguments of counsel" regarding the

fee award the district court found compelling. *Id.*   There is no indication that the

district court confirmed that the hours logged were reasonable and non-duplicative,

that the hourly rates were reasonable, or that the fee award was justified in light of

the benefit achieved for the class. *Id.* Without sufficient analysis, it was an abuse of

9

Exhibit C
- 46 -

discretion for the district court to award the $13,946,500 in attorneys' fees and costs.

This Court has very recently provided an exceedingly thorough description of the analysis required to properly approve an application for attorney's fees in the context of a class action settlement. *Id.* The district court's analysis in the instant case falls short of that required by *Bluetooth Headset*. In *Bluetooth Headset* this Court vacated both the order approving the settlement and the order awarding attorney's fees "so that the district court may conduct a more searching inquiry into the fairness of the negotiated distribution of funds, as well as consider the substantive reasonableness of the attorney's fee request in light of the degree of success obtained." *Id.* at *1. The settlement agreement had provided for the defendants to pay the attorney's fees in an amount approved by the district court, not to exceed $800,000. *Id.* at *2.

The lower court in *Bluetooth Headset* found numerous defects in class counsel's proposed $1.6 million lodestar, including duplication, excessive charges, improper block billing, and use of an inflated hourly rate, but then concluded that its own analysis revealed that the lodestar still substantially exceeded the $800,000 that defendants had agreed to pay. *Id.* However, the district court made "(1) no explicit calculation of a reasonable lodestar amount; (2) no comparison between

10

Exhibit C
- 47 -

the settlement's attorney's fees award and the benefit to the class or degree of success in the litigation; and (3) no comparison between the lodestar amount and a reasonable percentage award." *Id.* The district court, after considering billing records from class counsel, entered a separate order awarding $850,000 for fees and costs based on the lodestar method. *Id.* at *3.

On appeal, the Court concluded that "the district court needed to do more to assure itself – and us – that the amount awarded was not unreasonably excessive in light of the results achieved," and that the appellate court "lack[ed] a sufficient basis for determining the reasonableness of the award." *Id.* at *6.

Unlike the district court in the instant case, the district court in *Bluetooth Headset* clearly provided a thorough review of class counsel's lodestar calculation, however, provided no explicit lodestar calculation of its own. *Id.* at *5-6.

Courts have an independent obligation to ensure that the award of attorney's fees is reasonable, even if the parties have already agreed to an amount. *Id.* at *3, *citing Staton v. Boeing Co.*, 327 F.3d 938, 963-64 (9th Cir. 2003); *Knisley v. Network Assoc.*, 312 F.3d 1123, 1125 (9th Cir. 2002); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328-29 & n. 20 (9th Cir. 1999). The lodestar figure is calculated by multiplying the number of hours "reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate

11

Exhibit C
- 48 -

for the region and for the experience of the lawyer." *In re Bluetooth Headset* ,
2011 WL 3632604 at *4, *citing Staton*, 327 F.3d at 965.   The lodestar is
presumptively reasonable, however, the court may adjust it upward or downward
depending on a host of "'reasonableness' factors, 'including the quality of
representation, the benefit obtained for the class, the complexity and novelty of the
issues presented, and the risk of non-payment.'" *In re Bluetooth Headset* at *4,
citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).   The most
important consideration is the benefit obtained for the class.   *In re Bluetooth
Headset* at *4 (citations omitted).

   The United States Supreme Court has instructed district courts to "award
only that amount of fees that is reasonable in relation to the results obtained."
*Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40
(1983).

   In this case because the Settlement Agreement did not establish a common
fund, Class Counsel correctly chose the lodestar analysis to justify the request for
fees.   *See In re Bluetooth*, at *4; (*see generally*, ER 39-77).   However, the district
court did not specify which approach was to be used, lodestar or percentage of the
common fund, and failed to conduct the robust analys required by *Bluetooth
Headset*.   The discretion of the district court to choose a method of calculating

12

Exhibit C
- 49 -

attorney's fees must be exercised to produce a reasonable result. *In re Bluetooth Headset*, at \*5 (citations omitted). Under the *Bluetooth* analysis, it is clear that even where a district court thoroughly reviews (and even critiques) class counsel's lodestar submission, the district court must conduct, and record for potential appellate review, its own lodestar analysis and findings. *See id*. The lower court in the instant case abused its discretion by failing to conduct and record its own lodestar analysis.

It is significant given the dearth of analysis from the lower court in the instant case that the *Bluetooth Headset* Court's "discomfort [was] not with the choice of the lodestar as a primary basis for calculation, but rather the ***absence of explicit calculation or explanation of the district court's result*.**" *Id.* (emphasis added). Calculation and explanation of the attorney's fee award are absent from the instant case. (ER 4).

The district court in *Bluetooth Headset* at least stated its reasoning for not including an explicit lodestar calculation: that there was no need for one given defendant's willingness to pay the $800,000 and the fact that reducing the award below the $800,000 would not enhance the settlement, because any difference between the amount agreed upon and the amount awarded for attorney's fees reverted to the defendant. *In re Bluetooth Headset*, 2011 WL 3632604 at \*6.

13

Exhibit C
- 50 -

However, "a defendant's advance agreement not to object cannot relieve the district court of its duty to assess fully the reasonableness of the fee request." *Id., citing Staton*, 327 F.3d at 963-64; *Knisley*, 312 F.3d at 1125.

The Court concluded, in *Bluetooth Headset*, that "***From the face of the Fee Order***, however, we do not have sufficient information from which to conclude that the district court included a reasonable number of hours in its lodestar 'calculation' or that it 'considered the relationship between the amount of the fee awarded and the results obtained.'" *In re Bluetooth*, 2011 WL 3632604 at *6 (emphasis added), *quoting Hensley*, 461 U.S. at 440. Thus, it is the order approving attorneys' fees itself that must clearly provide proof that the district court correctly conducted its own lodestar analysis. It is insufficient that the lower court had "stated that the 'substantial reduction' below the lodestar accounted for the fact that 'there were a number of claims for which class counsel achieved no relief,'" because the appellate court "remain[ed] in the dark both as to how substantial a reduction it was and what level of success plaintiffs in fact achieved." *Id.* at *6. Thus, the lodestar analysis was deficient and warranted vacating the fee award where, even though the awarded fee was less than the purported lodestar (as stated by class counsel and the district court), the amount of reduction from the lodestar was not clear. *See id.*

14

Exhibit C
- 51 -

In the instant case, the lower court's fee award is even more opaque to appellate review because it does not even state that the fee award is lower than its lodestar calculation, much less show the difference between the two. (ER 4).

Clearly the process the district court had to follow in order to properly make a fee award is "(1) decide whether to treat the settlement as a common fund; (2) choose the lodestar or percentage method for calculating a reasonable fee and make explicit calculations; (3) ensure that the fee award is reasonable considering, inter alia, the degree of success in the litigation and benefit to the class; and (4) if standard calculations yield an unjustifiably disproportionate award, adjust the lodestar or percentage accordingly." *In re Bluetooth Headset*, 2011 WL 3632604 at *7. The district court in the instant case abused its discretion when it failed to do the same.

**B.    The District Court Abused Its Discretion When It Failed To Provide The Settlement Agreement The Proper Heightened Level Of Scrutiny And Approved An Unfair, Inadequate, And Unreasonable Settlement.**

A class action settlement should not be approved unless it is fair, adequate, and reasonable. Rule 23(e), Fed. R. Civ. P.; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). A class certified for settlement purposes only is held to a higher standard of fairness. *Hanlon*, 150 F.3d at 1026; *In re Bluetooth Headset*, 2011 WL 3632604 at *9. Certain other factors can also increase the

15

Exhibit C
- 52 -

required scrutiny, such as provisions by which the defendant agrees not to challenge fee requests under a certain amount, and where fees not awarded to class counsel revert to the defendant instead of benefitting the class. *See In re Bluetooth Headset*, 2011 WL 3632604 at *9.

> **1.    The district court abused its discretion by failing to provide the requisite heightened scrutiny given that the settlement was entered into prior to certification, and the settlement contained a "clear sailing" provision and reverter clause for attorneys' fees.**

Though the factors considered in weighing the fairness of a settlement will vary, court must generally consider eight factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement. *Id.* at *9, *citing Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 2003). However, this Court has found that where the class is certified for settlement purposes only, the district court must provide even greater scrutiny than that achieved under the *Churchill* factors, *In re Bluetooth Headset*, 2011 WL

16

Exhibit C
- 53 -

3632604 at *9, because prior to formal class certification there is a greater potential that the fiduciary duty to the class will be breached. Settlement agreements reached before formal class certification must "withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e). . ." *Id.*

In the instant case, the district court did not even provide its own analysis of the settlement under the *Churchill* factors, or any factor test. (*See generally*, ER 1-9). The lower court only found, "The Settlement Agreement and Settlement are fair, reasonable and adequate, and consistent and in compliance with the applicable provision of the United States Constitution, its Amendments, and the Federal Rules of Civil Procedure, as to, and in the best interests of, the Class." (ER 2-3). The court also noted that the Settlement Agreement was the product of arms-length mediation sessions and was concluded after Class Counsel and Midland conducted their own investigations regarding the claims. (*Id.* at 3). The court stated it had "considered and denied all objections filed in this Action." (*Id.*) The Final Order included no other analysis of the Settlement Agreement, and did not include a separate opinion discussing the Settlement Agreement at the time of final approval. (*See generally, id.*) Thus, the approval of the Settlement Agreement did not provide sufficient scrutiny to be affirmed on appeal even if the class had already

17

Exhibit C
- 54 -

been formally certified (not just for settlement purposes). Because the Class was certified for settlement purposes only, without achieving formal certification, "an even higher level of scrutiny" was required, which the district court failed to provide. *In re Bluetooth Headset*, 2011 WL 3632604 at *9. Courts must do more than just consider the eight *Churchill* factors when presented for approval a settlement negotiated and entered into prior to formal class certification. *Id.*

Courts "must be particularly vigilant" for "subtle signs" that class counsel did not allow pursuit of their own self-interests to "infect negotiations." *Id., citing Staton*, 327 F.3d at 960. This Court in *Bluetooth Headset* noted three examples of such signs. *Id.* at *9. Two of those three are present in the instant Settlement Agreement (a) the presence of a "clear sailing agreement" for the payment of attorney's fees separate and apart from settlement funds; and (b) the reversion provision for fees not awarded. *Id.*; (ER 128; 48 (". . . any reduction in the fee will not increase benefits to the Settlement Class – it will simply revert to Midland. . .")). The presence of these two provisions in the Settlement Agreement necessitated an especially high level of scrutiny which the lower court failed to provide.

The district court still had the duty to scrutinize the clear sailing provision, even where the parties had claimed to have negotiated the core terms of the

18

Exhibit C
- 55 -

settlement with a neutral mediator before negotiating the fees, the fee provision
was severable from the agreement, and the fees would not have an effect on class
members' recovery. *In re Bluetooth Headset*, 2011 WL 3632604 at *10. The
mere presence of a neutral mediator is not dispositive of whether the settlement
was fair, adequate and reasonable, and that the severability of the clear sailing
provision had no bearing on the scrutiny required because "'[T]he very existence
of a clear sailing provision increases the likelihood that class counsel will have
bargained away something of value to the class.'" *Id., quoting Weinberger v. Great
N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991).

A reverter clause, where unpaid attorney's fees revert back to the defendant
instead of benefitting the class, "amplifies the danger of collusion already
suggested by a clear sailing provision."    *In re Bluetooth Headset*, 2011 WL
3632604 at *12. Such an attorneys' fee reverter clause is present in the instant
case. (ER 48). As this Court has stated, "If the defendant is willing to pay a
certain sum in attorney's fees as part of the settlement package, but the full fee
award would be unreasonable, there is no apparent reason the class should not
benefit from the excess allotted for fees. The clear sailing provision reveals the
defendant's willingness to pay, but the kicker deprives the class of that full
potential benefit if class counsel negotiates too much for its fees." *Id.*

19

Exhibit C
- 56 -

Even if class counsel were awarded nothing in fees, "awarding class counsel nothing would not cure an otherwise unfair settlement if those funds should have been negotiated to revert to the class. . ." *Id.* "Although clear sailing provisions are not prohibited, they 'by [their] nature deprive[ ] the court of the advantages of the adversary process'" in resolving fee determinations and are therefore disfavored." *Id.*, quoting *Weinberger*, 925 F.2d at 525 (other citations omitted). A clear sailing provision and a fee reversion clause require the district court's heightened attention and scrutiny to the fairness of the settlement, and it was an abuse of discretion for the district court in the instant case to not consider those suspect provisions and provide the requisite level of scrutiny to the fairness of the Settlement Agreement. *See In re Bluetooth Headset*, 2011 WL 3632604 at *9-13.

**2.   The tying of surrender charge reduction benefits to an arbitrary limitation makes the settlement agreement unfair, inadequate, and unreasonable.**

Section V.D.10 of the Settlement Agreement sets a strangely arbitrary limit on class members' use of the proceeds from their surrendered annuity, and any proceeds from the Surrender Charge Reduction Benefits. That section provides:

> 10.   Claimants who choose to surrender their Annuities may not use any portion of the proceeds of the surrendered Annuities or their Surrender Charge Reduction Benefits to purchase a new deferred annuity product. If Midland is asked or directed to send the proceeds of any Annuity to another insurance company in connection with the acquisition of another annuity product, Midland will deduct any Surrender Charge specified in the

20

Exhibit C
- 57 -

> Midland Annuity, without regard to any Surrender Charge
> Reduction Benefits.

(ER 110).   The entire provision (but especially the second part, over which

Midland has actual control), is unfair because it impermissibly attempts to limit

and control, and actually does limit and control, class members' use of their

benefits under the Settlement Agreement, and creates disincentives for class

members to surrender their annuity.  Such a limitation renders the entire Settlement

Agreement unfair, inadequate and unreasonable since all provisions in a Settlement

Agreement, even explicitly "severable" ones (which Section V.D.10 is not), must

still be considered in determining the fairness, adequacy and reasonableness under

Rule 23(e).  *See In re Bluetooth Headset*, 2011 WL 3632604 at *11.

### 3.   The claim form unreasonably purports to require invasive personal information from all class members seeking surrender charge reduction benefits.

The Claim Form required of Class Members seeking Surrender Charge

Reduction Benefits is confusing and purports to require irrelevant and burdensome

personal information.   Section III.A of the Claim Form For Surrender Charge

Reduction Benefits states: "If you want Surrender Charge Reduction Benefits,

please answer the following Questions;" and "Please provide a complete answer

for every question on the Claim Form."  (ER 170).  Nowhere does the Claim Form

inform Class Members that if they answer the first question: "Do you believe you

21

Exhibit C
- 58 -

were misled regarding the applicable Surrender Charges, right to Annuitize or
other policy benefits when you purchased your Annuity?" that they do not have to
answer the following questions to receive Surrender Charge Reduction Benefits.
(*See generally*, ER 169-73).   According to Section V.D.6 of the Settlement
Agreement, Class Members who were misled regarding their Annuity, and answer
the first question in the affirmative, will receive the Upper Tier Benefits of a 75%
reduction in their Surrender Charge, without having to meet any of the criteria in
the subsequent questions. (ER 108).

However, the Claim Form is phrased as if all class members must answer
every question.  The second question inquires as to whether the funds from the
Annuity are or were needed for medical expenses, nursing or home care, retention
of the class member's sole residence, or other expenses such as food, rent,
necessary housing repairs, utilities, and/or transportation. (ER 171-73).  If class
members answer Question 2 in the affirmative, they are required to describe the
expenses. (*Id.*) Question 3 inquires: "What is your current annual income from all
sources. . .?;" and Question 4 asks: "What is your net worth. . .?" (*Id.*) Questions
2 through 4 are intrusive and unnecessary if the Class Member has answered
Question 1 in the affirmative.  Questions 2 through 4 are likely to deter some class
members from making a claim, even if they meet the criteria for Surrender Charge

22

Exhibit C
- 59 -

Reduction Benefits under Question 1 and are not required to answer the additional questions. The fact that answers to Questions 2 through 4 are not required if the class member meets the criteria under Question 1 should be stated clearly and explicitly, both in the Notice and the Claim Form. The lack of this information in the Notice and the Claim Form renders the claims process, and thus the Settlement Agreement, unfair, inadequate and unreasonable.

     **C.    The Notice Fails to Provide the Requisite Information to Allow Class Members to Calculate Their Potential Recovery Under the Settlement, Thus Violating Due Process.** .

In order to meet the requirements of due process, notice in a class action must state the formula for computing class members' individual awards. *See Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 2003); *see also Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977), *abrogation recognized on other grounds by Epstein v. MCA, Inc.*, 126 F.3d 1235 (9th Cir. 1997). Absent class members must be provided with an equation or method of calculating their individual recoveries under a class action settlement. *See Torrisi*, 8 F.3d at 1373-74; *Holiday Magic*, 550 F.2d at 1177-78.

The Notice and Settlement Agreement in the instant case fall short of this Court's standard. The Notice makes numerous references to the "Surrender Charges": "you may choose to submit the Claim Form enclosed with this Notice

23

Exhibit C
- 60 -

and Participate in the Claim Review Process, which may reduce the Surrender
Charges on you Annuity by up to 75%" (ER 156); "Surrender Charge Reduction
Benefits are intended for Class Members who are concerned about incurring
Surrender Charges under their Annuity. . ." (ER 160); "The 40% (Lower Tier
Benefits) and 75% (Upper Tier Benefits) reduction in applicable Surrender
Charges may be adjusted to lower percentages depending on whether the approved
Claims exceed either the Limit on Approved Claims for Lower Tier Benefits or the
Limit on Approved Claims for Upper Tier Benefits, as fully described in Section
V.G. of the Settlement Agreement." (ER 160).  The Notice directs class members
who have questions to the Settlement Agreement or to the Settlement
Administrator. (ER 160).

    The Settlement Agreement, in Section II.A.52., defines "Surrender Charge"
as "the surrender charge applicable under the provisions of the annuity owned by
the class member. 'Surrender Charge' does not include any interest adjustment or
market value adjustment applicable under the provisions of any Annuity." (ER
95).  Thus the Settlement Agreement directs the class member attempting to
calculate their recovery to their Annuity contract, in order to determine the amount
to be reduced by the Surrender Charge Reduction Benefit and to determine the
amount the class member would then be entitled to upon surrender, or the

24

Exhibit C
- 61 -

"Surrender Value."[1]  In order to determine the effect of the Settlement Agreement on the value of the Annuity at surrender, the class member must determine the Surrender Value.[2]

Appellant McWhorter's Annuity provides the equation for calculating the "Surrender Value": "The Surrender Value is equal to: 1) The Accumulation Value; multiplied by 2) The Interest adjustment; less 3) The surrender charge; less 4) Any applicable Premium Tax."  (McWhorter Annuity, Sec. 6.2).   The Interest Adjustment is explained in Section 6.3, however, the only information in the Annuity regarding the Premium Tax is a vague definition: "**Premium Tax:** An amount that may be deducted from the Accumulation Value at full surrender, annuitization or death."  (Appendix A, p. 7).  Furthermore, the definition of

---

[1] The Settlement Agreement defines "Surrender Value" as "the amount payable to the owner of an Annuity upon full or partial surrender with respect to that transaction." (ER 96).

[2] Class members will not base their decision regarding whether to remain in the class or opt out based only on the effect of the settlement on their Surrender Charge.  In fact, the Surrender Charge itself, absent any effect of Surrender Charge Reduction Benefits, changes over the course of the Annuity – it is at its highest earlier on, and decreases as the end of the Surrender Period nears. (Appellant McWhorter's Annuity, attached as Appendix A, p. 2).  For instance, assuming Appellant McWhorter decided to surrender her annuity now (in the ninth year of the annuity), her Accumulation Value was $136,879.00, the interest rate remained constant over the course of the annuity, and she qualified for the Upper Tier Benefits under the Settlement of a 75% reduction in her Surrender Charge, then: her Surrender Charge would equal $3,695.73 (Accumulated Value – 10% of Accumulation Value x .12 (percentage for surrender in year nine)); her Surrender Value would equal $133,183.27 minus any applicable Premium Tax (Accumulation Value – surrender charge – any applicable Premium Tax).  All things being equal, if Appellant McWhorter decided to surrender in the fourteenth year (where the surrender percentage is 2%), her Surrender Value would equal $160,026.72 minus any applicable Premium Tax.  Thus, the Premium Tax variable is constant, and consistently indeterminate.  There is no way for Class members to determine the effect of the Surrender Charge Reduction Benefits on the actual amount they will receive at surrender.

Exhibit C
- 62 -

"Surrender Charge" in the Settlement Agreement expressly states that "'Surrender Charge' does not include any interest adjustment or market value adjustment applicable under the provisions of any Annuity." (ER 95). In Appellant McWhorter's annuity, the interest adjustment is listed as part of the calculation of "Surrender Value;" the "Premium Tax" is also listed as part of that calculation. (Appendix A, p. 11). While the Settlement Agreement states that the "interest adjustment" will not be used, it is silent regarding the "Premium Tax." (*See generally*, ER 78-155). Thus the "Premium Tax" term, integral in determining the Surrender Value, and thus in effect the benefits under the Settlement Agreement, is undefined in the Settlement Agreement and only vaguely and inexactly defined in Appellant McWhorter's annuity. It is significant that the Settlement Agreement expressly stated that the "interest adjustment" would not affect the Surrender Charge, yet failed to mention the "Premium Tax," which appears in the same section of Appellant McWhorter's annuity and is integral to the same calculation. This indefinite term makes it impossible for a class member to calculate their benefit under the Settlement Agreement, thus rendering whatever formula for benefit calculation included in the Notice insufficient.

In an attempt to gain some clarity regarding the "Premium Tax" issue, Appellant McWhorter's counsel contacted the Settlement Administrator prior to

Exhibit C
- 63 -

the fairness hearing.   (ER 37-38).   The representative of the Settlement
Administrator confirmed that the surrender value would likely be more
complicated than a simple subtraction of the reduced Surrender Charge from the
Accumulated Value. (*Id.*) In order to calculate the effect of the Surrender Charge
Reduction Benefits on the Surrender Value, it is necessary to subtract the
"applicable Premium Tax." (*Id.*) The Settlement Administrator's representative
was unable to provide information regarding what the Premium Tax was, or how it
was derived.   (*Id.*)   The Settlement Administrator's representative stated that
because the term was not defined in the Settlement Agreement, the Settlement
Administrator could not provide any answers regarding the Premium Tax. (*Id.*)

On December 23, 2010, Appellant McWhorter's counsel sent a letter to
Class Counsel with a copy to Midland's counsel.   (*Id.*)   That correspondence
detailed the conversation with the representative of the Settlement Administrator
regarding, *inter alia*, the Premium Tax issue, and requested detailed information
about how to calculate the impact of the Surrender Charge Reduction Benefit on
the Accumulated Value and the Surrender Value, including the calculation and
application of the "applicable Premium Tax." (*Id.*) Midland's counsel replied to
the correspondence on January 12, 2011, and stated that "there is no 'premium tax'
deduction made in the calculation of surrender value.  It is not apparent to us why

27

Exhibit C
- 64 -

you have raised the question of 'premium tax,' but it is not an issue that is part of the calculation of surrender value." (ER 23). These statements by Midland's counsel clearly contradict Appellant McWhorter's annuity policy. If the Settlement Administrator and Midland's own counsel cannot answer questions regarding the Premium Tax, or inexplicably deny its relation to the Surrender Value, how can the class members be expected to understand its effect on their ultimate benefit?

The parties could have addressed this issue easily, either by defining the Premium Tax and describing its application in the Settlement Agreement, or, as they did with the interest adjustment, explicitly excluding it from the calculation of benefits under the Settlement Agreement. (See ER 95). In order for the requirement that the formula for calculating benefits under the settlement be included in the notice to have force and effect, the variables of that formula must be clear and determinable for each class member. If they are not, class members run the risk of miscalculating their benefits and making the wrong choice regarding whether to remain a part of or to opt out of the settlement. Or class members may not be able to calculate their benefits at all, leaving them with no basis upon which to decide whether to remain part of the class. As the Settlement Agreement stands, it is unfair and inadequate, and the Notice to class members is incomplete and

28

Exhibit C
- 65 -

violates Due Process, to the extent that neither address the issue of the wholly indeterminate Premium Tax term.

## VIII. CONCLUSION

The district court abused its discretion when it awarded attorneys' fees without making an explicit lodestar calculation, and without providing an explanation for its fee award.  The district court abused its discretion by failing to apply the requisite heightened scrutiny to the settlement, and by approving a settlement with unfair and inadequate provisions.  The district court erred in approving the notice, which failed to address an indeterminate term necessary to Class members' calculation of the effect of the Surrender Charge Reduction Benefits on the amount of their annuity at surrender.  This Court should reverse and remand, with instructions to conduct the proper analysis of the fee award, to apply the proper heightened scrutiny to the Settlement Agreement, and to re-notice the Class, addressing the applicable Premium Tax.


Dated: September 6, 2011                    By: /s/ Joseph Darrell Palmer
                                                 Joseph Darrell Palmer


29

Exhibit C
- 66 -

## CERTIFICATE OF COMPLIANCE TO FED. R. APP. 32(a)(7)(C) AND CIRCUIT RULE 32-1

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth-Circuit Rule 32-1, I certify that the attached brief is proportionately spaced, has a typeface of 14 points and contains 6,626 words.

Dated: September 6, 2011          By: /s/ Joseph Darrell Palmer
                                      Joseph Darrell Palmer

30

Exhibit C
- 67 -

## STATEMENT OF RELATED CASES

Appellant Kathleen McWhorter is aware of the following related cases

pending in this Court:

Appeals:          11-55369
                  11-55372

31

Exhibit C
- 68 -

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 6, 2011.

I certify that all active participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system. All non-registered participants will be served via U.S. Mail.

/s/ Joseph Darrell Palmer
Joseph Darrell Palmer

32

Exhibit C
- 69 -